## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | | |
|---|---|---|
| PLYMOUTH COUNTY RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:19-cv-01031 (RDA/TCB) |
| EVOLENT HEALTH, INC., FRANK WILLIAMS, and NICHOLAS MCGRANE, | ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

On August 8, 2019, Plaintiff Plymouth County Retirement System brought this putative class action suit ("Action") against Defendants Evolent Health, Inc. ("Evolent"), Frank Williams, and Nicholas McGrane ("Defendants") under the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a). That day, Plaintiff also published a class action notice pursuant to 15 U.S.C. §§ 78u-4(a)(3)(A)(i).

On October 7, 2019, Electrical Workers Pension Fund, Local 103 I.B.E.W. ("Local 103") filed a Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel. Dkt. 15.

Also, on October 7, 2019, Plymouth County Retirement System and Oklahoma Police Pension and Retirement System (collectively, the "Pension Funds") filed a Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel (the "Motion"). Dkt. 15. The Pension Funds's Motion seeks to have the Pension Funds appointed as Lead Plaintiff and to

have the law firm of Saxena White P.A. ("Saxena White") appointed as Lead Counsel and the law firm of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") appointed as Liaison Counsel.[1]

On October 18, 2019, Local 103 withdrew its October 7, 2019 motion. Dkt. 24.

On October 21, 2019, the Pension Funds filed a notice advising the Court that their Motion is now unopposed. Dkt. 25.

## I. FACTUAL BACKGROUND

The instant Action is filed "on behalf of all persons or entities that purchased or otherwise acquired Evolent common stock from March 3, 2017 through May 28, 2019, inclusive" (the "Class Period"). The Action alleges that Defendants materially misrepresented the nature of its customer "partnerships" including Evolent's partnership with University Health Care, Inc., d/b/a/ Passport Health Plan ("Passport") and the sustainability of its partnership business model. Dkt. 1 ¶ 5. The Action further avers that Evolent represented that the core elements of its model included "long-term, embedded and aligned partnerships with health systems to enable us and our providers to grow together" and that its "business model provides strong visibility and aligns our partners' incentives with our own." Dkt. 1 ¶¶ 5, 35, 48, 62.

---

[1] In the instant matter, liaison counsel will be "[c]harged with essentially administrative matters, such as communications between the [C]ourt and other counsel (including receiving and distributing notices, orders, motions, and briefs on behalf of the [class]), convening meetings of counsel, advising parties of developments, and otherwise assisting in the coordination of activities and positions. [The liaison] counsel may act for the [class] in managing document depositories and in resolving scheduling conflicts." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 10.221 (2004). Lead counsel in this case will be "[c]harged with formulating (in consultation with other counsel) and presenting positions on substantive and procedural issues during the litigation . . . . [T]hey [will] act for the [class]—either personally or by coordinating the efforts of others—in presenting written and oral arguments and suggestions to the [C]ourt, working with opposing counsel in developing and implementing a litigation plan, initiating and organizing discovery requests and responses, conducting the principal examination of deponents, employing experts, arranging for support services, and seeing that schedules are met[, as necessary]." *Id.*

The Action further contends that, Evolent's partnership model, however, was not actually aligned with its partners. Dkt. 1 ¶ 5. Among other things, Defendants allegedly failed to disclose that: (1) Evolent's partnership model was not aligned with its partners as it was designed to increase the Company's revenue at the expense of its partners by extracting enormous administrative and management fees; (2) Passport was struggling financially, particularly after Kentucky cut its reimbursement rates, and the relationship between Evolent and Passport was becoming increasingly unsustainable; (3) Evolent was draining Passport of functions, employees and money, to such an extent that Passport was left on the verge of insolvency; and (4) Passport was conducting a confidential bidding process for several months, in which Evolent participated, to sell itself to a prospective buyer to prevent total collapse. Dkt. 1 ¶ 65.

