UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| PLYMOUTH COUNTY RETIREMENT SYSTEM and OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> EVOLENT HEALTH, INC., FRANK WILLIAMS, NICHOLAS MCGRANE, SETH BLACKLEY, CHRISTIE SPENCER, and STEVEN WIGGINTON, <br><br> Defendants. | Case No. 1:19-cv-01031-RDA-TCB |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION
FOR LEAVE TO AMEND THE AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

I.    Introduction ..................................................................................................................1

II.   Factual Background .......................................................................................................3

      A.    Procedural History........................................................................................... 3

      B.    The Proposed SAC's New Allegations Doom Many of Defendants'
           Arguments........................................................................................................ 5

III.  Argument ......................................................................................................................7

      A.    Leave to Amend Should Be "Freely Give[n]" ............................................... 7

      B.    Defendants Will Not Be Prejudiced by the Amendment ................................. 8

      C.    Plaintiffs Do Not Seek Leave to Amend in Bad Faith.................................. 10

      D.    Filing the Proposed SAC Will Not Be Futile .............................................. 11

IV.   Conclusion ..................................................................................................................12

**TABLE OF AUTHORITIES**

Cases

*Beads v. Maryland State Police*,
2013 WL 6490268 (D. Md. Dec. 9, 2013) ................................................................. 10

*Bennett v. Berryhill*,
2018 WL 10016165 (E.D. Va. Oct. 19, 2018) ........................................................... 11

*Campbell Sales Group, Inc. v. Marx*,
2011 WL 13134312 (M.D.N,C, Aug. 30, 2011) ........................................................ 10

*Connelly v. Gen. Medical Corp.*,
880 F. Supp. 1100 (E.D. Va. 1995) ......................................................................... 8, 9

*Edwards v. City of Goldsboro*,
178 F.3d 231 (4th Cir. 1999) .................................................................................. 7, 9

*Foman v. Davis*,
371 U.S. 178 (1962) ................................................................................................ 7, 8

*Fund Grp. v. KV Pharm. Co.*,
679 F.3d 972 (8th Cir. 2012) .................................................................................... 12

*Galustian v. Peter*,
591 F.3d 724 (4th Cir. 2010) .................................................................................. 3, 7

*Laber v. Harvey*,
438 F.3d 404 (4th Cir. 2006) .................................................................................. 8, 9

*MC1 Healthcare LLC v. Mountainside Solutions, Inc.*,
2019 WL 3663844 (W.D.N.C. Aug. 6, 2019) ........................................................... 10

*Mgmt. Fund, LP v. BearingPoint, Inc.*,
576 F.3d 172 (4th Cir. 2009) ............................................................................ 7, 9, 11

*Sec. Police & Fire Professionals of Am. Ret. Fund v. Pfizer, Inc.*,
2012 WL 6771941 (D.N.J. Dec. 6, 2012) ................................................................. 12

*Tao of Systems Integration, Inc. v. Analytical Services & Materials, Inc.*,
299 F. Supp. 2d 565 (E.D. Va. 2004) ..................................................................... 9, 10

*Xia Bi v. McAuliffe*,
927 F.3d 177 (4th Cir. 2019) .................................................................................... 11

*Xia Bi v. McAuliffe*,
2018 WL 4224850 (E.D. Va. Sept. 5, 2018) ............................................................. 11

Rules

Fed. R. Civ. P. 15 ............................................................................................... *passim*

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, Lead Plaintiffs Plymouth County Retirement System and Oklahoma Police Pension and Retirement System (collectively, "Lead Plaintiffs" or "Plaintiffs"), respectfully submit this Memorandum of Law in Support of their Motion for Leave to Amend the Amended Class Action Complaint (the "Motion")[1] and further request that the Proposed Second Amended Class Action Complaint, attached as Exhibit A to Lead Plaintiffs' Motion (the "Proposed SAC" or "SAC"), be deemed filed as of the date of the Order granting such Motion.

