**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| PLYMOUTH COUNTY RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, | § § § | |
| Plaintiff, | § | Case No. 1:19-cv-01031-RDA-TCB |
| | § | |
| v. | § | |
| | § | CLASS ACTION |
| EVOLENT HEALTH, INC., FRANK WILLIAMS, NICHOLAS MCGRANE, SETH BLACKLEY, CHRISTIE SPENCER, and STEVEN WIGGINTON | § § § § § | |
| Defendants. | § | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'**
**MOTION TO AMEND THE AMENDED CLASS ACTION COMPLAINT**

Ashley C. Parrish
Virginia Bar No. 43089
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW, Suite 200
Washington, DC 20006-4707
Tel: (202) 737-0500
Fax: (202) 626-3737
aparrish@kslaw.com

Paul R. Bessette, *pro hac vice*
Michael J. Biles, *pro hac vice*
Tyler W. Highful, *pro hac vice*
Jill R. Carvalho, *pro hac vice*
**KING & SPALDING LLP**
500 W. 2nd Street, Suite 1800
Austin, TX  78701
Tel: (512) 457-2000
Fax: (512) 457-2100
pbessette@kslaw.com
mbiles@kslaw.com
thighful@kslaw.com
jcarvalho@kslaw.com
*Attorneys for Defendants*

**TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY OF ARGUMENT ................................................................1

LEGAL STANDARD.................................................................................................................3

ARGUMENT .............................................................................................................................4

I.     The Court Should Deny Plaintiffs' Motion to Amend Because It Is Procedurally Improper and Does Not Serve the Interests Of Justice. .......................................................4

II.    If the Court Grants Leave to Amend, Then No Further Amendments Should Be Permitted. ...................................................................................................................7

III.    The Proposed Amendment Is Futile Because It Does Not Cure the Legal Deficiencies that Infect the Amended Complaint. ................................................................8

      A.    The New Allegations Regarding CW5 Are Not Sufficient To State A Claim. .......9

      B.    Plaintiffs' Repeated, Easy-to-Check Mischaracterizations Are No Basis for a Valid Securities Claim Under the PSLRA. .................................................................14

CONCLUSION........................................................................................................................15

## TABLE OF AUTHORITIES

**Cases**                                                                                               **Page(s)**

*Acito v. IMCERA Grp., Inc.*,
   47 F.3d 47 (2d Cir. 1995) ..................................................................................................9

*Booth v. Maryland*,
   337 F. App'x. 301 (4th Cir. 2009) ....................................................................................3

*Bruns v. Ledbetter*,
   583 F. Supp. 1050 (S.D. Cal. 1984)..................................................................................6

*Carlucci v. Han*,
   886 F. Supp. 2d 497 (E.D. Va. 2012) ...............................................................................9

*In re Champion Enters., Inc., Sec. Litig.*,
   145 F. Supp. 2d 871 (E.D. Mich. 2001)............................................................................7

*Miller v. Champion Enters. Inc.*,
   346 F.3d 660 (6th Cir. 2003) ............................................................................................7

*Cuthie v. Fleet Reserve Ass'n*,
   743 F. Supp. 2d 486 (D. Md. 2010)...................................................................................4

*Galustian v. Peter*,
   591 F.3d 724 (4th Cir. 2010) ............................................................................................7

*Hart v. Hanover Cty. Sch. Bd.*,
   2013 WL 1867388 (E.D. Va. May 2, 2013),
   *aff'd*, 547 Fed. Appx. 298 (4th Cir. 2013) .....................................................................4

*Istvan v. Willoughby of Chevy Chase Condo. Council of Unit Owners, Inc.*,
   7 F.3d 224 (4th Cir. 1993) ................................................................................................4

*Kramer v. Omnicare ESC, LLC*,
   307 F.R.D. 459 (D.S.C. 2015) ..........................................................................................4

*Laber v. Harvey*,
   438 F.3d 404 (4th Cir. 2006) .........................................................................................5, 7

*Landress v. Tier One Solar LLC*,
   243 F. Supp. 3d 633 (M.D.N.C. 2017) ..........................................................................6, 7

*Lubin v. Sybedon Corp.*,
   688 F. Supp. 1425 (S.D. Cal. 1988)..................................................................................6

*Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*,
   576 F.3d 172 (4th Cir. 2009) ............................................................................................7

*Ottmann v. Hanger Orthopedic Grp., Inc.*,
    353 F.3d 338 (4th Cir. 2003) ...............................................................................................9

