# Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

|  |  |
|---|---|
| PLYMOUTH COUNTY RETIREMENT SYSTEM and OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>                                Plaintiffs,<br><br>v.<br><br>EVOLENT HEALTH, INC., FRANK WILLIAMS, NICHOLAS MCGRANE, SETH BLACKLEY, CHRISTIE SPENCER, and STEVEN WIGGINTON,<br><br>                                Defendants. | Case No. 1:19-cv-01031-RDA-TCB |

**PROPOSED LEAD PLAINTIFFS' RESPONSE
TO DEFENDANTS' NOTICE OF RECENT EVENTS**

Lead Plaintiffs respectfully submit this Response to address the points raised in Defendants' Notice of Recent Events (ECF No. 86) (the "Notice").

*First*, Defendants' Notice is procedurally improper under Local Civil Rule 7(F)(1) because it clearly constitutes additional briefing against the allegations in Lead Plaintiffs' Second Amended Complaint ("SAC"), and is also improper because it raises facts and arguments that are nowhere referred to or discussed in the SAC, and thus as a matter of law cannot be considered on this motion to dismiss. *Harmon v. CB Squared Services Inc.*, 2009 WL 234982, at *2 (E.D. Va. Jan. 30, 2009) ("[T]he Court will disregard all factual arguments and exhibits submitted by Defendant that fall outside the four corners of the pleadings when considering Defendant's Motion to Dismiss for failure to state a claim."); *Williford v. Seber*, 2016 WL 4249495, at *2 (E.D. Va. Aug. 8, 2016)

("[C]onversion of a Rule 12(b)(6) motion [to a Rule 56 motion] is triggered when matters outside the pleading under attacked are presented and 'considered' by the court."). Indeed, while Defendants now contend that the sale of Passport more than one year after the end of the Class Period supposedly establishes that Evolent was not in poor financial condition during the Class Period, it is telling that Defendants never raised this argument in connection with their motion to dismiss, even though the Form 8-K that they have attached to their Notice was filed before Defendants filed their reply brief. The fact that Defendants waited five weeks to submit this information to the Court, and did not do so in connection with the briefing on the motion to dismiss, is compelling evidence that, as set forth below, Defendants know full well that the sale did not occur because Passport was in such strong financial condition, but because Passport no longer had any value to Evolent once Passport lost its Medicaid contract with Kentucky.

*Second*, Evolent's decision to sell Passport over a year after the Class Period ended has no bearing on the fundamental facts that ***during*** the Class Period, Evolent cannibalized Passport, caused it to incur hundreds of millions of dollars in fines from Kentucky for failing to properly submit encounter data due to the botched implementation of Evolent's own Valence claims processing system, drove Passport into insolvency, and ultimately caused Passport to lose its Medicaid contract with the Commonwealth—all while Defendants publicly boasted that Evolent was lowering Passport's costs and improving its operations. Indeed, the SAC sets forth a plethora of well-pled facts establishing that Passport was not a well-managed plan, including: (1) the detailed accounts of five former senior employees of Passport and Evolent, including CW 5, Passport's former Senior Director of Information Technology, all of whom uniformly explained how Evolent drastically increased Passport's costs; (2) as a direct result of Passport's insolvency, Evolent was forced to pay $70 million to acquire a 70% stake in Passport in May 2019, triggering a

2

30% collapse in Evolent's stock price; (3) Kentucky rejected Passport's bid for a Medicaid contract twice, specifically finding that Passport was unable to establish how it could provide Medicaid services "in a cost-effective manner"; and (4) Evolent was forced to record a $199.8 goodwill impairment charge as of October 2019 because of the dramatic decline in the value of Passport—plus an additional, massive $215 million goodwill write-down as of May 2020 when Passport's application was (again) rejected by Kentucky. In sum, as Lead Plaintiffs stated in their opposition to Defendants' motion to dismiss, these undisputed facts directly contradict Defendants' assertions.

*Finally*, Evolent is not selling Passport because it was a well-managed plan, but because, as Evolent's own SEC filings make clear, without a Medicaid contract from Kentucky Passport has little if any value to the Company. Indeed, according to the Company's most recent Form 10-Q, filed on August 10, 2020, since Passport was rejected for the Medicaid contract, Evolent "expect[s] that we will not receive any material revenue under our management services agreement from Passport . . . and the value of our investment in Passport and goodwill will be negatively impacted." *See* Evolent Q2 2020 Form 10-Q at 20 (attached as Exhibit B to the Toll Declaration). Moreover, Evolent would be required to pay an additional $20 million in 2021 to acquire the outstanding 30% of Passport—a steep amount for assets that will no longer generate any revenue for the Company. *Id* at 14. However, while Passport would no longer be able to generate any revenue for Evolent, its assets are of value to Molina Healthcare ("Molina") because, unlike Evolent, Kentucky awarded Molina a Medicaid contract, and Molina therefore did not need Passport to have its own contract with the Commonwealth. Whether the specific terms of the sale to Molina are "better than [one analyst] expected" (Def. Ex. C at 1 (ECF No. 86-3)) is entirely irrelevant and does not change the fact that Evolent ran Passport into the ground, was forced to

repeatedly bail out the plan, and then failed *twice* to obtain a Medicaid contract for Passport due to its own failures.

Dated: August 21, 2020

Respectfully submitted,

/s/ Steven J. Toll
Steven J. Toll
Va. Bar No. 15300
stoll@cohenmilstein.com
Daniel S. Sommers
dsommers@cohenmilstein.com
Megan Kinsella Kistler
mkistler@cohenmilstein.com
**COHEN MILSTEIN SELLERS
& TOLL PLLC**
1100 New York Avenue, Suite 500
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699

*Liaison Counsel for Lead Plaintiffs*

Maya Saxena (*pro hac vice*)
msaxena@saxenawhite.com
Joseph E. White, III (*pro hac vice* forthcoming)
jwhite@saxenawhite.com
Lester R. Hooker (*pro hac vice* forthcoming)
lhooker@saxenawhite.com
Brandon T. Grzandziel (*pro hac vice*)
brandon@saxenawhite.com
**SAXENA WHITE P.A.**
7777 Glades Road, Suite 300
Boca Raton, Florida 33434
Tel: (561) 394-3399
Fax: (561) 394-3382

Steven B. Singer (*pro hac vice* forthcoming)
ssinger@saxenawhite.com
Sara DiLeo (*pro hac vice*)
sdileo@saxenawhite.com
Joshua H. Saltzman (*pro hac vice*)
jsaltzman@saxenawhite.com
**SAXENA WHITE P.A.**

4

10 Bank Street, 8th Floor
White Plains, New York 10606
Tel: (914) 437-8551
Fax: (888) 631-3611

*Lead Counsel for Lead Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2020, I caused the foregoing to be electronically filed with the Clerk of Court via CM/ECF, which will send a notice of electronic filing to all registered users.

/s/ Steven J. Toll
Steven J. Toll
Va. Bar No. 15300
stoll@cohenmilstein.com
**COHEN MILSTEIN SELLERS
& TOLL PLLC**
1100 New York Avenue, Suite 500
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699

*Liaison Counsel for Lead Plaintiffs*

5