# Exhibit A

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

|  |  |
|---|---|
| PLYMOUTH COUNTY RETIREMENT SYSTEM and OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> EVOLENT HEALTH, INC., FRANK WILLIAMS, NICHOLAS MCGRANE, SETH BLACKLEY, CHRISTIE SPENCER, and STEVEN WIGGINTON, <br><br> Defendants | Case No. 1:19-cv-01031-RDA-TCB |

**LEAD PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY
IN FURTHER OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Lead Plaintiffs respectfully submit this Notice of Supplemental Authority to bring to the Court's attention the attached Opinion denying the defendants' motion to dismiss in *Cambridge Retirement System v. Jeld-Wen Holding, Inc., et al.*, No. 3:20-cv-112, 2020 WL 6270482 (E.D. Va. Oct. 26, 2020), attached as Exhibit 1. As set forth below, the Opinion provides additional strong support for denying Defendants' motion to dismiss in this Action (ECF No. 74).

*First*, *Jeld-Wen* strongly supports Plaintiffs' argument that Defendants' statements in this Action were materially false and misleading. In *Jeld-Wen*, the court held that defendants' statements regarding the company's pricing strategy and product quality were false because defendants failed to disclose that the company was engaged in anticompetitive behavior. *Id*. at **1, 3, 5. Specifically, the court held that "***[b]ecause JELD-WEN spoke about its pricing strategy, it acquired 'a duty to tell the whole truth,'*** including the truth about its anticompetitive behavior. ***By not doing so, it made its prior statements about its pricing strategy 'utterly misleading' and 'misled the market*** about the actual source of [its] continuing revenues.'" *Id*. at *4 (emphasis added). Similarly, in this Action Defendants made a series of statements regarding Evolent's supposed ability to lower costs for its customers, without disclosing the highly material fact that with respect to Passport, Evolent's most important customer which accounted for up to 20% of the Company's revenues, Defendants' practices actually dramatically increased Passport's costs. Opp. at 19-24. Likewise, when Defendants touted Valence, Passport's medical claims processing platform, they failed to disclose that Valence's botched design and implementation made it utterly incapable of performing its most basic function, which was to submit encounter data to Kentucky in a timely and accurate manner—resulting in Passport violating its contract with the Commonwealth by submitting medical records that were in the aggregate millions of days late, and Kentucky imposing hundreds of millions of dollars of penalties as a consequence. Opp. at 21-

1

22; 24-26. As *Jeld-Wen* makes clear, such statements are false, because once Defendants chose to speak about their ability to lower costs for their customers and the purportedly successful integration of the Valence system, they were ***required*** under the federal securities laws to disclose "***the whole truth***" about those subjects, including the highly material adverse facts alleged in the complaint.

*Second*, *Jeld-Wen* strongly supports Plaintiffs' argument here that Defendants acted with scienter. In *Jeld-Wen*, the court held that plaintiffs alleged a strong inference of scienter in part because the defendants "implemented and oversaw the anticompetitive scheme," and because they described the individual defendants "involvement in setting prices." 2020 WL 6270482 at *8. Similarly here, Plaintiffs have set forth detailed facts establishing that defendants were intimately involved in all aspects of Passport's operations. Indeed, the allegations here are far stronger than in *Jeld-Wen*—Defendant Williams ***admitted*** to meticulously monitoring all aspects of Passport's performance, boasting that Passport looked to Evolent "as a co-owner," that "we really have joint governance," and that "we're able to drive the decisions we think are important for performance." Opp. at 32; ¶¶42-43, 125. Moreover, former high-level employees—including CW 5, Passport's Senior Director of Information Technology—described multiple first-hand interactions with Defendant Williams and other executives during which Valence's botched design and implementation were discussed. Opp. at 33-36; ¶¶96-99. In *Jeld-Wen*, the court also held that the fact that the defendants' false statements were made on earnings calls further contributes to a finding of scienter because "[e]arnings call primarily aim to inform investors." 2020 WL 6270482 at *8 n.17. Here, Defendants made repeated misrepresentations on earnings calls and during analyst conferences, similarly contributing to an inference of scienter. ¶¶140, 143, 145, 146, 152, 158, 164, 167, 168, 171, 175, 182, 183, 188.

2

*Finally*, *Jeld-Wen* strongly supports Plaintiffs' argument that Defendants' loss causation assertions are without merit. Defendants have asserted that the January 25, 2019 *Insider Louisville* article purportedly revealed to the market that the excessive fees that Evolent was charging Passport were the cause of Passport's poor financial performance—despite flatly denying that Evolent's fees were harming Passport in the very same article. Opp. at 39. As *Jeld-Wen* makes clear, the disclosure of adverse facts at the same time defendants "vigorously deny[] their validity does not satisfy a company's duty to make full, honest disclosures." 2020 WL 6270482 at *4.

Accordingly, the *Jeld-Wen* Opinion strongly supports Lead Plaintiffs' argument that Defendants' Motion to Dismiss in this Action should be denied. Lead Plaintiffs respectfully request that the Court take notice of this recent authority.

Dated: November 3, 2020                                    Respectfully submitted,

                                                          /s/ Steven J. Toll
                                                          Steven J. Toll
                                                          Va. Bar No. 15300
                                                          stoll@cohenmilstein.com
                                                          Daniel S. Sommers
                                                          dsommers@cohenmilstein.com
                                                          Megan Kinsella Kistler
                                                          mkistler@cohenmilstein.com
                                                          **COHEN MILSTEIN SELLERS & TOLL PLLC**
                                                          1100 New York Avenue, Suite 500
                                                          Washington, D.C. 20005
                                                          Tel: (202) 408-4600
                                                          Fax: (202) 408-4699

                                                          *Liaison Counsel for Lead Plaintiffs*

                                                          Maya Saxena (*pro hac vice*)
                                                          msaxena@saxenawhite.com
                                                          Joseph E. White, III (*pro hac vice* forthcoming)
                                                          jwhite@saxenawhite.com
                                                          Lester R. Hooker (*pro hac vice* forthcoming)
                                                          lhooker@saxenawhite.com

3

Brandon T. Grzandziel (*pro hac vice*)
brandon@saxenawhite.com
**SAXENA WHITE P.A.**
7777 Glades Road, Suite 300
Boca Raton, Florida 33434
Tel: (561) 394-3399
Fax: (561) 394-3382

Steven B. Singer (*pro hac vice* forthcoming)
ssinger@saxenawhite.com
Sara DiLeo (*pro hac vice*)
sdileo@saxenawhite.com
Joshua H. Saltzman (*pro hac vice*)
jsaltzman@saxenawhite.com
**SAXENA WHITE P.A.**
10 Bank Street, 8th Floor
White Plains, New York 10606
Tel: (914) 437-8551
Fax: (888) 631-3611

*Lead Counsel for Lead Plaintiffs*

4