**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| PLYMOUTH COUNTY RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, | § § § | |
| Plaintiff, | § § | Case No. 1:19-cv-01031-RDA-TCB |
| v. | § § | |
| | § | CLASS ACTION |
| EVOLENT HEALTH, INC., FRANK WILLIAMS, NICHOLAS MCGRANE, SETH BLACKLEY, CHRISTIE SPENCER, and STEVEN WIGGINTON | § § § § § | |
| Defendants. | § | |

**RESPONSE TO PLAINTIFFS' MOTION FOR LEAVE TO FILE**
**AND NOTICE OF SUPPLEMENTAL AUTHORITY**

The Evolent Health Defendants respectfully submit this response to Lead Plaintiffs' Notice of Supplemental Authority (ECF No. 94-1). The authority they cite, *Cambridge Retirement System v. JELD-WEN Holding, Inc.*, is easily distinguishable from the facts and circumstances alleged in Plaintiffs' Second Amended Complaint and does not support Plaintiffs' position. If anything, the differences between this case and *JELD-WEN* highlight the reasons the motion to dismiss should be granted.

*First*, there is a crucial distinction between the facts in *JELD-WEN* and the facts in this case: in *JELD-WEN*, the securities plaintiffs identified materially false and misleading statements that were directly at odds with a $176 million jury verdict and later judicial findings that the defendants engaged in anticompetitive conduct and violated federal antitrust laws. 2020 WL 6270482 at *1–2. Contrary to the jury verdict and subsequent findings, the JELD-WEN defendants denied that they violated the antitrust laws, falsely claimed that JELD-WEN operated in a "highly competitive" industry, and attributed positive financial results to its pricing strategy. *Id.* at *2.

Here, by contrast, there has been no trial or judicial finding of wrongdoing by either Evolent or the Individual Defendants. Plaintiffs have not identified any materially false or misleading statement that could be the proper basis for pleading securities fraud.

*Second*, *JELD-WEN* was decided in large part based on legal arguments that are not at issue in this case. The *JELD-WEN* opinion focuses on a 'duty to disclose' legal theory, as developed in the *Singer* case. 2020 WL 6270482 at *3–4. The "duty to disclose" that arose in *Singer* and *JELD-WEN* was based on those companies' misleading statements about schemes that were fraudulent as proved in court (*JELD-WEN*) or implied by a $6 million payment to the US government (*Singer*). *JELD-WEN* at *2; *Singer v. Reali*, 883 F.3d 425, 435 (4th Cir. 2018). Because the conduct was illegal, the companies had a duty to disclose it to ensure that statements they made to the public were not materially misleading. Here, there are no alleged acts that give rise to a duty to disclose—which is why none of the extensive briefing in this case raises a "duty to disclose" argument. There have been no cases brought against Evolent by private (*JELD-WEN*) or public (*Singer*) plaintiffs alleging a fraudulent or illegal scheme, and certainly no judicial findings of fact. Plaintiffs' legal theory is essentially that Evolent publicly stated that its Valence payment processing system added value to its customers, while some of Plaintiffs' confidential witnesses believed that there were problems integrating the Valence system at Passport. That is not analogous to the type of price-setting and blatant insurance fraud that underlie the cases Plaintiffs bring to this Court's attention.

*Finally*, the Lead Plaintiffs again misleadingly and selectively misquote statements made by the Evolent Defendants. For example, the Notice says that "Defendant Williams **admitted** to meticulously monitoring all aspects of Passport's performance," Notice at 2 (emphasis in Notice), quoting snippets from an earnings call. *Id.* (citing to Second Amended Complaint at ¶¶ 42–43).

But the actual transcript of that call reads quite differently.  Discussing Passport, CEO Williams said:

> And as a result, we have a very aligned relationship with them.  One, it's a long-term arrangement, so the initial term was 10 years in length.  We do have some of our fees at risk in that relationship, and they really look at us, in some ways – while we are separate entities, they look at us as a co-owner.  And I just think in places where we can create alignment through direct investments, through putting fees at risk, through then [sic] being able to sit down at the table and say, okay, now that we are "co-owners" together, here's how we want to operate and what we need to do to be successful and get that commitment upfront and again, get away [sic] to work together where we really have joint governance and we're able to drive the decisions we think are important for performance.  So I think you'll see that orientation.

See Ex. A, Excerpt of August 7, 2017 Earnings Call at 16.  This amorphous discussion of customer relationships is hardly equivalent to jury-trial findings that allege direct involvement in an illegal price-fixing scheme that formed the basis of the Court's ruling in *JELD-WEN.*

Date:  November 6, 2020

RESPECTFULLY SUBMITTED,

/s/ Ashley C. Parrish
Ashley C. Parrish
Virginia Bar No. 43089
**KING & SPALDING LLP**
700 Pennsylvania Avenue, NW, Suite 200
Washington, DC 20006-4707
Tel: (202) 737-0500
Fax: (202) 626-3737
aparrish@kslaw.com

Paul R. Bessette, *pro hac vice*
Michael J. Biles, *pro hac vice*
Tyler W. Highful, *pro hac vice*
Jill R. Carvalho, *pro hac vice*
**KING & SPALDING LLP**
500 W. 2nd Street, Suite 1800
Austin, TX  78701
Tel: (512) 457-2050
Fax: (512) 457-2100
pbessette@kslaw.com
mbiles@kslaw.com
thighful@kslaw.com
jcarvalho@kslaw.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that on November 6, 2020, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF Filing System on all parties in this case.

/s/ Ashley C. Parrish
Ashley C. Parrish

4