# Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

PLYMOUTH COUNTY RETIREMENT SYSTEM
and OKLAHOMA POLICE PENSION AND
RETIREMENT SYSTEM, Individually and On
Behalf of All Others Similarly Situated,

                          Plaintiffs,

v.

EVOLENT HEALTH, INC., FRANK WILLIAMS,
NICHOLAS MCGRANE, SETH BLACKLEY,
CHRISTIE SPENCER, and STEVEN
WIGGINTON,

                          Defendants.

Case No. 1:19-cv-01031-RDA-TCB

**LEAD PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY
IN FURTHER OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Lead Plaintiffs respectfully submit this Notice of Supplemental Authority to bring to the Court's attention the Opinion granting in part and denying in part the defendants' motions to dismiss in *Gabbby Klein et al. v. Altria Group, Inc., et al.*, No. 3:30-cv-75 (E.D. Va. Mar. 12, 2021), attached hereto as Exhibit 1 (the "Opinion"). As set forth below, the Opinion provides additional strong support for denying Defendants' motion to dismiss in this Action (ECF No. 74).

*First*, *Altria* strongly supports Plaintiffs' arguments that Defendants' statements in this Action were materially false and misleading. In *Altria*, the plaintiffs alleged that the defendants failed to disclose that they were illegally marketing e-cigarettes to children. Opinion at 22-24. The court found that defendants' statements that they would "work to prevent youth usage," that they "are committed to preventing kids from using any tobacco products," and that they had "no higher

priority than combating underage use," misled investors because the defendants knew but failed to disclose that their "'overarching marketing scheme was directed at youth'" and that this subjected defendants to "material risks and expenses." *Id.* at 23, 24. The court held that such statements are false because once the defendants "chose to speak regarding youth issues and their marketing efforts, ***they had an obligation to tell the whole truth***." *Id*. at 28. Similarly, in this Action, Defendants made a series of statements regarding Evolent's supposed ability to lower costs for its customers, without disclosing the highly material fact that with respect to Passport—Evolent's most important customer which accounted for up to 20% of the Company's revenues— Defendants' practices actually dramatically increased Passport's costs by an astounding 80%. ECF No. 80 ("Opp.") at 19-24.

Further, the court held that disclosure of the risks regarding "illegal marketing practices" that "could result in substantial judgments and regulatory fines" would "have altered the 'total mix' of information available that a reasonable investor would have considered." *Id*. at 25. Here, Defendants touted the implementation of Valence, the medical claims processing platform that Evolent forced onto Passport to supposedly cut its costs, while failing to disclose that Valence's botched design and implementation made it incapable of performing its most basic function of submitting encounter data to Kentucky in a timely and accurate manner—resulting in ***Passport violating its contract with the Commonwealth***, ***and Kentucky imposing hundreds of millions of dollars of penalties as a consequence***. Opp. at 21-22; 24-26. As *Altria* makes clear, Defendants' statements are false, because once Defendants chose to speak about Evolent's "cost-effective" services and the purportedly successful integration of the Valence platform, they were ***required*** under the federal securities laws to disclose "***the whole truth***" about those subjects, including the highly material adverse facts alleged in the Complaint.

*Second*, *Altria* strongly supports Plaintiffs' argument that Defendants acted with scienter. In *Altria*, the court held that plaintiffs alleged a strong inference of scienter in part because the "[d]efendants knew of the illegal marketing practices" and because "Altria staked its future on JUUL, increasing the need and incentive to omit or misrepresent the serious risks created by JUUL's marketing to youth." *Id*. at 33, 34. Here, the allegations are far stronger than in *Altria*. The Complaint describes in detail the critical significance of Passport to Evolent, including that it constituted 20% of Evolent's revenue. ¶¶40-46. Moreover, the Complaint further alleges that Defendant Williams "'absolutely' knew that there were multiple issues with Valence," including that Valence could not appropriately report encounter data because, among other reasons, Defendants admittedly received and reviewed detailed monthly letters entitled "Consequences for Failure to Submit Encounters in Accordance with the Contract" that Kentucky sent to Evolent's most senior executives and to passport's CEO and CFO, ***documenting hundreds of millions of dollars of penalties beginning as soon as Valence was implemented at Passport***—which Evolent agreed to pay. ¶¶73-79, 100-02; Opp. 20-21, 33.

