UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

|  |  |
|---|---|
| PLYMOUTH COUNTY RETIREMENT SYSTEM and OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　　　　Plaintiffs,<br><br>v.<br><br>EVOLENT HEALTH, INC., FRANK WILLIAMS, NICHOLAS MCGRANE, SETH BLACKLEY, CHRISTIE SPENCER, and STEVEN WIGGINTON,<br><br>　　　　　　　　Defendants. | Case No. 1:19-cv-01031-RDA-TCB |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION**

Lead Plaintiffs Plymouth County Retirement System and Oklahoma Police Pension and Retirement System ("Lead Plaintiffs") respectfully submit this memorandum of law in opposition to Defendants' Motion for Partial Reconsideration, dated April 1, 2021 (ECF No. 109; the "Motion"), which seeks partial reconsideration of the Court's Memorandum Opinion and Order granting in part and denying in part Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint ("SAC"). ECF No. 106 (the "Order").

## I.    ARGUMENT

The Court's March 24, 2021 Order sustained four sets of false and misleading statements alleged in the SAC relating to Passport that were made between September 5, 2018 and May 7, 2019. Defendants now move for partial reconsideration of two sets of those misstatements, which were made by Defendant Williams on February 26, 2019 and May 7, 2019. In their Motion, Defendants argue that the Court purportedly committed a "clear error of law" by failing to engage in a sufficient analysis of the vague and boilerplate cautionary language preceding the false statements made on those days. As set forth below, Defendants' arguments not only are inappropriate on a motion for reconsideration, but they are wrong on the facts and the law. Accordingly, Defendants' Motion should be denied.

*First*, as the Court is aware, motions for reconsideration of interlocutory orders "are disfavored and should be granted sparingly." *Wootten v. Virginia*, 168 F. Supp. 3d 890, 893 (W.D. Va. 2016) (denying reconsideration (citation omitted)). Reconsideration is particularly improper here because Defendants' Motion does nothing more than rehash old arguments that ***the Court has already quoted and expressly considered***. *See* Order at 51 (quoting Defendants' motion to dismiss argument regarding risk warnings). As this Court has recently explained, reconsideration "is not meant to re-litigate issues already decided, provide a party the chance to craft new or improved legal positions, highlight previously-available facts, or otherwise award a proverbial 'second bite

1

at the apple' to a dissatisfied litigant." *Aslanturk v. Hott*, 2020 WL 5745799, at \*4 (E.D. Va. June 30, 2020) (Alston, J.) (denying reconsideration) (citation omitted). Nor is reconsideration "an opportunity for [a]ggrieved parties [ ] [to] put a finer point on their old arguments and dicker about matters decided adversely to them." *Id*. (citation omitted). [1]

*Second*, contrary to what Defendants contend, the Court specifically analyzed Defendant Williams's statements on February 26 and May 7 in exhaustive detail, rejected each of Defendants' arguments, and found that the statements were actionable because they were materially false and misleading, and made with scienter. Order at 51-56; 59-68. For example, the Court held that Defendant Williams's statements on February 26 and May 7 were false. Specifically, the Court found that Defendant Williams's statements on the February 26, 2019 investor conference call— that Evolent was "not focused on outright majority ownership" of Passport because "[i]ts just not in our strategic lens at this point" and "not something that is currently being evaluated"—were false based on Plaintiffs' detailed, well-pled allegations that just one month earlier in January 2019, Defendants had installed a "shadow management" team at Passport, knowing that the "writing [was] on the wall" that Evolent would be forced to bail out Passport. ¶¶182-83, 184; Order at 59. Similarly, after setting forth another detailed analysis in the Order, the Court held that Defendant Williams's statements on the May 7, 2019 conference call—regarding Passport's purported "solid progress towards improving its financial performance"—were false based on Plaintiffs' allegations that at the time the statements were made, Evolent was just three weeks away from announcing

---

[1] In stark contrast to the improper purpose of Defendants' Motion, Plaintiffs' motion for reconsideration does not seek to relitigate what the Court has already decided or rehash the same points already argued. To the contrary, Plaintiffs merely seek a limited clarification requesting that the Court reconsider a single statement that was not analyzed or discussed in the Order, and which is virtually identical to a false statement made only three months later by Defendant Williams that the Court explicitly held was actionable. ECF No. 112 at 3.

that it was acquiring a 70% stake in Passport. ¶¶188-89; Order at 59. There was no "clear error" in these decisions; to the contrary, they were well-supported by the detailed facts alleged in the SAC, and the Court clearly and carefully analyzed the statements and Defendants' arguments in determining they were false.

