## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

PLYMOUTH COUNTY RETIREMENT
SYSTEM and OKLAHOMA POLICE
PENSION AND RETIREMENT SYSTEM,
Individually and On Behalf of All Others
Similarly Situated,

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

Case No. 1:19-cv-01031-MSN-TCB

CLASS ACTION

                      Plaintiffs,

v.

EVOLENT HEALTH, INC., FRANK
WILLIAMS, NICHOLAS MCGRANE, and
SETH BLACKLEY,

                      Defendants.

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR PARTIAL MOTION
## TO DISMISS THE THIRD AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

Introduction...........................................................................................................................1

Factual Background ...............................................................................................................5

    I.   Relevant Parties .......................................................................................................5

    II.  Evolent's Partnership with Passport. ......................................................................6

    III. Kentucky Cuts Passport's Reimbursement Rates ..................................................7

    IV. Evolent Purchases 70% of Passport. ......................................................................8

Legal Standard ......................................................................................................................8

Argument ...............................................................................................................................9

    I.   Plaintiffs Fail To Adequately Plead A Claim Based On The Newly Added "Risk Partner" Statements......................................................................................................9

        A.  Loss Causation Fails Because the Market Never Learned the Identity of the Unnamed Risk Partner and the Corrective Disclosures Do Not Show Falsity. ...........10

            1)  Neither Plaintiffs nor other Evolent investors were aware that the statements regarding a "█████████████████████████ ...........................10

            2)  Neither corrective disclosure relates back to the two new statements...................11

        B.  Plaintiffs Fail To Adequately Allege The Statements Were Material. .........................14

    II.  Plaintiffs Fail To Adequately Plead A Claim Based On The Previously Dismissed May 11, 2018 Statements.......................................................................................16

        A.  The May 11, 2018 Statements Were Rejected In The MTD Order............................16

        B.  Plaintiffs Fail To Allege With Particularity That Blackley's May 11, 2018 Statement Was False When Made.................................................................................18

            1)  Blackley's statement recited a ratio from Passport's public financial statements...............................................................................................................18

            2)  Plaintiffs have not alleged that Passport's financial statements were false or misleading.....................................................................................................18

            3)  The Court may consider Passport's financial statements because they are authentic and referenced in and integral to the Complaint. ...................................19

i

4) The CW allegations do not show the falsity of Blackley's statement....................20

C. The TAC Does Not Plead Facts Supporting A Strong Inference of Scienter As To Blackley's Statement Regarding Passport's Improvement in MLR. ......................23

D. Plaintiffs Fail To Plead Loss Causation With Respect To Blackley's May 11, 2018 Statement...........................................................................................................25

III. The Forward-Looking Statements Made on Feb. 26, 2019 and May 7, 2019 Must Be Dismissed Under The PSLRA Safe Harbor. ...............................................................26

A. The PSLRA Requires Courts To Consider The Cautionary Statements That Accompany Oral Forward-Looking Statements. ..........................................................28

B. Evolent's SEC Filings Included Specific Descriptions Of Factors That May Cause Results To Materially Differ From The Oral Forward-looking Statements. .........................................................................................................................29

C. Plaintiffs Have Failed To Allege That Williams Had "Actual Knowledge" Of The Falsity Of Forward-Looking Statements. ..........................................................32

Conclusion .................................................................................................................................35

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Alstom SA Sec. Litig.*,
406 F. Supp. 2d 433 (S.D.N.Y. 2005)..............................................................................18, 24, 25

*In re AOL Time Warner, Inc. Sec. Litig.*,
503 F. Supp. 2d 666 (S.D.N.Y. 2007)....................................................................................11, 12

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988).................................................................................................................11, 15

*Boyce v. Bennett*,
2015 WL 6873547 (E.D. Va. Nov. 9, 2015)..................................................................................27

*Brave Mar. Corp., Inc. v. Glob. Mktg. Sys., Inc.*,
661 F. App'x 249 (4th Cir. 2016) ...........................................................................................33, 34

*Carlucci v. Han*,
886 F. Supp. 2d 497 (E.D. Va. 2012) .............................................................................................8

*Carlucci v. Han*,
907 F. Supp. 2d 709 (E.D. Va. 2012) .....................................................................................26, 32

*Chill v. Gen. Elec. Co.*,
101 F.3d 263 (2d Cir. 1996)...........................................................................................................25

*In re CIENA Corp. Sec. Litig.*,
99 F. Supp. 2d 650 (D. Md. 2000)..................................................................................................35

*City of Plantation Police Officers Pension Fund v. Meredith Corp.*,
16 F.4th 553 (8th Cir. 2021) ..........................................................................................................32

*Cozzarelli v. Inspire Pharm., Inc.*,
549 F.3d 618 (4th Cir. 2008) .........................................................................................................29

*In re Cree, Inc. Sec. Litig.*,
2005 WL 1847004 (M.D.N.C. Aug. 2, 2005)..........................................................................13, 14

*Deutsche Bank Nat'l Tr. Co. v. Fegely*,
2020 WL 201048 (E.D. Va. Jan. 13, 2020) ...................................................................................27

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005).........................................................................................................2, 8, 9, 14

*In re First Union Corp. Sec. Litig.*,
128 F. Supp. 2d 871 (W.D.N.C. 2001) ..................................................................22, 23

*Gaer v. Am. Pub. Educ., Inc.*,
895 F. Supp. 2d 763 (N.D.W. Va. 2011) ...................................................................10

*Gavish v. Revlon, Inc.*,
2004 WL 2210269 (S.D.N.Y. Sept. 30, 2004)...........................................................15

*Goines v. Valley Cmty. Servs. Bd.*,
822 F.3d 159 (4th Cir. 2016) ...............................................................................19, 20

*Goldman Sachs Grp., Inc. v. Arkansas Teacher Ret. Sys.*,
141 S. Ct. 1951 (2021)...............................................................................................11

*Greenhouse v. MCG Cap. Corp.*,
392 F.3d 650 (4th Cir. 2004) .....................................................................................16

*In re Harman Int'l Indus., Inc. Sec. Litig.*,
791 F.3d 90 (D.C. Cir. 2015).....................................................................................31

*Harris v. Ivax Corp.*,
182 F.3d 799 (11th Cir. 1999) ...................................................................................32

*Hirtenstein v. Cempra, Inc.*,
348 F. Supp. 3d 530 (M.D.N.C. 2018) ......................................................................29

*Ho v. Flotek Indus., Inc.*,
248 F. Supp. 3d 847 (S.D. Tex. 2017) .......................................................................24

*In re Human Genome Scis. Inc. Sec. Litig.*,
933 F. Supp. 2d 751 (D. Md. 2013)...........................................................................29

*In re Humphrey Hosp. Tr., Inc. Sec. Litig.*,
219 F. Supp. 2d 675 (D. Md. 2002)...........................................................................29

*Hurtado v. Gramercy Prop. Tr.*,
425 F. Supp. 3d 496 (D. Md. 2019)...........................................................................15

*Janbay v. Canadian Solar, Inc.*,
2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012)...........................................................15

*Katyle v. Penn Nat'l Gaming, Inc.*,
637 F.3d 462 (4th Cir. 2011) ............................................................................ *passim*

*In re Lab. Corp. of Am. Holdings Sec. Litig.*,
2006 WL 1367428 (M.D.N.C. May 18, 2006) ...........................................................29

iv

*Longman v. Food Lion, Inc.*,
  197 F.3d 675 (4th Cir. 1999) ..................................................................................14, 15, 16

*Maguire Fin. L.P. v. PowerSecure Int'l, Inc.*,
  876 F.3d 541 (4th Cir. 2017) ................................................................................................23

*Marsden v. Select Med. Corp.*,
  2007 WL 518556 (E.D. Pa. Feb. 12, 2007) ......................................................................2, 11

*Marsh Group v. Prime Retail, Inc.*,
  46 F. App'x 140 (4th Cir. 2002) ...........................................................................................27

*Matrix Capital Mgmt. Fund L.P. v. BearingPoint, Inc.*,
  576 F.3d 172 (4th Cir. 2009) ..........................................................................................20, 24

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27 (2011)..................................................................................................................26

*In re Maximus, Inc. Sec. Litig.*,
  2018 WL 4076359 (E.D. Va. Aug. 27, 2018)........................................................................10

*McGlothian v. Fralin*,
  2019 WL 1087156 (E.D. Va. Jan. 23, 2019) .........................................................................20

*In re Merrill Lynch & Co., Inc.*,
  273 F. Supp. 2d 351 (S.D.N.Y. 2003)....................................................................................18

*Miller v. Champion Enters. Inc.*,
  346 F.3d 660 (6th Cir. 2003) .................................................................................................31

*In re Neustar Sec. Litig.*,
  83 F. Supp. 3d 671 (E.D. Va. 2015) ......................................................................................10

*In re Nokia OYJ (Nokia Corp.) Sec. Litig.*,
  423 F. Supp. 2d 364 (S.D.N.Y. 2006)....................................................................................15

*Nolte v. Capital One Fin. Corp.*,
  390 F.3d 311 (4th Cir. 2004) ...................................................................................................8

*Payne v. DeLuca*,
  433 F. Supp. 2d 547 (W.D. Pa. 2006)....................................................................................14

*Phillips v. LCI Int'l, Inc.*,
  190 F.3d 609 (4th Cir. 1999) ........................................................................................8, 15, 24

*Plumbers, Pipefitters & MES Loc. Union No. 392 Pension Fund v.
Fairfax Fin. Holdings Ltd.*,
  886 F. Supp. 2d 328 (S.D.N.Y. 2012).....................................................................................13

v

*Pompano Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands Corp.*,
    732 F. App'x 543 (9th Cir. 2018) ...................................................................34, 35

*Santa Fe Indus., Inc. v. Green*,
    430 U.S. 462 (1977)..........................................................................................23

