**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| PLYMOUTH COUNTY RETIREMENT SYSTEM and OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, | § § § § § § | |
| | § | Case No. 1:19-cv-01031-MSN-TCB |
| Plaintiffs, | § § | |
| | § | CLASS ACTION |
| v. | § § | |
| EVOLENT HEALTH, INC., FRANK WILLIAMS, NICHOLAS MCGRANE, and SETH BLACKLEY, | § § § § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR PARTIAL**
**MOTION TO DISMISS THE THIRD AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

ARGUMENT.........................................................................................................................2

    I.     The Newly Added Unnamed "Risk Partner" Statements Are Not Actionable..............2

        A.  Loss Causation Is Not Adequately Pled For the Risk Partner Statements...............3

            1)  The Prior Loss Causation Ruling Does Not Apply to the ██████████ ██████████████████████████████████ ...................................................5

            2)  The Legal Authority Plaintiffs Cite Is Unavailing............................................5

        B.  Plaintiffs Fail to Plead the Materiality of the Risk Partner Statements. ..................8

    II.    The Court Should Again Dismiss Blackley's May 11, 2018 Statement.......................9

        A.  There is No Basis For Reconsidering the Dismissal of Blackley's Statement. .......9

        B.  Plaintiffs Do Not Adequately Plead Falsity, Scienter, Or Loss Causation,
            Any One of Which Requires Dismissal. .................................................................10

            1)  The Falsity of Blackley's Statement Is Not Alleged With Particularity..........10

            2)  Plaintiffs Fail to Raise a Strong Inference of Scienter for Blackley's
               Statement.........................................................................................................13

    III.   The Forward-Looking Statements are Protected by the PSLRA Safe Harbor
        and Must Be Dismissed. ............................................................................................15

        A.  The Forward-Looking Statements Are Protected By the Safe Harbor's First
            Prong. ....................................................................................................................16

        B.  Under Controlling Fourth Circuit Precedent, the Statements Were
            Immaterial as a Matter of Law, and thus Protected Under the Safe Harbor..........18

        C.  Even if Not Protected Under the Safe Harbor's First Prong, the Statements
            are Inactionable Because Plaintiffs Fail To Sufficiently Plead That Williams
            Had Actual Knowledge His Statements Were False..............................................18

CONCLUSION......................................................................................................................20

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*In re Acterna Corp. Sec. Litig.*,
   378 F. Supp. 2d 561 (D. Md. 2005)......................................................................................14

*In re Computer Scis. Corp.*,
   890 F. Supp. 2d 650 (E.D. Va. 2012) ..................................................................................13

*Dura Pharmaceuticals, Inc. v. Broudo*,
   544 U.S. 336 (2005).............................................................................................................3, 7

*In re DXC Tech. Co. Sec. Litig.*,
   2020 WL 3456129 (E.D. Va. June 2, 2020) ..........................................................................3

*Eslick v. Cenlar, Cent. Loan Admin. & Reporting*,
   2017 WL 4836541 (E.D. Va. Oct. 3, 2017).........................................................................19

*Greenhouse v. MCG Capital Corp.*,
   392 F.3d 650 (4th Cir. 2004) .................................................................................................8

*Harris v. Ivax Corp.*,
   182 F.3d 799 (11th Cir. 1999) .......................................................................................16, 17

*Hedick v. Kraft Heinz Co.*,
   2021 WL 3566602 (N.D. Ill. Aug. 11, 2021) ........................................................................6

*Hillson Partners Ltd. P'ship v. Adage, Inc.*,
   42 F.3d 204 (4th Cir. 1994) .................................................................................................18

*Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.*,
   432 F. Supp. 2d 571 (E.D. Va. 2006) ..................................................................................12

*Katyle v. Penn Nat'l Gaming, Inc.*,
   637 F.3d 462 (4th Cir. 2011) .................................................................................................4

*Lee v. Active Power*,
   29 F. Supp. 3d 876 (W.D. Tex. 2014).....................................................................................6

*Lerner v. Nw. Biotherapeutics*,
   273 F. Supp. 3d 573 (D. Md. 2017)......................................................................................13

*Magruder v. Halliburton Co.*,
   2009 WL 854656 (N.D. Tex. Mar. 31, 2009)........................................................................5

*Marsden v. Select Med. Corp.*,
   2007 WL 518556 (E.D. Pa. Feb. 12, 2007) ...........................................................................1

*Marsh Grp. v. Prime Retail, Inc.*,
46 F. App'x 140 (4th Cir. 2002) ...................................................................................8, 16, 18

*In re Maximus, Inc. Sec. Litig.*,
2018 WL 4076359 (E.D. Va. Aug. 27, 2018).............................................................................3

*In re Merrill Lynch & Co., Inc.*,
273 F. Supp. 2d 351 (S.D.N.Y. 2003).....................................................................................11

*Meyer v. Greene*,
710 F.3d 1189 (11th Cir. 2013) ................................................................................................4

*Ottmann v. Hanger Orthopedic Grp., Inc.*,
353 F.3d 338 (4th Cir. 2003) ..................................................................................................14

*Pipefitters Local No. 636 Defined Beneficiary Plan v. Tekelec*,
2013 WL 1192004 (E.D.N.C. Mar. 22, 2013) ........................................................................13

*Plymouth Cty. Ret. Ass'n v. Primo Water Corp.*,
966 F. Supp. 2d 525 (M.D.N.C. 2013) ....................................................................................18

*Raab v. Gen. Physics Corp.*,
4 F.3d 286 (4th Cir. 1993) ............................................................................................2, 8, 18

*In re Sinclair Broad. Grp., Inc. Sec. Litig.*,
2020 WL 571724 (D. Md. Feb. 4, 2020) .................................................................................17

*Singer v. Reali*,
883 F.3d 425 (4th Cir. 2018) ..............................................................................................5, 12

*Smith v. Circuit City Stores, Inc.*,
286 F. Supp. 2d 707 (E.D. Va. 2003) ........................................................................................8

