# Exhibit 5

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

ALEXANDRIA DIVISION

PLYMOUTH COUNTY RETIREMENT    *
SYSTEM and OKLAHOMA POLICE    *
PENSION AND RETIREMENT        *
SYSTEM, Individually and On   *
Behalf of All Others          *
Similarly Situated,           *
                              *    Case No.
     Plaintiffs,              *    1:19-cv-01031-MSN-TCB
                              *
VS.                           *
                              *
EVOLENT HEALTH, INC., FRANK   *
WILLIAMS, NICHOLAS MCGRANE,   *
and SETH BLACKLEY,            *
                              *
     Defendants.              *

*******************************************

ORAL AND VIDEOTAPED DEPOSITION OF

CHAD COFFMAN

MAY 9, 2022

(Reported Remotely)

*******************************************

ORAL AND VIDEOTAPED DEPOSITION OF CHAD COFFMAN, produced as a witness at the instance of the Defendants and duly sworn, was taken in the above-styled and numbered cause on the 9th day of May, 2022, from 8:50 a.m. to 12:37 p.m., before Marsha Yarberry, Certified Shorthand Reporter in and for the State of Texas, reported remotely by machine shorthand, in Chicago, Illinois, pursuant to the Federal Rules of Civil Procedure.

Page 1

APPEARANCES (Via Videoconference)


FOR THE PLAINTIFFS:

        Ms. Sara DiLeo
        SAXENA WHITE PA
        10 Bank Street, 8th Floor
        White Plains, New York  10606
        914-437-8551
        sdileo@saxenawhite.com

FOR THE DEFENDANTS:

        Mr. Peter Starr
        Mr. Michael Smith
        KING & SPALDING LLP
        1180 Peachtree Street, NE, Suite 1600
        Atlanta, Georgia  30309
        404-572-4600
        pstarr@kslaw.com
        mrsmith@kslaw.com

ALSO PRESENT:

        Mr. Josh Stivers, Videographer

Page 2

THE VIDEOGRAPHER:  Here begins the deposition of Chad Coffman.  Today's date is May 9th, 2022.  Time is 8:50.

Counsel, please identify yourselves for the record and state whom you represent.

MR. SMITH:  Good morning.  This is Michael Smith for Defendants, Evolent Health, Inc., Frank Williams, Nicholas McGrane, and Seth Blackley.

MR. STARR:  Peter Starr, King & Spalding, LLP, also on behalf of Defendants.

MS. DILEO:  Sara DiLeo from Saxena White on behalf of the plaintiffs and the witness.

THE VIDEOGRAPHER:  Will the court reporter please swear in the witness.

(Witness sworn)

CHAD COFFMAN, having been first duly sworn, testified as follows:

EXAMINATION

QUESTIONS BY MR. SMITH:

Q.  Good morning, Mr. Coffman.  As I just introduced myself, I'm Michael Smith with King & Spalding for the defendants.  Could you please state your full name and business address for the record?

A.  Sure.  It's Chad William Coffman.  My business address is 140 South Dearborn Street, Suite 1000,

Page 4

complaint, which was not what I was asked to focus on,

how each of -- each of the misstatements relate to each

of these things that are listed in paragraph 135.  That

just wasn't part of what I was asked to do.

Q.    (By Mr. Smith)  Well, the second amended

complaint was the operative complaint when you put in

your first report of -- in October of 2021, correct?

A.    That's my understanding, yes.

Q.    Okay.  And you see where in paragraph 135 of

that complaint the plaintiffs allege that the -- all of

the material misstatements and omission -- omissions

artificially inflated the price of Evolent's stock.

I'm just asking you if you understand that that is the

allegation made in paragraph 135.

MS. DILEO:  Objection to form.

THE WITNESS:  Well, I mean, you're

putting the word "all" in there that's not in there.  I

mean, I -- it's certainly clear they're alleging that

there were misstatements and omissions that -- that

conceal the relevant truth about Evolent's business and

their prospects.

Q.    (By Mr. Smith)  Well, the word -- pardon me.

The word "all" is in there.  You see it?  "All of which

artificially inflated the price of Evolent's common

stock."

Page 69

A.    Yes.    Sorry.    I do see the word "all" in there.    I mean, look, this paragraph says what it says. I'm not sure what you're getting at with it, but it certainly -- they were alleging a series of misstatements and omissions in this complaint and that those -- collectively those misstatements and omissions inflated the common stock.

