UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| PLYMOUTH COUNTY RETIREMENT SYSTEM and OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, | §<br>§<br>§<br>§<br>§<br>§ | Case No. 1:19-cv-01031-MSN-TCB |
| Plaintiffs, | §<br>§<br>§ | CLASS ACTION |
| v. | §<br>§ | |
| EVOLENT HEALTH, INC., FRANK WILLIAMS, NICHOLAS MCGRANE, and SETH BLACKLEY, | §<br>§<br>§<br>§ | |
| Defendants. | §<br>§ | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR LEAVE TO PRESENT LIVE EXPERT TESTIMONY AND TO FILE SUPPLEMENTAL BRIEF OPPOSING CLASS CERTIFICATION**

Defendants respectfully request that the Court grant Defendants leave to present live testimony from their expert economist, Lucy Allen, at the June 24, 2022 hearing on Plaintiffs' Motion for Class Certification (Dkt. 195). Specifically, Defendants seek to present testimony from Ms. Allen relating to two of the key arguments made in their Opposition to Plaintiffs' Motion for Class Certification (Dkt. 213, the "Opposition" or "Opp."): (i) that Plaintiffs have failed to proffer a methodology for calculating classwide damages in a manner consistent with their theories of liability, and (ii) that none of the alleged misrepresentations relating to cost savings had an impact on Evolent's stock price—which means that the presumption of class-wide reliance on which Plaintiffs rely does not apply to alleged misstatements made prior to February 26, 2019.[1]

---

[1] Counsel for Defendants conferred with Plaintiffs' counsel prior to filing this Motion, and Plaintiffs' counsel indicated that they oppose the relief requested herein. Plaintiffs' objection is

As demonstrated in Defendants' Opposition and Ms. Allen's expert report (Dkt. 213-8, the "Allen Rpt."), the price impact and damages issues relevant here are technical and complex. They are also critical to the resolution of this motion for class certification. Without price impact or a viable damages methodology, Plaintiffs' putative class cannot be certified. *See Halliburton Co. v. Erica P. John Fund, Inc*., 573 U.S. 258, 278 (2014) ("In the absence of price impact, *Basic*'s fraud-on-the-market theory and presumption of reliance collapse."); *Comcast Corp. v. Behrend*, 569 U.S. 27, 27–28 (2013) (holding that certification is inappropriate where the damages model does not "fit" the theory of liability); *In re Rail Freight Fuel Surcharge Antitrust Litig*., 725 F.3d 244, 253–54 (D.C. Cir. 2013) ("No damages model, no predominance, no class certification."). Accordingly, Defendants submit that live testimony[2] should be permitted to assist the Court in conducting the rigorous analysis that is required to decide class certification.

In addition to their request for leave to present live testimony from Ms. Allen, Defendants respectfully seek leave to file a short supplemental brief responding to two reports Plaintiffs' expert, Mr. Coffman, has written (or will have written) before the June 24 hearing: (i) Mr. Coffman's May 27, 2022 report regarding the calculation of damages in this case, among other issues, and (ii) Mr. Coffman's forthcoming rebuttal report regarding the price impact of the alleged misrepresentations, which Defendants expect to be served on June 14, 2022 and filed with the

---

based in part on the fact that their expert, Chad Coffman, is not available on June 24, 2022—the date for which the hearing is currently scheduled—despite Plaintiffs' recent representation that he was available the week of June 20 for deposition. To the extent Plaintiffs wish to present live testimony from their expert at the class certification hearing, Defendants would not oppose rescheduling the hearing.

[2] Defendants expect that only two witnesses would testify—the parties' experts, Lucy Allen and Chad Coffman—and the entire hearing could be completed in no more than 4 hours. In the event the Court cannot accommodate a proceeding of that length on June 24, Defendants are willing to meet and confer with Plaintiffs regarding an alternative date to propose to the Court.

Court on June 17, 2022 (in connection with Plaintiffs' class certification reply brief).  Defendants ask the Court to permit them to file a short supplemental brief—not to exceed six pages in length—addressing this new evidence.

