UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| PLYMOUTH COUNTY RETIREMENT SYSTEM and OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, | §<br>§<br>§<br>§<br>§<br>§ | |
| | | Case No. 1:19-cv-01031-MSN-TCB |
| Plaintiffs, | §<br>§<br>§ | |
| | | CLASS ACTION |
| v. | §<br>§ | |
| EVOLENT HEALTH, INC., FRANK WILLIAMS, NICHOLAS MCGRANE, and SETH BLACKLEY, | §<br>§<br>§<br>§ | |
| | §<br>§ | |
| Defendants. | § | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR LEAVE TO PRESENT LIVE EXPERT TESTIMONY AND TO FILE SUPPLEMENTAL BRIEF OPPOSING CLASS CERTIFICATION**

Defendants' requests to present live testimony at the hearing on class certification and to submit a short supplemental brief are entirely consistent with the evidence-based nature of Rule 23 and will aid the Court in conducting an appropriately rigorous analysis of Plaintiffs' Motion for Class Certification. While Defendants aim to amplify the record before the Court, Plaintiffs seek to circumscribe it. The Court should grant Defendants' Motion and ensure that its decision on class certification is based on all of the probative evidence relevant to that question.

**ARGUMENT**

**I.      PLAINTIFFS' PROCEDURAL ARGUMENTS SHOULD BE REJECTED.**

In their Opposition to Defendants' Motion, Plaintiffs devote several pages to collateral issues, such as the sufficiency of the parties' meet-and-confer efforts, the timeliness of Defendants'

- 1 -

Motion, and the availability of their expert. None of these arguments has merit, and they may be dispensed with quickly.

First, Plaintiffs accuse Defendants of failing to satisfy this Court's meet-and-confer requirements before filing this Motion. *See* Dkt. 221 at 5 n.3. But Defendants did confer with Plaintiffs by email, and it was clear from Plaintiffs' response that they adamantly opposed both forms of relief Defendants seek. *See* Ex. 1, 6/2/22–6/3/22 email correspondence. Notably, Plaintiffs do not now contend that further consultation among counsel could have possibly narrowed the issues in dispute, nor did Plaintiffs suggest at the time that further discussion would be fruitful. This Court has rejected arguments seeking denial of motions even in cases (unlike this one) where there has been no attempt to confer before filing, *see Wilburn v. Topgolf Int'l, Inc*., 2020 WL 6937773, at * 2, n.1 (E.D. Va. July 21, 2020), or where counsel for the moving party acts unprofessionally in the meet and confer process, *see Sydnor v. Fairfax County*, 2011 WL 1086388, at *2 (E.D. Va. Mar. 23, 2011) (dismissing action, even though defendant's counsel's email unprofessionally replied "read the rule" in response to a question about how plaintiff violated Rule 26). This is especially true where the positions of the parties are clear. *See G.D. Searle LLC v. Lupin Pharms., Inc.*, 2013 WL 12123216, at * 5-6 (E.D. Va. 2013) (addressing motion to strike experts, notwithstanding failure to meet and confer, because the parties' positions were "drastically different" and "an opportunity to meet and confer would not be beneficial or economical"). Defendants took seriously their obligation to consult with Plaintiffs before filing this motion, but Plaintiffs' immediate and strong rejection of live expert testimony and supplementation of the

record regarding a plainly relevant new report from Plaintiffs' expert quickly demonstrated the futility of further discussions.[1]