Plaintiffs' Action further maintains that On May 29, 2019, Evolent disclosed that it was buying a controlling interest in Passport to save the company from bankruptcy. Dkt. 1 ¶¶ 6, 67, 68. Specifically, Plaintiffs claim that Defendants disclosed that Evolent would pay $70 million for the controlling interest in Passport and would also "provide a $20 million statutory note to Passport to enhance its risk-based capital." Dkt. 1 ¶ 67. The Action sets forth that in reaction to these disclosures, Evolent's stock price plummeted nearly 30% or $4.14 per share, to close at $10.01 per share on May 29, 2019. Dkt. 1 ¶ 69.

During the Class Period, the Pension Funds purchased a total of over 120,000 shares, expended nearly $2 million in funds, and suffered combined losses of over $1.1 million. Dkt. 19, 5.

## II. STANDARD OF REVIEW

There is a rebuttable presumption that "the most adequate plaintiff" to serve as lead plaintiff "is the person or group of persons that" (1) has filed the complaint or moved to be appointed lead plaintiff, (2) "has the largest financial interest in the relief sought by the class," and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

This presumption "may be rebutted only upon proof by a member of the purported plaintiff class" that the proposed lead plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u-4(a)(3)(B)(iii)(II).

To establish that the requirements of Rule 23 are satisfied, "the candidate must make at least a preliminary showing that it has claims which are typical of those of the putative class and that it has the capacity to provide adequate representation for others." *Switzenbaum v. Orbital Scis. Corp.*, 187 F.R.D. 246, 250 (E.D. Va. 1999) (noting that this "inquiry is not as searching as the one triggered by a motion for class certification"); *accord In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) ("Typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under [§ 78u-4].").

"A person's claim is typical when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 435 (E.D. Va. 2000) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)) (internal quotation marks omitted); *see also E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)) (stating that "a class

representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members").

"[A] person may be an adequate representative of the class where that person (i) does not have interests that are [averse] to the interests of the class, (ii) has retained competent counsel, and (iii) is otherwise competent to serve as class representative." *MicroStrategy*, 110 F. Supp. 2d at 435-36.

### III. ANALYSIS

#### A. Appointment of Lead Plaintiff

It is undisputed that the Pension Funds have the largest financial interest of any movant for appointment as lead plaintiff in this matter. Dkt. 20-3. Therefore, they are presumed to be the most adequate Plaintiffs if they can "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id.*

The Pension Funds satisfy the requirements of Rule 23 by making "at least a preliminary showing that [they have] claims which are typical of those of the putative class and that [they have] the capacity to provide adequate representation for others." *Switzenbaum*, 187 F.R.D. at 250. "A person's claim is typical when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *MicroStrategy*, 110 F. Supp. 2d at 435 (quoting *Drexel Burnham Lambert Grp.*, 960 F.2d at 291) (internal quotation marks omitted).

The Pension Funds' purchases arose from the same course of events that gave rise to the claims of the other proposed class members, and the legal arguments are the same. Therefore, Pension Funds' claims are typical of those of the proposed class.

The Pension Funds must also show that they have the capacity to adequately

represent the proposed class. *Switzenbaum,* 187 F.R.D. at 250. This standard is met if a plaintiff "(i) does not have interests that are adverse to the interests of the class, (ii) has retained competent counsel, and (iii) is otherwise competent to serve as class representative." *MicroStrategy,* 110 F. Supp. 2d at 435-36.

There are no apparent conflicts of interest between the Pension Funds and the proposed class. The Pension Funds have retained competent counsel, *see* (Dkts. 20-5, 20-6), and are otherwise competent to serve as class representatives. Therefore, the Pension Funds can adequately represent the proposed class. *See MicroStrategy,* 110 F. Supp. 2d at 438 (finding that a plaintiff group was adequate because "there were no apparent conflicts between [them] and the class, they had chosen competent counsel, and [they] were otherwise prepared to serve as class representatives").