## I.    INTRODUCTION

Lead Plaintiffs respectfully seek leave to file a Second Amended Complaint pursuant to Fed. R. Civ. P. 15 in order to incorporate newly discovered evidence into their allegations.  This recently revealed information is found in the first-person account of Confidential Witness 5 ("CW 5"),[2] a former senior Passport executive for nearly six years who contacted Lead Plaintiffs' counsel on her own initiative after briefing on Defendants' motion to dismiss was completed.  CW 5 was Passport's Senior Director of Information Technology from February 2020 to March 2020, and prior to that was the Director of Information Technology (March 2017 to February 2020), and the Manager of Infrastructure and IT Operations (October 2014 to February 2017).  In her role CW 5 reported to Passport Chief Operating Officer Carl Felix and was directly responsible for designing, maintaining, and managing Passport's IT infrastructure.  CW 5 worked directly on Valence, the highly flawed claims administration system that Evolent deficiently implemented at Passport, and

---

[1] Lead Plaintiffs filed their Amended Class Action Complaint ("AC") on January 10, 2020 (ECF No. 38).  All "¶__" references are to the AC unless otherwise stated; all defined terms have the meanings assigned in the AC; and all emphasis in quoted material is added and internal quotations and citations omitted unless otherwise noted.

[2] Former Evolent and Passport employees are referred to herein as Confidential Witness ("CW __") and are referenced in the feminine form to maintain their confidentiality.

saw its multiple defects first-hand, explaining that "it was my job for two years to figure out what was broken right after [Valence] was presented to Passport." She stated that "I was in the middle of everything and watched Evolent run Passport to the ground."

CW 5 told Lead Plaintiffs' counsel that she had read the Amended Complaint, that she could corroborate the statements therein attributed to the other CWs—particularly CW 1, with whom she had a close working relationship, and that she could refute any suggestion by Defendants that Evolent saved Passport money or that they were unaware of the significant issues facing Passport. CW 5's compelling new facts further establish Lead Plaintiffs' claims that Evolent and its senior executives deceived the Company's investors by falsely representing that Evolent's services were creating cost-cutting efficiencies for Passport, the Company's largest and most important client, which constituted approximately 20% of Evolent's revenue. For example:

- When asked if Evolent ended up saving Passport money, CW 5 laughed, replying "absolutely not," and added that "they took 350 of our employees, crippled our business and then charged us for services that weren't rendered. Everything that was done was either more expensive or cost us more money." SAC ¶91;

- Defendant Williams "absolutely knew" that there were multiple issues with Valence—including that it was designed as a dental claims system and could not properly report data—because in "every relationship meeting that we had that came up. Someone always barked about them." SAC ¶96;

- Multiple meetings took place between CW 5, Passport COO Carl Felix, Defendant Williams, and others, which got into very technical details about why Valence was not working. SAC ¶97;

- The deficiency letters Kentucky sent to Passport documenting hundreds of millions of dollars of fines and penalties as a result of faulty encounter data submission "absolutely were" sent to Evolent executives and that "Evolent agreed to foot the bill" for the fines for a period. SAC ¶100;

- The financial problems that Passport began experiencing in 2018 were "100%" due to Valance misreporting encounter data, and resulted in Passport paying out millions of dollars to healthcare providers that was not reimbursed by Kentucky. SAC ¶104.

In addition to revealing these never-before-seen facts, Plaintiffs' proposed amendment also

2

satisfies all of the Fourth Circuit's standards, which "liberally allow amendment." *See Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010).

*First*, the amendment will not prejudice Defendants.  Granting Lead Plaintiffs' Motion will not delay proceedings because the Court has not yet ruled on Defendants' previous motion to dismiss, and no discovery has taken place pursuant to the PSLRA's discovery stay provision. Moreover, the Proposed SAC simply adds factual allegations that supplement and corroborate previously-alleged facts; importantly, the SAC does not seek to assert new claims, name additional defendants, or redefine the Class or the Class Period.