*Perkins v. United States*,
    55 F.3d 910 (4th Cir. 1995) ................................................................................................4

*Phillips v. LCI Int'l, Inc.*,
    190 F.3d 609 (4th Cir. 1999) ...........................................................................................1, 9

*Rainey v. Anderson*,
    2018 WL 3636596 (E.D. Va. Apr. 11, 2018) .....................................................................5

*Silvestri v. Gen. Motors Corp.*,
    271 F.3d 583 (4th Cir. 2001) ..............................................................................................5

*Skinner v. First Am. Bank of Virginia*,
    64 F.3d 659 (4th Cir. 1995) ................................................................................................4

*Smithfield Foods Inc. v. United Food & Commercial Workers Int'l Union*,
    254 F.R.D. 274 (E.D. Va. 2008) .........................................................................................4

*Teachers' Ret. Sys. of La. v. Hunter*,
    477 F.3d 162 (4th Cir. 2007) .........................................................................................13, 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)............................................................................................................7

*In re Trex Co., Inc. Sec. Litig.*,
    454 F. Supp. 2d 560 (W.D. Va. 2006) ....................................................................10, 11, 13

*Xia Bi v. McAuliffe*,
    2018 WL 4224850 (E.D. Va. Sept. 5, 2018).......................................................................7

*Xia Bi v. McAuliffe*,
    927 F.3d 177 (4th Cir. 2019) ...........................................................................................7, 8

**Statutes**

Private Securities Litigation Reform Act (PSLRA)................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 12................................................................................................................3

Fed. R. Civ. P. 15....................................................................................................1, 3, 4, 5

Fed. R. Civ. P. 59(e) ..........................................................................................................7

**INTRODUCTION AND
SUMMARY OF ARGUMENT**

Plaintiffs' motion for leave to file a Second Amended Complaint is a tacit admission that their Amended Complaint does not satisfy the PSLRA's heightened pleading standards. Plaintiffs' new allegations do not assert new claims, name new defendants, set forth new theories of wrongdoing, or even request new forms of relief. Instead, the additions in the proposed Second Amended Complaint serve only one purpose: attempting to shore up the Amended Complaint's legal deficiencies in response to Evolent's fully briefed motion to dismiss.

This type of request puts both the Court and the parties in a difficult position, a position only complicated by the closures resulting from the COVID-19 pandemic. It is undisputed that Plaintiffs have missed the deadline to amend their complaint as a matter of right. *See* Fed. R. Civ. P. 15(a)(1)(B). It also cannot be denied that Plaintiffs were required to investigate their claims before filing litigation. A complaint is not supposed to be a shifting target, with plaintiffs seeking leave to amend after careful motion-to-dismiss briefing exposes that their already amended complaint is still inadequate. Nor are plaintiffs supposed to load up a proposed amendment with pages of invective and unnecessary argumentation. Plaintiffs' obligation is to plead their claims with the particularity that the Private Securities Litigation Reform Act (PSLRA) requires, setting out facts sufficient to establish that defendants made a false statement or omission of material fact, with scienter, upon which the Plaintiffs justifiably relied, and that proximately caused the plaintiffs' alleged damages. *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 613 (4th Cir. 1999).

For these reasons, the Court would be justified in denying the motion for leave to amend on procedural grounds because permitting the amendment is not in the interests of justice. On its face, Plaintiffs' late-breaking request to amend is improper. It imposes the type of unnecessary burdens and prejudice that courts have broad discretion to guard against.

Evolent recognizes that Plaintiffs have asserted, with little explanation, that their new confidential witness and her related allegations have only recently come to their attention. Evolent also recognizes that the prejudicial delay that Plaintiffs' motion would otherwise cause has been complicated by the COVID-19 pandemic. One way to keep this case moving forward, therefore, may be to allow Plaintiffs to amend and for Evolent to file a renewed motion to dismiss. Accordingly, if the Court does not reject Plaintiffs' motion as procedurally improper, Evolent proposes that it should grant the motion for leave to amend, direct Plaintiffs to file their Second Amended Complaint, and then permit the parties to file a second round of motion-to-dismiss briefing on Plaintiffs' Second Amended Complaint.