Moreover, with respect to the use of CWs to support plaintiffs' allegations, the *Altria* court held the CWs' accounts would be credited because the complaint sufficiently alleged "the dates of the confidential witness' employment . . . the various positions that they held, the duties that they fulfilled, where they worked, with whom they conversed and to whom they reported." Opinion at 35. The same is true here. For example, the Complaint details that CW 5—Passport's former Senior Director of Information Technology and a senior Passport executive for nearly six years who reported directly to Passport's COO, Carl Felix—worked directly on the Valence implementation, explaining that "***it was my job for two years*** to figure out what was broken right after [Valence] was presented to Passport." ¶¶93-99. The Complaint further details CW 5's

3

statements that she personally attended meetings with Defendant Williams and other executives during which "they got into very technical details about why Valance was not working and explained that '[w]e were very explicit with them.'" Opp. at 33-36; ¶¶96-99. It is hard to imagine a witness in a better position to detail the extent of Passport's problems with Valence during the Class Period. Given these allegations, this Court also is fully able "to assess what information [CW5] had available to [her] and properly weigh the inferences derived from" CW5's first-hand account. Opinion at 35.

*Finally*, *Altria* strongly supports Plaintiffs' argument that Defendants' loss causation arguments are without merit. Defendants assert that Plaintiffs failed to plead loss causation because the January 25, 2019 *Insider Louisville* article purportedly revealed to the market that the excessive fees Evolent was charging Passport were the cause of Passport's poor financial performance—despite the fact that Defendants flatly denied Evolent's fees were harming Passport in that very same article. Opp. at 39. *Altria* rejected a substantially similar argument, holding that the plaintiffs had adequately pled loss causation expressly because defendants "continued to deny throughout this period that [they] had ever intended youth use of its product," and the company's "share price declined following each disclosure of new negative information" regarding the same. Opinion at 38-39.

Accordingly, the *Altria* Opinion strongly supports Lead Plaintiffs' arguments that the Defendants' motion to dismiss in this Action should be denied in its entirety. Lead Plaintiffs respectfully request that the Court take notice of this recent authority.

Dated: March 17, 2021

Respectfully submitted,

*/s/ Steven J. Toll*
Steven J. Toll
Va. Bar No. 15300
stoll@cohenmilstein.com

4

Daniel S. Sommers
dsommers@cohenmilstein.com
Megan Kinsella Kistler
mkistler@cohenmilstein.com
**COHEN MILSTEIN SELLERS
& TOLL PLLC**
1100 New York Avenue, Suite 500
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699

*Liaison Counsel for Lead Plaintiffs*

Maya Saxena (*pro hac vice*)
msaxena@saxenawhite.com
Joseph E. White, III (*pro hac vice* forthcoming)
jwhite@saxenawhite.com
Lester R. Hooker (*pro hac vice* forthcoming)
lhooker@saxenawhite.com
Brandon T. Grzandziel (*pro hac vice*)
brandon@saxenawhite.com
**SAXENA WHITE P.A.**
7777 Glades Road, Suite 300
Boca Raton, Florida 33434
Tel: (561) 394-3399
Fax: (561) 394-3382

-and-

Steven B. Singer (*pro hac vice* forthcoming)
ssinger@saxenawhite.com
Sara DiLeo (*pro hac vice*)
sdileo@saxenawhite.com
Joshua H. Saltzman (*pro hac vice*)
jsaltzman@saxenawhite.com
**SAXENA WHITE P.A.**

10 Bank Street, 8th Floor
White Plains, New York 10606
Tel: (914) 437-8551
Fax: (888) 631-3611

*Lead Counsel for Lead Plaintiffs*

5

**CERTIFICATE OF SERVICE**

I hereby certify that on March 17, 2021, I caused the foregoing to be electronically filed with the Clerk of Court via CM/ECF, which will send a notice of electronic filing to all registered users.

/s/ Steven J. Toll
Steven J. Toll
Va. Bar No. 15300
stoll@cohenmilstein.com
**COHEN MILSTEIN SELLERS
& TOLL PLLC**
1100 New York Avenue, Suite 500
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699

*Liaison Counsel for Lead Plaintiffs*