*Third*, the Court correctly held that Defendant Williams acted with scienter in making the materially false statements on February 26 and May 7 (Order at 68)—and, as a result, the safe harbor does not apply. Indeed, Defendants do not dispute that Williams acted with scienter in their Motion and, as courts within the Fourth Circuit have repeatedly held, false statements made with scienter are not entitled to safe harbor protection. *E.g.*, *Vaitkuviene v. Syneos Health, Inc.*, 2020 WL 5742714, at *12 (E.D.N.C. Aug. 7, 2020) ("The safe harbor does not shield statements that warn of risks which have already materialized or statements known to be false or misleading when made."); *Ollila v. Babcock & Wilson Enter., Inc.*, 2018 WL 792069, at *5 (W.D.N.C. Feb. 8, 2018) ("[C]autionary language is meaningless if it warns only of risks which have already materialized, or if defendants knew their statements were false or misleading when made."); *In re Genworth Fin. Inc. Sec. Litig.*, 103 F. Supp. 3d 759, 790 (E.D. Va. 2015) ("[I]f Defendants knew that the specific risks and uncertainties stated to be 'potential' in their cautionary language had already been realized, and that their forward-looking statements were false or misleading, then their forward-looking statements are not protected by the safe harbor." (collecting cases)).

*Fourth*, the Court has already held—correctly—that the purported cautionary language to which Defendants point was not sufficiently meaningful. *See* Order at 55. Indeed, with respect to Defendant Williams's second set of false statements during the February 26 conference call, the Court explicitly rejected Defendants' argument that the supposed cautionary language protected those statements, holding that "Defendant Williams does not identify such important factors" in

3

the cautionary language that "could cause actual results to differ materially from those in" his statements. *Id.* While Defendants criticize the Court for not explicitly repeating the same analysis of the same cautionary language for Defendant Williams's other false statement ***made on the same conference call***, it would obviously make no sense to find that one set of false statements is entitled to safe harbor protection but another set made at the exact same time would not be—particularly where both statements repeated the same false information regarding Evolent's current plans to bail out Passport. ¶¶182-83. Moreover, while Defendants claim the Court committed "clear error" by supposedly failing to consider the same cautionary language in connection with Defendants' false May 7 statements, Defendants themselves have conceded that the same boilerplate script noting generic "risks and uncertainties" was read at the beginning of both the February 26 and May 7 conference calls. Def. Br. at 6 & n.4. Again, finding that Williams's statements on the May 7 call were protected by this boilerplate cautionary language, but that his statements on February 26 were not, would result in a similar nonsensical outcome. Indeed, Defendants' false statements on May 7 were strikingly similar to their false statements on February 26, as on both calls Williams falsely assured investors that Evolent would not need to bail out Passport. ¶188.

*Fifth*, the purported cautionary language that Defendants point to cannot insulate their statements because it is so generic and vague as to be utterly meaningless. *See* Def. Br. at 6 n.4. In order "to qualify as ***meaningful*** cautionary statements, the statements must convey substantive information about factors that realistically could cause results to differ materially from those projected in the forward-looking statement." *Genworth*, 103 F. Supp. 3d at 787 (emphasis in original). Thus, cautionary statements must "be substantive and tailored to the specific future projections, estimates, or opinions . . . which the plaintiffs challenge." *Id.* (alteration original). The purported cautionary language at the beginning of the February 26 and May 7 conference calls,

4

however, warns only that Defendants' statements are subject to "risks and uncertainties"—but never identifies *any* specific statements or particular risks, much less the specific risks identified in the SAC concerning Passport that Defendants knew full well existed at the time. *Id*. The language moreover states only that "*some*" of the risks can be found in "reports" that are filed with the SEC—but never identifies *which risks* can be found in which reports, or points to any particular section of any particular report filed on any particular date. *Id*. Indeed, the fact that Defendants can only cite to Evolent's *2017 Form 10-K* for cautionary language that purportedly insulates Williams's *February 2019* false statements only underscores the baselessness of their argument. *See* Def. Br. at 6; *see also In re Harman Int'l Indus., Inc. Sec. Litig.*, 791 F.3d 90, 102-04 (D.C. Cir. 2015) (cautionary language "warning generally of risk and referring listeners to the Company's recent Annual Report" insufficient); *Schottenfeld Qualified Associates, L.P. v. Workstream, Inc.*, 2006 WL 4472318, *3 (S.D.N.Y. May 4, 2006) ("cautionary language [that] only refers to the most general of economic risks, such as the 'uncertainties' of conducting the issuer's business" inadequate).[2]

*Finally*, the Court expressly held that Defendant Williams's first statement on February 26, 2019 "is not forward-looking," in part because it related to "then 'presently held beliefs.'" ¶182; Order at 53, 54. Similarly, the Court held that Defendant Williams's May 7 statement only "could"

---

[2] Neither of the two cases cited by Defendants as support for their position hold that substantially similar high-level disclaimers alone warrant the PSLRA's protection. *See* Def. Br. at 6 n.5. *In re Humphrey Trust, Inc. Sec. Litig.*, 219 F. Supp. 2d 675 (D. Md. 2002) is factually inapposite. There, the court held that warnings were meaningful enough to warrant safe harbor because they "cautioned investors of specific risks that could affect cash flow and dividend payments." *Id*. at 684. Likewise, in *In re Laboratory Corp. of Am. Holdings Sec. Litig.*, 2006 WL 1367428 (M.D.N.C. May 18, 2006), the court determined that the cautionary language was sufficiently meaningful because defendants "warned of increased competition, of a failure to obtain and retain new customers, and cited the ability to attract and retain experienced and qualified personnel as possible reasons to suspect their forecasted annual profits." *Id*. at *5. The detailed language in each of these opinions is far removed from the vague, boilerplate language Defendants point to here.