*In re Sinclair Broad. Grp., Inc. Sec. Litig.*,
    2020 WL 571724 (D. Md. Feb. 4, 2020) .......................................................31, 32

*Singer v. Reali*,
    883 F.3d 425 (4th Cir. 2018) ........................................................................10, 25

*Slayton v. Am. Exp. Co.*,
    604 F.3d 758 (2d Cir. 2010)..............................................................................32

*In re Stone & Webster, Inc. Sec. Litig.*,
    2007 WL 9822735 (D. Mass. Sept. 7, 2007) ........................................................14

*In re Take-Two Interactive Sec. Litig.*,
    551 F. Supp. 2d 247 (S.D.N.Y. 2008)............................................................11, 13

*Teachers' Ret. Sys. of LA v. Hunter*,
    477 F.3d 162 (4th Cir. 2007) .................................................................... *passim*

*TFWS, Inc. v. Franchot*,
    572 F.3d 186 (4th Cir. 2009) ............................................................................27

*In re Triangle Cap. Corp. Sec. Litig.*,
    988 F.3d 743 (4th Cir. 2021) ............................................................................29

*In re Under Armour Sec. Litig.*,
    342 F. Supp. 3d 658 (D. Md. 2018)....................................................................32

*United States v. Smithfield Foods, Inc.*,
    969 F. Supp. 975 (E.D. Va. 1997) .....................................................................17

*In re Williams Sec. Litig.*,
    558 F.3d 1130 (10th Cir. 2009) .........................................................................12

**Statutes**

15 U.S.C. § 78u–4...................................................................................................8

15 U.S.C. § 78u-5.................................................................................................26

Ky. Rev. Stat. § 304.3-240(1)...................................................................................6

Securities Exchange Act ...........................................................................................8

**Other Authorities**

42 C.F.R. § 400.202 & .203 ..................................................................................................22

42 C.F.R. § 438.8(e)(2) ......................................................................................................22

Federal Rule of Civil Procedure 9(b) ...............................................................................8, 9

Federal Rule of Civil Procedure 12(b)(6) ...........................................................................5

**INTRODUCTION**

The Third Amended Complaint (TAC) is the *fourth* complaint filed in this securities fraud class action, which was originally commenced over two years ago. In his 76-page order on Defendants' motion to dismiss the sprawling Second Amended Complaint (SAC), Judge Alston significantly winnowed down the case, dismissing 16 of the 20 sets of challenged statements, and expressly ruling that only four statements survived. Dkt. 106 at 59 (the "MTD Order"). The MTD Order dismissed all statements made before September 5, 2018, which narrowed the putative Class Period and significantly reduced the size of the putative class. *See* Dkt. 135 at 2 (Plaintiffs' request for certification of a Class Period beginning September 5, 2018 rather than March 3, 2017).

Plaintiffs filed this third amendment two years into the case. The TAC's transparent purpose is to expand the putative Class Period backwards nine months to January 10, 2018, by adding two "new" statements made on January 10 and May 11, 2018. Dkt. 148 at 12 (discussing "new" allegations). The two statements, which are the same although made on different dates, are obviously not "new," for they were both public statements, as Plaintiffs acknowledge. ¶ 162.[1] The two statements appear in the bottom corner of a single page in a lengthy investor slide deck presentation, and state: "Full risk partner achieves MLR/ALR reduction impact representing $100M+ in identified annualized savings."[2] *Id.*

In seeking leave to amend, Plaintiffs explained that they failed to include these two public statements in any of their three prior complaints "*only because* ███████████████████ ████████████████████ (a fact that . . . *was only recently revealed* by Defendants' internal documents produced in discovery)." Dkt. 149 at 4 (emphasis added). Plaintiffs thus

---

[1] References to "¶ _" refer to paragraphs of the TAC.

[2] MLR, or Medical Loss Ratio, refers to the proportion of a health plan's revenue that is spent paying for the medical expenses of its members. *See* ¶ 139, p. 57 n.6. ALR, or Administrative Loss Ratio, refers to "[a]dministrative costs as a percentage of revenue." *Id.*

1

concede that investors *did not know* that these statements related to Passport *either* at the time the statements were made, *or* at the time Plaintiffs allege the "truth" was revealed in 2019 through disclosures relating to Passport's poor financial condition.[3]

This concession means that the two statements should be dismissed for failure to plead loss causation.  To plead the necessary element of loss causation, Plaintiffs are required to plead that the company's "share price fell significantly after the truth became known." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005).   The corrective disclosure must "reveal[] previous representations to have been fraudulent." *Teachers' Ret. Sys. of LA v. Hunter*, 477 F.3d 162, 187 (4th Cir. 2007).  Given Plaintiffs' concession that neither Plaintiffs nor the market were aware that ███████████████████████████████████████████, Plaintiffs cannot claim that any loss from the stock drops following Passport-related financial disclosures was caused by the earlier statement in the slide deck ███████████████████.  "The market cannot react to information of which it is unaware." *Marsden v. Select Med. Corp.*, 2007 WL 518556, at *5 (E.D. Pa. Feb. 12, 2007).  In addition, the corrective disclosures in the TAC—a February 15, 2019 lawsuit filed by Passport against Kentucky asserting that Passport had suffered losses of $65.5 million in 2018 due to Medicaid rate cuts, and the May 29, 2019 announcement that Evolent would buy a 70% ownership stake in Passport—reveal nothing about whether Passport had achieved an MLR/ALR reduction impact of $100 million in 2016 or 2017.  Therefore, even assuming Plaintiffs could adequately plead that the two statements were material and made with scienter—which they cannot—Plaintiffs are incapable of pleading that those statements caused any loss.

Besides adding public statements in an attempt to extend the putative Class Period back in time, Plaintiffs also inappropriately replead the May 11, 2018 statements that Judge Alston

---

[3] In reality, at the time, the statements could have applied to any one of several Evolent clients.

dismissed. *See* MTD Order at 59 (dismissing "all other alleged misstatements" other than the four specifically sustained); *see also id.* at 50 (dismissing May 11, 2018 statement by Frank Williams). Plaintiffs allege that the following statement made by Defendant Blackley on May 11, 2018 can support a securities claim:

> I think, you look at the results of the partnership, Evolent-Passport over the last few years under Tom [Peterson] and Steve [Houghland]'s leadership, about 5% improvement in MLR [Medical Loss Ratio] roughly, so which is about $75 million of improvement to Passport's bottom line.

¶ 165. As grounds for repleading this dismissed statement, Plaintiffs point to their pending motion for reconsideration (Dkt. 111, 112), contending that "the Court did not consider" the above statement in its MTD Order, and that it is "similar" to a later September 5, 2018 statement sustained by the Order. Dkt. 112 at 2.

The May 11, 2018 statement should be (again) dismissed. First, while the MTD Order did not provide a specific rationale for dismissing the Blackley statement, the Order was clear that after a thorough and exhaustive review of the SAC, the Court found only four statements to have been adequately pled. The May 11, 2018 statement is not among them. MTD Order at 59. The Court could not be expected to, and was not required to, provide detailed analysis and reasoning addressing every single allegation in a bloated complaint that spanned 90 pages.

Second, Blackley's May 11, 2018 statement is far narrower and more specific than the broader September 5, 2018 "savings" statement sustained by the Court. The statement focuses directly on a "5% improvement in MLR [Medical Loss Ratio] roughly," which translates into "about $75 million of improvement to Passport's bottom line." Blackley is not alleged to have discussed "savings" generally, instead confining his statements to the improvement in Passport's MLR and its financial impact.

3

Third, Plaintiffs fail to adequately plead the statement is false. Blackley simply recited a common financial metric (MLR) from *Passport*'s financial data that was *publicly available*. Plaintiffs have failed to plead that Passport's reported financial data was inaccurate, that Passport *did not* actually experience a 5% improvement in MLR, or that such improvement *did not* equal about $75 million for Passport's bottom line. In addition, Plaintiffs cannot and have not pled Blackley's scienter, *i.e.*, that he knew or recklessly believed Passport's publicly filed financial statements were false.

Finally, the TAC adds new allegations relating to two statements the MTD Order found were forward-looking under the PSLRA Safe Harbor, but were nonetheless sustained in contradiction of the PSLRA's clear statutory language. These two statements are the subject of a motion for reconsideration by Defendants, which shows clear error by the Court in refusing to consider the cautionary language accompanying the statements, despite the PSLRA's explicit requirement that the Court "shall consider" such language, 15 U.S.C. § 78u-5(e). Dkt. 109. Defendants seek dismissal of the two forward-looking statements and will show that the new TAC allegations do nothing to remove the statements from the protections of the PSLRA Safe Harbor.

This motion does not challenge the other two statements the Court previously held met the PSLRA's bar for pleading a securities claim: (1) Frank Williams's September 5, 2018 statement regarding Passport's savings, and (2) the January 25, 2019 statement made to a local Kentucky news blog, *Insider Louisville*. Based on this motion, the remaining alleged misstatements in the TAC should be dismissed.

**FACTUAL BACKGROUND**[4]

**I.     RELEVANT PARTIES**

*Evolent.*  Evolent is a Virginia-based health care company providing healthcare delivery and payment services to provider-sponsored health systems across the Medicaid, Medicare, and commercial markets. ¶¶ 5, 41.  Evolent was one of the first companies to focus on value-based care, which rewards doctors and health systems for providing quality of care to patients.  The Company's "end-to-end" suite of technology-based clinical, financial, and administrative services targeted the healthcare industry's transition from a fee-for-service payment model to a value-based care approach by reducing its clients' clinical and administrative costs through integration onto Evolent's technological services platform. ¶ 41.  Evolent's solutions are designed to improve the clinical outcomes for patients while at the same time creating significant cost savings for its clients.

*Individual Defendants.*  Individual Defendants Frank Williams and Seth Blackley co-founded Evolent.  ¶ 25.  Williams served as Evolent's CEO and Blackley served as President of Evolent's operating subsidiary during the relevant time period. ¶¶ 26-28.  Defendant Nicholas McGrane ("McGrane") was Evolent's CFO. ¶ 27.