*In re Stone & Webster, Inc. Sec. Litig.*,
2007 WL 9822735 (D. Mass. Sept. 7, 2007) .............................................................................7

*In re Take-Two Interactive Sec. Litig.*,
551 F. Supp. 2d 247 (S.D.N.Y. 2008)....................................................................................7, 8

*Teachers' Ret. Sys. of La. v. Hunter*,
477 F.3d 162 (4th Cir. 2007) ....................................................................................................3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)................................................................................................................14

*United States v. Smithfield Foods, Inc.*,
969 F. Supp. 975 (E.D. Va. 1997) ..........................................................................................10

iii

**Statutes**

15 U.S.C. § 78u-4 ...........................................................................................................5

15 U.S.C. § 78u-5 (Safe Harbor) ...............................................................15, 16, 17, 18

**Other Authorities**

Federal Rule of Civil Procedure 8 ................................................................................13

**INTRODUCTION**

Plaintiffs' Opposition ("Opp.") goes to great lengths to avoid Defendants' arguments demonstrating that the challenged alleged misstatements in the Third Amended Complaint ("TAC") are not actionable as a matter of law. Plaintiffs repeat broad sections of the TAC, and selectively misquote or mischaracterize internal documents produced in discovery, all while skirting their own pleading deficiencies. Defendants have shown in their motion—and will confirm below—that the challenged alleged misstatements do not meet the PSLRA's rigorous pleading standards and must be dismissed.

First, the two "new" statements regarding savings by an unnamed "risk partner" made on January 10 and May 11, 2018 are not actionable. Plaintiffs fail to adequately plead loss causation because the market ██████████████████████████████, and therefore the two proffered "██████████████████████████████████████████████████████████ ███████. "The market cannot react to information of which it is unaware." *Marsden v. Select Med. Corp.*, 2007 WL 518556, at *5 (E.D. Pa. Feb. 12, 2007). Plaintiffs never grapple with this fatal deficiency. Plaintiffs also fail to show that the two new alleged misstatements—which say nothing about Evolent's own financial performance and were not commented upon by analysts or investors—were material.

Second, for the May 11, 2018 Blackley statement referencing MLR improvement (as reflected in Passport's 2016–2017 financial statements), the Opposition fails to show any valid reason this Court should reconsider its prior dismissal. Plaintiffs admit that they do not claim Passport's financials were inaccurate, and they do not point to any factual allegations showing that Blackley's statement about those financials was false. Nor have Plaintiffs raised the required strong inference of Blackley's scienter where he was merely repeating information gleaned from Passport's own publicly-filed financial statements. This statement must again be dismissed.

1

Finally, the Court should reconsider the erroneous conclusion that the statements made by Williams on February 26, 2019 and May 7, 2019 were actionable under the PSLRA despite finding they were forward-looking statements. The PSLRA's Safe Harbor statute plainly requires the Court to consider the cautionary language preceding a forward-looking statement, even if it is not cited in the complaint. These forward-looking statements are inactionable under the PSLRA because the accompanying cautionary language from Evolent's referenced 10-Ks is "meaningful"—it sets forth specific, detailed disclosures of risk factors that could cause future results to materially differ from those addressed in the Passport-related forward-looking statements. And even if Plaintiffs could somehow show the language was not "meaningful," the forward-looking statements are still inactionable. The statements are immaterial as a matter of law under Fourth Circuit precedent because they were not "worded as guarantees," *Raab v. Gen. Physics Corp.*, 4 F.3d 286, 290 (4th Cir. 1993), and also inactionable because Plaintiffs did not plead particular facts showing that Williams had "actual knowledge" of the statements' falsity.

For these reasons, and the others more fully stated below and in Defendants' Opening Brief, Defendants' Partial Motion to Dismiss should be granted.[1]

## ARGUMENT

### I.   THE NEWLY ADDED UNNAMED "RISK PARTNER" STATEMENTS ARE NOT ACTIONABLE.

Plaintiffs challenge two "new" statements regarding "$100M+ in identified annualized savings" achieved by an unnamed "risk partner" that they pulled from the corner of one slide in lengthy slideshow presentations made on January 10, 2018 and May 11, 2018. *See* ¶¶ 162, 166. Defendants have demonstrated that these statements are not actionable because Plaintiffs failed to

---

[1] Defendants' Memorandum in Support of Their Partial Motion to Dismiss the Third Amended Complaint (Dkt. 162) is referred to herein as the "Opening Brief" or "Br.". Defendants use the same abbreviations used in the Opening Brief.

plead either loss causation or materiality. Br. 9–16. Specifically, because the statements █████ ██████████, Plaintiffs cannot allege that the two corrective disclosures in this case—both specific to Passport—██████████████████████. Plaintiffs also fail to adequately allege the materiality of these statements, which pertain only to savings at an anonymous "risk partner" and do not reflect Evolent's own financial results or performance.

The Opposition fails to meaningfully engage with Defendants' arguments. For instance, although Defendants did not move to dismiss on the grounds of falsity or scienter, Plaintiffs nonetheless devote nearly two pages of their brief to arguing that "falsity and scienter [are] adequately pled for these statements." Opp. 17–18. When Plaintiffs finally get around to addressing the loss causation and materiality arguments Defendants actually raised, they do nothing to rebut them.