Q.    Mr. Coffman, have you had the opportunity to review the court's orders on Defendants' motions to dismiss?

A.    I certainly recall reading that at one point, yes.

Q.    Do you know how many of the statements were dismissed in the first motion to dismiss order?    This is the motion to dismiss the second amended complaint.

A.    I don't recall how many were dismissed, no.

Q.    Do you remember how many survived -- how many statements the court said survived that motion to dismiss?

A.    No.    That was not the focus of -- of my study. I don't know the answer to that.

Q.    I'll represent to you that the first -- the first motion to dismiss order ruling on the motion to dismiss the second amended complaint sustained four sets of statements.    So if you look at the third

Page 70

actually were any misstatements.  I was just asking is there an economically coherent logic to -- to why Plaintiffs are alleging the relevant truth being concealed could inflate the stock price and that -- and concluded it was and that the -- and that the standard well-accepted out-of-pocket methodology that I described could apply to those claims of that nature.

Q.   So it didn't matter to you whether the order on the motion to dismiss dismissed 90 percent of the claim -- of the claimed false statements or 10 percent of the claimed false statements.  That just wasn't important to you in your analysis of whether there's a common methodology to assess damages classwide.

MS. DILEO:  Objection to form.

THE WITNESS:  That's correct, because in my experience, again, what -- what ultimately an economist is going to have to do to analyze damages is to value the relevant truth that was concealed.  And, you know, in my experience different alleged misstatements or omissions could be in or out of a case for a whole host of reasons that have nothing to do with valuing the concealed information.  There could be different questions about who made the statements, what -- whether they had scienter, whether, you know, there are statute of limitations issues.  Like there's

Page 73

all sorts of reasons statements might be in or out that have absolutely nothing to do with whether out-of-pocket damages methodology is applicable in the case.

And like I said, I -- I gained a general understanding of what the alleged relevant truth was that was concealed and determined that that, you know, logic from an economic logic point of view could create an inflated stock price. I wasn't engaged in analyzing the specific misstatements or the specific number of misstatements or why they were included or excluded. That wasn't necessary for the opinion I did.

Q. (By Mr. Smith) Let's turn to paragraph 81 of your report. I want to ask you about the term "corrective disclosure."

A. I'll get there. Just a second. Okay.

Q. Specifically, how do you define a corrective disclosure, Mr. Coffman?

A. I think the best way to define it is based on the words I used earlier in that sentence, which is disclosures that revealed the relevant truth that was concealed by the alleged material omissions and/or misrepresentations.

Q. Okay. And what do you mean by "relevant truth"?

Page 74

Q.   We already saw -- in paragraph 135 we already discussed the allegation that all of the alleged misrepresentations inflated the price of Evolent stock. I'd like to turn to paragraph 210 of the second amended complaint, and I'll read the portion of that paragraph that I'm going to ask questions about.

A.   Okay.  I'm there.

Q.   It says "When Defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of Evolent common stock fell precipitously as the prior artificial inflation dissipated."  And then if you go forward to paragraph 234 of the second amended complaint --

A.   Okay.

Q.   -- part of that paragraph reads "Lead plaintiffs and the other members of the class have suffered damages in that, in direct reliance on the integrity of the market, they paid artificially inflated prices for Evolent common stock, which inflation was removed from its price when the true facts became known."  And I will represent to you that the third amended complaint contains identical allegations in paragraphs 211 and 235.

So from the sections of those two

Page 81

paragraphs I just read you, do you understand that both the second amended complaint and the third amended complaint allege that inflation from all of the alleged misstatements and omissions alleged in those complaints was dissipated by price declines following the corrective disclosures?

MS. DILEO:  Objection to form.

THE WITNESS:  That's my general understanding of their allegations in these documents.

Q.   (By Mr. Smith)  So you do not explain in your report how your common damages methodology will separate out the inflation attributable to the dismissed statements from the inflation attributable to the surviving misstatements; is that right?

A.   That's not something I undertook, and it's not entirely clear that would even be a relevant thing that would have to be done if the remaining misstatements concealed the same relevant truth that the -- that all the alleged misstatements -- original misstatements were alleged to have concealed.  So, again, what -- what a loss causation expert ultimately is trying to value is the value of the relevant -- the relevant truth that was concealed from the market, and it may be that many alleged misstatements concealed the same thing, and so inclusion or exclusion of any one of

Page 82

plaintiffs are still alleging that the stock price was inflated by misstatements and that the stock price fell when the relevant truth was disclosed, so the standard well-accepted damages methodology in 10b5 cases applies just as -- just as well to the third amended complaint that it did to the second amended complaint, so there was no need to change any of the words in that section.