## ARGUMENT

### I.     COURTS ROUTINELY HOLD EVIDENTIARY HEARINGS TO DECIDE CLASS CERTIFICATION.

Plaintiffs cannot obtain class certification unless they "affirmatively demonstrate [their] compliance" with Rule 23.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011).  Thus, class certification is proper "only if 'the trial court is satisfied, after a rigorous analysis, that [Rule 23's] prerequisites . . . have been satisfied.'"  *Comcast*, 569 U.S. at 27–28 (quoting *Wal-Mart*, 564 U.S. at 350–51).

As part of this "rigorous analysis," courts in the Fourth Circuit routinely conduct evidentiary hearings. *See Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 384–85 (4th Cir. 2009) ("When deciding a motion for class certification, a district court does not accept the plaintiff's allegations in the complaint as true; rather, an evidentiary hearing is typically held on the certification issue."); *Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 269 (4th Cir. 2010) (same); *Thompkins v. Key Health Med. Sols., Inc.*, 2015 WL 1292228, at *12 (M.D.N.C. Mar. 23, 2015) ("At bottom, given the 'rigorous analysis' required of Rule 23 . . . and the state of the arguments and evidence currently before the Court, discovery and an evidentiary hearing would be needed on Plaintiffs' class certification motion."). *See also* 5 Moore's Federal Practice – Civil § 23.82 (2018) (noting that courts typically "conduct a hearing and allow the parties to present evidence on any factual issues that must be resolved so that the court can determine whether the prerequisites for class certification under Rule 23 have been met"); *Morrison v. Booth*, 730 F.2d

- 3 -

642, 643–44 (11th Cir. 1984) (reversing district court's class certification decision where it was made without an evidentiary hearing). The Court should follow that longstanding practice here.

II.   **HOLDING AN EVIDENTIARY HEARING WITH LIVE TESTIMONY IS PARTICULARLY APPROPRIATE IN THIS CASE DUE TO THE TECHNICAL NATURE OF THE ISSUES RAISED BY PLAINTIFFS' MOTION FOR CLASS CERTIFICATION.**

An evidentiary hearing involving live testimony from experts is especially warranted in complex cases involving technical evidence—which is decidedly true here.  Both parties have submitted competing expert reports from financial economists, which incorporate event studies and other complex analyses. And Defendants challenge price impact—a fundamental tenet of the fraud-on-the-market presumption of reliance—and whether Plaintiffs' proposed damages model satisfies *Comcast*.  These two issues are nuanced, technical, and integral to the Court's analysis under Rule 23.

As to price impact, the Supreme Court has held that a defendant *must* be allowed the opportunity to rebut the fraud-on-the-market presumption of reliance at the class certification stage by introducing "evidence showing that the alleged misrepresentation did not actually affect the stock's market price—that is, that the misrepresentation had no 'price impact.'"  *Halliburton*, 573 U.S. at 282.  Just last year, the Supreme Court reaffirmed that "a court cannot conclude that Rule 23's requirements are satisfied without considering *all* evidence relevant to price impact." *Goldman Sachs Grp. Inc. v. Ark. Teacher Ret. Sys.*, 141 S. Ct. 1951, 1961 (2021).  With respect to the damages issue, the Supreme Court has similarly explained that a model "purporting to serve as evidence of damages in [a] class action must measure only those damages attributable to [Plaintiffs'] theory." *Comcast*, 569 U.S. at 35.  And if Plaintiffs' "model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Id.*