Second, Plaintiffs fault Defendants' "undue and prejudicial delay in seeking an evidentiary hearing and supplemental briefing" (Dkt. 221 at 11), but that accusation also fails. As an initial matter, Defendants filed their Motion three weeks before the class certification hearing—which is ample notice, especially given the expeditious nature of proceedings in this Court. Defendants could not have projected whether an evidentiary hearing would be necessary back when the case schedule was first implemented, or when Plaintiffs filed their opening brief. The need for an evidentiary hearing was not apparent until Plaintiffs submitted a 65-page report from their damages expert on May 27, 2022 (just one week before Defendants filed their Motion) (the "Second Coffman Report," attached as Exhibit 2). The Second Coffman Report contains important new evidence on two arguments at the heart of Defendants' Opposition to Class Certification. Initially, the new report shows that Coffman's damages model measures damages based on dismissed statements as well as on information unrelated to the alleged fraud, and thus does not "fit" the surviving theories of liability as required by *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). *See* Ex. 2 ¶¶ 68-110 (showing Coffman made no attempt to isolate and remove the inflationary effect of statements that Plaintiffs alleged inflated the share price but were dismissed from this case). Additionally, the Report explains for the first time how Plaintiffs will argue that the alleged misrepresentations had "price impact" based on the corrective disclosures, and underscores the mismatch between those disclosures and the surviving misrepresentations. *See id.* ¶¶ 68-104 (explaining new "unsustainability" theory attempting to explain how corrective disclosures which

---

[1] Defendants further note that the parties have worked amicably to resolve all discovery disputes that have arisen in this case. As evidence of that, not a single motion to compel or motion for a protective order has been filed by either party in this matter.

do not mention cost savings nonetheless show prior price inflation from the cost savings statements).[2]

Third, Plaintiffs claim that holding an evidentiary hearing would be "unduly prejudicial" because (a) Mr. Coffman "is unavailable on June 24, 2022" and (b) Plaintiffs will not be able to depose Defendants' expert, Lucy Allen, until June 14, "just three days before Plaintiffs' [class certification] reply is due." Dkt. 221 at 2. Any prejudice to Plaintiffs, however, can easily be cured by rescheduling the hearing on class certification to a date on which Plaintiffs' expert is available—something Defendants have repeatedly offered to do. *See* Ex. 1, 6/2/22–6/3/22 email correspondence at 2; Dkt. 220 at 2 n.2.[3] Defendants share Plaintiffs' interest in moving toward a resolution of the Motion for Class Certification, but that Motion should be resolved on the basis of all relevant evidence, including live testimony.

## II. PLAINTIFFS' SUBSTANTIVE LEGAL ARGUMENTS IN OPPOSITION TO HOLDING AN EVIDENTIARY HEARING ARE ALSO MERITLESS.

As explained below, holding an evidentiary hearing is commonplace, consistent with the purpose and nature of Rule 23, and would assist the Court in conducting an appropriately rigorous analysis of pivotal questions relevant to class certification.

---

[2] Additionally, Plaintiffs state they plan to submit a *third* report on damages and loss causation— which Plaintiffs term a "rebuttal damages report"—that will also likely be relevant to class certification. *See* Dkt. 221 at 4, 12. While Defendants have not yet received this report, to the extent it sets forth opinions relevant to the *Comcast* and price impact arguments in Defendants' Opposition to Class Certification, Defendants seek to file that report and include argument about it in the requested supplemental brief and at the hearing.

[3] Plaintiffs neglect to mention that after Defendants proposed making Ms. Allen available for deposition on June 14, Plaintiffs elected to move that deposition to June 15—undercutting their suggestion that time is of the essence.

**A.** **Because Class Certification Is Based on Evidence, Holding an Evidentiary Hearing Is Entirely Consistent with Rule 23.**

Although Plaintiffs cite cases holding that courts are not "literally require[d]" to hear live testimony before resolving a motion for class certification (*see* Dkt. 221 at 5), they gloss over the fact that Rule 23 is inherently an evidence-based inquiry. The Supreme Court has repeatedly held that a plaintiff must "satisfy through *evidentiary proof*" the requirements of Rule 23, *Comcast*, 569 U.S. at 33, and "affirmatively demonstrate his compliance with [Rule 23]," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The Fourth Circuit has similarly admonished district courts to "take a 'close look' at relevant matters, conduct a 'rigorous analysis,' and *make findings* in determining whether the plaintiffs have demonstrated that the requirements of Rule 23(b)(3) have been satisfied." *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 370 (4th Cir. 2004) (vacating and remanding grant of certification in securities class action "to permit the district court to conduct the analysis and make the findings required by Rule 23(b)(3)").