The Pension Funds have satisfied the requirements of § 78u-4(a)(3)(B)(iii)(I). Therefore, they are rebuttably presumed to be the most adequate Plaintiffs to represent the proposed class.

As noted, the presumption that a party is the most adequate to serve as lead plaintiff "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff either "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No member of the purported plaintiff class has advanced any such claims. Thus, because the presumption that the Pension Funds are the most adequate Plaintiffs cannot be rebutted without such allegations from the purported plaintiff class, the presumption must be construed as unrebutted.

For the reasons discussed above, the Pension Funds have established that they should be presumed to be the most adequate candidates to represent the proposed class. Therefore, the Pension Funds are appointed jointly as Lead Plaintiff.

### B. Approval of Counsel

The Pension Funds also seek appointment of Saxena White as Lead Counsel and Cohen Milstein as Liaison Counsel. A lead plaintiff's selection of counsel is subject to court approval. 15 U.S.C. § 78u-4(a)(3)(B)(v).

In determining whether to grant such approval, the Court must consider: (1) "the work counsel has done in identifying or investigating potential claims in the action," (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action," (3) "counsel's knowledge of the applicable law," (4) "the resources that counsel will commit to representing the class," and (5) "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1).

In consideration of the documentation before the Court, it is apparent that proposed counsel have extensive experience in handling class actions similar to the present case, possess competent knowledge of the applicable law. *See* Dkts. 20-5, 20-6. There is no indication of any other matter that might hinder counsel's ability to fairly and adequately represent the interests of the entire class. Therefore, the Pension Funds' request that Saxena White be appointed as Lead Counsel and Cohen Milstein be appointed as Liaison Counsel are approved.

Lead counsel and liaison counsel are subject to continued compliance with this Court's rules, as follows:

As counsel are aware, out-of-District attorneys must associate with local counsel who are registered as filing users of this Court's electronic case filing ("ECF") system. Attorneys

appearing *pro hac vice* are precluded from registering as ECF filing users. This Court's Local Rules mandate that any counsel "presenting papers, suits, or pleadings for filing, or making an appearance, must be members of the bar of this Court, or must have counsel who are members of the bar of this Court to join in the pleading by endorsement. Any counsel who joins in a pleading, motion, or other paper filed with the Court will be held accountable for the case by the Court. At least one person admitted to practice under subsection (C) of this Local Rule must personally be present at all hearings, pretrial conferences, and trials. This obligation may not be avoided or delegated without leave of Court." Local Civil Rule 83.1(F).

Similarly, in this case, "no pleading or notice required to be signed by counsel shall be filed unless signed by counsel who shall have been admitted to practice in this Court under subparagraphs (A), (B) and (C) of this Local Rule, with the office address where notice can be served upon said attorney, and who shall have such authority that the Court can transact court business with that attorney alone in all matters connected with the case. Such appearance shall not be withdrawn without leave of the Court. Service of notice or other proceedings on such an attorney shall be equivalent to service on the parties for whom the attorney appeared." Local Rule Civil 83.1 (D)(3).

Accordingly, the law firm of Saxena White P.A. is hereby appointed as Lead Counsel for the proposed Class, and the law firm of Cohen Milstein Sellers & Toll PLLC is hereby appointed as Liaison Counsel for the proposed Class, subject to continued compliance with the entirety of Local Rule 83.1 and all other rules of this Court and the rules of the United States District Court for the Eastern District of Virginia.

## IV. CONCLUSION

The Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel (Dkt. 18) is granted as follows:

The Pension Funds are jointly appointed as Lead Plaintiff; the law firm of Saxena White P.A. is appointed as Lead Counsel for the proposed Class, and the law firm of Cohen Milstein Sellers & Toll PLLC is appointed as Liaison Counsel for the proposed Class, subject to continued compliance with Local Rule 83.1 and all other rules of this Court and the rules of the United States District Court for the Eastern District of Virginia.

It is SO ORDERED.

Alexandria, Virginia
November 12, 2019

/s/
Rossie D. Alston, Jr.
United States District Judge