*Second*, Plaintiffs are amending the complaint in good faith.  The factual details revealed by CW 5 provide further evidence that Defendants fraudulently mislead investors, and corroborate the accounts of the other CWs.

*Finally*, granting Plaintiffs leave to file the Proposed SAC would not be futile given these circumstances.  Courts across the country have routinely granted motions to amend where, as here, a plaintiff has uncovered new facts further establishing that a defendant made materially false and misleading statements with scienter.

For all of these reasons, the Court should grant Lead Plaintiffs' Motion.

## II.    FACTUAL BACKGROUND

### A.    Procedural History

On November 12, 2019, the Court appointed Plymouth County Retirement System and Oklahoma Police Pension and Retirement System as Lead Plaintiffs pursuant to the PSLRA.  ECF No. 29. On January 10, 2020, Lead Plaintiffs filed the AC, which is the current operative complaint in this Action.  ECF No. 38.  In the AC, Lead Plaintiffs alleged violations of Sections 10(b) and 20(a) of the Exchange Act against Defendants Evolent, Frank Williams, Nicholas McGrane, Seth Blackley, Christie Spencer, and Steven Wigginton (collectively, "Defendants"), on behalf of

3

themselves and a Class comprised of all persons or entities that purchased or otherwise acquired Evolent common stock from March 3, 2017 through May 28, 2019, inclusive (the "Class Period"). Specifically, the AC alleges that, throughout the Class Period, Evolent repeatedly told investors that its entire business model was predicated on the Company's supposed ability to dramatically reduce its clients' healthcare and administrative costs using its innovative technological platform, often touting its partnership with a Kentucky-based Medicaid plan known as Passport as the paragon of this cost-cutting strategy. In reality, Evolent drove Passport to the brink of bankruptcy by grossly overcharging it hundreds of millions of dollars in fees for the same services that Passport was already performing with no corresponding benefit. Evolent also imposed Valence, its utterly deficient claims administration platform onto Passport, which led to Kentucky assessing Passport hundreds of millions of dollars of penalties for misreporting Medicaid claims data, and resulted in a significant cut to the Medicaid rates that Kentucky paid to Passport. The truth regarding Evolent's deficient, cost-inflating services was fully revealed to the market when Evolent announced that, despite recent assurances to the contrary, it was acquiring a 70% stake in Passport in order for Passport to stave off bankruptcy, which sent Evolent's share price plummeting nearly 30%.

In accordance with the briefing schedule set by the Court, Defendants moved to dismiss the AC on February 6, 2020 (the "MTD"; ECF No. 48); Lead Plaintiffs filed their opposition to that motion on February 27, 2020 (ECF No. 54); and Defendants filed a reply in further support of their motion on March 5, 2020 (the "Reply"; ECF No. 57). In light of the COVID-19 pandemic and pursuant to General Order No. 2020-12, the hearing on Defendants' motion to dismiss that was scheduled for May 1, 2020 was postponed and continued to a later date.

Plaintiffs' counsel and Defendants' counsel exchanged a series of emails beginning on

4

April 16, 2020 regarding Plaintiffs' intent to amend, in which Plaintiffs' counsel explained the basis for the Proposed SAC. Following this exchange, Plaintiffs filed a Notice of Intent to Amend Complaint on April 22, 2020. ECF No. 58. Defendants responded (the "Response") two days later, on April 24. ECF No. 59.

### B. The Proposed SAC's New Allegations Doom Many of Defendants' Arguments

After Defendants filed their Reply on March 5, and while their motion to dismiss the AC was fully briefed and pending before the Court, CW 5 reached out to Lead Plaintiffs' counsel and revealed important new information relating to Plaintiffs' allegations in the AC establishing that: (i) Defendants made false and misleading statements concerning the ability of Evolent's business model to cut costs for its clients, the integration of Evolent's Valence claims administration platform, and Defendants' intent to bail out Passport (*see* ¶¶113-166); and (ii) Defendants acted with scienter in deceiving investors regarding these statements. The new information revealed by CW 5 further corroborates the accounts of other CWs cited in the AC.