If the Court takes this approach, then it should also make clear that it will not permit any further amendments. Granting Plaintiffs' Motion would already afford them two amendments to their original complaint; permitting a third would be inconsistent with the PSLRA and would unduly prejudice Evolent. Plaintiffs' Second Amended Complaint does not cure the defects that infect their Amended Complaint, so taking this approach would conserve the Court's resources and allow this case to be resolved as promptly as possible.

Alternatively, the Court could hold Plaintiffs' motion to amend in abeyance pending its consideration of the currently pending, fully briefed motion to dismiss. That would allow the Court to better understand the underlying motion-to-dismiss issues before having to adjudicate whether Plaintiffs' proposed amendments are futile. The Court could thus leave open the possibility that, after resolving the motion to dismiss, Plaintiffs would be permitted to renew their request to file a Second Amended Complaint. At that juncture, the parties could then brief the question of futility in more detail and with the benefit of the Court's ruling on the pending motion to dismiss.

To assist the Court and preserve its position on the record, Evolent sets forth below some of the reasons why the new allegations in the proposed Second Amended Complaint do not cure the pleading defects in the Amended Complaint.  In summary, there are no legally material facts added to the Second Amended Complaint.  The new confidential witness, CW5, largely reiterates allegations already made in the Amended Complaint, though in many cases without the prerequisite personal knowledge.  She provides just two new pieces of information.  First, she alleges that, although she did not work for Evolent, she attended meetings with Frank Williams, Evolent's CEO.  But the new allegations fail to satisfy the PSLRA's particularity and scienter requirements because she does not explain *when* those meetings occurred, leaving open the significant question whether Williams knew the alleged falsity of any particular statement when it was made.  Second, CW5 is also the only CW to assert that the pharmacy benefit management program did not work well, but her position in IT gives her no personal knowledge of that part of Passport's business.  The new allegations in the proposed Second Amended Complaint, even when combined with allegations made by the other CWs, are insufficient to cure the defects in the Amended Complaint, and thus it fails to state a claim under the PSLRA.

## LEGAL STANDARD

Federal Rule of Civil Procedure 15 allows plaintiffs to amend their complaint once as of right if the amendment is filed "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  Fed. R. Civ. P. 15(a)(1)(B).  Plaintiffs have not complied with this rule.  Instead, they have asked to file a Second Amended Complaint more than 3 months after Evolent served its Motion to Dismiss.

In these circumstances, the Court's decision to grant or deny leave to amend is discretionary.  The Court has "broad discretion concerning motions to amend pleadings." *Booth*

*v. Maryland*, 337 F. App'x. 301, 312 (4th Cir. 2009). While leave is often freely given, "leave to amend is not to be granted automatically" by the district court. *Skinner v. First Am. Bank of Virginia*, 64 F.3d 659, \*2 (4th Cir. 1995). Courts in this Circuit can and do deny motions to amend. *E.g., Hart v. Hanover Cty. Sch. Bd.*, 2013 WL 1867388, at \*5 (E.D. Va. May 2, 2013), *aff'd*, 547 Fed. Appx. 298 (4th Cir. 2013) (denying Rule 15 motion); *Smithfield Foods Inc. v. United Food & Commercial Workers Int'l Union*, 254 F.R.D. 274, 281 (E.D. Va. 2008) (denying Rule 15 motion); *Istvan v. Willoughby of Chevy Chase Condo. Council of Unit Owners, Inc.*, 7 F.3d 224 (4th Cir. 1993) (affirming denial of Rule 15 motion).

Leave should not be granted if it is not in the interests of justice. *Skinner,* 64 F.3d 659, \*3 (denying leave to amend because it would not serve rule or justice). Nor should leave be granted if the amendment "would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" *Cuthie v. Fleet Reserve Ass'n*, 743 F. Supp. 2d 486, 492 (D. Md. 2010) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999)). Leave to amend should be denied for futility if the claims as amended would not survive a motion to dismiss for failure to state a claim. *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995). "[T]he futility analysis under Rule 15(a) necessarily requires a preliminary assessment of the allegations of the proposed amendment in light of the substantive law" underlying the complaint. *Kramer v. Omnicare ESC, LLC*, 307 F.R.D. 459, 463–64 (D.S.C. 2015).

## ARGUMENT

### I.    The Court Should Deny Plaintiffs' Motion to Amend Because It Is Procedurally Improper and Does Not Serve the Interests Of Justice.