5

be forward-looking. Order at 56. Because, as Defendants concede, the safe harbor provision applies only to forward-looking statements, it cannot insulate Williams's false statements here. Indeed, Williams's false statements are composed of present tense phrases such as "at this time," "not currently being evaluated," and "is making solid progress" and therefore on their face concern present facts. ¶¶183, 188. Because these false statements can "properly [be] construed as [Defendants'] present assessment of the company's intention[s]" they are not forward-looking statements. *NECA-IBEW Pension Trust Fund v. Precision Castparts Corp.*, 2017 WL 4453561, at *11 (D. Or. Oct. 3, 2017); *see also Genworth*, 103 F. Supp. 3d at 788 (statements "appear to contain assertions about present facts. . . . This conclusion is logically drawn from the plain language of Defendants' statements. . . . Each of these statements implicitly refers to the present state of the Company's affairs."). The "present" portion of these statements is not entitled to safe harbor protection. *Ollila*, 2018 WL 792069, at *5 ("If a statement is a mix of both forward-looking and present or past facts, it is taken out of the safe harbor with respect to the parts of the statement that are not forward-looking."); *Genworth*, 103 F. Supp. 3d at 789 (same).

Indeed, the falsity of each of Defendant Williams's statements can be established at the time those statements were made, without relying on the benefit of hindsight, further establishing that they are not subject to the safe harbor. For instance, Williams falsely asserted in February that Evolent was "***not focused*** on outright majority ownership" of health plans such as Passport, and that acquiring Passport is "not something that is ***currently*** being evaluated." ¶¶182, 183 (emphases added). The SAC, however, alleges—and the Court cites—the "shadow management" team that Evolent put into place at Passport in January 2019—a full month before Defendant Williams's statements—as evidence that Defendants were already laying the groundwork for Evolent's bailout of Passport. ¶184; Order at 20. Likewise, Williams stated on May 7 that Passport "***is making*** solid

progress" towards improving its financial position—just three weeks prior to announcing that Evolent was acquiring a 70% stake in the Plan due to its impending bankruptcy. ¶¶188-89 (emphasis added). *See In re ITT Educational Services, Inc. Sec. Litig.*, 34 F. Supp. 3d 298, 305-06 (S.D.N.Y. 2014) (statement that defendants did not "expect to make any payments . . . while knowing that [company] already needed to make such payments" held not to be protected by the safe harbor because "at the time the statement was made, it was ***already*** untrue." (emphasis in original)).

## II.    CONCLUSION

For all of these reasons, Defendants' Motion should be denied in its entirety.

Dated: April 15, 2021

Respectfully submitted,

*/s/ Steven J. Toll*
Steven J. Toll
Va. Bar No. 15300
stoll@cohenmilstein.com
Daniel S. Sommers
dsommers@cohenmilstein.com
Megan Kinsella Kistler
mkistler@cohenmilstein.com
**COHEN MILSTEIN SELLERS
& TOLL PLLC**
1100 New York Avenue, Suite 500
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699

*Liaison Counsel for Lead Plaintiffs*

Maya Saxena (*pro hac vice*)
msaxena@saxenawhite.com
Joseph E. White, III (*pro hac vice* forthcoming)
jwhite@saxenawhite.com
Lester R. Hooker (*pro hac vice* forthcoming)
lhooker@saxenawhite.com
Brandon T. Grzandziel (*pro hac vice*)
brandon@saxenawhite.com
**SAXENA WHITE P.A.**

7

7777 Glades Road, Suite 300
Boca Raton, Florida 33434
Tel: (561) 394-3399
Fax: (561) 394-3382

Steven B. Singer (*pro hac vice* forthcoming)
ssinger@saxenawhite.com
Sara DiLeo (*pro hac vice*)
sdileo@saxenawhite.com
Joshua H. Saltzman (*pro hac vice*)
jsaltzman@saxenawhite.com
**SAXENA WHITE P.A.**
10 Bank Street, 8th Floor
White Plains, New York 10606
Tel: (914) 437-8551
Fax: (888) 631-3611

*Lead Counsel for Lead Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 15, 2021, I caused the foregoing to be electronically filed with

the Clerk of Court via CM/ECF, which will send a notice of electronic filing to all registered users.

*/s/ Steven J. Toll*
Steven J. Toll
Va. Bar No. 15300
stoll@cohenmilstein.com
**COHEN MILSTEIN SELLERS
& TOLL PLLC**
1100 New York Avenue, Suite 500
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699

*Liaison Counsel for Lead Plaintiffs*

8