*Passport.*  During the Class Period, University Health Care, Inc. d/b/a Passport Health Plan ("Passport" or the "Plan"), operated as a non-profit, provider-sponsored managed care organization ("MCO") that administers Medicaid benefits to eligible residents of the Commonwealth of Kentucky. ¶ 35.  Evolent purchased a 70% interest in Passport in a deal that was announced May 29, 2019, and closed December 30, 2019. ¶ 35.

---

[4] Defendants accept the well-pled factual allegations of the TAC as true only for the limited purpose of this Rule 12(b)(6) Motion.  A more detailed factual account appears in Defendants' Memorandum in Support of the Motion to Dismiss the Second Amended Complaint (Dkt. 75).

## II.    EVOLENT'S PARTNERSHIP WITH PASSPORT.

On February 1, 2016, Evolent announced a master services agreement with Passport (the "Passport MSA") under which Evolent was to provide services with the objective of helping Passport manage costs and maintain profitability. ¶ 44.    According to Passport's then-CEO, Passport's healthcare delivery platform was "in need of replacement and upgrade." ¶ 44.    During the first year of the partnership, Evolent not only provided Passport with its suite of healthcare management services, but also began to provide back-office-type services to Passport. ¶ 51.    To build out its capabilities to perform those services, Evolent hired many Passport employees (referred to as "rebadged" employees). ¶ 51.    Evolent used the "rebadged" employees to take over various administrative functions that Passport had once performed itself. ¶ 52.

Passport was required to file publicly available annual financial statements ("Annual Statements") with the Kentucky Department of Insurance ("DOI") and NAIC by March 1 each year.[5]    After partnering with Evolent and before being subjected to reimbursement rate cuts in 2018, Passport's Annual Statements reflect improvement in several respects. Passport improved from a net underwriting loss of $80.4 million in 2016 to a net underwriting gain of $4.3 million in 2017, and it improved from a net loss of $57.9 million in 2016 to net income of $17.1 million in 2017. *See* ¶ 91 and Exs. 1 and 2 (2016 and 2017 Annual Statements, p. 4 lines 24 and 32).    As discussed further below, Passport also reduced its medical loss ratio (MLR). *See infra* section II.B (discussing Passport's MLR).

In October 2017, Evolent replaced Passport's existing third-party claims administrator with Evolent's medical claims processing platform, Valence. ¶ 61. As Passport's claims administrator,

---

[5] The deadlines and requirements are included in Kentucky regulations, Ky. Rev. Stat. § 304.3-240(1), which require Medicaid plans to use forms prescribed by the National Association of Insurance Commissioners ("NAIC"). *See* www.content.naic.org.

6

Evolent was to ensure that medical claims submitted to Passport were processed and paid on time and correctly. ¶ 62. Evolent also was to collect descriptive data known as "encounter data," such as what was wrong with the patient and what care was needed. ¶ 63. Passport was required to regularly submit this data to the Kentucky Department for Medicaid Services, and the submissions were made on its behalf by Evolent. ¶¶ 63, 78. If the encounter data was not timely or properly submitted, Kentucky, like most states, would impose monetary penalties. ¶ 78. Kentucky sent a series of "penalty letters" to Passport's most senior officers. ¶ 79. Although the TAC misleadingly alleges that Passport was assessed hundreds of millions in penalties (*e.g.*, at ¶ 81), the Kentucky Medicaid contract capped Passport's penalties at 0.33% of their monthly capitation revenue. ¶ 82. Under the capped penalty rates, Passport was assessed approximately $10 million in penalties between October 2017 and April 2019. ¶ 82. But Passport did not pay *any* of those penalties; Evolent paid all of them, so the penalties did not affect Passport's financial condition.

### III.    KENTUCKY CUTS PASSPORT'S REIMBURSEMENT RATES

On May 30, 2018, Passport learned that Kentucky planned to significantly cut its Medicaid rates for the geographic region covering the majority of Passport's members while raising rates for the rest of the state. ¶ 84. Though delayed, the 2018 rate cuts went into effect November 1, 2018, and were applied retroactively to July 1, 2018, resulting in Passport's Medicaid revenue being materially reduced. *Id.* The 2018 rate cuts had a significant adverse financial impact on Passport. ¶ 87. In January 2019, reports began to emerge in local news outlets such as *Insider Louisville*, that Passport was in financial distress. ¶¶ 115-116. The *Insider Louisville* article criticized the fees paid to Evolent, but Passport's CEO told an investment analyst that "[w]hile Passport is wrangling with regulators over capitation rates, the issue is not tied to the [Evolent] relationship." ¶ 118. On February 15, 2019, Passport and its independent Board of Directors filed a lawsuit against

7

Kentucky (the "Passport Lawsuit"), challenging the 2018 rate cuts and alleging that, if the rate cuts were not reversed, Passport would be legally insolvent by March 1, 2019. ¶ 119.

## IV.    EVOLENT PURCHASES 70% OF PASSPORT.

Passport announced in March 2019 that it had undertaken cost-cutting measures and on April 10, 2019, Kentucky announced that it was increasing the capitation rate, essentially reversing its prior Medicaid rate cut that had harmed Passport. ¶ 122.  By Spring 2019, Passport's financial picture was improving. ¶ 122.  On May 29, 2019, Evolent issued a press release announcing that it was acquiring a 70% stake in Passport for $70 million, and agreeing to provide additional capital if such support became necessary for Passport to meet its statutory capital requirements. ¶ 124.

## LEGAL STANDARD

To state a claim under Section 10(b) and Rule 10b–5 of the Securities Exchange Act, a plaintiff must show "(1) the defendant made a false statement or omission of material fact (2) with scienter (3) upon which the plaintiff justifiably relied (4) that proximately caused the plaintiff's damages." *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 613 (4th Cir. 1999).  A Section 10(b) claim is subject to both Federal Rule of Civil Procedure 9(b)'s requirement that fraud be pled "with particularity" and the PSLRA's stricter requirements.  *Carlucci v. Han*, 886 F. Supp. 2d 497, 509 (E.D. Va. 2012).  Plaintiffs must specify "each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *Nolte v. Capital One Fin. Corp.*, 390 F.3d 311, 315 (4th Cir. 2004) (citing 15 U.S.C. § 78u–4(b)(1)).  In addition, the complaint must allege facts giving rise to a strong inference that the defendant acted with scienter.  *Id.*  The complaint also must sufficiently allege a "causal connection" between the plaintiff's "economic loss" and the defendant's fraudulent conduct.  *Dura*, 544 U.S. at 347.  Loss causation must be pled with "sufficient

8

specificity," a standard that is "largely consonant" with Rule 9(b)'s particularity requirement. *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011).

## ARGUMENT

**I.      PLAINTIFFS FAIL TO ADEQUATELY PLEAD A CLAIM BASED ON THE NEWLY ADDED "RISK PARTNER" STATEMENTS.**

The two "new" statements Plaintiffs have added to the TAC are identical comments buried in lengthy slide presentations dated January 10, 2018 and May 11, 2018.  They read: "Full risk partner achieves MLR/ALR reduction impact representing $100M+ in identified annualized savings" in 2016 and 2017.  ¶ 162 (inserting a graphic of the slide containing the January 10, 2018 statement); *see also* ¶ 166 (May 11, 2018 presentation).[6]  Notably, the statements do not mention Passport.

Plaintiffs fail to state a claim with respect to these two statements.  First, Plaintiffs fail to plead loss causation.  Both alleged misstatements refer only to an ███████████████████ ████████████████ (*see* Dkt. 149 at 4), so Plaintiffs cannot plead that the alleged corrective disclosures—which are specific to Passport—revealed to the market that these earlier statements were false and thereby caused them economic loss.  Further, neither of the two alleged corrective disclosures revealed any "relevant truth" about whether Passport (or any other Evolent partner) had achieved $100 million in MLR/ALR reduction in 2016 and 2017, and therefore fail to meet the Supreme Court's requirement that the complaint plead that the company's "share price fell significantly after the truth became known." *Dura*, 544 U.S. at 347.  Second, Plaintiffs do not plead

---

[6] Plaintiffs also allege that on May 11, 2018, Williams made an oral statement that "a full-risk partner achiev[ed] $100 million in identified savings through a bunch of different levers that we have across the full platform."  ¶ 166.  This statement, which is a paraphrase of the slide at issue, fails for the same reasons as the statement in the slide.

that isolated statements about savings at an unnamed client were material relative to the "total mix" of information available about Evolent.

**A.      Loss Causation Fails Because the Market Never Learned the Identity of the Unnamed Risk Partner and the Corrective Disclosures Do Not Show Falsity.**

The loss causation element requires a plaintiff claiming securities fraud to plead and prove "that the defendant's fraud caused [it] economic loss." To plead loss causation, "the plaintiff must show that the loss caused by the alleged fraud results from the relevant truth . . . leak[ing] out." *Singer v. Reali,* 883 F.3d 425, 446 (4th Cir. 2018) (internal citation omitted). In other words, Plaintiffs must allege that a corrective disclosure "revealed [Evolent's] previous representations to have been fraudulent." *Teachers'*, 477 F.3d at 187. The central inquiry is whether "a misstatement or omission concealed something from the market that, **_when disclosed_**, negatively affected the value of the security." *Singer*, 883 F.3d at 446 (internal citation omitted) (emphasis added).[7]

**1)      Neither Plaintiffs nor other Evolent investors were aware that the statements regarding a "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.**

The TAC fails to satisfy the applicable loss causation pleading standards with respect to the two new statements because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." *See* ¶¶ 162, 166. Plaintiffs concede this fact, claiming that the "only" reason they did not include these statements in any of their three prior complaints is "because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." Dkt. 149 at 4 (emphasis added). According to Plaintiffs, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ through unspecified "internal documents produced in discovery" in October 2021. *Id. See also* ¶ 162. Plaintiffs thus acknowledge that neither Plaintiffs **_nor the_**

---

[7] Courts in the Fourth Circuit routinely dismiss complaints alleging securities fraud for failing to plead loss causation. *See, e.g., In re Maximus, Inc. Sec. Litig.*, 2018 WL 4076359, at *17 (E.D. Va. Aug. 27, 2018); *In re Neustar Sec. Litig.*, 83 F. Supp. 3d 671, 679-80 (E.D. Va. 2015); *Gaer v. Am. Pub. Educ., Inc.*, 895 F. Supp. 2d 763, 792-93 (N.D.W. Va. 2011).