**A.     Loss Causation Is Not Adequately Pled For the Risk Partner Statements.**

A corrective disclosure must be assessed in light of the misrepresentation it supposedly corrects—otherwise, it would be impossible to determine whether a "causal link between the defendant's misrepresentation and the decline in the stock value" exists. *Teachers' Ret. Sys. of La. v. Hunter*, 477 F.3d 162, 188 (4th Cir. 2007). The Supreme Court confirmed this mode of analysis in *Dura Pharmaceuticals, Inc. v. Broudo* by requiring plaintiffs to distinguish losses caused by fraud from losses caused by "the tangle of [non-fraud] factors affecting [a stock's] price." 544 U.S. 336, 343 (2005). Accordingly, courts assess loss causation on a statement-by-statement and corrective-disclosure-by-corrective-disclosure basis. *See, e.g.*, *In re DXC Tech. Co. Sec. Litig.*, 2020 WL 3456129, at *11 (E.D. Va. June 2, 2020) (criticizing Plaintiffs for making allegations "pertaining to loss causation" that are "not specifically aligned with any of the 38 [challenged] Statements"); *In re Maximus, Inc. Sec. Litig.*, 2018 WL 4076359, at *16–*18 (E.D. Va. Aug. 27, 2018) (parsing corrective disclosures to determine whether they relate back to alleged

misrepresentations); *Meyer v. Greene*, 710 F.3d 1189, 1197 (11th Cir. 2013) ("We address each [disclosure] in turn, and explain why none qualify as a corrective disclosure."). Applying these principles here confirms that Plaintiffs' loss causation allegations are deficient.

The theory of loss causation that Plaintiffs advance is a familiar one. They "(1) identify[] a 'corrective disclosure;'" "(2) [allege] that [Evolent's] stock price dropped soon after the corrective disclosure;" and (3) argue "it was the corrective disclosure" that caused "a substantial amount of the price drop." *Meyer*, 710 F.3d at 1196–97 (explaining how securities plaintiffs typically attempt to allege loss causation); *see also* ¶¶ 209–15 (setting out Plaintiffs' loss causation allegations). But this approach cannot work for the " ███████████████████████████████████████████ ███████████████████████ , whereas the challenged statements did not mention Passport. *See* Dkt. 149 at 4 (" ████████████████████████████████████████ .").

Since Evolent did not ████████████████████████████████████████████ ████████████████ , neither Plaintiffs nor the market ████████████████████████████████ ████████ " Indeed, Plaintiffs admit that they failed to allege these statements in any of their prior complaints because, in their words, " ███████████████████████████████████████ ██████████████████████████████████████ . *Id.* Therefore, the two Passport-related corrective disclosures alleged by Plaintiffs could ████████████████████████████████████████████ . A corrective disclosure "must *at least relate back to the misrepresentation and not to some other negative information about the company*." *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 473 (4th Cir. 2011) (emphasis in original) (citation omitted). Plaintiffs have failed to adequately plead loss causation because of the mismatch between the corrective disclosures—which relate specifically to Passport—and the challenged statements referring only to an ████████████ ████████

4

**1)      The Prior Loss Causation Ruling Does Not Apply to the ████ ██████████████████████████████████.**

Plaintiffs argue that the Court's prior MTD Order "already held that the two corrective disclosures alleged in the TAC establish loss causation." Opp. 22 (citing MTD Order 71–73).  That holding does Plaintiffs no good here.  Loss causation must be pled for ***each*** alleged false statement.  *See* 15 U.S.C. § 78u-4(b)(4) (imposing on plaintiff "the burden of proving" that each "act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks" recovery); *Magruder v. Halliburton Co*., 2009 WL 854656, at \*15 (N.D. Tex. Mar. 31, 2009) (dismissing complaint where plaintiffs "fail[ed] to connect the alleged misrepresentations with *correlative* corrective disclosures") (emphasis added).  The fact that the Court found loss causation adequately pled for the Passport-specific statements sustained in the MTD Order does not resolve the question of whether loss causation is adequately pled for the new challenged statements that do not mention Passport at all.

The MTD Order stated that "the truth that Defendants fraudulently withheld from the market is that Evolent did not lower administrative and clinical costs for its clients—*namely Passport*—but instead, Evolent raised costs for its clients, *as demonstrated by the circumstances with Passport*."  Opp. 22 (quoting MTD Order 71) (emphasis added).  It follows that the "truth" of a statement regarding ██████████████████████████████████ ██████████████████████, couldn't be revealed by disclosure of "the circumstances with Passport."

**2)      The Legal Authority Plaintiffs Cite Is Unavailing.**

Plaintiffs cite case law generally holding that a securities plaintiff need not identify a "fact-for-fact [corrective] disclosure of the relevant truth" to "establish[] loss causation."  Opp. 23 (quoting *Singer v. Reali*, 883 F.3d 425, 446 (4th Cir. 2018)); *see also id.* ("[P]laintiffs may satisfy the loss causation pleading requirement without identifying a corresponding, mirror-image prior

5

representation for every disclosure.") (quoting *Hedick v. Kraft Heinz Co.,* 2021 WL 3566602, at *17 (N.D. Ill. Aug. 11, 2021)).[2]  These general propositions do nothing to resolve the question presented here: whether an alleged misstatement about an ██████████████████████████ ████████████████████████████████.  Plaintiffs' other authorities fare no better. For example, they cite *Lee v. Active Power* for the proposition that loss causation can be established even where a misrepresentation refers only to an "unnamed 'distribution partner.'"  *See* Opp. 23 (citing 29 F. Supp. 3d 876, 890 (W.D. Tex. 2014)).  But *Lee* did not consider loss causation—in fact, those words appear nowhere in the opinion.  It considered whether "Plaintiffs adequately pleaded [that] these statements were false."  29 F. Supp. 3d at 890.  And in finding that falsity was adequately pled, the court accepted plaintiffs' argument that the statement about a "distribution partner" "clearly refer[ed] to Digital China" considering the context in which that statement was made.  *See id.* (given defendant's "suggest[ion] that the 'partner' could be a primary fulfillment channel for not just China but Asia generally" the statement "*must b*e a reference to Digital China") (emphasis added).  In this case, Plaintiffs did not plead and do not argue that the market somehow ████████████████████████████████████████ in the challenged statements.  Nor could they—Plaintiffs themselves had ██████████████████████████████████ ████████████████████████████████.