Q.    I think you mentioned that this section of your report not only is not different from the first report that you gave in this case, that it's not different from other reports you have given in other cases.  Is that correct?

A.    Yes, that's absolutely true.

Q.    Let's look at a report that you have given in another case.  I'm going to mark as Exhibit 591 an expert report you submitted in the Conduent litigation. And when that pops up I would like to focus on paragraphs 79 through 84, which is the damages/common methodology section of your Conduent report.

A.    Okay.

Q.    So if you review those pages, do you agree that the paragraphs from the Conduent report are virtually identical to the corresponding paragraphs in your April 8th report in this case?

A.    Yeah.  There could have been subtle changes,

Page 94

tailored than either of those.

So it really depends on the nature and circumstances of -- of the claim and an analysis of what the likely price reaction would have been at an earlier point in time and the factors that might drive that.

Q.   Is the basic idea that you take the amount of inflation after the corrective disclosures and march them back in time to the beginning of the class period?

A.   Again, when you say march it back, you know, that could be done on a number of different bases.  It could be on a constant dollar basis, it could be on a constant percentage basis, or in certain cases as part of discovery there's relevant information that comes out of the company that allows you to do it on a much more refined basis where you're not just, you know, like you say, marching it back on a constant dollar percentage basis, but there's actually relevant facts that you can use to evaluate how the stock price reaction would have been different.

In particular one type of case that comes to mind is a restatement case where you actually know how the financials would have been stated differently at different points in time, and you can use that to model how the inflation would have evolved over time.

Page 97

So there's many different potential approaches, but they all start from the -- the starting -- or most start -- virtually all of them start from the starting point of -- you know, the most reliable proxy for how much the stock price was inflated starts from looking at how the stock price reacts when the truth is ultimately told.

Q.   And in all of those scenarios you take that inflation, whether constant dollar or whether percentage or otherwise, and you take it back in time from the corrective disclosure towards the -- to the beginning of the class period.

A.   Or at least at points during the class period. There certainly have been cases where I've determined, you know, that there wasn't sufficient support to take the inflation all the way back to the beginning of the class period or that there were inflation-creating dates along the way that had to be addressed.  So -- or that certain claims only come into being at some point in time.

So -- but generally speaking you're right in that you're essentially using the drop at the end as a proxy somehow for how to backcast the inflation, but, you know, I think every case can be a little bit different in terms of what the right way to think about

Page 98

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

PLYMOUTH COUNTY RETIREMENT    *
SYSTEM and OKLAHOMA POLICE    *
PENSION AND RETIREMENT        *
SYSTEM, Individually and On   *
Behalf of All Others          *
Similarly Situated,           *
                              *    Case No.
     Plaintiffs,              *    1:19-cv-01031-MSN-TCB
                              *
VS.                           *
                              *
EVOLENT HEALTH, INC., FRANK   *
WILLIAMS, NICHOLAS MCGRANE,   *
and SETH BLACKLEY,            *
                              *
     Defendants.              *

     ***************************************
              REPORTER'S CERTIFICATION
                  CHAD COFFMAN
                   MAY 9, 2022
     ***************************************

     I, Marsha Yarberry, Certified Shorthand
Reporter in and for the State of Texas, hereby certify
to the following:
     That the witness, CHAD COFFMAN, was duly sworn
by the officer and that the transcript of the oral
deposition is a true record of the testimony given by
the witness.
     I further certify that pursuant to FRCP
Rule 30(f)(1) that the signature of the deponent:

                                        Page 116

_____ was requested by the deponent or a party before the completion of the deposition and is to be returned within 30 days from date of receipt of the transcript.  If returned, the attached Changes and Signature pages contain any changes and the reasons therefor;

__xx__ was not requested by the deponent or a party before the completion of the deposition.

I further certify that the amount of time used by each party at the deposition is as follows:

Mr. Michael Smith - 3 hours.

I further certify that I am neither counsel for, related to, nor employed by any of the parties or attorneys in the action in which this proceeding was taken.  Further, I am not a relative or employee of any attorney of record, nor am I financially or otherwise interested in the outcome of the action.

Subscribed and sworn to on this the 11th day of May, 2022.

*Marsha Yarberry*

MARSHA YARBERRY, TEXAS CSR 5100

Expiration Date:  07/31/22

Veritext Legal Solutions

Firm Registration No. 571

300 Throckmorton, Suite 1600

Fort Worth, Texas  76102

800-336-4000

Page 117