Plaintiffs wish to avoid close scrutiny of the pivotal expert testimony on class certification, and want the court to reach its decision "on the papers." While the parties have already submitted briefing, opening written expert reports, and other record evidence, Defendants maintain that holding an evidentiary hearing with live testimony is the most effective and efficient method for the Court to probe the evidence submitted by the parties. Live testimony provides a forum for the parties' experts to explain their analyses and answer questions from the parties and the Court. The opportunity for cross-examination may also assist the Court in assessing the experts' credibility. For these reasons, courts have recognized the value of evidentiary hearings in connection with class certification of securities cases like this one and routinely conduct such hearings. *See, e.g.*, *Ark. Teachers Ret. Sys. v. Goldman Sachs Grp., Inc.*, 879 F.3d 474, 486 (2d Cir. 2018) (encouraging district court to hold an evidentiary hearing on class certification involving price impact arguments); *George v. China Auto. Sys., Inc.*, 2013 WL 3357170, at \*9 (S.D.N.Y. July 3, 2013) (denying class certification and observing that an evidentiary hearing at which the parties examined and cross-examined the proffered experts was "particularly useful in this matter to assist the Court in understanding the parties' analyses and to assess the credibility of the analytical work performed"). Indeed, given the evidence-based nature of the Rule 23 inquiry, Defendants must be permitted to present testimony from their expert. *See In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, 192–93 (3d Cir. 2020) (reversing district court's grant of class certification because district court failed to conduct a "rigorous analysis" of "competing expert reports" and resolve the "competing factual disputes on which the reports rely").

Resolving conflicts between the parties' experts on the following issues will be necessary to deciding this class certification motion:

- Plaintiffs' proposed damages model would attempt to measure the impact of the alleged misrepresentations on Evolent's stock price by reference to subsequent price declines on

corrective disclosure dates.  *See* Third Am. Compl. ¶¶ 210-13.  However, Defendants'
expert shows that model is not viable because no investment analyst or market participant
– *including Plaintiffs' own investment managers* – drew a connection between those price
drops and the misrepresentations they supposedly "correct."  *See* Opp. at 14-29; Allen
Rpt. ¶¶ 56-73.

- Plaintiffs' damages model, as articulated by Mr. Coffman, has remained the same even as
  the nature of Plaintiffs' case has changed.  In particular, Mr. Coffman's damages model
  would measure alleged artificial inflation in Evolent's stock price based on *all* twenty-two
  of the challenged statements Plaintiffs alleged across the Second Amended Complaint and
  Third Amended Complaint, even though only six statements remain in the case.  *See* Opp.
  at 9-14; Allen Rpt. ¶¶ 88-92.

- Whether the Cost Savings statements (the first four of the six surviving statements) had
  "price impact" such that they could support application of the *Basic v. Levinson* fraud-on-
  the-market presumption of reliance.

Plaintiffs have indicated that they will be submitting a further report from their expert economist

with their reply brief in support of class certification on June 17, 2022 to address price impact

issues.  Given that Defendants bear the burden of proof on the question of price impact (as

explained *infra*), Defendants' expert will need to testify to further address Plaintiffs' rebuttal report

and respond to questions regarding its impact.

Clearly, certifying a class has "enormous ramifications"—as it can turn "potential losses

from relatively small amounts into potentially massive exposure."  *George*, 2013 WL 3357170, at

*9.  In light of these consequences, "careful analysis of the factors under Rule 23 is required."  *Id.*

Defendants respectfully request they be given the opportunity to aid the Court's analysis by

presenting expert testimony at an evidentiary hearing.

## III.    THE COURT SHOULD PERMIT DEFENDANTS TO FILE A SHORT SUPPLEMENTAL BRIEF RESPONDING TO PLAINTIFFS' NEW EXPERT REPORTS.

Finally, Defendants respectfully seek leave to file a supplemental brief, not to exceed six

pages in length, responding to two new reports prepared by Plaintiffs' expert, Mr. Coffman.  In

accordance with the scheduling order, Plaintiffs last week served Defendants with Mr. Coffman's

May 27, 2022 report that sets forth the specific methods by which Mr. Coffman proposes to calculate damages in this case. Plaintiffs have also indicated they intend to file, in conjunction with their forthcoming reply brief on class certification, an additional report prepared by Mr. Coffman that will seek to rebut the price impact opinions articulated in Ms. Allen's report. Defendants request the opportunity to address both reports—before the Court's hearing on Plaintiff's Motion for Class Certification—by filing a supplemental brief on or before noon on June 22, 2022.