In fact, in their opening brief, Defendants cited Fourth Circuit decisions recognizing that in "deciding a motion for class certification . . ., an evidentiary hearing is typically held on the certification issue." *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 384–85 (4th Cir. 2009). The Fourth Circuit has even gone so far as to suggest that "an evidentiary hearing should be held . . . *by the court sua sponte*" if "necessary for a meaningful inquiry into the requisites of Rule 23." *Int'l Woodworkers of Am., AFL-CIO, CLC v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1268 (4th Cir. 1981) (emphasis added). In light of this binding authority, Plaintiffs' criticism that "none of the cases Defendants cite . . . occurred in this District" misses the mark (Dkt. 212 at 6).[4]

---

[4] In the same breath, Plaintiffs cite no fewer than *four* cases decided in California and New Jersey district courts. *See* Dkt. 221 at 6.

Nor is it the case that "evidentiary hearings on Rule 23 motions in securities class actions" are "exceedingly rare." Dkt. 221 at 6. To the contrary, there are numerous securities cases in which courts have done precisely that. *See, e.g.*, *In re Goldman Sachs Grp., Inc. Sec. Litig.*, 2021 WL 5826285, at *6 (S.D.N.Y. Dec. 8, 2021) (noting that "the parties have presented the Court with extensive evidence concerning price impact," including through "a two-day proceeding involving both an evidentiary hearing and oral argument"); *In re Fed. Home Loan Mortg. Corp. Sec. Litig.*, 281 F.R.D. 174, 175 (S.D.N.Y. 2012) (holding evidentiary hearing "to determine whether plaintiffs can rely on the fraud on the market theory."); *Strougo v. Tivity Health, Inc.*, 2022 WL 2037966, at *5 (M.D. Tenn. June 7, 2022) (discussing evidentiary hearing for class certification in which experts testified regarding price impact); *see also Boyce v. Wachovia Sec., Litig.*, 2010 WL 1253744, at *8 (E.D.N.C. Feb. 17, 2010) (refusing to decide certification pre-discovery and noting the importance of "developing a sufficient evidentiary record," including holding "an evidentiary hearing . . . on the request of the parties").

In light of this authority, Defendants' request to present live testimony from both parties' experts is not aberrational but commonplace. *See* Manual for Complex Litigation § 21.21 (4th ed. 2020) (holding an evidentiary hearing "is a routine part of the certification decision" that "ensures a full record"); Newberg on Class Actions § 7.4 (5th ed. 2020) (recognizing that district courts adjudicating motions for class certification "have broad discretion in determining  whether to hold an evidentiary hearing" but noting that "most courts do hold such hearings").

**B.      An Evidentiary Hearing Is Particularly Warranted In This Case.**

Here, Defendants' challenges to both the applicability of the fraud-on-the-market presumption of reliance and the viability of Plaintiffs' damages model rely heavily on expert opinions from an economist regarding statistical significance of share price movements and the market evidence of the causes of those movements. Defendants have submitted a 54-page expert

report with their Opposition to Class Certification, and Plaintiffs have now submitted *two* Coffman reports totaling over 100 pages relating to market efficiency, price impact, and Plaintiffs' damages model. Unsurprisingly, the parties' expert's positions on these pivotal issues are diametrically opposed—creating a "battle of the experts." Courts have held that "[w]eighing conflicting expert testimony at the certification stage is not only permissible" but "integral to the rigorous analysis Rule 23 demands." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 323-24 (3d Cir. 2008); *Am. Sales Co., LLC v. Pfizer, Inc.*, 2017 WL 3669604, at *6 (E.D. Va. July 28, 2017) (noting the "rigorous analysis" standard under Rule 23 "also extends to disputes between experts"). Like any evidence, "expert opinion may persuade its audience or it may not." *In re Hydrogen Peroxide*, 552 F.3d at 323. And thus, hearing live testimony from the experts is critical to determining the persuasiveness of their opinions. *See IBEW 90 Pension Fund v. Deutsche Bank A.G.*, 2013 WL 5815472 at *7, *10 (S.D.N.Y. Oct. 29, 2013) (noting that live testimony was useful in analyzing the "credib[ility]," "consisten[cy]," "responsive[ness]," and "quality and depth of reasoning" of the parties' experts). "This point is especially important to bear in mind when a party opposing certification offers expert opinion." *In re Hydrogen Peroxide*, 552 F.3d at 323. To satisfy Rule 23, "tough questions must be faced and squarely decided," including "by holding evidentiary hearings and choosing between competing perspectives." *West v. Prudential Sec., Inc.*, 282 F.3d 935, 938 (7th Cir. 2002) (reversing class certification in securities action where district court merely observed each side had an expert economist and "thought the clash [between the experts] enough by itself to support class certification"). Additionally, as explained further below, the price impact and damages issues raised by Plaintiffs' Motion for Class Certification are technical, nuanced, and complex.