*First*, CW 5 revealed additional new facts further evidencing the falsity of Defendants' statements that Evolent saved Passport money by cutting its costs, and undercutting many of the arguments that Defendants set out in their briefing:

| Defendants' Position | CW 5's Detailed Factual Account |
|---|---|
| "Evolent drove over $75 million in savings [at Passport] . . . after Evolent's systems were put in place" MTD at 1. | When asked if Evolent ended up saving Passport money, CW 5 laughed and replied, "absolutely not," adding "they took 350 of our employees, crippled our business and then charged us for services that weren't rendered. Everything that was done was either more expensive or cost us more money." SAC ¶91. |

| | |
|---|---|
| Evolent's "PBM [service] accounted for a significant part of the $75+ million in savings." MTD at 8-9. | CW 5 participated in several projects directed by Evolent, recalling that "I don't think that a single one actually succeeded." SAC ¶108.  CW 5 explained that one of the largest projects was transitioning Passport from Navitus, its legacy PBM, to CVS.  CW 5 stated "to this day it has cost us more than what Navitus charged us." SAC ¶109. |

*Second*, CW 5 also provided additional details further establishing that Defendants <u>knew</u> that Evolent was (i) dramatically increasing Passport's costs; and (ii) implementing Valence, Evolent's faulty claims processing platform, at Passport despite the fact that it was beset with repeated and fundamental failures:

| **Defendants' Position** | **CW 5's Detailed Factual Account** |
|---|---|
| The "CWs never assert that they spoke with, were in the same room with, or sent or received any email from any Individual Defendant. Nor do they assert any other reason why they would have knowledge of what any Individual Defendant knew about the alleged falsity of any challenged statement."  Reply at 5. | CW 5 stated that "everyone" was aware of the Valence implementation issues at Passport, and that if Defendants claimed that they were not aware of the issues facing Passport, that was "100% inaccurate."  CW 5 recalled that Defendant Williams participated in "relationship calls" between Evolent and Passport, during which the Valence implementation problems were repeatedly discussed.  CW 5 stated bluntly that <u>Defendant Williams "absolutely" knew that there were multiple issues with Valence— including that it was not designed for Medicaid claims and that there were issues with reporting data</u>—because "every relationship meeting that we had that came up.  Someone always barked about them."  SAC ¶¶91, 96.

CW 5 further explained that she and Passport COO Carl Felix took part in meetings with Defendant Williams and Evolent Chief Technology Officer Chad Pomeroy during which they got into very technical details about why Valence was not working, recalling that "Valence issues came up all of the time with the CEO and CTO.  <u>We were very explicit with them</u>."  SAC ¶97. |

| Defendants contend that the AC fails to show that the encounter data penalty letters Passport received, which documents hundreds of millions of dollars of penalties, "were known or knowable" by Defendants.  Reply at 17. | CW 5 confirmed that the penalty letters "<u>absolutely were</u>" sent to Evolent's executives because "there were talks on who was going to foot the bill. Evolent agreed to foot the bill for a certain time period."  SAC ¶100. |
|---|---|
| Defendants strongly denied that "the Valence implementation impacted Kentucky's Medicaid" rate cuts for Passport, claiming "[t]here are no well-pled facts to support Plaintiffs' tenuous link between Kentucky's decision to reduce rates and alleged problems with the Valence system."  Reply at 1. | CW 5 unequivocally confirmed CW 3's account, stating that Passport's financial problems were "<u>100%</u>" due to Valence misreporting encounter data because large portions of Passport's medical claims "were never run through the [Valence] system, there were no encounters created for any of those payments" and, as a result, "it appeared to Kentucky that Passport paid out significantly less than it actually did, which negatively affected Passport's rates[.]"  SAC ¶¶104-05. |

Accordingly, these new facts further corroborate that Defendants made materially false and misleading statements with scienter.