The time between Evolent's motion to dismiss and Plaintiffs' motion to amend is more than 3 months, greatly eclipsing the 3 weeks for amendment-as-of-right permitted under Rule 15. Plaintiffs filed their original complaint on August 8, 2019, more than nine months ago. The Court

4

appointed Lead Plaintiffs on November 12, 2019, and Plaintiffs filed their 80-page Amended Complaint on January 10, 2020. At that time, Plaintiffs told the Court that they had conducted an extensive investigation, which included reviewing government documents received via Kentucky Open Records Requests, contacting many employees from Evolent and Passport, and analyzing publicly available information. AC ¶ 2. Defendants then moved to dismiss on February 6, Plaintiffs filed an opposition, and Defendants' Reply closed briefing on the motion to dismiss on March 5. The Court set argument for May 1, 2020, but the hearing was postponed due to COVID-19 precautions under General Order No. 2020-12.

Six weeks after briefing closed, on April 16, Plaintiffs told Evolent that they intended to file a Second Amended Complaint. Plaintiffs did not provide Evolent with any satisfactory explanation for the proposed amendment. While Plaintiffs claim that their "counsel explained the basis for the Proposed SAC," Motion at 5, in reality they said only that "such amendment would include additional facts establishing Defendants' scienter, as well as the false and misleading nature of their statements." That threadbare description, provided by email, was not specific enough to satisfy Plaintiffs' meet-and-confer obligation. *Rainey v. Anderson*, 2018 WL 3636596, at *1 (E.D. Va. Apr. 11, 2018) (ruling against party that did not confer with opposing counsel about issues that could have narrowed dispute).

Plaintiffs' failure to comply with their meet-and-confer obligations serves only to underscore that their motion is prejudicial and procedurally improper. It is true, of course, that courts in this Circuit "freely" grant leave to amend under Rule 15. *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). But it is also true that courts have an obligation to protect the integrity of the judicial process, *see Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001), and broad discretion to manage their dockets effectively to ensure that cases are litigated in an orderly

5

fashion, *see Landress v. Tier One Solar LLC*, 243 F. Supp. 3d 633, 646 (M.D.N.C. 2017) (citing *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983)).  The parties here have spent months and significant effort briefing the motion to dismiss on an agreed-upon schedule.  Permitting Plaintiffs to upend that schedule and amend their complaint in response to the fully briefed motion to dismiss is prejudicial on its face.  Plaintiffs offer no compelling reason why they should be permitted to impose such an unnecessary burden on Evolent and this Court.  Although they assert in conclusory fashion that they only recently connected with CW5, they never explain why they did not or could not have contacted her as part of the reasonable investigation they were required to complete before filing litigation.

Plaintiffs' procedural maneuver is particularly troubling because, as explained below, the additional allegations they propose are both insubstantial and inappropriate.  "A complaint should be long on facts and short on invective."  *Bruns v. Ledbetter*, 583 F. Supp. 1050, 1052 (S.D. Cal. 1984) (dismissing securities case); *Lubin v. Sybedon Corp.*, 688 F. Supp. 1425, 1443-44 (S.D. Cal. 1988) (partially dismissing securities case).  Rather than pleading material facts, Plaintiffs have larded up their proposed Second Amended Complaint with quotes and conclusory opinion testimony that have no place in a legal pleading.  *See, e.g.,* SAC ¶ 106 (Evolent's "highly touted solutions were nothing more than 'snake oil'"); ¶ 138 ("When asked if Evolent ended up saving Passport money, CW5 laughed and replied 'absolutely not' …").  Addressing these insignificant changes, however, would nonetheless require another round of extensive briefing and impose unnecessary costs on Evolent and Plaintiffs.  Unnecessary make-work, when complete motion-to-dismiss briefing is pending and no significant new information has appeared, should be particularly frowned upon in the current pandemic environment.

6

**II.      If the Court Grants Leave to Amend, Then No Further Amendments Should Be Permitted.**

If the Court grants Plaintiffs leave to file a Second Amended Complaint, then it should make clear that no further amendments will be permitted.  The cases cited by Plaintiffs all stand for the proposition that a plaintiff should be permitted in appropriate circumstances to file a second complaint—in other words, afforded *one* opportunity to cure a defective pleading.  *See, e.g., Galustian v. Peter*, 591 F.3d 724, 729–30 (4th Cir. 2010) (plaintiff sought to amend the complaint for the first time, when no answer had been filed, and after the motion-to-dismiss was decided); *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009) (lead plaintiffs under the PSLRA sought to file a second amended complaint after full motion-to-dismiss briefing and a ruling against them on the first motion to dismiss; appealed under Fed. Rule Civ. P. 59(e)); *Laber*, 438 F.3d at 414 (plaintiff sought to amend complaint for the first time, after losing on summary judgment; case appealed under Rule 59(e)).  Here, Plaintiffs have already filed an amended complaint and they now seek leave to file a Second Amended Complaint.