*market* understood that the ██████████████████████████, either at the time the statements were made or when they were allegedly "corrected" through Passport-related disclosures in 2019.

### 2)    Neither corrective disclosure relates back to the two new statements.

Where, as here, Plaintiffs seek to avail themselves of the fraud-on-the-market presumption—it is only *public* information that counts. *See Basic Inc. v. Levinson*, 485 U.S. 224, 247 (1988). Plainly, the "market cannot react to information of which it is unaware." *Marsden,* 2007 WL 518556, at *5. Plaintiffs' admissions that the identity of the "full risk partner" in these slides was never █████████████████████ and the alleged connection was only "recently revealed" establish that Plaintiffs cannot show that the unknown "full risk" partner statements were "corrected" or in any sense revealed to be false by the 2019 disclosures ████████████. *Cf. Goldman Sachs Grp., Inc. v. Arkansas Teacher Ret. Sys.*, 141 S. Ct. 1951, 1961 (2021) (noting in the class certification context that a "specific disclosure" is unlikely to correct a "generic misrepresentation").

For loss causation allegations to be sufficient, "the [corrective] disclosure must possess a sufficient nexus to a prior misstatement such that it reveals at least part of the falsity of that misstatement." *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 282-83 (S.D.N.Y. 2008); *see also Katyle*, 637 F.3d at 473 ("[E]xposure of the fact that [was] fraudulently omitted" is "the first requisite to adequately pleading loss causation."); *In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 679 (S.D.N.Y. 2007) ("Without providing a nexus between the alleged fraud and their losses . . . plaintiffs fail to plead loss causation."). Here, Plaintiffs fail to allege the required nexus between the alleged misstatements discussing an ████████████████████ ████████████████████████████████. Moreover, the corrective disclosures do not

11

relate to whether or not ██████████████████████████) actually achieved MLR and ALR reductions resulting in savings as of the time the statement was made.

Consider the two corrective disclosures alleged by Plaintiffs in the loss causation section of the TAC. ¶¶ 209-215. The first occurred on February 15, 2019, when Passport filed a lawsuit against agencies of the Kentucky government. ¶ 213. Plaintiffs allege that the Passport Lawsuit revealed that due to Medicaid rate cuts, "Passport's financial situation was far more dire than previously reported," that it had "suffered losses of $65.5 million for the year [2018]," and that it expected an additional $75 million in losses for the first six months of 2019 if "the rate cuts were not reversed." *Id.*; *see also* ¶ 119. The second corrective disclosure occurred on May 29, 2019, "when Evolent announced that it would pay $70 million to take a 70% ownership stake in Passport" and would provide "interim balance sheet support" for Passport if necessary. *Id.* ¶ 214. Plaintiffs' allegations make clear that both of these corrective disclosures centered entirely on Passport. It is thus equally clear that neither disclosure could have "corrected" Evolent's earlier alleged misstatements about an *unnamed* "full risk partner" achieving $100 million in savings. And neither statement speaks to the issue of whether ████████████████████████████ a year or more earlier when the statements were made.

At bottom, Plaintiffs fail to plead loss causation because the corrective disclosures do not relate to the alleged $100M in savings representation, nor reveal that anything about the statements was false. The Fourth Circuit has held that to plead loss causation under a corrective disclosure theory, the "disclosure must '*at least relate back to the misrepresentation and not to some other negative information about the company*." *Katyle*, 637 F.2d at 473 (quoting *In re Williams Sec. Litig.*, 558 F.3d 1130, 1140 (10th Cir. 2009) (emphasis in original). But the corrective disclosures identified by Plaintiffs cannot even meet that minimal threshold. The facts that (i) Passport filed

12

a lawsuit against Kentucky over Medicaid rate cuts, and (ii) Evolent announced it would acquire an ownership interest in Passport, have no relation to earlier statements about MLR/ALR savings achieved by an unidentified partner in 2016 and 2017, and certainly shed no light on whether or not such savings had been realized. Indeed, the TAC acknowledges that the Passport Lawsuit against Kentucky "raised significant concerns among investors and analysts *about the impact of a potential Passport bankruptcy on Evolent's revenue stream*," (¶ 120), rather than showing any connection to whether a claim that Passport had achieved MLR/ALR savings in 2016-17 had merit. Such disclosures do "not even inferentially suggest that [Evolent's] prior [statements regarding an unnamed risk partner achieving prior savings] were fraudulent." *Katyle*, 637 F.3d at 475. *See also Teachers'*, 477 F.3d at 186–87 (loss causation inadequately pled where lawsuit alleged to reveal the fraud did not reveal the "true facts" of the challenged misrepresentations).

When confronted with similar circumstances—that is, a mismatch between the content of an alleged misstatement and an alleged corrective disclosure—courts routinely hold that loss causation is not established. *See, e.g.*, *In re Cree, Inc. Sec. Litig.*, 2005 WL 1847004, \*11-\*13 (M.D.N.C. Aug. 2, 2005) (plaintiffs failed to allege loss causation where misrepresentations related to transactions between Cree and six other companies but corrective disclosure did not "disclose anything about transactions with five of the six companies"), *aff'd sub nom. Teachers'*, 477 F.3d at 187; *Plumbers, Pipefitters & MES Loc. Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*, 886 F. Supp. 2d 328, 337-38 (S.D.N.Y. 2012) (no loss causation where plaintiffs broadly claimed defendant engaged in fraudulent accounting practices but the alleged corrective disclosures focused narrowly on the accounting treatment of "finite reinsurance contracts"); *Take-Two*, 551 F. Supp. 2d at 284 (no loss causation where there was only a "distant relationship between the subject of the Manhattan District Attorney's announced investigation—[defendant's]

13

general compensation practices—and the subject of the alleged fraud—[defendant's] options-granting practices"); *Payne v. DeLuca*, 433 F. Supp. 2d 547, 610 (W.D. Pa. 2006) (no loss causation based on announcement of bankruptcy because "nothing [in the disclosure] would tip off investors to the 'truth' as to why [the company] was on the verge of bankruptcy").

 The likelihood that allegations of loss causation will be held inadequate increases significantly when either the alleged misrepresentation or the alleged corrective disclosure is vague, nonspecific, or refers to unnamed entities.  For instance, in *In re Stone & Webster, Inc. Securities Litigation*, plaintiffs' fraud claim was based on the defendant's alleged concealment of losses on a large construction project in Indonesia (the "TPPI" project).  2007 WL 9822735, at *1 (D. Mass. Sept. 7, 2007).  Plaintiffs alleged that defendant "knew the project was dead" for years but failed to report losses associated with the project in its financial statements.  *Id.* at *8.  The loss causation issue was whether a press release announcing an "unanticipated cost overrun on a key project" constituted a corrective disclosure under *Dura*.  *Id.* at *9.  The court held that it did not, reasoning that the mere "mention of a 'cost overrun'" on a *key **unnamed** project*" was "insufficient to alert the market to the accounting fraud with respect to the TPPI project."  *Id.* (emphasis added).

The same logic applies here.  The corrective disclosures alleged by Plaintiffs conveyed information about Passport's lawsuit against Kentucky and Evolent's planned acquisition of Passport, but they do not say *anything* about whether Evolent's earlier statements regarding a "full risk partner" were true.  Accordingly, Plaintiffs fail to adequately plead loss causation and damages resulting from the risk partner statements.

**B.      Plaintiffs Fail To Adequately Allege The Statements Were Material.**

To state a claim under Section 10(b), a plaintiff must allege "a *factual* statement or omission that is false or misleading and that is *material*."  *Longman v. Food Lion, Inc.*, 197 F.3d 675, 683 (4th Cir. 1999) (emphasis added).  A statement is considered material only if "there is a

substantial likelihood that a reasonable purchaser or seller of a security (1) would consider the fact important in deciding whether to buy or sell the security or (2) would have viewed the total mix of information made available to be significantly altered by disclosure of the fact." *Id.* (quoting *Basic*, 485 U.S. at 231-32).

The materiality of an alleged misstatement "must be examined in context and in light of the 'total mix' of information made available to investors." *Phillips,* 190 F.3d at 615. And while "assessments of materiality are inherently fact-specific," *Hurtado v. Gramercy Prop. Tr.*, 425 F. Supp. 3d 496, 514 (D. Md. 2019), courts generally focus on the impact a particular misrepresentation has on a company's overall financial position. In other words, a complaint must allege facts to "place the purported value of [a misrepresentation] within the context of [the company]'s total financial picture." *Janbay v. Canadian Solar, Inc.*, 2012 WL 1080306, *6 (S.D.N.Y. Mar. 30, 2012); *In re Nokia OYJ (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364, 408 (S.D.N.Y. 2006) (dismissing securities fraud claims because complaint "does not even attempt to approximate the magnitude or degree of the alleged misstatements in relation to [the company]'s total financial picture"); *Gavish v. Revlon, Inc.,* 2004 WL 2210269, at *16 (S.D.N.Y. Sept. 30, 2004) (no materiality where "[n]one of the complaint's allegations of improper sales practices contain a specific allegation of monetary consequence").