<hr>

[2] The *Hedick* court rejected an argument premised on the plaintiffs' failure to "explain exactly which alleged misstatements the 'corrective disclosures' corrected," but in that case, the court was satisfied that plaintiffs had identified corrective disclosures through which "the truth about" the defendant's "destructive cost reductions that were ravaging its infrastructure" was "revealed." 2021 WL 3566602 at *16–*17.  Additionally, the *Hedick* plaintiffs had identified "analyst comments to back up the causal connections" by "attribut[ing] the Company's bad news to problems with its cost-cutting strategy."  *Id.*  The corrective disclosures in *Hedick* were thus causally connected to the misrepresentations, which is not present here.

Finally, Plaintiffs' attempts to distinguish Defendants' cases also fail.  Plaintiffs call *In re Stone & Webster, Inc. Securities Litigation* "inapposite" (Opp. 23 n.8), but that decision examined the very issue presented here.  The plaintiffs in *In re Stone* claimed the defendant concealed losses on a construction project called the "TPPI project."  2007 WL 9822735, at *1 (D. Mass. Sept. 7, 2007).  The court held that a corrective disclosure that merely mentioned "a 'cost overrun' on a key *unnamed* project [was] insufficient to alert the market to the accounting fraud with respect to the TPPI project."  *Id.* at *9 (emphasis added).  Plaintiffs try to avoid this holding by selectively quoting from and incorrectly paraphrasing the opinion.  They claim that the "court stated it was 'not imperative that the press release expressly mention' the project by name" (Opp. 23 n.8), but that is *not* what the opinion said.  The full quotation is: "[W]hile it is not imperative that the press release ***expressly mention the accounting for the TPPI project***, it must at least contain enough information to 'allow the truth to leak out.'"  2007 WL 9822735 at *9 (quoting *Dura*, 544 U.S. at 342) (emphasis added).  And the court concluded that the mention of a "cost overrun" on an "unnamed project" was insufficient to clear that bar.  So too here.

Plaintiffs similarly misconstrue *In re Take-Two Interactive Securities Litigation*, 551 F. Supp. 2d 247, 282–83 (S.D.N.Y. 2008).  They claim that the *Take-Two* court "<u>found</u> loss causation from the announcement of an SEC investigation that was pleaded as a corrective disclosure."  Opp. 24 n.10 (emphasis in original).  But Plaintiffs neglect to mention that there were *two* corrective disclosures at issue in that case: the first was the company's announcement that the Manhattan DA had subpoenaed "certain compensation and human resources documents" and the second was an announcement that the SEC was investigating the company's "stock option grants."  *In re Take-Two, 551 F. Supp. 2d at 282*.  Because the fraud alleged in that case centered on "Take-Two's options-granting practices," the court *rejected* the corrective disclosure based on the Manhattan

DA's subpoena, finding that it had only a "distant relationship" to the misrepresentations alleged by plaintiffs. *Id.* at 285–86 ("[T]he nexus between the June 26 Disclosure and the Options Backdating Fraud is far too tenuous to permit the inference that the former unveiled some part of the fraudulent nature of the latter."). But the court accepted the more specific corrective disclosure relating to the SEC's investigation of Take-Two's options-granting practice—precisely because it bore a closer relationship to the information that was allegedly concealed. *See id.*

**B.    Plaintiffs Fail to Plead the Materiality of the Risk Partner Statements.**

Plaintiffs attempt to establish materiality by comparing "$100 million in savings" at an unnamed Evolent client to Evolent's own "$435 million in total revenue in 2017." Opp. 20–21. But this is an apples-to-oranges comparison; Plaintiffs utterly fail to plead any connection between an unnamed client's savings and Evolent's revenue. Moreover, there is no legal or factual basis to analyze materiality by comparing $100 million in savings achieved by an Evolent *client* to Evolent's *own* revenues. There are no facts in the TAC showing that *Evolent's* revenues or profits depended on whether a given customer achieved a specific amount of savings. Absent pleading such facts, Plaintiffs cannot demonstrate that the "risk partner" statements were material relative to *Evolent's* overall financial position. And contrary to Plaintiffs' assertion that materiality should not be resolved at the motion to dismiss stage (*see* Opp. 5 (citing Second Circuit authority)), the Fourth Circuit has recognized that there is "no shortage of cases [that] make clear that materiality may be resolved by a court as a matter of law." *Greenhouse v. MCG Capital Corp*., 392 F.3d 650, 657 (4th Cir. 2004); *see also Marsh Grp. v. Prime Retail, Inc*., 46 F. App'x 140, 146–47 (4th Cir. 2002) (affirming dismissal of securities fraud case on materiality grounds); *Raab*, 4 F.3d at 290 (same); *Smith v. Circuit City Stores, Inc.,* 286 F. Supp. 2d 707, 720–21 (E.D. Va. 2003) (dismissing complaint for failure to plead materiality of alleged misrepresentations, among other reasons).

Plaintiffs also make the curious argument that materiality is satisfied simply because "Passport was Evolent's single most important client." Opp. 19. But this argument fails because the "███████████████████████████████. Likewise, the cases Plaintiffs cite in support of this argument are unpersuasive because they all involved situations in which (i) the information allegedly misrepresented pertained to an important, *identified* customer, and/or (ii) that important relationship was *threatened* or at risk. *See id.* Those factors are not present here.

Plaintiffs also assert that Evolent was getting "questions . . . from investors on Passport's increase in expenses" (Opp. 20), but that allegation in no way establishes materiality for ████ ███████████████████████████. Notably, Plaintiffs do not allege (i) that any investor asked questions about the "risk partner" statements or (ii) that any market analyst reported on or covered the statements. Plaintiffs' failure to plead that any analyst or investor made mention of this slide is hardly surprising. The Court can readily see that the presentations containing the "risk partner" statements confined them to a single clause located in the bottom corner of a single slide in lengthy decks that together span 114 pages. *See* Ex. 3, May 11, 2018 presentation, at 17; Ex. 4, January 10, 2018 presentation, at 11. Plaintiffs have not adequately alleged that these isolated, anonymized statements are material to Evolent.[3]

## II.     THE COURT SHOULD AGAIN DISMISS BLACKLEY'S MAY 11, 2018 STATEMENT.

### A.     There is No Basis For Reconsidering the Dismissal of Blackley's Statement.

Although the prior MTD Order did not provide a specific rationale for dismissing Blackley's statement, after an exhaustive review of the Second Amended Complaint ("SAC"), the

---

[3] Plaintiffs' remaining arguments also are meritless. For instance, Plaintiffs argue the "risk partner" statements are material because they "concerned the singular purpose of Evolent's business—to lower . . . costs for health plans." Opp. 19. This argument proves too much. Because lowering costs for health plans is at the heart of Evolent's business, then under Plaintiffs' theory, *everything* Evolent says about saving its clients' money *must be* material. That is not the law.