Defendants should be permitted to file a supplemental brief for several reasons. First, with respect to damages, Mr. Coffman's May 27, 2022 report confirms that Plaintiffs' damages model does not fit their theory of liability, as required by *Comcast*. Although Mr. Coffman opined in his earlier, April 8, 2022 report that "damages in this action *can be* calculated on a class-wide basis using a common methodology," *see* Dkt. 197-1 ¶ 7 (emphasis added), he did not actually explain how he would go about doing that. The May 27, 2022 report, by contrast, explains in detail how Plaintiffs propose measuring damages in this case. Importantly, Mr. Coffman's May 27, 2022 report confirms that (i) Plaintiffs have made no attempt to isolate and exclude the inflationary impact of the alleged misstatements that have been dismissed from the case and (ii) Plaintiffs have done nothing to disaggregate the effect of confounding, non-fraud information released on the two alleged corrective disclosure dates. Both of these shortcomings are critical to Defendants' *Comcast* arguments that Plaintiffs' model does not "fit" the remaining theories of liability and were raised in Defendants' Opposition. *See* Opp. at 9-14 & n.7. Defendants need to supplement the class certification record to address this new report filed after Defendants' Opposition.

Second, with respect to price impact, it is only fair for Defendants to have the final word on that issue, because Defendants bear the burden of persuasion in proving its absence. As noted

in Defendants' Opposition, once Plaintiffs have demonstrated the prerequisites for invoking the fraud-on-the-market presumption of reliance, Defendants may rebut the presumption by presenting evidence showing a lack of price impact. *See* Opp. at 14-15; *Halliburton*, 573 U.S. at 282. In doing so, Defendants bear the "burden of persuasion to prove lack of price impact by a preponderance of the evidence." *See* Opp. at 15 n.9 (citing *Goldman*, 141 S. Ct. at 1963). Plaintiffs will be submitting a new report from their expert on June 17, 2022 along with a brief opposing Defendants' price impact arguments. Accordingly, Defendants should also be permitted to include reply arguments responding to the price impact arguments raised by Mr. Coffman and Plaintiffs in their short supplemental filing.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion and enter an order (i) giving Defendants leave to present live testimony from their expert economist, and (ii) giving Defendants leave to file a six-page supplemental brief opposing class certification on or before June 22, 2022.

Dated: June 3, 2022

Respectfully submitted,

*/s/ Robert R. Vieth*
Robert R. Vieth, Esq. (VSB No. 24304)
Abigail J. Johansen (VSB No. 93585)
**HIRSCHLER FLEISCHER, PC**
8270 Greensboro Drive, Suite 700
Tysons Corner, VA 22102
Tel: (703) 584-8366
Fax: (703) 584-8901
rvieth@hirschlerlaw.com
ajohansen@hirschlerlaw.com
*Local counsel for Defendants*

Ashley C. Parrish
Virginia Bar No. 43089

**KING & SPALDING LLP**
700 Pennsylvania Avenue, NW, Suite 200
Washington, DC 20006-4707
Tel: (202) 626-2627
Fax: (202) 626-3737
aparrish@kslaw.com

Paul R. Bessette, *pro hac vice*
Michael J. Biles, *pro hac vice*
Jill R. Carvalho, *pro hac vice*
**KING & SPALDING LLP**
500 W. 2nd Street, Suite 1800
Austin, TX 78701
Tel: (512) 457-2050
Fax: (512) 457-2100
pbessette@kslaw.com
mbiles@kslaw.com
jcarvalho@kslaw.com

Michael R. Smith, *pro hac vice*
Peter M. Starr, *pro hac vice*
**KING & SPALDING LLP**
1180 Peachtree St. NE
Atlanta, GA 30309
Tel: (404) 572-4600
Fax: (404) 572-5140
mrsmith@kslaw.com
pstarr@kslaw.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2022, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF Filing System on all parties in this case.

/s/ Robert R. Vieth
Robert R. Vieth, Esq. (VSB No. 24304)
Abigail J. Johansen (VSB No. 93585)
**HIRSCHLER FLEISCHER, PC**
8270 Greensboro Drive, Suite 700
Tysons Corner, VA 22102
Tel: (703) 584-8366
Fax: (703) 584-8901
rvieth@hirschlerlaw.com
ajohansen@hirschlerlaw.com
*Local counsel for Defendants*

- 10 -