### 1.    The Court Should Hear Expert Testimony on Price Impact.

The lynchpin of Plaintiffs' bid for class certification is whether or not they are entitled to invoke the fraud-on-the-market presumption of reliance recognized by the Supreme Court in *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988). The theory underlying *Basic* is that reliance may be presumed where the market for a stock is efficient, because in such cases, a company's stock price will rapidly incorporate all material, public information about that company. *See id.* at 248. In other words, it is an indirect form of reliance based on the idea that the market price of a stock incorporates all important information about that stock, including allegedly false information. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 281 (2014). Although Defendants do not challenge that Evolent's common stock traded in a generally efficient market, Defendants may still rebut the *Basic* presumption by showing a lack of price impact—i.e., that the misstatements in question "did not actually affect the market price" of Evolent stock. *Id.* at 284.

Defendants have mounted such a price impact challenge in this case, relying in large part on the expert opinions set forth in the Ms. Allen's report (Dkt. 213-8, the "Allen Report"). Ms. Allen analyzes price impact through an event study—which assesses the statistical significance of movements in Evolent's stock—as well as a review of market commentary and analysis of the contents of the alleged misstatements and corrective disclosures. There is a direct conflict between Plaintiffs' and Defendants' experts over the statistical significance of Evolent's share price movement on January 10, 2018. Allen Report ¶ 29. Contrary to Plaintiffs' assertions, this evidence *is* highly technical, and allowing the Court to hear directly from the experts to explain this conflict, as well as other conflicting opinions from these experts, would aid the Court in determining how much weight to afford to the competing opinions.

In opposing Defendants' Motion, Plaintiffs predictably argue that Defendants' price impact argument "is a premature attack on loss causation," a merits issue. Dkt. 221 at 7.[5] That is untrue. Initially, price impact "refers to the effect of a misrepresentation on a stock price" at the time it was made, whereas loss causation "requires a plaintiff to show that a misrepresentation [that had price impact] *also* caused a subsequent economic loss." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813-14 (2011) (emphasis in original). Further, the Supreme Court has explicitly held that district courts should consider at class certification "all" evidence relevant to price impact, "regardless whether the evidence is also relevant to a merits question" like loss causation. *Goldman Sachs Grp. Inc. v. Ark. Teacher Ret. Sys.*, 141 S. Ct. 1951, 1961 (2021). *See also Allstate Corp. Sec. Litig.*, 966 F.3d 595, 600-01 (7th Cir. 2020) (recognizing that evidence "refuting the *Basic* presumption of reliance is often relevant to" loss causation but noting that courts "must decide at the class stage the price impact issue").

Plaintiffs next suggest that in securities class actions, holding an evidentiary hearing is only appropriate where the parties challenge market efficiency (*see* Dkt. 221 at 7 & n.5). But courts also accept live testimony on other issues, such as price impact. *See In re Goldman Sachs Grp.,* 2021 WL 5826285, at *6 (discussing evidentiary hearing at which testimony on price impact was presented); *Strougo*, 2022 WL 2037966, at *5 (same). In fact, one of the cases on which Plaintiffs