## III.    ARGUMENT

### A.    Leave to Amend Should Be "Freely Give[n]"

Rule 15(a)(2) provides that "[t]he court should <u>freely give leave</u>" to amend "when justice so requires," and the Fourth Circuit has unequivocally stated that "[i]t is this Circuit's policy to liberally allow amendment in keeping with the spirit of Federal Rule of Civil Procedure 15(a)." *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010) (reversing denial of motion seeking leave to amend).  The Fourth Circuit has heeded the Supreme Court's declaration that "'this mandate is to be heeded.'"  *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

The Fourth Circuit "therefore reads Rule 15(a) to mean that leave to amend should be denied <u>only</u> when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile."  *Matrix Cap. Mgmt. Fund,*

7

*LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009); *see also Foman* , 371 U.S. at 182 (same).  While courts have discretion to decide Rule 15 motions, that discretion "is limited by the dictate of Federal Rule of Civil Procedure 15(a) that 'leave shall be freely given when justice so requires,' and by the general policy, embraced by the Federal Rules, favoring resolution of cases on their merits."  *Connelly v. Gen. Medical Corp.*, 880 F. Supp. 1100, 1109-10 (E.D. Va. 1995) (granting leave to amend federal securities fraud complaint).

Lead Plaintiffs' Motion seeking leave to amend the AC should be granted because none of the three grounds for denial applies here.

### B.      Defendants Will Not Be Prejudiced by the Amendment

The Fourth Circuit has held that "[w]hether an amendment is prejudicial will often be determined by the nature of the amendment and its timing.  A common example of a prejudicial amendment is one that 'raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial." *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006).

Here, the opposite is true.  Specifically, the Proposed SAC does not raise new legal theories concerning Defendants' liabilities, it does not add any additional counts, claims, or defendants that were not already included in the AC, it does not change the Class definition or modify the Class Period, and it does not request any new form of recovery.[3]   Rather, the new factual allegations in the Proposed SAC, which are based upon CW 5's personal knowledge and experiences, reveal particularized facts further demonstrating that Defendants' public statements concerning, *inter alia*, (i) the cost-efficient services Evolent purportedly provided Passport; (ii) Evolent's claimed success

---

[3] Defendants' Response fails to inform the Court that Plaintiffs' counsel informed Defendants' counsel of each of these facts.

integrating Valence into Passport; and (iii) Defendants' repeated insistence that Evolent had no intention to acquire Passport made during the Class Period, clearly were materially false and misleading, and that Defendants made these statements with scienter.

Accordingly, all of the allegations sought to be added to the Proposed SAC "arise from the same controversy as the balance of the [AC]," concern "matters already contained in the [AC] in some form and, . . . merely [seek] to add specificity to those matters." *Edwards*, 178 F.3d at 243 (holding district court abused its discretion by denying leave to amend under these circumstances, finding "[p]rejudice to the Defendants could hardly flow from such an addition"). Indeed, where, as here, "Plaintiffs simply seek to add specificity to scienter [and falsity] allegations in a situation where defendants are aware of the circumstances giving rise to the action," there is "no basis for a finding of prejudice." *Matrix Cap.*, 576 F.3d at 195; *see also Connelly*, 880 F. Supp. at 1109-10 (granting leave to amend federal securities fraud complaint "three days before the end of discovery, just as the defendants were polishing their summary judgment motion" because "plaintiff has simply raised new factual contentions," and therefore, "the defendants will not be unduly prejudiced by the proposed amendment.").