The Court should therefore make clear that a *third* amended complaint will not be permitted.  While private litigation is a key part of securities regulation, Congress passed the PSLRA to minimize abusive lawsuits.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *see also Xia Bi v. McAuliffe*, 2018 WL 4224850, at *2 (E.D. Va. Sept. 5, 2018) (noting that the PSLRA could not achieve its purpose if plaintiffs "were allowed to amend and amend until they got it right"), *aff'd*, 927 F.3d 177 (4th Cir. 2019) (affirming holding)[1]; *In re*

---

[1] Plaintiffs are incorrect in their characterization of the *Xia Bi* case.  Motion 11.  They assert that Evolent selectively cites the case, and then Plaintiffs add underlining to the quote from the decision to show the court's "unequivocal" position.  But the quote they discuss is in a footnote, with no underlining or emphasis, and it actually just explains that the argument is irrelevant in any case based on their ruling, in which they affirm the district court's holding. The footnote states—rather equivocally, it seems—the following:

> n.2  The appeal chiefly concerns fraud claims based on alleged misstatements by Rodham and McAuliffe. We have reviewed the record and affirm the dismissal of plaintiffs' other claims for the reasons stated by

7

*Champion Enters., Inc., Sec. Litig.*, 145 F. Supp. 2d 871, 873 (E.D. Mich. 2001) (dismissing securities case, denying leave to amend, and discussing PSLRA's purposes, which include "filtering out abusive, frivolous class action lawsuits"), *aff'd*, *Miller v. Champion Enters. Inc.*, 346 F.3d 660 (6th Cir. 2003) ("we agree with the district court that the purpose of the PSLRA would be frustrated if district courts were required to allow repeated amendments to complaints").

An original complaint, the first Amended Complaint (the operative complaint and on which there is full briefing), and a Second Amended Complaint more than suffice to give Plaintiffs an opportunity to plead their claims consistent with Congress's intent. To avoid any later dispute or unnecessary rounds of briefing, the Court should therefore make clear its expectations now before any amendment is permitted. If Plaintiffs file a Second Amended Complaint, then they should be put on notice that no further amendments will be allowed.[2]

## III.    The Proposed Amendment Is Futile Because It Does Not Cure the Legal Deficiencies that Infect the Amended Complaint.

The Court should also consider whether Plaintiffs' proposed amendment is futile. But that decision is difficult to make in advance of considering and resolving the pending motion to dismiss. Determining whether the new allegations rescue Plaintiffs' complaint from dismissal requires identifying the deficiencies in the existing allegations and then analyzing whether the new allegations are sufficient to state a claim for fraud under the PSLRA's strict pleading standards.

---

the district court. With respect to plaintiffs' federal securities fraud claim, while we do not endorse the district court's statement that "the PSLRA[ ] prohibits the amendment of complaints," J.A. 480-81, the district court did in fact allow the complaint to be amended and any additional amendments would have been futile for the reasons set forth herein.

*Xia Bi v. McAuliffe*, 927 F.3d at 182. Moreover, *Xia Bi* addressed the plaintiffs' request to amend after the district court had already ruled on a motion to dismiss. Plaintiffs in *Xia Bi* did not try to amend a complaint while the motion to dismiss was pending.

[2] Plaintiffs' investigators continue to contact current and former Evolent employees, as recently as last week. We assume this is an attempt to scrounge up additional details for a proposed third amended complaint.

8

*See Phillips*, 190 F.3d at 613 (setting out elements of securities fraud claim); *see also Carlucci v. Han*, 886 F. Supp. 2d 497, 509-10 (E.D. Va. 2012) (discussing PSLRA's strict pleading standards). Because there is little to no benefit in attempting to address futility without first resolving the pending motion to dismiss, the Court should hold Plaintiffs' motion to amend in abeyance until after it decides the motion to dismiss. After the Court issues its ruling, Plaintiffs can then decide whether to seek leave to amend, and the parties can brief the issues with the benefit of the Court's thinking on the issues raised in the motion to dismiss.