The TAC fails to meet this standard. The TAC does not even attempt to allege that the statements—which relate to savings achieved by an unnamed *client* of Evolent's—had any impact, much less a material impact, on *Evolent's* business or revenues. First, there are no allegations that Evolent's revenues, profits, or earnings were tied to or dependent on its customer's reaching any particular level of savings. Second, the challenged statement—"Full risk partner achieves MLR/ALR reduction impact representing $100M identified annual savings"—is but a single

15

sentence fragment buried in the bottom corner of a single slide contained in lengthy decks of 86 pages (Ex. 3, May 11, 2018 presentation, at 17) and 28 pages (Ex. 4, January 10, 2018 presentation, at 11, excerpted at ¶ 162).  Plaintiffs do not allege that the slide was *even mentioned* in the oral presentation given at the January 10, 2018 conference (¶¶ 162-63), and only allege that there was a half-sentence oral paraphrase at the May 11, 2018 conference (¶ 166).  Plaintiffs have not alleged that any market analyst mentioned this statement in any report covering Evolent, much less deemed it noteworthy in valuing Evolent's shares.  Thus, even assuming (1) that ████████████████████ ███████████, and (2) that ██████████████████████████████████████, Plaintiffs do not explain why a hypothetical "reasonable investor" would have viewed this information as having significantly altered the "total mix" of information made available.  *See Greenhouse v. MCG Cap. Corp*., 392 F.3d 650, 659 (4th Cir. 2004) (noting that misrepresentations regarding a "company's earnings might plausibly alter the total mix of information" but holding that misrepresentation relating to CEO's education "could not").  In the context of the "total mix" of information available *about Evolent*, Plaintiffs have failed to plead that whether or not an unnamed identified partner achieved a certain amount of savings through MLR/ALR reductions is material.  These isolated statements about one unidentified client in lengthy slide show presentations did not "significantly alter[]" the "total mix of information" available about Evolent.  *Longman*, 197 F.3d at 683 (internal citation omitted).

## II.   PLAINTIFFS FAIL TO ADEQUATELY PLEAD A CLAIM BASED ON THE PREVIOUSLY DISMISSED MAY 11, 2018 STATEMENTS.

### A.   The May 11, 2018 Statements Were Rejected In The MTD Order.

The TAC continues to assert claims based on the May 11, 2018 statements already dismissed by the Court.  ¶¶ 164-168.  First, Plaintiffs reallege a May 11, 2018 statement by Williams that the Court dismissed on puffery grounds. *See* ¶ 164; MTD Order at 50 (expressly

16

finding Williams' statement is not actionable).  Second, Plaintiffs also re-allege the dismissed May 11, 2018 statement in which Blackley stated, in relevant part, that the Evolent-Passport partnership had resulted "over the last few years" in "about 5% improvement in [Passport's] MLR roughly," which "is about $75 million of improvement to Passport's bottom line."  ¶ 165.  *See* MTD Order at 59 (dismissing *all* alleged misstatements other than four, specifically enumerated misstatements, the first of which was made on September 5, 2018).  Plaintiffs' attempt to resuscitate these dismissed statements fails—even considering their new allegations—because the essential elements of falsity, scienter, and loss causation are not adequately pled.

Plaintiffs' justification for repleading the dismissed Blackley statement is that they have a pending Motion for Partial Reconsideration (Dkt. 111) which contends that Judge Alston "did not consider" that statement in the MTD Order, and that he erred in not sustaining it because it is "similar to" a statement made by Defendant Williams four months later on September 5, 2018 that the Court did sustain.  Dkt. 112 at 2.  However, "the court should not reevaluate the basis upon which it made a prior ruling, if the moving party merely seeks to reargue a previous claim."  *United States v. Smithfield Foods, Inc.*, 969 F. Supp. 975, 977 (E.D. Va. 1997) (citation omitted).  That is precisely what Plaintiffs improperly seek to do here.  They have not identified any legally sufficient basis for this Court to revisit the ruling in the MTD Order.  *Id.* (finding reconsideration only appropriate where court has patently misunderstood a party or made an error in the ruling, or there has been a subsequent change in the law or facts).  This reason alone is sufficient to dismiss the Blackley statement, but if the Court should elect to consider it, the statement should be dismissed (again) on the grounds discussed below.[8]

---

[8] Should the Court grant this Motion to Dismiss as to the Blackley statement, Plaintiff's Motion for Partial Reconsideration (Dkt. 111) can be denied as moot.

17

**B.**     **Plaintiffs Fail To Allege With Particularity That Blackley's May 11, 2018 Statement Was False When Made.**

**1)**     **Blackley's statement recited a ratio from Passport's public financial statements.**

Blackley's statement was that over the last few years, Passport had achieved "about 5% improvement in MLR, roughly." ¶ 165.  Blackley was thus merely reciting a common, widely-used managed care organization financial metric (MLR) based on Passport's annual financial statements that are a matter of public record.  The figures below come from the data reported in Passport's 2016 and 2017 Annual Statements (Exs. 1 and 2 to this Motion):

**Passport's Revenue, Medical Expenses, and MLR in 2016 and 2017
(information from Passport's publicly available Annual Reports)**

| YEAR | REVENUE<br>Page 7, line 7, column 8 | MEDICAL EXPENSES<br>Page 7, line 17, column 8 | MLR<br>(Medical Expenses / Revenue) |
|---|---|---|---|
| 2016 | $1,730,097,322 | $1,644,681,907 | **0.9506 = 95%** |
| 2017 | $1,897,000,830 | $1,705,056,248 | **0.8988 = 89.9%** |
| **Decrease in MLR from 2016 to 2017** | | | **0.0518 = 5.2%** |

**2)**     **Plaintiffs have not alleged that Passport's financial statements were false or misleading.**

Given that Blackley merely reported Passport's MLR improvement based on what Passport had already publicly stated in its annual financial reports, Plaintiffs can plead falsity only by alleging particularized facts that show *Passport's* financial statements were materially false and misleading.  *See In re Merrill Lynch & Co., Inc*., 273 F. Supp. 2d 351, 360 (S.D.N.Y. 2003) (dismissing claim based on issuance of allegedly misleading analyst reports where plaintiffs made "no allegation that any of the company-related information relied on by the analysts in preparing the reports was in any way false").  As discussed below, there is no allegation that Blackley had any "role in the preparation of [Passport's] financial statements." *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 467 (S.D.N.Y. 2005).  Nonetheless, Plaintiffs' allegations of falsity all center on

18

the quality and cost of the services Evolent provided to Passport, not whether Passport's financials were misstated.  As a result, these allegations do not establish the falsity of Passport's financial reports (or, by extension, that of Blackley's statement about Passport's financials).

> **3)      The Court may consider Passport's financial statements because they are authentic and referenced in and integral to the Complaint.**

As a heavily regulated, non-profit Medicaid managed care organization, Passport is required to file annual financial statements with the Kentucky DOI, the NAIC, and the IRS.  All of those filings are publicly available.  *See, e.g.*, Exs. 1 and 2 (2016 and 2017 Passport Annual Statements).  The annual financial statements may be considered by the Court because Plaintiffs utilized the contents throughout the TAC and there can be no dispute about their authenticity.  *See, e.g.,* ¶ 74 ("Indeed, Passport's own financial statements later confirmed that, by the end of 2018, Passport had accrued a staggering $20.5 million in claims overpayment receivables…"); ¶ 90 ("Passport reported its expenses and fees to regulators"); ¶¶ 87-91 (extensively discussing Passport's reported revenues, administrative expenses, capital, profits and losses from Passport's 2015-2018 annual financial statements).  *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (holding courts "may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity.") (citation omitted).[9]

This Court has held that "[a] document is integral to the complaint where it is significantly related to a cause of action."  *McGlothian v. Fralin*, 2019 WL 1087156, at *8 (E.D. Va. Jan. 23,

---

[9]  In the MTD Order (at 35), the Court previously found that "Exhibits 19, 20, and 23, Passport's 2016, 2017, and 2018 Annual Statements, are …not explicitly referenced in Plaintiffs' Sec[ond] Amended Complaint, and will also not be considered."  That finding mistakenly overlooks the repeated references to the financials in the complaint, and overlooks the case law holding that documents need not be explicitly referenced if they are "integral" to the complaint.  *Goines*, 822 F.3d at 166.

2019) (citations omitted).   The allegations in the TAC make clear that Passport's financial statements and metrics are integral to Plaintiffs' claims. *See, e.g.,* ¶¶ 164-167 (challenging Defendant Blackley's statement regarding MLR metric).   Throughout the TAC, Plaintiffs cite Passport's administrative expenses, net underwriting gains and losses, capital, and net income. *See, e.g.*, ¶¶ 7, 57, 89 (administrative expenses); ¶¶ 57, 91 (net underwriting gains/losses); ¶¶ 88 (net income); ¶¶ 88, 91 (capital).   Although Plaintiffs avoid citing directly to Passport's financial statements by name—perhaps hoping to prevent Defendants from using the documents in this Motion—those detailed financial figures cited in the TAC come from Passport's Annual Statements, which are submitted to regulators including the Kentucky DOI. *See, e.g.*, Ex. 2, Passport 2017 Annual Statement, Statement of Revenues and Expenses, p. 4 lines 21 (general administrative expenses), 24 (net underwriting gains/losses), and 32 (net income), p. 5 line 49 (capital).   Those financial metrics indisputably play a significant role in the TAC's allegations and are thus "integral to the complaint" and should be considered by this Court.   *Goines,* 822 F.3d at 166; *Matrix Capital Mgmt. Fund L.P. v. BearingPoint, Inc.*, 576 F.3d 172, 183 (4th Cir. 2009).