Order was clear that it was not among the statements that were adequately pled. "[T]he court should not reevaluate the basis upon which it made a prior ruling, if the moving party merely seeks to reargue a previous claim." *United States v. Smithfield Foods, Inc.*, 969 F. Supp. 975, 977 (E.D. Va. 1997) (citation omitted). This is exactly what Plaintiffs are trying to do here. Because they have not shown any of the narrow circumstances that would warrant the extraordinary remedy of reconsideration, the Court should dismiss—again—Blackley's May 11, 2018 statement.[4]

**B.    Plaintiffs Do Not Adequately Plead Falsity, Scienter, Or Loss Causation, Any One of Which Requires Dismissal.**

**1)    The Falsity of Blackley's Statement Is Not Alleged With Particularity.**

The Opposition asserts that there is "no question" Blackley's statement was false, arguing that the Court "already held a substantially similar misstatement—namely, [Williams's] September 2018 statement that Evolent's services had 'helped to generate over $100 million' in annual cost savings for Passport—was materially false and misleading." Opp. 24. That is not what the Court held, but more importantly, Blackley's May 2018 statement is far narrower and more specific than Williams's September 2018 statement. It refers directly and only to (i) the MLR metric derived from Passport's financial statements, and (ii) its corresponding impact reported in Passport's financial statements. *See* Br. 3.

Plaintiffs mischaracterize Defendants' argument as contending only that Blackley's statement was not false because he was "merely reciting a common, widely used managed care organization financial metric (MLR) based on Passport's annual financial statements." Opp. 25 (quoting Br. 18). But Defendants actually argued both that Plaintiffs failed to plead that Passport

---

[4] The TAC also realleges a May 11, 2018 statement by Williams regarding the partnership with Passport despite the fact that the Court expressly dismissed the statement on puffery grounds. *See* ¶ 164; MTD Order 50 (expressly addressing and dismissing Williams's May 11, 2018 statement). Plaintiffs do not address this statement in their Opposition and thus concede it is not actionable.

*did not* actually experience a 5% improvement in MLR and that Plaintiffs failed to adequately plead that Passport *did not* achieve a $75 million improvement to Passport's bottom line.  Br. 3–4, 18–19.  Therefore, Defendants' arguments go to the insufficiency of the allegations as to both the stated MLR improvement and the financial impact of that improvement.

Plaintiffs next contend that Defendants' chart (Br. 18) "on its face does not even show a $75 million improvement in MLR, or in any other metric, let alone Passport's 'bottom line.'"  Opp. 26.  This is incorrect: MLR is a ratio, not an amount.  And while the chart only illustrates the 5% MLR improvement, Plaintiffs ignore that Passport's net income—the actual "bottom line" of its financial report—*indisputably improved by roughly $75 million*.  *See* Exs. 1 and 2 (2016 and 2017 Annual Statements, p. 4 line 32) (showing a net loss of $57.9 million in 2016 and net income of $17.1 million in 2017—a delta of $75 million).  Notably, neither the Opposition nor the TAC alleges that Passport's financial statements do not show a 5% MLR improvement or a $75 million increase in net income.

Plaintiffs make the significant concession that their allegations "do not rely on a contention that Passport's financial statements were false."[5]  This is fatal to their claim because Passport's financial statements are the source of the financial metrics repeated in Blackley's statement.  *See In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 360 (S.D.N.Y. 2003) (dismissing claim based on issuance of allegedly misleading analyst reports where plaintiffs made "no allegation that any of the company-related information relied on by the analysts in preparing the reports was in any way false").  Plaintiffs also argue that Blackley's statement was false "because Defendants falsely claimed to be saving Passport massive amounts of money while [] operational problems were in

---

[5] Opp. 28 n.14. Plaintiffs effectively concede that the Court can consider Passport's annual financial statements.

fact causing Passport's financial decline." Opp. 27 n.12. But Blackley did not say that Evolent was saving Passport massive amounts of money. And, citing confidential witness statements and other documents complaining of inadequate savings does not challenge the accuracy of Passport's financial statements or Blackley's specific statement reciting metrics from those financials.

Unable to allege falsity, Plaintiffs are left with an omission-based claim, arguing that "once Blackley chose to speak about the purported savings Evolent was providing to Passport's 'bottom line,' he was obligated to disclose all material information about that subject needed to make it not materially misleading." Opp. 25. First, the allegedly omitted information has nothing to do with the accuracy of the MLR and bottom-line improvements from Passport's financial statements, and is thus not necessary to avoid making those statements misleading. Second, the types of information Plaintiffs contend are missing—Evolent's fees and Passport's expenses (Opp. 20)— are publicly available and need not be disclosed. *See Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571, 580 (E.D. Va. 2006) ("Securities laws require disclosure of information that is not otherwise in the public domain, not information that has already been publicly . . . disclosed.") (citation omitted).[6] Evolent's fees are disclosed in its 10-Ks, and Passport's expenses are disclosed in its annual statements. Thus, the omission claim also fails.