---

[5] Plaintiffs try to place a fig leaf over Coffman's Second Report by labeling it as a "merits report" that cannot be considered in connection with class certification. *See* Dkt. 221 at 12 (arguing that Coffman's "merits reports" will not be "relied upon in connection with Plaintiffs' class certification briefing" and thus are not relevant). But the opinions in Mr. Coffman's Second Report are directly relevant to the *Comcast* and price impact issues at the core of Defendants' Opposition to Class Certification. As a result, Coffman's Second Report should be part of the record before the Court in deciding class certification—and Defendants should be allowed to address it at that hearing and in a short supplemental brief. "[I]t would be contrary to the rigorous analysis" required by Rule 23 "to put blinders on as to an issue simply because it implicates the merits of the case." *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 17 (1st Cir. 2008) (citation omitted).

rely, *In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, 2019 WL 5287980 (S.D.N.Y. Oct. 18, 2019), actually supports Defendants' position. *See* Dkt. 221 at 9 (citing *In re Chicago Bridge*).  In that case, the court concluded that an "analysis of" of whether "an alleged corrective disclosure . . . is 'corrective' is appropriate" at the class stage, as is an analysis of whether "the proffered corrective disclosures" in fact contains "new" information.  *See id.* at *22-*23, *report and recommendation adopted in part*, 2020 WL 1329354 (S.D.N.Y. Mar. 23, 2020).  Significantly, the *Chicago Bridge* decision noted that  "an evidentiary hearing" was held prior to class certification "at which each side's expert provided testimony and counsel presented oral argument."  *Id.* at *1.

The need to hold an evidentiary hearing in this case is heightened by the magnitude of the "mismatch" between the alleged corrective disclosures and the alleged misstatements they supposedly correct.  *See Goldman*, 141 S. Ct. at 1961 (noting that plaintiffs cannot rely on a "back-end price drop" to show price impact when "there is a mismatch between the contents of the misrepresentation and the corrective disclosure").  Ms. Allen's report demonstrates that the contemporaneous commentary from analysts and actions of market participants such as Plaintiffs' investment managers establishes that there is no connection between the price drops following the corrective disclosures and the cost savings statements. Allen Report ¶ 62.  Coffman's Second Report, however, espouses a new "unsustainability" theory attempting to connect disclosures which *do not mention* costs savings with those earlier savings statements.  Coffman Second Report ¶¶ 68-71.  Following the well-established practice of hearing live testimony will aid the Court in resolving this critical dispute.

  **2. The Court Should Also Hear Expert Testimony Regarding Plaintiffs' Damages Model.**

As explained in Defendants' opening brief (*see* Dkt. 220 at 4-6), Defendants also challenge the viability of Plaintiffs' proffered damages methodology, which is critical to class certification

and required by *Comcast*.   While Mr. Coffman concluded in his April 8, 2022 report that damages *could be* calculated on a class-wide basis using a common methodology, he did not reveal *how* he would do that until he submitted his Second Report on May 27, 2022.  *See* Ex. 2.  That report shows that Coffman did not make any attempt to isolate and remove from damages the inflationary effects of previously dismissed statements or of so-called "confounding" information which is unrelated to the alleged fraud.  *Id.* ¶¶ 68-110. Nor did he account for the "mismatch" between the corrective disclosures and the alleged misstatements.  He instead concludes that the *entirety* of the stock price declines associated with the two corrective disclosure dates are attributable to the "correction" of Defendants' misstatements (after controlling for market and industry-specific fluctuations).  *Id.* These deficiencies are directly relevant to Defendants' *Comcast* challenge.

Plaintiffs understandably do not want that evidence before the Court now, so they argue that courts generally decline to deny class certification based on *Comcast* alone.  *See* Dkt. 221 at 8.  But Plaintiffs overstate their case, as courts have shown a willingness to consider *Comcast* challenges in securities class actions *and* to refuse certification on that basis.  *See In re BP p.l.c. Sec. Litig.*, 2013 WL 6388408 (S.D. Tex. Dec. 6, 2013) (rejecting Coffman's damages methodology because it "does not assuage the Court that the class-wide damages methodology proposed will track Plaintiffs' theories of liability, as the Supreme Court expressly required in *Comcast* before a class may be certified."); *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 2018 WL 3861840, at *19 (N.D. Ohio Aug. 14, 2018) ("When a class plaintiff presents a damages model that is vague, indefinite, and unspecific, or simply asserts . . . that there are unspecified 'tools available to measure damages, the model amounts to 'no damages model at all,' and the class cannot be certified."); *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 141-42 (S.D.N.Y. Sept. 30, 2014) (similar).