Moreover, this Action is still in its infancy. One motion to dismiss has been fully briefed; however, no hearing on that motion has been held, no ruling on that motion has been issued, no discovery has taken place pursuant to the PSRLA's discovery stay, no schedule of pre-trial deadlines has been proposed or entered, and no trial date has been set. Thus, under controlling Fourth Circuit precedent, granting Plaintiffs' Motion will not result in a prejudicial delay of these proceedings. *See, e.g., Laber*, 438 F.3d at 426-27 ("An amendment is not prejudicial . . . if it merely adds . . . to the facts already pled and is offered before any discovery has occurred."); *Tao of Systems Integration, Inc. v. Analytical Services & Materials, Inc.*, 299 F. Supp. 2d 565, 571

9

(E.D. Va. 2004) (granting motion for leave to amend made after defendants' motion to dismiss had been fully briefed).

Accordingly, Defendants will suffer no prejudice if the Court grants Plaintiffs' Motion.

### C.    Plaintiffs Do Not Seek Leave to Amend in Bad Faith

"Motions to amend are typically granted in the absence of an improper motive, such as undue delay, bad faith or repeated failure to cure a deficiency by amendments previously allowed." *MC1 Healthcare LLC v. Mountainside Solutions, Inc.*, 2019 WL 3663844, at *3 (W.D.N.C. Aug. 6, 2019) (granting leave to amend filed in response to defendant filing motion to dismiss). Plaintiffs' Motion is being filed in good faith and should be granted, as no improper motive is present here.

*First*, Plaintiffs are not dilatory in bringing this Motion. Indeed, CW 5 only contacted Lead Plaintiffs' counsel after Defendants filed their Reply on March 5, 2020. Promptly thereafter, Plaintiffs notified both Defendants and the Court in advance of their intention to seek leave to amend the AC (*see* ECF No. 58), and then filed this Motion as soon as was reasonably practical.[4] Moreover, as explained in Section II.B, *supra*, the new information provided by CW 5 further undercuts many of the grounds Defendants raise to dismiss the AC and further confirms the information provided by the other CWs. Thus, Lead Plaintiffs' desire to amend "stem[s] from a good faith belief in legitimate claims" against Defendants, "rather than a bad faith attempt to . . . cause undue delay." *Tao of Systems Integration*, 299 F. Supp. 2d at 571 (granting leave to amend

---

[4] Defendants' contention in their Response that Plaintiffs' Motion is somehow faulty because "Plaintiffs have not explained why they were unable to file their SAC within 21 days after the motion to dismiss was served," (ECF No. 59 at 1) is therefore baseless. Indeed, "[c]ontrary to the allegations of the Defendants, seeking to amend the [AC] after opposing [Defendants'] motion to dismiss is not an indication of bad faith." *Beads v. Maryland State Police*, 2013 WL 6490268, at *4, n.12 (D. Md. Dec. 9, 2013); *see also Campbell Sales Group, Inc. v. Marx*, 2011 WL 13134312, at *2 (M.D.N,C, Aug. 30, 2011) (granting leave to amend, among other reasons, "because the proposed amendments directly respond to the issues raised by [defendant's] motion to dismiss").

"in order to clarify certain allegations stated in the original complaint").

*Second*, Defendants' contention that the Motion "violates the intent of the PSLRA" (ECF No. 59 at 2) is wholly without merit. Indeed, as the Fourth Circuit has explicitly held, "[n]othing in the PSLRA affects the standards governing either the pre – or post-judgment amendment of pleadings" made pursuant to Rule 15. *Matrix Cap.*, 576 F.3d at 193 (holding district court abused its discretion by denying leave to file second amended class action complaint on the ground that the new allegations could "affect the analysis of whether plaintiffs can satisfy the heightened pleading requirements for scienter under the PSLRA").[5]

Accordingly, the record affirmatively demonstrates that Plaintiffs are seeking to amend the AC in good faith.