That approach may be especially appropriate because the "new information" provided by CW5 does not add anything of material, legal import to Plaintiffs' defective allegations. Even taking all of CW5's colorful and largely conclusory statements as true, they are not enough to state a claim for securities fraud. Indeed, besides reiterating allegations already made in the Amended Complaint, CW5 provides only two new pieces of information. First, she alleges that she attended meetings that Frank Williams, Evolent's CEO, also attended. Motion at 6. Second, CW5 alleges that the pharmacy benefit management program, with which she did not work as an IT director, did not save Passport money. Motion 6. Neither is sufficient to cure the defects in the Amended Complaint and state a claim under the PSLRA.

A.    **The New Allegations Regarding CW5 Are Not Sufficient To State A Claim.**

CW5's allegations largely reflect her opinions about Evolent and its alleged mismanagement of Passport. Allegations of corporate negligence or mismanagement are not enough to state a claim under Section 10(b). *Ottmann v. Hanger Orthopedic Grp., Inc.*, 353 F.3d 338, 343 (4th Cir. 2003); *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 53 (2d Cir. 1995). Moreover, the allegations about rebadging employees and her opinion that the pharmacy services program was run poorly are, if anything, contract claims that Passport could bring against Evolent. But Passport did not bring them; Passport's sophisticated physician-owners instead sold the majority

9

stake in the company to Evolent, even when there was another company offering to purchase Passport.

CW5's personal opinions are the only new facts in the Second Amended Complaint, and none of them is material or sufficient to fix the deficiencies in the Amended Complaint. CW5 does not offer facts sufficient to show that (1) Frank Williams had actual knowledge of any alleged misstatement, (2) any of the other Individual Defendants acted with actual scienter, or (3) CW5 has personal knowledge sufficient to form the basis for a securities fraud claim.

### *No Allegations that Frank Williams Had Actual Knowledge of Any Alleged Misstatements*

One major defect in the Amended Complaint is that none of the first four CWs had any contact with any of the Individual Defendants that would allow any of the CWs to assert that any defendant knew that a particular statement was false when made. *See* MTD at 27-31. That failure is important because the PSLRA requires Plaintiffs to show that a defendant's false or misleading statement was made with actual knowledge of its falsity at the time. *In re Trex Co., Inc. Sec. Litig.*, 454 F. Supp. 2d 560, 583 (W.D. Va. 2006).

CW5 is the only witness to allege that she had contact with any Individual Defendant. CW5 was a Passport employee who worked in Louisville, and she alleges that she participated in certain calls and meetings that Williams also attended. SAC ¶ 99. According to CW5, she was on "relationship calls" with Williams and others, and asserts that Williams participated in meetings with CW5 and others where "very technical details" about Valence were discussed. SAC ¶¶ 96, 97.

These allegations are vague in their particulars and mostly implausible. It does not make sense that the Chief Executive Officer of a large company would be engaged in technical discussions on a weekly basis with his customer's IT staff. But in any event, the new allegations

10

fail to state a claim because they never specify *when* Williams was told information that resulted in him making a false statement with actual knowledge of its falsity. *In re Trex,*, 454 F. Supp. 2d at 583 (finding that statements made by a CW that the defendant knew information were not sufficient because "the complaint does not indicate how or when this fact came to be known"). The Second Amended Complaint never alleges when the calls between Williams, CW5, and others took place. The Valence transition was a significant undertaking— the process itself started six months in advance of the 'go live' date of October 1, 2017, and Evolent had warned investors about the challenges of integrating such technology. ECF No. 50-17, MTD Ex. 17, 2017 Investor Day Transcript at 28-29 (transition process); ECF No. 50-2, MTD Ex. 2, 2018 10-K at 16 (warning). So even calls about Valence where someone "barked about them" to Williams are only relevant if they occurred close enough to Williams's one challenged statement related to Valence, on November 2, that the "barking" could be said to be outside the normal challenges of a major transition.[3] SAC ¶ 96. There are no allegations to make that essential connection. Taken as true, CW5's new information suggests only that by some unspecified date, Williams was aware that some people at Passport were unhappy with Valence and that there were some "relationship calls" because the Evolent/Passport relationship "needed to be fixed." SAC ¶ 97.