        **4)**      **The CW allegations do not show the falsity of Blackley's statement.**

Plaintiffs allege Blackley's statement was false because CW1 reported that Evolent "did the opposite" of "cut[ting] costs," and CW5 stated that "[e]verything that was done was either more expensive or cost us more money."  *See* ¶ 167.  Plaintiffs' reliance on these CW allegations is inadequate to plead the falsity of Blackley's May 11 statement because his statement is supported by Passport's financial statements, regardless of whether CW1's statements are true or not.  *Id.*  CW1 is alleged to have been a member of Passport's Internal Audit team from December 2011 to March 2019, responsible for monitoring Passport's compliance with Kentucky-mandated internal controls ***designed to ensure Passport's financial statements were accurate and complete***.  ¶ 48 (emphasis added).  Here, neither CW1 nor Plaintiffs allege that Passport's financials were

inaccurate, and Passport's financials indisputably show a "roughly 5% improvement" in Passport's MLR, as Blackley stated. *See* Exs. 1 and 2 (2016 and 2017 Passport Annual Statements, p. 7, column 8, lines 7 and 17). CW1's statements are thus contradicted by precisely the financial statements she was responsible for ensuring were accurate.

CW5 is alleged to have been a Manager and then a Director in Passport's Information Technology group during the relevant time period. ¶ 93. No allegations attributed to CW5 suggest that Passport's 2016 and 2017 financial statements are inaccurate; her allegations are principally confined to the Valence claims reporting system. ¶¶ 94-114. CW5 alleges expense increases for rebadged employees, ¶ 111, and asserts that none of Evolent's initiatives with Passport "actually succeeded," ¶ 112. But these allegations say nothing about the accuracy of Passport's reported financial metrics. Further, nothing in the TAC demonstrates that CW5 has the requisite personal knowledge to opine on whether Passport's financial statements accurately reflected Passport's revenue, medical expenses, and MLR improvements, or the overall costs and benefits of Evolent's services. *Teachers'*, 477 F.3d at 174 ("When the complaint chooses to rely on facts provided by confidential sources, it must describe the sources "with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged or in the alternative provide other evidence to support their allegations."). Finally, despite naming multiple people, CW5 makes no allegations regarding Blackley. *See* ¶¶ 94-114.

Plaintiffs next contend that "documents produced in discovery" demonstrate the falsity of Blackley's May 11 statement. That is incorrect. The first group of documents Plaintiffs cite are internal Evolent documents discussing the quality, cost, or benefit of Evolent's services to Passport. None of these documents—which relate to different time frames and different topics— suffices to plead falsity because none suggests that Passport's 2016-17 financial statements are

21

inaccurate. For instance, Plaintiffs allege that McGrane wrote an email in which he concluded "Evolent had provided zero benefit to Passport 'net of our fees.'" ¶ 167. But that email was written in September 2017, and McGrane's statement was expressly limited to fiscal year 2016. *See* ¶¶ 139-40 ("████████████████████."). Accordingly, it does not demonstrate the falsity of Blackley's statement here, which was (i) made *six* months later, (ii) was *not* limited to 2016 (it addressed results "over the last few years"), and (iii) related to the fact that Passport's publicly available financial statements showed a 5% improvement to Passport's MLR. Similarly, Plaintiffs cite an ████████████████████████████████████████████

████████████████████████████████." ¶ 168. But again, Blackley's statements were based on Passport's MLR, assessed based on its annual financial statements, not on ALR. An Evolent employee's musings about one particular type of savings six months earlier have no bearing on the truth of Blackley's statement about Passport's MLR.[10] This email, therefore does not contradict either the accuracy of Passport's financial statements, or their reflection of a roughly 5% improvement in Passport's MLR from 2016 to 2017.[11]

---

[10] The email is limited to "clinical savings" at Passport, ¶¶ 142, 168, which is not synonymous with "medical savings." The term "medical expenses" is much more general and includes such other major categories as prescription drug costs. *See, e.g.,* 42 C.F.R. § 400.202 & .203 (including *"drugs and biologicals"* as a category of medical care in "supplies"); 42 C.F.R. § 438.8(e)(2)(i)(A) (listing supplies and expenses that must be included in MLR calculation).

[11] Plaintiffs also cite (i) an ████████████████████████████ ████████████████ (¶ 143) and (ii) a ████████████████████████████████ (¶¶ 150, 168). Neither supports falsity. The first email was sent five months *after* Blackley's May 11, 2018 statement, and thus fails to show that his statement was "materially false *when made*." *In re First Union Corp. Sec. Litig.*, 128 F. Supp. 2d 871, 893 (W.D.N.C. 2001) (emphasis added). Additionally, it states only that ████████ ████████████████████████ (¶ 143), which does not warrant an inference that such backup did not exist, or that Blackley's earlier statement was false. Regarding the second email, ████████████████████████████ in no way suggests that its financials were inaccurate, or that it did not achieve 5% MLR improvement in 2016-2017.

22

Finally, Plaintiffs attempt to plead falsity by relying on an internal Passport document that discusses whether " ███████████████████████████████████████████████████ ███████████████████████████████████." ¶ 168. Those assertions also do not contradict Blackley's reference to Passport's MLR improvement shown in its own financials. Moreover, even assuming that Evolent's "risk adjustment" and "claims processing service[s]" were subpar, it is well established that mere "instances of corporate mismanagement" do not constitute securities fraud, *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 477 (1977), and Plaintiffs cannot plead falsity by reference to a "laundry list of . . . operational problems," *In re First Union*, 128 F. Supp. 2d at 893.

**C.      The TAC Does Not Plead Facts Supporting A Strong Inference of Scienter As To Blackley's Statement Regarding Passport's Improvement in MLR.**

The Court should also dismiss Blackley's statement for the independent reason that Plaintiffs fail to plead particularized facts raising a strong inference that Blackley made the statement with scienter. "To survive a motion to dismiss, the facts alleged must give rise to a strong inference that [Defendants] intentionally or recklessly deceived, manipulated, or defrauded investors." *Maguire Fin. L.P. v. PowerSecure Int'l, Inc.*, 876 F.3d 541, 547 (4th Cir. 2017). Because Blackley merely recited a financial metric from Passport's publicly reported financial data, Plaintiffs cannot allege scienter unless they show he knew (or recklessly disregarded) that Passport's publicly reported financial data was false. The TAC does not clear this hurdle.

This Court has not previously considered Blackley's scienter. In its MTD Order, the Court concluded that Plaintiffs only "narrowly met their burden as to . . . scienter." MTD Order at 67. But that holding applied only to the four alleged misstatements the Court sustained—that is, the four alleged misstatements from September 5, 2018 through May 7, 2019—none of which were made by Blackley. *See id.* at 59; 74-75 (only finding "control person" liability for Blackley as to

23

one statement, for which scienter is not required).[12]  The Court therefore has not found, and should not find, that scienter is adequately alleged as to Blackley's May 11, 2018 statement.  *See Teachers'*, 477 F.3d at 184 (plaintiff must "allege facts that support a 'strong inference' that *each* defendant acted with at least recklessness in making the false statement."); *see also* MTD Order at 65 (citing *Matrix*, 576 F.3d at 190, and adopting the each defendant/each statement standard).

The most glaring defect in Plaintiffs' scienter allegations is their failure even to grapple with the fact that Blackley's comment was based entirely on Passport's financial statements, which Plaintiffs have neither alleged nor demonstrated are false.  Where, as here, Plaintiffs cannot satisfy the first prong of the statutory requirement, the Court need not go further in its analysis.  *See Phillips,* 190 F.3d at 621 (holding that complaint "obviously fail[ed] to allege" scienter where it did not even plead facts demonstrating the falsity of defendants' statements).

Moreover, Plaintiffs do not allege that Blackley was involved in preparing, compiling, or reporting Passport's financial results, *see Alstom*, 406 F. Supp. 2d at 467, nor do they allege any other facts to suggest Blackley had inside knowledge regarding Passport's financial reporting.  Under such circumstances, courts find scienter to be lacking.  *See, e.g.*, *Ho v. Flotek Indus., Inc.*, 248 F. Supp. 3d 847, 857 (S.D. Tex. 2017) (rejecting inference of scienter where defendant relied on third party to aggregate data because plaintiffs failed "to allege any facts indicating Defendants had reason to believe the data was being manipulated").  In fact, courts routinely hold scienter to

---

[12] The Court's scienter analysis focused largely on the allegation that certain "Evolent[]" executives" received copies of "penalty letters" from the Kentucky government, which Plaintiffs attribute to Evolent's allegedly faulty claims processing software.  *See* MTD Order at 65-67 (describing these penalty letters as "red flags" supportive of scienter).  Putting aside the fact that penalty letters related to encounter data have no bearing on whether Passport's financial statements showed MLR improvement, CW 5 only alleges that the letters were sent to unspecified "Evolent executives," ¶ 90, and does *not* allege that Blackley ever received or was aware of any such penalty letters.

be inadequately alleged even in the context of a corporate parent reporting inaccurate financial results of its subsidiary—absent particularized facts indicating the corporate parent knew or recklessly disregarded the inaccuracy of its subsidiary's results. *See, e.g.*, *Alstom*, 406 F. Supp. 2d at 471 (agreeing with corporate parent's argument that "there are insufficient facts to demonstrate that [parent] knew, or was reckless in not knowing, that [subsidiary's] financial results were false."); *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 269 (2d Cir. 1996) (no strong inference of scienter where corporate parent reported subsidiary's fraudulently inflated results in its consolidated financial statements even though subsidiary's profits increased to record levels). And here, of course, there are no allegations that Passport's financial statements were inaccurate in any way.

The Court should reject an inference of scienter here because (i) the TAC does not allege Passport's financial records were false, and (ii) even if one assumed they were, the TAC pleads no facts indicating Blackley *knew* or was reckless in not knowing that to be the case.

**D.    Plaintiffs Fail To Plead Loss Causation With Respect To Blackley's May 11, 2018 Statement.**

Blackley's May 11 statement should also be dismissed because Plaintiffs fail to plead loss causation from the statement. As noted above, to plead loss causation, Plaintiff must allege that a corrective disclosure "expose[d] the defendant's misrepresentation" and that "such exposure resulted in [a stock price] decline." *Singer,* 883 F.3d at 445. Determining whether loss causation is pled therefore requires a comparison between the allegedly misrepresented fact and the "corrective" disclosure alleged to have "exposed" it. *See Katyle*, 637 F.2d at 473.