Finally, Plaintiffs contend that the accuracy of Passport's financial statements—which they do not contest—"has little bearing on whether Evolent was responsible for $75 million in 'bottom line' savings for Passport." Opp. 27. Plaintiffs again mischaracterize Blackley's statement. Blackley said "you look at the results of the partnership, Evolent-Passport[.]" ¶ 165. He did not allocate responsibility between the two entities, and Passport's financial results indisputably reflect

---

[6] The cases Plaintiffs cite are inapplicable because they do not address the purported omission of *publicly* available information. *See, e.g.*, *Singer*, 883 F.3d at 440 (finding company was obligated to disclose a *non-public* reimbursement scheme).

results during the partnership, including roughly a 5% MLR improvement and $75 million improvement in Passport's net income.

**2)      Plaintiffs Fail to Raise a Strong Inference of Scienter for Blackley's Statement.**

Plaintiffs claim the "TAC is replete with facts supporting Defendant Blackley's scienter" (Opp. 28), but the cited facts simply describe Blackley's (unremarkable) general involvement in the business.  Plaintiffs argue that "[i]t is not plausible that Blackley would have been unaware of the same facts Evolent's other top executives knew by May 2018—*i.e.*, ███████████████ ████████████████████████████████████████████"  Opp. 29.   But Rule 8 "plausibility" is not the standard for alleging scienter under the PSLRA; instead, Plaintiffs must plead with particularity facts giving rise to a strong inference that Blackley's statement was made with scienter.  That "Blackley was a co-founder of Evolent and President of its main operating subsidiary" (Opp. 28) fails to raise any inference of scienter, much less a strong one.  *See Lerner v. Nw. Biotherapeutics*, 273 F. Supp. 3d 573, 593 (D. Md. 2017) ("[A] defendant's position of control in a company, without more, is insufficient to establish scienter.").  In fact, "[c]ourts have routinely held that corporate executives' access to information and internal affairs is not enough to demonstrate scienter." *Id.*  Nor may Plaintiffs rely on the bare assertion that "Blackley, along with other top Evolent executives, ██████████████████ ████████████████████████████████"  Opp. 29.  "Mere allegations of regular management meetings provide 'weak support at best' for an inference of scienter."  *Pipefitters Local No. 636 Defined Beneficiary Plan v. Tekelec*, 2013 WL 1192004, at *11 (E.D.N.C. Mar. 22, 2013) (quoting *In re Computer Scis. Corp.*, 890 F. Supp. 2d 650, 663–64 (E.D. Va. 2012)).

Plaintiffs also notably fail to argue that Blackley stood to gain anything from his alleged misstatement.  They do not allege that Blackley engaged in inside stock stales or "show [any] concrete benefits" whatsoever that Blackley "could [have] realized by one or more of the false

13

statements" attributed to him. *Ottmann v. Hanger Orthopedic Grp., Inc.*, 353 F.3d 338, 352 (4th Cir. 2003). Plaintiffs' glaring failure to allege any facts "establishing a motive for [Blackley] to engage in securities fraud cuts against" an inference of scienter. *In re Acterna Corp. Sec. Litig.*, 378 F. Supp. 2d 561, 577 (D. Md. 2005).

Further, Plaintiffs' allegations of scienter are divorced from the content of Blackley's statement repeating objective information from Passport's financial statements. Plaintiffs attempt to manufacture an inference that Blackley's statement was knowingly false by citing an internal email from February 2019—10 months later—in which Blackley discussed whether Evolent could

███████████████████████████████████████████████████████████

████████████████████████████ '" ¶ 151; Opp. 29. Of course, whether, in February 2019, Evolent could justifiably claim to have ██████████████████████████████

██████ " is distinct from whether, in May 2018, Passport's financials showed MLR and bottom-line improvements, as Blackley stated. Thus, the cited email fails to demonstrate scienter.

In sum, Plaintiffs fail to establish a "strong inference of scienter" that outweighs "possible competing inferences," including "plausible nonculpable explanations for the defendant's conduct." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323–24 (2007). The more compelling inference here is that Blackley was simply commenting on information from Passport's publicly reported financial results that Plaintiffs do not challenge—not that he intended to deceive Evolent's investors.[7]

---

[7] Defendants also explained that loss causation is not adequately alleged as to Blackley's statement because neither corrective disclosure is related to the subject matter of that statement—i.e., Passport's MLR improvement and its financial impact. *See* Br. 25–26. Plaintiffs attempt to dodge the issue by claiming that Defendants "misread" the complaint to be alleging that the statement about Passport's MLR was false. Opp. 29 n.16. But of course, that is *precisely* what Plaintiffs claim is false, and the corrective disclosures do not address Passport's 2017 MLR or bottom line improvements.

**III.    THE FORWARD-LOOKING STATEMENTS ARE PROTECTED BY THE PSLRA SAFE HARBOR AND MUST BE DISMISSED.**

Plaintiffs seek to base their claims on two statements made by Williams during earnings calls held on February 26 and May 7, 2019, which the prior MTD Order found to be "forward-looking." MTD Order 53–56. On the February 26 call, Williams was questioned about Evolent's potential "exposure" or "balance sheet risk if [Passport] were to go insolvent" and about whether Evolent might acquire Passport "[i]f there was a tail event." ¶ 179. Williams said that Evolent would not have "any broader exposure" and that acquiring Passport—if it were to go insolvent—was not "currently being evaluated," while noting it was "hard to speculate" about that. *Id*. On the May 7 call, Williams stated, "we believe that Passport is making solid progress towards improving its financial performance" and "we remain hopeful" recent improvements "will provide a path for Passport to be successful long term." ¶ 184.

The Court held that these statements relate to "future economic performance" and therefore qualify as forward-looking. MTD Order 53–56 (citing statutory language). But the Court erroneously concluded that it could not review the accompanying cautionary language because Plaintiffs did not specifically quote it in the SAC, and thus held that the statements did not qualify for Safe Harbor protection. *Id.* at 54. The Safe Harbor, however, *requires* courts to consider cautionary language when defendants raise it as part of their defense. 15 U.S.C. § 78u-5(e). Once Evolent's cautionary statements are considered, it is obvious that the language is "meaningful," and consequently the forward-looking statements are inactionable under the Safe Harbor and must be dismissed. And even if the cautionary language could be disregarded, the statements still must be dismissed under the PSLRA because Plaintiffs have failed to sufficiently plead that the statements were material under Fourth Circuit precedent, or that Williams had "actual knowledge" his statements were false when made.