- 11 -

### III.   DEFENDANTS' REQUEST FOR A SHORT SUPPLEMENTAL BRIEF SHOULD BE GRANTED.

For many of the same reasons explained above, Defendants should be given the opportunity to submit a six-page supplemental brief addressing Mr. Coffman's Second Report and his forthcoming "rebuttal damages report." Additionally, to the extent Plaintiffs submit new evidence or arguments in response to Defendants' price impact challenge, Defendants should be permitted to include briefing on that issue too.

As noted, Plaintiffs seek to shield Coffman's Second Report (as well as his forthcoming report) by claiming they go only to the merits. That is untrue for the reasons explained above—Plaintiffs are required to set forth a damages model at class certification that will measure "only those damages attributable to [Plaintiffs'] theory" of liability. *Comcast*, 569 U.S. at 35. The new Second Coffman Report (and any subsequent report Plaintiffs submit) were not submitted when Defendants filed their Class Certification Opposition, and Defendants will not have the opportunity to address them in writing—unless they are permitted to file a supplemental brief.

As to price impact, Defendants bear the burden of persuasion in proving a lack of price impact. *See Goldman*, 141 S. Ct. at 1963. Defendants should therefore have the opportunity to address any new price impact arguments raised by either Plaintiffs or Mr. Coffman prior to a decision on class certification.

If the Court ultimately decides that Coffman's additional reports are relevant only to the merits, the Court can, of course, disregard Defendants' supplemental brief. Said differently, there is no harm in amplifying the record by allowing Defendants to address these additional expert reports in a short supplemental filing now. On the other hand, the risk of refusing to amplify the record could result in the Court's assessment of class certification on an incomplete record—giving rise to unnecessary appeal issues under Rule 23(f).

## CONCLUSION

For the foregoing reasons, Defendants request that the Court grant Defendants' Motion and enter an order (i) giving Defendants leave to present live testimony from their expert economist, and (ii) giving Defendants leave to file a six-page supplemental brief opposing class certification on or before June 22, 2022.

Dated: June 9, 2022

Respectfully submitted,

*/s/ Robert R. Vieth*
Robert R. Vieth, Esq. (VSB No. 24304)
Abigail J. Johansen (VSB No. 93585)
**HIRSCHLER FLEISCHER, PC**
8270 Greensboro Drive, Suite 700
Tysons Corner, VA 22102
Tel: (703) 584-8366
Fax: (703) 584-8901
rvieth@hirschlerlaw.com
ajohansen@hirschlerlaw.com
*Local counsel for Defendants*

Ashley C. Parrish
Virginia Bar No. 43089
**KING & SPALDING LLP**
700 Pennsylvania Avenue, NW, Suite 200
Washington, DC 20006-4707
Tel: (202) 626-2627
Fax: (202) 626-3737
aparrish@kslaw.com

Paul R. Bessette, *pro hac vice*
Michael J. Biles, *pro hac vice*
Jill R. Carvalho, *pro hac vice*
**KING & SPALDING LLP**
500 W. 2nd Street, Suite 1800
Austin, TX 78701
Tel: (512) 457-2050
Fax: (512) 457-2100
pbessette@kslaw.com
mbiles@kslaw.com
jcarvalho@kslaw.com

- 13 -

- 14 -

Michael R. Smith, *pro hac vice*
Peter M. Starr, *pro hac vice*
**KING & SPALDING LLP**
1180 Peachtree St. NE
Atlanta, GA 30309
Tel: (404) 572-4600
Fax: (404) 572-5140
mrsmith@kslaw.com
pstarr@kslaw.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 9, 2022, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF Filing System on all parties in this case.

*/s/ Robert R. Vieth*
Robert R. Vieth (VSB No. 24304)
**HIRSCHLER FLEISCHER, PC**
8270 Greensboro Drive, Suite 700
Tysons Corner, VA 22102
Tel: (703) 584-8366
Fax: (703) 584-8901
rvieth@hirschlerlaw.com
*Local counsel for Defendants*

- 15 -