### D.    Filing the Proposed SAC Will Not Be Futile

"Leave to amend . . . should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face." *Bennett v. Berryhill*, 2018 WL 10016165, at *1 (E.D. Va. Oct. 19, 2018) (granting leave to amend). Granting Plaintiffs leave to file the Proposed SAC would not be futile because, as described in detail in Section II.B *supra*, the information provided by CW 5 further refutes many of the arguments that Defendants asserted in their motion to dismiss, and further confirms the information provided by the other CWs.

Under these circumstances, federal courts routinely grant plaintiffs leave to amend their federal securities claims. *See Matrix Cap.*, 576 F.3d at 195–96 (granting leave to amend in federal securities class action where, as here, plaintiffs' proposed amendment sought "to add specificity to

---

[5] *Xia Bi v. McAuliffe*, 2018 WL 4224850 (E.D. Va. Sept. 5, 2018), which Defendants selectively cite in their Response, in reality fatally undermines their position. On appeal, the Fourth Circuit went out of its way to unequivocally explain that "we do not endorse the district court's statement that 'the PSLRA[ ] prohibits the amendment of complaints.'" *Xia Bi v. McAuliffe*, 927 F.3d 177, 182 n.2 (4th Cir. 2019).

scienter allegations" by adding "allegations relating to the time frame in which red flags became obvious" to defendants); *Sec. Police & Fire Professionals of Am. Ret. Fund v. Pfizer, Inc.,* 2012 WL 6771941, at *4 (D.N.J. Dec. 6, 2012), *report and rec. adopted*, 2012 WL 6765711 (D.N.J. Dec. 21, 2012) (granting leave to amend complaint asserting federal securities fraud claims because allegations made by a newly identified CW "provide several reasons why the challenged statements are affirmatively false and misleading when made"); *Pub. Pen. Fund Grp. v. KV Pharm. Co.,* 679 F.3d 972, 989 (8th Cir. 2012) (holding district court abused its discretion in denying leave to amend where, as here, the "new allegations supported the [plaintiffs'] contention that [defendant] made false and misleading statements during the Class Period").

## IV.   CONCLUSION

For all of these reasons, Lead Plaintiffs' Motion should be granted.

Dated: May 7, 2020

Respectfully submitted,

*/s/ Steven J. Toll*
Steven J. Toll
Va. Bar No. 15300
stoll@cohenmilstein.com
Daniel S. Sommers
dsommers@cohenmilstein.com
Megan Kinsella Kistler
mkistler@cohenmilstein.com
**COHEN MILSTEIN SELLERS**
**& TOLL PLLC**
1100 New York Avenue, Suite 500
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699

*Liaison Counsel for Lead Plaintiffs*

12

Maya Saxena (*pro hac vice* forthcoming)
msaxena@saxenawhite.com
Joseph E. White, III (*pro hac vice* forthcoming)
jwhite@saxenawhite.com
Brandon T. Grzandziel (*pro hac vice*)
brandon@saxenawhite.com
**SAXENA WHITE P.A.**
7777 Glades Road, Suite 300
Boca Raton, Florida 33434
Tel: (561) 394-3399
Fax: (561) 394-3382

Steven B. Singer (*pro hac vice* forthcoming)
ssinger@saxenawhite.com
Sara DiLeo (*pro hac vice*)
sdileo@saxenawhite.com
Joshua H. Saltzman (*pro hac vice*)
jsaltzman@saxenawhite.com
**SAXENA WHITE P.A.**
10 Bank Street, 8th Floor
White Plains, New York 10606
Tel: (914) 437-8551
Fax: (888) 631-3611

*Lead Counsel for Lead Plaintiffs*

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 7, 2020, I caused the foregoing to be electronically filed with

the Clerk of Court via CM/ECF, which will send a notice of electronic filing to all registered users.

*/s/ Steven J. Toll*
Steven J. Toll
Va. Bar No. 15300
stoll@cohenmilstein.com
**COHEN MILSTEIN SELLERS
& TOLL PLLC**
1100 New York Avenue, Suite 500
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699

*Liaison Counsel for Lead Plaintiffs*