The lack of specific factual detail about when these calls occurred and what needed to be fixed is also significant. While CW5 identifies what, in her opinion, were certain problems, over the course of the Class Period Passport continued to contract with Evolent for additional services. Passport was an independent non-profit organization that had operated with its own Board of

---

[3] Williams' statement about Valence on Nov. 2, 2017 is that "we've successfully launched" Valence at Passport and that Evolent's "teams continue to monitor operations closely and report a smooth transition." AC ¶ 66. This statement cannot support a claim because it is immaterial puffery, it is not false, and Williams did not know it was false. These reasons are explained at length in the Motion to Dismiss at 23 and 24 and the Reply at 8-9.

Directors for 16 years—Evolent did not own the majority of Passport until the very end of the Class Period. There is no allegation that the Passport Board was negligent or otherwise failed to exercise its oversight duties. CW5 alleges there were "tensions" and people "barking" about Valence and things not getting fixed, but during this time Passport, acting as an independent entity, decided to (1) rebadge some employees from Passport to Evolent; (2) implement the Valence software program; and (3) hire Evolent to manage its pharmacy services. CW5's vague assertions about "relationship problems" must be viewed in light of Passport's decisions to expand its relationship with Evolent and hire Evolent for additional services.

### *No Scienter Allegations Against Other Individual Defendants*

Nothing in the proposed Second Amended Complaint addresses the scienter of the other Individual Defendants: (1) President and cofounder Seth Blackley, (2) current Executive Vice President and former CFO Nicholas McGrane, (3) former Evolent employee and former Valence CEO Steven Wigginton, or even (4) Christie Spencer, former Evolent National Medicaid Chief Operating Officer, who had previously worked at Passport during part of the time that CW5 worked at Passport. CW5 says that she was on calls with "Evolent's most senior executives" in addition to Williams, but does not mention Blackley, McGrane, Wigginton, or Spencer. SAC ¶ 96. All allegations against those Individual Defendants thus fail because there are no facts pled showing that any of those Individual Defendants had actual knowledge of the alleged falsity of the statements, or even that they made any false statement. *See* MTD at 26-31; Reply at 5-11.

### *CW5 Lacks Relevant Personal Knowledge*

Allegations based on statements from a confidential witness are appropriately credited only when (1) the complaint describes the CW's role sufficiently to infer that a person in that position would possess the information alleged; (2) the CW has personal knowledge and is not relying on

12

hearsay; and (3) the statements provide evidence of the CW's general understanding or knowledge of the information. *Teachers' Ret. Sys. of La. v. Hunter*, 477 F.3d 162, 174 (4th Cir. 2007); *In re Trex*, 454 F. Supp. at 573; *Hunter*, 477 F.3d at 179. CW5's roles as a Manager of IT and IT Director are sufficiently described, but many of her statements are on subjects about which she has no personal knowledge. Other statements by CW5 show her misunderstanding of subjects that are outside the scope of her role in IT.

First, while statements made by a Manager or Director of IT may fairly be credited when they relate to IT issues, it is not clear why CW5's opinion on the pharmacy benefit management program (PBM) should be credited at all.[4] The Second Amended Complaint does not allege she had any oversight role over the PBM, or otherwise allege why she would know anything about the PBM. Similarly, her opinions on rebadging 350 employees cannot arise from her position as IT Manager or Director. In any case, CW5 never says that she told any Individual Defendant about her concerns about the PBM or the rebadging, so those allegations cannot support a strong inference of scienter for any defendant about any statement.[5]

Second, CW5's comments on the encounter data and the penalty letters from Kentucky's Cabinet for Health and Family Services (CHFS) show that she fundamentally does not understand what encounter data is or how it is used. For example, CW5 says that a claim "simply sat in the system, again resulting in no encounter data ever being generated" so Passport "was not reimbursed by Kentucky." SAC ¶ 104. But that is not how any Medicaid managed care

---

[4] For the reasons discussed herein, CW5's statements about IT—even taken as true—do not state a valid claim for securities fraud.

[5] CW5 also describes the membership of Passport—i.e. the Medicaid enrollees in Louisville and elsewhere in Kentucky—as "high-addiction and low-birthweight" with little fluctuation. SAC ¶ 110. The Court should not credit her belittling opinion of Passport's members or the membership composition over time because her role in IT does not support the basis for that knowledge.