Blackley said that "over the last few years" Passport had seen "about 5% improvement in MLR roughly" which translated into "about $75 million" improvement to "Passport's bottom line." ¶ 165. While the Court's MTD Order held that the SAC adequately alleged loss causation as to the four sustained statements, it did not do so for either the unnamed risk partner statements

25

or the May 11, 2018 statements.  In addition, the Order did not analyze the fact that neither of the alleged corrective disclosures had anything to do with these two metrics.  The first corrective disclosure—Passport's February 2019 lawsuit against Kentucky—revealed that Kentucky's Medicaid rate cuts were pushing Passport toward bankruptcy.  *See* ¶ 119.  The second (in May 2019) revealed that Evolent had agreed to pay $70 million to acquire a 70% stake in Passport.  *See* ¶ 214.  Neither of these disclosures informed the market about Passport's MLR improvement from 2016 to 2017 or in any way suggested that Passport's reported financial information was false, even if one assumed for the sake of argument that they were.  *See Teachers'*, 477 F.3d at 187.

## III.    THE FORWARD-LOOKING STATEMENTS MADE ON FEB. 26, 2019 AND MAY 7, 2019 MUST BE DISMISSED UNDER THE PSLRA SAFE HARBOR.

The PSLRA's Safe Harbor shields forward-looking statements from liability in either of two circumstances:  (1) if the statement is identified as such and accompanied by a "meaningful cautionary statement identifying important factors that could cause actual results to differ materially from those in the forward-looking statement"; or (2) if plaintiffs fail to show by particularized facts that the maker of the statement had *actual knowledge* of the statement's falsity. 15 U.S.C. § 78u-5(c)(1)(A) and (B).  Recklessness is not sufficient for scienter when a statement is forward-looking; actual knowledge is required.  *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48 (2011); *Carlucci v. Han*, 907 F. Supp. 2d 709, 728 (E.D. Va. 2012).

The MTD Order found that Williams' February 26, 2019 and May 7, 2019 statements met the definition of forward-looking statements as defined in the PSLRA because they related to "future economic performance," citing *Marsh Group v. Prime Retail, Inc.,* 46 F. App'x 140, 146-47 (4th Cir. 2002).  MTD Order at 53–55.[13]  The February 26, 2019 statements related to the

_____

[13] The Court's prior holding governs under the law of the case doctrine.  *See, e.g., Deutsche Bank Nat'l Tr. Co. v. Fegely*, 2020 WL 201048, at *4 (E.D. Va. Jan. 13, 2020) (declining to reconsider

possibility of Evolent's future acquisition of Passport and whether Passport's problems presented future "balance sheet risk" for Evolent.  ¶¶ 178-79.  The May 7, 2019 statement was Williams' comment that "we believe that Passport is making solid progress towards improving its financial performance . . . we remain hopeful that the combination of the new reimbursement rates, administrative and clinical improvements and efforts to strengthen the balance sheet will provide a path for Passport to be successful long term in the Kentucky Medicaid market."  ¶ 184.

Although the MTD Order found the statements to be forward-looking, the Court erroneously concluded that it was prohibited from considering the cautionary language accompanying the statements in SEC filings referenced on the call, "as those are facts that have not been pleaded in the Second Amended Complaint and are not otherwise reviewable."  MTD Order at 54.  The PSLRA, however, ***expressly requires*** the court to consider "***any cautionary statement***" cited by a defendant, whether or not specifically pled in the complaint.  So Defendants timely filed a Motion for Partial Reconsideration to correct the Court's clear error in disregarding the cautionary language. Dkt. 109.  Because that motion remains pending, and in light of Plaintiffs' repleading of these statements in the TAC, Defendants seek dismissal of the February 26 and May 7, 2019 statements under the PSLRA's Safe Harbor for forward-looking statements.  As shown below, the statements are protected under both prongs of the Safe Harbor, because (1) they were accompanied by meaningful cautionary language, and (2) Plaintiffs fail to plead particularized facts showing that Williams had actual knowledge of the alleged falsity of the statements.

---

argument previously rejected where second motion to dismiss "consist[ed] of a near-verbatim composite" of the first motion); *Boyce v. Bennett*, 2015 WL 6873547, at *8 (E.D. Va. Nov. 9, 2015) (dismissing gross negligence claim in second amended complaint where judge previously dismissed similar state-law gross negligence claims).  The law of the case should be disregarded only when a prior decision is clearly erroneous or when the law or rule has changed. *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009).

**A.    The PSLRA Requires Courts To Consider The Cautionary Statements That Accompany Oral Forward-looking Statements.**

The Safe Harbor protects an oral forward-looking statement identified as such and accompanied by a "cautionary statement" that the "actual results might differ materially from those projected in the forward-looking statement," provided that the statement points to a readily available written document that contains information concerning factors that could cause actual results to materially differ. 15 U.S.C. § 78u-5(c)(2)(A) & (B). The Safe Harbor statute specifically provides that an SEC filing containing the factors is a "readily available" document. 15 U.S.C. § 78u-5(c)(3).

Under the Safe Harbor statute, courts "***shall consider***" the cautionary statements that Defendants cite in a motion to dismiss, regardless of whether the plaintiffs' complaint includes it:

> On any motion to dismiss based upon subsection (c)(1) [the Safe Harbor], **the court shall consider** any statement cited in the complaint and **any cautionary statement** accompanying the forward-looking statement, which are not subject to material dispute, **cited by the defendant.**

15 U.S.C. § 78u-5(e) (emphasis added). Without this requirement, a plaintiff could evade the Safe Harbor and avoid dismissal simply by not including the cautionary statement in the complaint. In clear violation of the statute, the MTD Order concluded that the Court could not consider Evolent's cautionary statements because the SAC had not included them and they "are not otherwise reviewable." MTD Order at 54.[14] But subsection (e) of the statute and binding Fourth Circuit law require that the Court look at the cautionary statement. *See supra* n.14 and *infra* n.16.

---

[14] The Fourth Circuit has held that when a securities plaintiff cites a *part* of a document, such as an SEC filing, earnings call transcript, or analyst report, a court may consider *all* of the document. *Cozzarelli v. Inspire Pharm., Inc.*, 549 F.3d 618, 625 (4th Cir. 2008); *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 745–46 (4th Cir. 2021) (recognizing earnings call transcripts in decision affirming grant of motion to dismiss). District courts in the circuit have held similarly. *See Hirtenstein v. Cempra, Inc.*, 348 F. Supp. 3d 530, 569 (M.D.N.C. 2018) (recognizing analyst and investor call transcript in decision granting MTD); *In re Human Genome Scis. Inc. Sec. Litig.*, 933

28

**B.**     **Evolent's SEC Filings Included Specific Descriptions Of Factors That May Cause Results To Materially Differ From The Oral Forward-Looking Statements.**

Evolent's cautionary statements at the beginning of both the February 26, 2019 and May 7, 2019 earnings calls explained that the calls contained forward-looking statements and explicitly referenced SEC filings that contained descriptions of "risks and uncertainties that could cause actual results to differ materially" from any forward-looking statements.    These cautionary statements complied with the statute and comport with Fourth Circuit case law.[15]  *See* Ex. 5 at 4 (Feb. 26, 2019 call); Ex. 6 at 4 (May 7, 2019 call).  This fully satisfies the requirements of the Safe Harbor statute.[16]

The referenced SEC filings contain specific, detailed disclosures of risk factors that could cause future results to materially differ from those set forth in the Passport-related forward-looking statements.  Evolent's 2017 and 2018 10-Ks each list over 50 different risk factors facing Evolent, which consume 24 pages of disclosures. Ex. 7 (2017 10-K) and Ex. 8 (2018 10-K). One set of those risk factors detail specific Passport-related risks, including:

- The sudden loss of any of our partners, including Passport, our strategic alliance partner, or the renegotiation of any of our partner contracts, could adversely affect our operating results.

---

F. Supp. 2d 751, 754, 758 (D. Md. 2013) (recognizing analyst call transcript in decision granting MTD and noting that the Fourth Circuit allows a court to look "beyond a plaintiff's discrete allegations to additional facts . . . where the complaint quotes selectively from various reports.").

[15] The warnings state that "This call contains forward-looking statements under the U.S. federal securities laws.  These statements are subject to risks and uncertainties that could cause actual results to differ materially from historical experience or present expectations.  A description of some of the risks and uncertainties can be found in the company's reports that are filed with the Securities and Exchange Commission, including cautionary statements included in the current and periodic filings."

[16] *E.g., In re Humphrey Hosp. Tr., Inc. Sec. Litig.*, 219 F. Supp. 2d 675, 684 (D. Md. 2002) (holding that cautionary language, which mirrors language used in Evolent's earnings calls, is sufficient under the Safe Harbor statute); *In re Lab. Corp. of Am. Holdings Sec. Litig.,* 2006 WL 1367428, at *7 (M.D.N.C. May 18, 2006) (holding that oral forward-looking statements are protected by PSLRA based on reference to SEC documents).

29

- Our partners are subject to a number of risks including reductions in payment rates from governmental payers, higher than expected health care costs and lack of predictability of financial results….

- Should one or more of our significant partners, including Passport, declare bankruptcy, be declared insolvent or otherwise be restricted by state or federal laws or regulation from continuing in some or all of their operations, this could adversely affect our ongoing revenues….

- Recent rate changes in Kentucky have negatively impacted Passport, our largest partner in terms of revenue for 2018, and could significantly harm our business, financial condition and results of operations.