**A.      The Forward-Looking Statements Are Protected By the Safe Harbor's First Prong.**

Citing the Fourth Circuit's *Marsh* precedent, the MTD Order correctly concluded that these statements qualify as forward-looking because they relate to "future economic performance."[8] MTD Order 55–56 (citing § 78u-5(i)(1)(C) and *Marsh*, 46 F. App'x at 146–47).  The February 26, 2019 statement about whether a potential future acquisition was in Evolent's "strategic lens" is also a "statement of the plans and objectives of management for future operations." § 78u-5(i)(1)(B).  Plaintiffs assert that these statements "self-evidently" cannot be forward-looking because some contain "present facts."  Opp. 31–32.  But the MTD Order addressed this argument directly when discussing the Fourth Circuit's observation that "all projections can be characterized as presently held belief," while recognizing nonetheless such statements may still be about "future economic performance."  MTD Order 53 (citing *Marsh*, 46 F. App'x at 146–47).  Similarly, the Eleventh Circuit held that a "plaintiffs' purely grammatical argument to the contrary—that a present-tense statement cannot predict the future—is unpersuasive."  *Harris v. Ivax Corp.*, 182 F.3d 799, 805 (11th Cir. 1999).

---

[8] Plaintiffs' argument that the MTD Order did not find the statements to be forward-looking is plainly specious and should be rejected.  *See* Opp. 31 n.17.  Citing *Marsh,* the Order specifically held that Williams's February 26 statements were forward-looking: "This second set of statements, like the first . . . concern 'future economic performance.'"  MTD Order 55.  The Order recognized that the May 7 statement contained "Williams's projections for Passport's future financial performance, and thus could be considered forward-looking."  *Id.* at 56.  More importantly, as to all of these statements, the Order proceeded to analyze whether they were "accompanied by meaningful cautionary statements" or material, corresponding to the Safe Harbor's next steps once a statement has been deemed forward-looking.  *Id.* at 54–56.  If the Court had not found these statements to be forward-looking, then it would not have proceeded to that second phase of analysis.  The Order's subsequent statement "that this statement is not forward-looking, and based on the arguments presented, is actionable" plainly summarized the Court's conclusion that the statement was not protected under the Safe Harbor because it could not determine it was (i) accompanied by meaningful cautionary language, or (ii) immaterial.  *Id*. at 30. It was not a determination that the statement was not forward-looking in general.

Rather than focusing myopically on grammar, a statement should be considered forward-looking when its truth is "only verifiable by seeing how [it] hold[s] up in the future." *Id.*  Applying this standard, Williams's statements about Evolent lacking "broader exposure" if Passport were, in the future, to become insolvent is clearly forward-looking.  The same is true of Williams's statement about a potential acquisition "[i]f there was a tail event for Passport." ¶ 179.  In addition, Williams prefaced his statement about a potential acquisition by saying, "it's pretty hard to speculate on that," thus alerting investors that speculation about the future would follow.  ¶ 179.  Finally, the May 7 statement in which Williams expressed "hope" that improvements "*will provide a path for Passport to be* successful long term" obviously pertains to the future.  ¶ 184 (emphasis added).  The MTD Order correctly concluded that these statements qualify as forward-looking under the PSLRA.

These oral, forward-looking statements were identified as such and accompanied by reference to meaningful cautionary language contained in a "readily available written document," such as an SEC filing.  15 U.S.C. § 78u-5(c)(2), (3).  *See* Br. 29–31.  Plaintiffs argue that referring investors to recent SEC filings is insufficient, but courts in the Fourth Circuit hold otherwise.  *Compare* Opp. 33 *with In re Sinclair Broad. Grp., Inc. Sec. Litig.*, 2020 WL 571724, at *12 n.20 (D. Md. Feb. 4, 2020) (finding similar language to Evolent's meaningful).  A cautionary statement that refers to factors in "recent" SEC filings and a specific reference to the most recent quarterly filing satisfies this element of the Safe Harbor statute.  *Id.*; *see also* Br. 29–31 (collecting cases).  As described in the Opening Brief, the referenced risk factors and warnings relate to the very factors that Plaintiffs contend led to investor losses.[9]  Br. 29–32.

---

[9] The wish list of "specific problems" that Plaintiffs claim should have been disclosed is irrelevant. Cautionary language need not address all eventualities to be meaningful.  *Harris*, 182 F.3d at 807.

**B.      Under Controlling Fourth Circuit Precedent, the Statements Were Immaterial as a Matter of Law, and thus Protected Under the Safe Harbor.**

The Safe Harbor also protects forward-looking statements if they are "immaterial" even when not accompanied by meaningful cautionary language. 15 U.S.C. § 78u-5(c)(1)(A)(ii). Under well-established Fourth Circuit caselaw, statements of future performance not worded as guarantees or supported by specific facts are immaterial as a matter of law. *Marsh*, 46 F. App'x. at 146–47 (collecting cases) (statements that company was committed to paying dividends were "not guarantees and lack the factual specificity necessary to make them actionable in this circuit."); *Hillson Partners Ltd. P'ship v. Adage, Inc.*, 42 F.3d 204, 212 (4th Cir. 1994); *Raab*, 4 F.3d at 290.

Although the MTD Order (at 44-45) cites *Raab* on this point, it mistakenly failed to apply this precedent when it examined the statements it deemed forward-looking. *Id.* at 53–56. Because these forward-looking statements are clearly not worded as "guarantees" (e.g., "it's pretty hard to speculate on that"; "it's just not in our strategic lens at this point"; "we believe that Passport is making solid progress towards improving its financial performance"; "we remain hopeful" actions will "provide a path for Passport to be successful long term"), under *Marsh, Raab* and their progeny, the statements at issue are immaterial as a matter of law and therefore protected under the Safe Harbor.