13

organization, Passport included, is paid.   The federal government's Medicaid website has a "toolkit" explaining encounter data, which states that encounter data "are not tied to per-service payment from the state to the managed care organization (MCO), because the state is not paying for individual services…."[6]   The agency that administers Medicaid describes encounter data exactly *opposite* of how CW5 understands it, and there is no way CW5's account can be squared with how Passport gets paid.   Her evident lack of understanding means her statements regarding Kentucky's statewide adjustments to Medicaid rates cannot be credited.   *Hunter,* 477 F.3d at 179 ("Given this source's evident lack of familiarity with the [contract], the facts he stated cannot support the complaint's assertion that [defendant] performed no [work under the contract]").   Any conclusions based on those statements are mere speculation and must be disregarded.

> **B.     Plaintiffs' Repeated, Easy-to-Check Mischaracterizations Are No Basis for a Valid Securities Claim Under the PSLRA.**

In tabloid fashion, Plaintiffs repeatedly mischaracterize Evolent's position on matters that are easy to check against filings in this case and other publicly available materials subject to judicial notice.   For example, Plaintiffs suggest that Evolent is lying in stating that it was not possible for Williams to know the future when he made a statement on November 2, 2017.   Motion at 7.   To support that suggestion, Plaintiffs try to use penalties assessed by Kentucky's CHFS starting in late 2017 as evidence that Williams knew, on November 2, 2017, that it was false when he said that the Valence transition had "successfully launched," and that so far the transition had been "smooth."[7]   But according to a document that Plaintiffs possess, which was also filed as

---

[6] Medicaid.gov's "Medicaid Encounter Data Toolkit" is available at https://www.medicaid.gov/medicaid/downloads/medicaid-encounter-data-toolkit.pdf (viewed May 19, 2020).

[7] Defendants note that the paragraph from which Plaintiffs selectively cite shows that Williams was talking about the integration between Valence, Aldera, and Identifi at both Passport and another Medicaid organization.  *Compare* AC ¶ 129 *with* ECF No. 50-1, MTD Ex. 1 at 2-3.

14

Exhibit 25 (ECF No. 50-25) to the Motion to Dismiss, the letter from Kentucky CHFS with the first penalties accruing based on Valence's implementation was sent on November 17, 2017, 15 days *after* Williams's purportedly false statement. The Kentucky penalties cannot logically be the basis for the falsity of Williams's statement. More generally, Plaintiffs' characterization of Passport's submission of encounter data and the penalties are inaccurate, as Plaintiffs themselves admit the penalties were capped at about $10 million. MTD Opp'n at 10 n.3 and 17 n.6. But in any event, it is implausible to conclude that Williams could foresee future events and then use that to allege he made a false statement. It does not support a claim under the PSLRA.

Plaintiffs also suggest that Evolent and the Individual Defendants denied that there were problems at Passport, and state that CW5 "could refute any suggestion by Defendants that … they were unaware of the significant issues facing Passport." Motion at 2. But Evolent never said there were no problems at Passport; to the contrary, Williams explained in an earnings call that "a rate cut [like Kentucky's in Sept. 2018] can have an immediate and significant financial impact," and that the rate cut was a "pressure point" so Evolent planned to work with Passport closely. ECF No. 50-30, MTD Ex. 30, 4Q Earnings Call at 7. And Evolent's 2018 10-K explicitly states that the Kentucky rate changes "have had a significant negative impact on Passport" and "could significantly harm our business." ECF No. 50-2, MTD Ex. 2 at 17. This mischaracterization of Evolent as clueless or deceitful has no basis in fact.

## CONCLUSION

The Court should deny Plaintiffs' motion for leave to amend. If it allows the amendment, then it should make clear that no further amendments will be permitted and it should direct the parties to complete another round of motion-to-dismiss briefing on the Second Amended Complaint.

15

DATED: May 21, 2020

Respectfully submitted,

/ Ashley C. Parrish
Ashley C. Parrish
Virginia Bar No. 43089
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW, Suite 200
Washington, DC 20006-4707
Tel: (202) 737-0500
Fax: (202) 626-3737
aparrish@kslaw.com

Paul R. Bessette, *pro hac vice*
Michael J. Biles, *pro hac vice*
Tyler W. Highful, *pro hac vice*
Jill R. Carvalho, *pro hac vice*
**KING & SPALDING LLP**
500 W. 2nd Street, Suite 1800
Austin, TX  78701
Tel: (512) 457-2000
Fax: (512) 457-2100
pbessette@kslaw.com
mbiles@kslaw.com
thighful@kslaw.com
jcarvalho@kslaw.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that on May 21, 2020, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF Filing System on all parties in this case.

/s/ Ashley C. Parrish
Ashley C. Parrish

16