- [R]ate reductions and surrounding publicity could result in reduced enrollment for Passport, provider disruption and reputational impact for both Passport and the Company. In addition, these matters could result in significant reductions of the fees we receive from Passport. If Passport were to become insolvent or cease to operate, we would no longer receive fees from Passport. As a result, the ongoing [lawsuit over KY rates] and the ultimate resolution thereof could negatively impact our business, financial condition and results of operations….

Ex. 8 at 15-16 (2018 10-K) and Ex. 7 at 15-16 (first three bulleted points) (2017 10-K).

The risk factors also described risks related to potential future acquisitions or investments

with partners:

- Part of our business strategy is to acquire or invest in companies…. This may include acquiring or investing in companies, businesses, products or technologies…. That and other acquisitions, investments, alliances or joint ventures … could result in new, material risks to our results of operations, financial condition, business and prospects.…

- Consistent with our business strategy, we continuously evaluate, and are currently in the process of evaluating, potential acquisition targets and investments.

- As the market evolves, we expect to engage in similar and new risk sharing strategies with our partners….These arrangements have included and may include … equity investments and other extensions of capital, where we are and may be at risk of not recovering all or a portion of any such loan or other extension of capital.

Ex. 8 at 18 and 20 (2018 10-K) and Ex. 7 at 16-18 (2017 10-K).

These specific warnings are directly connected to the subject matters of the February 26

and May 7, 2019 statements regarding possible future investment in or acquisition of Passport,

30

risks of Passport insolvency, and expectations regarding Passport's financial condition. The cautionary language is thus "meaningful" under the statute. *In re Harman Int'l Indus., Inc. Sec. Litig.*, 791 F.3d 90, 103 (D.C. Cir. 2015) ("Congress did not require the cautionary statement warn of '*all*' important factors, so long as 'an investor has been warned of risks of a significance similar to that actually realized,' such that the investor 'is sufficiently on notice of the danger of the investment to make an intelligent decision about it according to her own preferences for risk and reward.'"); *Miller v. Champion Enters. Inc.*, 346 F.3d 660, 677–78 (6th Cir. 2003) (dismissing statement regarding company's finances even though company knew that a major customer was facing financial difficulties because company had warned of specific challenge facing customer's industry); *In re Sinclair Broad. Grp., Inc. Sec. Litig.*, 2020 WL 571724, at *12 (D. Md. Feb. 4, 2020) (dismissing forward-looking statement related to a merger that failed for lack of regulatory approval because the 10-K risk factors explained that regulatory approval was uncertain, and thus the statements were "meaningful" under the Safe Harbor).

Because the statements the Court found to be forward-looking are accompanied by meaningful cautionary language, they are inactionable under the first prong of the Safe Harbor, without regard to whether Plaintiffs can show Williams had "actual knowledge" of the statement's falsity. *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 766 (2d Cir. 2010) ("The safe harbor is written in the disjunctive," so a "defendant is not liable if the forward-looking statement is identified and accompanied by meaningful cautionary language *or*" if "the plaintiff fails to prove [the statement] was made with actual knowledge" of its falsity.); *Harris v. Ivax Corp.*, 182 F.3d 799, 803 (11th Cir. 1999) (dismissing forward-looking statements without considering "actual knowledge" prong because "if a statement is accompanied by 'meaningful cautionary language,' defendants' state of mind is irrelevant"); *In re Sinclair*, 2020 WL 571724, at *12 n.20 (declining to address whether

31

defendant had "actual knowledge" because statement was accompanied by meaningful cautionary language and thus protected by the Safe Harbor).

**C.    Plaintiffs Have Failed To Allege That Williams Had "Actual Knowledge" Of The Falsity Of Forward-Looking Statements.**

Under the second prong of the Safe Harbor statute, even forward-looking statements not accompanied by meaningful cautionary language are fully protected if the plaintiff fails to plead and prove that the maker had "actual knowledge" of the statements' falsity. 15 U.S.C. § 78u-5(c)(1)(B); *City of Plantation Police Officers Pension Fund v. Meredith Corp.*, 16 F.4th 553, 557 (8th Cir. 2021) ("Liability for a forward-looking material misrepresentation requires actual knowledge that the statement is false."). The "standard is higher" for forward-looking statements, *Carlucci*, 907 F. Supp. 2d at 728, than the standard to establish scienter for other allegedly false or misleading statements, where "severe recklessness suffices," *Meredith Corp.*, 16 F.4th at 557. To adequately plead "actual knowledge," Plaintiffs must allege particularized facts that raise a strong inference that a defendant knew of the falsity of a statement. *In re Under Armour Sec. Litig.*, 342 F. Supp. 3d 658, 681 (D. Md. 2018) (same).

The TAC alleges no particularized facts that raise a logical inference that Williams believed his February 26, 2019 forward-looking statements to be false when he made them. As the MTD Order found, Plaintiffs barely met even the lower recklessness standard for Williams' scienter by holding "Plaintiffs have narrowly met their burden as to . . . scienter." MTD Order at 67. None of the new allegations in the TAC speaks to Williams' knowledge (as opposed to that of lower-level employees); they are therefore insufficient to raise an inference of Williams' actual knowledge.

Plaintiffs start by alleging that " ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████."

32

¶ 156.  Plaintiffs attempt to support this conclusory assertion by first referencing a January 15, 2019 email ███████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

█████████████████████████████.” *Id.* Because the email says only that █████████████

█████████████████████████—but does not list that as one of the approaches currently under consideration—the TAC fails to allege the falsity of Williams' statement that an acquisition of Passport was not "currently being evaluated." *See* ¶ 179.  Nor does it allege that Williams had actual knowledge of such an evaluation.

Plaintiffs next point to a January 23, 2019 email █████████████████████████

█████████████████████████████████████████████████████████████

████████████████████████” ¶ 157.  Importantly, the TAC ███████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████.” *See* Ex. 9 (Jan. 23, 2019 Peterson email to his direct reports).  This document thus contributes nothing to an inference of any knowledge by Williams. *See Brave Mar. Corp., Inc. v. Glob. Mktg. Sys., Inc.*, 661 F. App'x 249, 251 (4th Cir. 2016) ("In the event of conflict between the bare allegations of the complaint and any exhibit attached to the complaint, the exhibit prevails.") (internal citation omitted).

Next, Plaintiffs point to a February 20, 2019 email, also from Evolent's COO, attaching an executive summary addressing solvency scenarios for Passport.  ¶ 158.  Plaintiffs quote a bullet point stating that "███████████████████████████████████████████████

████████████████████████████████████████.” *Id.* This email sheds no light on whether Williams had actual knowledge, because it was not sent to Williams.  Ex. 10 (Feb. 20, 2019 Peterson email).  Moreover, ██████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████████████████ '"). Given that Plaintiffs can't allege that Williams ever received these documents, and the documents are not at odds with the statements made on February 26, 2019, Plaintiffs have failed to plead Williams' actual knowledge of the falsity of the challenged forward-looking statement on that date. *See Pompano Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands Corp.*, 732 F. App'x 543, 546–47 (9th Cir. 2018) (holding that CEO's participation in discussions about "financing options and flexibility" did not support "actual knowledge" of the falsity of a statement, six months later, that the company was not seeking "equity financing" and had sufficient access to capital).

Plaintiffs' support for Williams' "actual knowledge" of the falsity of the May 7, 2019 statement regarding Passport's progress towards financial improvement is non-existent. Williams stated, "we believe that Passport is making solid progress towards improving its financial performance" and "we remain hopeful that the combination of the new reimbursement rates, administrative and clinical improvements and efforts to strengthen the balance sheet will provide a path for Passport to be successful long term." ¶ 184. The TAC cites to no Passport 2019 financial information showing an absence of progress, much less that Williams knew that to be the case, and there are no allegations that he was not "hopeful" that the referenced measures would "provide a path for Passport to be successful long term." *Id.* All Plaintiffs can muster is an allegation that "███████████████████████████████████████████████████ ██████████████████████████," ¶ 186, which has no bearing on the accuracy of the challenged statement or Williams' knowledge. "[P]laintiffs have not alleged any particularized facts showing

34

that defendants had actual knowledge that any of the forward-looking statements were false or misleading—the substantive standard they must meet to blow the statements out of the Safe Harbor." *In re CIENA Corp. Sec. Litig.*, 99 F. Supp. 2d 650, 661–62 (D. Md. 2000). The February 26, 2019 and May 7, 2019 forward-looking statements must be dismissed from the case.

## CONCLUSION

For the reasons set forth herein, Defendants respectfully submit that the claims based on (i) the unnamed "full risk partner" statements, (ii) the May 11, 2018 statements, and (iii) the Forward-looking Statements on February 26, 2019 and May 7, 2019, should be dismissed.

Dated: December 21, 2021

Respectfully submitted,

*/s/ Robert R. Vieth*
Robert R. Vieth, Esq. (VSB No. 24304)
Abigail J. Johansen (VSB No. 93585)
**HIRSCHLER FLEISCHER, PC**
8270 Greensboro Drive, Suite 700
Tysons Corner, VA 22102
Tel: (703) 584-8366
Fax: (703) 584-8901
rvieth@hirschlerlaw.com
ajohansen@hirschlerlaw.com
*Local counsel for Defendants*

Ashley C. Parrish
Virginia Bar No. 43089
**KING & SPALDING LLP**
700 Pennsylvania Avenue, NW, Suite 200
Washington, DC 20006-4707
Tel: (202) 626-2627
Fax: (202) 626-3737
aparrish@kslaw.com

Paul R. Bessette, *pro hac vice*
Michael J. Biles, *pro hac vice*
Jill R. Carvalho, *pro hac vice*
**KING & SPALDING LLP**
500 W. 2nd Street, Suite 1800

Austin, TX 78701
Tel: (512) 457-2050
Fax: (512) 457-2100
pbessette@kslaw.com
mbiles@kslaw.com
jcarvalho@kslaw.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2021, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF Filing System on all parties in this case.


/s/ Robert R. Vieth
Robert R. Vieth (VSB No. 24304)