**C.      Even if Not Protected Under the Safe Harbor's First Prong, the Statements are Inactionable Because Plaintiffs Fail To Sufficiently Plead That Williams Had Actual Knowledge His Statements Were False.**

Williams's forward-looking statements must be dismissed under the second prong of the Safe Harbor for the independent reason that Plaintiffs fail to adequately plead that Williams had *actual knowledge* they were false when made. 15 U.S.C. § 78u-5(c)(1)(B)(i); *Plymouth Cty. Ret.*

---

Nevertheless, Evolent specifically warned that if Passport became insolvent, Evolent's finances would be impacted and that Passport and other clients could be harmed by a reduction in rates from a government payor. Br. 30, Ex. 7 at 15–16 (2017 10-K), and Ex. 8 at 15–16 (2018 10-K).

18

*Ass'n v. Primo Water Corp.,* 966 F. Supp. 2d 525, 556 (M.D.N.C. 2013). First, Plaintiffs rely on three documents in their bid to show Williams had actual knowledge that his statements regarding a potential acquisition of Passport were false. The first is a January 2019 document—not cited in the TAC but attached as Exhibit 1 to the Opposition ("Opposition Ex. 1")—which contains the phrase "███████████████" Opp. 14, 32.[10] The TAC Document and Opposition Ex. 1 are versions of ████████████████████ ███████. The cover email to Opposition Ex. 1 explains that ███████████████ ██████████████████████████" Opp. Ex. 1 at EVH00108214. ██████ ███████████████████████████████████████. TAC Doc. at EVH00072989; Opp. Ex. 1 at EVH00108218. Plaintiffs make much of the fact that ██████████████████████. *See* Opp. 6, 32–33. But the receipt of a document ████████████████████ ████████████████████████████ ███████████████████, a health plan with nearly $2 billion in revenue. To "evaluate" such a transaction is an in-depth process, and there is no logical inference from this document that Evolent was engaging in such a process at that time.

Neither the TAC nor the Opposition alleges that Williams even *received* the other two documents that Plaintiffs point to as proof of Williams's purported actual knowledge of the falsity

---

[10] The TAC references a document sent on January 23, 2019, entitled "████████████████," that contains the ████████████" phrase. TAC ¶ 157; MTD Ex. 9 ("TAC Document"). Defendants' Opening Brief correctly noted that this document was not sent to Williams. Plaintiffs now pivot to Opposition Ex. 1, █████████████████████ █████████████████████████████). Neither document supports the contention that Williams's February 26, 2019 statement was false, much less that he knew it was false. In any event, Opposition Ex. 1 cannot be considered because Plaintiffs cannot amend their complaint in a brief opposing a motion to dismiss. *Eslick v. Cenlar, Cent. Loan Admin. & Reporting,* 2017 WL 4836541, at *3 (E.D. Va. Oct. 3, 2017) (internal citation omitted).

of the acquisition strategy statement.  These include a ███████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████.  Opp. 30–31; ¶¶ 156, 158; *see also* Ex. 10.  The cursory

references to ██████████████████████████████████████████████████████

████████████████████████████████████████████████.  ¶ 156.

Second, neither the TAC nor the Opposition identifies factual allegations calling into question Williams's statement that Evolent did "not have any broader exposure" to balance sheet risk if Passport became insolvent.  Because Evolent did not own any part of Passport, Passport's insolvency could only affect Evolent's revenue (and thus its income statement), not other aspects of its balance sheet.  Plaintiffs have not shown, and cannot show, that Williams actually believed that Evolent did face broader balance sheet risk, but made the statement anyway.

Third, neither the TAC nor the Opposition identifies factual allegations showing that Williams had actual knowledge that Passport's financial picture was *not* improving.  The only supporting "fact" Plaintiffs reference is that Evolent ultimately acquired 70% of Passport.  ¶ 185.  But this fact demonstrates nothing about whether Passport's financial picture was improving when Williams made his statement.  Further, the TAC itself suggests there was a financial improvement at Passport because its revenues had increased due to the April 2019 Kentucky "revers[al]" of the 3.2% rate cuts.  ¶ 122.  Thus, Plaintiffs plead no particularized facts to suggest that Williams believed his statement to be false at the time it was made.

## CONCLUSION

For the reasons set forth herein as well as in Defendants' Opening Brief, the Court should grant Defendants' Partial Motion to Dismiss the Third Amended Class Action Complaint.

20

Dated: February 10, 2022

Respectfully submitted,

/s/ Robert R. Vieth
Robert R. Vieth, Esq. (VSB No. 24304)
Abigail J. Johansen (VSB No. 93585)
**HIRSCHLER FLEISCHER, PC**
8270 Greensboro Drive, Suite 700
Tysons Corner, VA 22102
Tel: (703) 584-8366
Fax: (703) 584-8901
rvieth@hirschlerlaw.com
ajohansen@hirschlerlaw.com

*Local counsel for Defendants*

Ashley C. Parrish
Virginia Bar No. 43089
**KING & SPALDING LLP**
700 Pennsylvania Avenue, NW, Suite 200
Washington, DC 20006-4707
Tel: (202) 626-2627
Fax: (202) 626-3737
aparrish@kslaw.com

Paul R. Bessette, *pro hac vice*
Michael J. Biles, *pro hac vice*
Jill R. Carvalho, *pro hac vice*
**KING & SPALDING LLP**
500 W. 2nd Street, Suite 1800
Austin, TX 78701
Tel: (512) 457-2050
Fax: (512) 457-2100
pbessette@kslaw.com
mbiles@kslaw.com
jcarvalho@kslaw.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 10, 2022, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF Filing System on all parties in this case.

 */s/ Robert R. Vieth*
Robert R. Vieth (VSB No. 24304)
HIRSCHLER FLEISCHER, PC
8270 Greensboro Drive, Suite 700
Tysons Corner, VA 22102
Tel:  (703) 584-8366
Fax:  (703) 584-8901
rvieth@hirschlerlaw.com

*Local counsel for Defendants*
