UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| PLYMOUTH COUNTY RETIREMENT SYSTEM and OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>EVOLENT HEALTH, INC., FRANK WILLIAMS, NICHOLAS MCGRANE, and SETH BLACKLEY,<br><br>Defendants. | Case No. 1:19-cv-01031-MSN-TCB |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL AND PROCEDURAL HISTORY OF THE ACTION ................................... 4

III.    THE TERMS OF THE SETTLEMENT ...................................................................... 6

IV.     THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ................................. 6

        A.      Standards Governing Preliminary Approval Of A Class Action Settlement .......... 6

        B.      The Proposed Settlement Is Fair And Reasonable ................................................. 7

                1.      The Settlement Was Reached After Extensive Litigation ......................... 8

                2.      The Settlement Is The Product Of Good-Faith, Arm's-Length
                        Negotiations Among Experienced Counsel And A Mediator ..................... 9

        C.      The Proposed Settlement Is Adequate .................................................................. 11

                1.      The Strength Of Plaintiffs' Case And The Difficulties Of Proof and
                        Defenses Plaintiffs Would Encounter At Trial Support Settlement ......... 11

                2.      The Costs and Delays Of Continued Litigation ....................................... 13

                3.      The Proposed Settlement Falls Well Within The Range Of
                        Approval .................................................................................................... 14

        D.      Additional Factors Supporting Preliminary Approval Of The Settlement .......... 15

V.      THE SETTLEMENT CLASS SHOULD BE CERTIFIED ............................................ 18

        A.      The Settlement Class Is So Numerous that Joinder Is Impracticable ................... 18

        B.      There Are Common Questions Of Law And Fact ................................................. 18

        C.      Lead Plaintiffs' Claims Are Typical Of Those Of The Settlement Class ............. 19

        D.      Lead Plaintiffs Will Adequately Represent The Settlement Class ....................... 20

        E.      The Settlement Class Satisfies Rule 23(b)(3) ...................................................... 20

VI.     THE PROPOSED NOTICE SHOULD BE APPROVED ............................................... 21

VII.    PROPOSED SETTLEMENT SCHEDULE ................................................................. 22

VIII.   CONCLUSION ................................................................................................... 23

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) ...................................................................................... 13

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
603 F.2d 263 (2d Cir. 1979) ......................................................................................... 13

*Brown v. Transurban USA, Inc.*,
318 F.R.D. 560 (E.D. Va. 2016) ................................................................................. 8, 9

*Cheng Jiangchen v. Rentech, Inc.*,
2019 WL 5173771 (C.D. Cal. Oct. 10, 2019)............................................................... 18

*Chrismon v. Pizza*,
2020 WL 3790866 (E.D.N.C. July 7, 2020) ................................................................. 13

*Christine Asia Co., Ltd. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ............................................................... 13

*D&M Farms v. Birdsong Corp.*,
2021 WL 1256905 (E.D. Va. Apr. 5, 2021) ................................................................... 7

*Deem v. Ames True Temper, Inc.*,
2013 WL 2285972 (S.D.W. Va. May 23, 2013)........................................................ 9, 15

*Droste v. Vert Capital Corp.*,
2015 WL 1526432 (E.D. Va. Apr. 2, 2015) ................................................................. 21

*Fosbre v. Las Vegas Sands Corp.*,
2017 WL 55878 (D. Nev. Jan. 3, 2017)........................................................................ 11

*Funkhouser v. City of Portsmouth*,
2014 WL 12597159 (E.D. Va. Oct. 16, 2014)............................................................... 18

*In re BearingPoint, Inc. Sec. Litig.*,
232 F.R.D. 534 (E.D. Va. 2006) ................................................................................... 21

*In re Celebrex Antitrust Litig.*,
2018 WL 2382091 (E.D. Va. Apr. 18, 2018) ................................................................ 17

*In re Computer Sci. Corp. Sec. Litig.*,
288 F.R.D. 112 (E.D. Va. 2012) ................................................................................... 18

*In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices
    and Antitrust Litig.*,
    2020 WL 6044085 (D. Kan. Oct. 13, 2020) .............................................................. 16

*In re Genworth Financial Sec. Litig.*,
    210 F. Supp. 3d 837 (E.D. Va. 2016) ...................................................................*passim*

*In re Jeld-Wen Holding, Inc. Sec. Litig.*,
    2021 WL 1186326 (E.D. Va. Mar. 29, 2021) ...................................................... 19, 20

*In re Jiffy Lube Securities Litigation*,
    927 F.2d 155 (4th Cir. 1991) ...................................................................... 7, 8, 11

*In re Mills Corp. Sec. Litig.*,
    257 F.R.D. 101 (E.D. Va. 2009) ........................................................................ 18

*In re NII Holdings, Inc. Sec. Litig.*,
    311 F.R.D. 401 (E.D. Va. 2015) ........................................................................ 19

*In re PPDAI Grp. Inc. Sec. Litig.*,
    2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) ........................................................ 14

*In re Retek Inc. Sec. Litig.*,
    621 F.Supp.2d 690 (D. Minn. 2009) ................................................................... 11

*In re Valeant Pharms. Int'l, Inc. Third-Party Payor Litig.*,
    2022 WL 525807 (D.N.J. Feb. 22, 2022) .............................................................. 9

*Kirven v. Cent. States Health & Life Co. of Omaha*,
    2014 WL 12734325 (D.S.C. Dec. 12, 2014) ........................................................ 14

*Martin v. Altisource Residential Corporation*,
    2019 WL 5386468 (D.V.I. Oct. 21, 2019)............................................................ 17

*Phillips v. Triad Guar. Inc.*,
    2016 WL 1175152 (M.D.N.C. Mar. 23, 2016)................................................. 10, 22

*Plymouth Cnty. Ret. Sys. v. Evolent Health, Inc.*,
    2021 WL 1439680 (E.D. Va. Mar. 24, 2021) ........................................................ 4

*Plymouth County Ret. Sys. v. GTT Communications, Inc., et al.*,
    2021 WL 1659848 (E.D. Va. April 23, 2021) .......................................... 10, 17, 22

*Plymouth County Retirement System v. Patterson Companies Inc.*,
    2020 WL 5757695 (D. Minn. Sept. 28, 2020)...................................................... 10

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ........................................................................ 13

*Robinson v. Carolina First Bank NA*,
2019 WL 719031 (D.S.C. Feb. 14, 2019) ............................................................... 6

*Robinson v. Carolina First Bank NA*,
2019 WL 2591153 (D.S.C. June 21, 2019) ............................................................. 13

*Schwartz v. Urban Outfitters, Inc.*,
2016 WL 7626720 (E.D. Pa. Oct. 31, 2016) ............................................................. 9

*Scott v. Family Dollar Stores, Inc.*,
2018 WL 1321048 (W.D.N.C. Mar. 14, 2018) ......................................................... 7

*Seaman v. Duke Univ.*,
2019 WL 4674758 (M.D.N.C. Sept. 25, 2019) ....................................................... 17

*Seaman v. Duke Univ.*,
2017 WL 11502696 (M.N.D.C. Sept. 29, 2017) ..................................................... 21

*Sims v. BB&T Corp.*,
2019 WL 1995314 (M.D.N.C. May 6, 2019) ........................................................... 6

*Smith v. Res-Care, Inc.*,
2015 WL 6479658 (S.D.W Va. Oct. 27, 2015) .................................................... 8, 14

*Utah Ret. Sys. v. Healthcare Servs. Grp., Inc.*,
2022 WL 118104 (E.D. Pa. Jan. 12, 2022) ............................................................. 15

**STATUTES**

15 U.S.C. § 78u-4(a)(7) .............................................................................................. 22

**RULES**

Fed. R. Civ. P. 23 ............................................................................................. *passim*

iv

Lead Plaintiffs respectfully request that the Court grant preliminary approval of the proposed Settlement of $23.5 million in cash for the benefit of the Settlement Class, as embodied in the Stipulation and Agreement of Settlement (the "Stipulation" or "Settlement Agreement"), filed concurrently herewith, as it easily satisfies the applicable standard set forth in Rule 23 of the Federal Rules of Civil Procedure.[1]  Pursuant to Local Civil Rule 7, Lead Plaintiffs certify that, as set forth in ¶3.2 of the Stipulation, Defendants do not oppose the motion for preliminary approval (the "Preliminary Approval Motion").

## I.    **INTRODUCTION**

The Settlement now before the Court is the result of Lead Plaintiffs' and Lead Counsel's vigorous prosecution of this Action for more than three years and is based on their thorough understanding of the relative strengths and weaknesses of the Parties' respective positions.  Indeed, at the time of settlement, fact and expert discovery was complete, the Parties were on the eve of commencing briefing on Defendants' anticipated motion for summary judgment, and a trial date was expected later this year.  Based upon their experience, their evaluation of the facts and the applicable law, and their recognition of the substantial Settlement Amount, Plaintiffs respectfully submit that the Settlement merits preliminary approval by the Court because it is the result of extensive, good-faith negotiations between the Parties with the assistance of a highly experienced mediator; represents an immediate, concrete benefit for the Settlement Class; and is well within the range of what courts have found to be fair, reasonable, and adequate.

---

[1] Lead Plaintiffs are Plymouth County Retirement Association ("Plymouth County") and Oklahoma Police Pension and Retirement System ("Oklahoma Police" and together with Plymouth County, "Lead Plaintiffs" or "Plaintiffs").  Defendants are Evolent Health, Inc. ("Evolent" or the "Company"), Frank Williams, Nicholas McGrane, and Seth Blackley.  Former Defendants are Christie Spencer and Steven Wigginton, against whom Plaintiffs no longer assert any claims. Unless otherwise indicated, all capitalized terms have the meanings set forth in the Stipulation; all citations to "¶" and "Ex." refer, respectively, to paragraphs in, and exhibits to, the Stipulation; all citations and internal quotations are omitted; and all emphasis is added.

1

By any measure, the $23.5 million recovery here represents an excellent result, as it secures for Settlement Class Members between 12% and 67% of their potential recoverable damages—up to *nine times* the typical securities class action recovery, which between 2012 and 2021 was just 7.3% of estimated damages for similarly-sized cases.

To achieve this result, Plaintiffs and Lead Counsel engaged in extensive litigation efforts, including: (i) conducting a thorough investigation of the claims, including interviewing numerous confidential witnesses, at least five of whom provided Plaintiffs with significant information that was critical to Plaintiffs' claims; (ii) filing three highly detailed amended complaints and fully briefing motions to dismiss each of these complaints; (iii) twice surviving Defendants' motions to dismiss; (iv) consulting with various experts; (v) fully briefing Plaintiffs' motion for class certification and arguing that motion before the Court; (vi) engaging in comprehensive discovery efforts, including reviewing hundreds of thousands of pages of documents produced by Defendants, subpoenaing several non-parties, and taking, defending, or otherwise attending twenty-three fact and expert depositions; (vii) submitting and/or reviewing the eleven expert reports filed and/or exchanged by the Parties in the Action; (viii) submitting detailed mediation statements setting forth Plaintiffs' positions on highly disputed issues in the case; and (ix) engaging in two formal, full-day mediation sessions before Mr. Jed Melnick, a mediator and special master in complex business litigation.

Moreover, the Settlement is particularly noteworthy when considering the substantial risks of either a reduced recovery or no recovery at all had the litigation continued, as Plaintiffs faced formidable arguments from Defendants regarding falsity, scienter, and loss causation. Indeed, among other things, Defendants would have vigorously argued that their statements about saving money for Passport were true when made and supported by calculations generated by the

2

Company's actuaries.  Moreover, Defendants would have argued that there was no loss causation from Evolent's savings statements, because the alleged corrective disclosures did not discuss or even mention anything pertaining to whether Evolent had saved Passport money.  Had the Court or a jury accepted these arguments, either in whole or in part, damages in the case would have been dramatically reduced, or even eliminated.  In the face of these obstacles, Plaintiffs secured an extraordinary recovery of $23.5 million on behalf of the Settlement Class.

As set forth below, approval of a proposed class action settlement is a two-step process. The first step—preliminary approval—simply involves the Court's determination of whether the proposed settlement is within the range of possible judicial approval, endorsement of the means of notice to settlement class members, and scheduling the final fairness hearing.  As the Settlement here satisfies each of the factors relevant to this preliminary approval evaluation, Plaintiffs respectfully request that the Court take the first step in this process and enter the Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order") submitted herewith, which will, among other things:

(i) preliminarily approve the Settlement pursuant to the Stipulation;

(ii) certify the proposed Settlement Class for settlement purposes;

(iii) approve the form and content of the Notice and Summary Notice attached as Exhibits A-1 and A-3 to the proposed Preliminary Approval Order;

(iv) find that the proposed procedures for distribution of the Notice and publication of the Summary Notice constitute the best notice practicable under the circumstances, and comply with due process, Rule 23 of the Federal Rules of Civil Procedure, and the PSLRA; and

(v) set a schedule and procedures for: (1) disseminating the Notice and publishing the Summary Notice; (2) requesting exclusion from the Settlement Class; (3) objecting to the Settlement, the Plan of Allocation, and/or Plaintiffs' motion for attorneys' fees and reimbursement of Litigation Expenses; (4) submitting papers supporting final approval of the Settlement; (5) submitting a Claim; and (6) the Settlement Hearing.

## II.    **FACTUAL AND PROCEDURAL HISTORY OF THE ACTION**

On August 8, 2019, Plymouth County initiated the Action.  ECF No. 1.  On November 12, 2019, the Court appointed Plymouth County and Oklahoma Police as Lead Plaintiffs, Saxena White P.A. ("Saxena White") as Lead Counsel, and Cohen Milstein Sellers & Toll PLLC as Liaison Counsel.  ECF No. 29.  On January 10, 2020, Plaintiffs filed their Amended Class Action Complaint (the "AC," ECF No. 38).  Thereafter, the Parties fully briefed Defendants' and Former Defendants' motion to dismiss the AC (ECF Nos. 48-51, 54, 57).

To incorporate new allegations related to information provided by a confidential witness, on May 7, 2020, Plaintiffs moved for leave to file a Second Amended Complaint (the "SAC"), ECF Nos. 60, 61.  On June 5, 2020, the Court granted this motion, and the SAC was made effective. *See* ECF Nos. 68, 69.  Thereafter, the Parties fully briefed Defendants' motion to dismiss the SAC (ECF Nos. 74-77, 80-81, 85).  On March 24, 2021, the Court issued an order denying in part Defendants' motion to dismiss the SAC, holding that the case could move forward as to certain statements made on September 5, 2018, January 25, 2019, February 26, 2019, and May 7, 2019. *Plymouth Cnty. Ret. Sys. v. Evolent Health, Inc.,* 2021 WL 1439680 (E.D. Va. Mar. 24, 2021). The Court also held that sixteen other statements alleged to be false or misleading in the SAC were not adequately pled, and thus were not actionable.  *Id*.

While discovery was underway, on October 19, 2021, Plaintiffs moved for class certification.  ECF Nos. 134-136.  This motion was subsequently stayed, as on November 17, 2021, Plaintiffs moved for leave to amend the SAC, attaching a copy of the proposed Third Amended Complaint ("TAC"), which incorporated allegations regarding various documents produced in discovery by Defendants, alleged three new false statements related to savings Evolent claimed to have provided to Passport, and no longer asserted claims against the Former Defendants.  ECF Nos. 147-150.

4

On December 1, 2021, the Parties held their first remote, one-day mediation session before Mr. Jed Melnick, Esq., a renowned mediator affiliated with JAMS. In advance of this mediation session, the Parties submitted substantial materials in support of their respective positions. After a full-day session, the mediation concluded without a resolution of the Action.

Thereafter, Defendants moved to partially dismiss the TAC on December 21, 2021. ECF Nos. 161-168. Plaintiffs filed their opposition on January 28, 2022, and Defendants replied on February 10, 2022. ECF Nos. 178-179, 182-183. On March 18, 2022, Judge Michael S. Nachmanoff conducted a hearing on Defendants' partial motion to dismiss the TAC, at the conclusion of which he: (1) declined to reconsider Judge Rossie D. Alston Jr.'s decision finding Defendant Blackley's May 11, 2018 alleged false statement to be inactionable; (2) declined to reconsider Judge Alston's decision finding Defendant Williams' February 26, 2019 and May 7, 2019 alleged false statements to be actionable; (3) sustained as actionable the newly alleged false statements made on January 10, 2018 and May 11, 2018; and (4) thereby lifted the second discovery stay. ECF Nos. 190, 193. The Court entered a second amended scheduling order on March 24, 2022, which, among other things, provided for the close of fact and expert discovery on June 24, 2022 and set a pretrial conference for June 30, 2022. ECF No. 192.

Over the course of nine months of discovery, the Parties exchanged and reviewed, collectively, over 71,000 documents produced by Defendants, certain subpoenaed third parties, and Plaintiffs, spanning more than 786,000 pages in aggregate. Further, the Parties conducted a total of twenty-three depositions in this Action between April 21, 2022 and June 28, 2022, including thirteen fact depositions, six expert depositions, and depositions of representatives of Lead Plaintiffs and their investment managers. With respect to expert discovery, the Parties served

5

and/or filed eleven expert reports.  Through this process, the Parties were able to fully evaluate the strengths and weaknesses of their respective claims and defenses.

On April 8, 2022, Lead Plaintiffs filed a renewed motion for class certification.  ECF Nos. 195-197.  On May 20, 2022, Defendants filed their opposition, and on June 17, 2022, Plaintiffs filed their reply.  ECF Nos. 208-214, 231-233.  On July 8, 2022, the Court conducted a hearing on Lead Plaintiffs' class certification motion.  ECF No. 239.

On July 11, 2022, the Parties participated in a second remote, full-day mediation session before Mr. Melnick, with the Parties again submitting written statements and exhibits in support of their respective positions.  At the conclusion of this mediation, the Parties agreed in principle to settle this Action for $23.5 million.  The Parties thereafter agreed to a term sheet and negotiated the full settlement terms set forth in the Stipulation.

## III.    THE TERMS OF THE SETTLEMENT

The proposed Settlement, which would resolve this Action in its entirety, provides that Defendants will pay or cause to be paid $23,500,000 into an Escrow Account for the benefit of the Settlement Class in exchange for a release of claims.  The full terms and conditions of the Settlement are set forth in the Stipulation.

## IV.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.    Standards Governing Preliminary Approval Of A Class Action Settlement

Courts in the Fourth Circuit have long recognized a strong public policy and presumption favoring settlements.  *See, e.g., Robinson v. Carolina First Bank NA*, 2019 WL 719031, at *8 (D.S.C. Feb. 14, 2019) ("There is a strong judicial policy in favor of settlement to conserve scarce resources that would otherwise be devoted to protracted litigation").  Indeed, "[i]t has long been clear that the law favors settlement" and "[t]his is particularly true in class actions." *Sims v. BB&T Corp.*, 2019 WL 1995314, at *3 (M.D.N.C. May 6, 2019).

6

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, resolution of a federal class action via settlement occurs in two stages.[2]  First, district courts perform a preliminary review to determine whether a settlement class should be certified, and if notice of the proposed settlement should be sent to the settlement class.  Second, assuming that the court grants preliminary approval and notice is sent to the class, the court conducts a fairness hearing, at which all interested parties are afforded an opportunity to be heard on the proposed settlement. As courts in this Circuit explain, this preliminary review requires only showing "whether the proposed settlement is within the range of possible approval."  *Scott v. Family Dollar Stores, Inc.,* 2018 WL 1321048, at *3 (W.D.N.C. Mar. 14, 2018).  In assessing the fairness and adequacy of a settlement, "there is a strong initial presumption that the compromise is fair and reasonable."  *D&M Farms*, 2021 WL 1256905, at *2.  As summarized below, and as will be detailed further in a motion for final approval of the Settlement, all factors are met.

**B.    The Proposed Settlement Is Fair And Reasonable**

In the Fourth Circuit, the fairness of a proposed settlement is determined by application of the four factors set forth in *In re Jiffy Lube Securities Litigation*, 927 F.2d 155 (4th Cir. 1991), which are: "(1) the posture of the case at the time settlement was proposed, (2) the extent of

---

[2] Effective December 1, 2018, Rule 23(e)(1) was amended to, among other things, specify that the crux of a court's preliminary review is whether notice should be provided given the likelihood that the court will be able to finally approve the settlement and certify a settlement class.  The amendment requires consideration of whether: (A) plaintiffs and counsel have adequately represented the class; (B) the settlement was negotiated at arm's length; (C) the relief for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (iii) the terms of any proposed fee award, including timing of payment, and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Courts may also consider the Fourth Circuit's long-standing approval factors, "because our factors for assessing class-action settlements almost completely overlap with the new Rule 23(e)(2) factors, the outcome[s] [are] the same under both our factors and the Rule's factors." *D&M Farms v. Birdsong Corp.*, 2021 WL 1256905, at *3 (E.D. Va. Apr. 5, 2021).

discovery conducted, (3) the circumstances surrounding settlement negotiations, and (4) the experience of counsel in the area of law." *In re Genworth Financial Sec. Litig.*, 210 F. Supp. 3d 837, 839-40 (E.D. Va. 2016) (citing *Jiffy Lube*, 927 F.2d at 159). These factors largely overlap with the factors provided by Rule 23(e).

### 1.    The Settlement Was Reached After Extensive Litigation

The first and second fairness factors evaluate how far the case has come from inception to ensure that the "parties did not settle prematurely" and that all parties were apprised of the "strengths and weaknesses of their own and their adversaries' claims and defenses." *Smith v. Res-Care, Inc.*, 2015 WL 6479658, at \*\*5-6 (S.D.W Va. Oct. 27, 2015). These factors are easily satisfied here as the Parties determined to settle this Action only after extensive discovery had taken place and the Action would soon be ready for trial. *See e.g.*, *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 572 (E.D. Va. 2016) ("plaintiffs have conducted sufficient [] discovery and investigation to . . . evaluate [fairly] the merits of Defendants' positions during settlement negotiations").

Indeed, prior to agreeing in principle to settle this Action, (i) the Parties had litigated this Action for nearly three years and fully briefed motions to dismiss three different amended complaints; (ii) Plaintiffs had moved for class certification, and their motion was fully briefed and *sub judice*; (iii) Plaintiffs had issued and responded to numerous, voluminous discovery requests and produced, examined, and/or reviewed over 71,000 documents spanning more than 786,000 pages; and took, defended, or attended twenty-three depositions; (iv) the Parties had filed and/or exchanged eleven separate expert reports, which opined on all elements relevant to Plaintiffs' claims and to class certification; and (v) the Parties were on the eve of commencing briefing on Defendants' anticipated motion for summary judgment and the Parties' anticipated motions to exclude expert testimony.

Thus, the litigation had progressed materially from its inception, and the merits of the Parties' claims and defenses had been thoroughly vetted through the discovery process, supporting the fairness of the proposed Settlement. *See e.g., Brown*, 318 F.R.D. at 572 (even "a rigorous investigation of the claims before filing the Complaint and Amended Complaint" sufficient to show fairness of proposed settlement); *Deem v. Ames True Temper, Inc.*, 2013 WL 2285972, at *2 (S.D.W. Va. May 23, 2013) ("adequate discovery and investigation had occurred to enable the parties to reach a fair settlement" where "[a]t the time the parties reached this settlement, they were on the eve of trial and had completed discovery").

### 2.    The Settlement Is The Product Of Good-Faith, Arm's-Length Negotiations Among Experienced Counsel And A Mediator

Courts also consider the nature of the settlement negotiations in evaluating a settlement, and "[a]bsent evidence to the contrary, the Court should presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion." *Deem,* 2013 WL 2285972, at *2. Here, the Settlement was achieved only after arms'-length negotiations overseen by a respected neutral, Mr. Melnick, who has mediated over one thousand disputes with aggregate value in the billions of dollars. *See, e.g., Schwartz v. Urban Outfitters, Inc.,* 2016 WL 7626720, at *3 (E.D. Pa. Oct. 31, 2016) (approving settlement given "intensive, arms-length negotiations, including mediation managed by Jed Melnick"); *In re Valeant Pharms. Int'l, Inc. Third-Party Payor Litig.*, 2022 WL 525807, at *2 (D.N.J. Feb. 22, 2022) (settlement approved where "Plaintiffs and [Defendant] ultimately agreed to mediate their claims before Jed Melnick of JAMS, a 'nationally recognized alternative dispute resolution firm'"); Mr. Melnick's biography, available at https://www.jamsadr.com/melnick/. Moreover, after the December 1, 2021 mediation session, the Parties remained in dialog with the mediator by telephone and email, and the Parties were able to reach an agreement in principle to settle this Action upon conclusion of the second

9

mediation session on July 11, 2022.  Such "continuing efforts before an experienced mediator []

demonstrate that the Settlement is fair and reasonable."  *Genworth*, 210 F. Supp. 3d at 840-41.

Additionally, Courts give considerable weight to the opinion of experienced and informed

counsel.  Indeed, "concerns of collusion" are minimized where counsel for both sides are

"nationally recognized members of the securities litigation bar."  *Phillips v. Triad Guar. Inc.*, 2016

WL 1175152, at *3 (M.D.N.C. Mar. 23, 2016).  Here, Lead Counsel is highly experienced and

well-respected in the field of securities class action litigation and has an extensive track record in

numerous large cash recoveries on behalf of classes they have represented.  *See, e.g.,* ECF No.

197-2 (Saxena White firm resume); *see also Plymouth County Ret. Sys. v. GTT Communications,

Inc., et. al.*, 2021 WL 1659848, at *5 (E.D. Va. April 23, 2021) (Hilton, J.) (finding in $25 million

PSLRA settlement, that Saxena White "conducted the litigation and achieved the [s]ettlement with

skill, perseverance and diligent advocacy, and with considerable challenges from formidable

opposition"); *Plymouth County Retirement System v. Patterson Companies Inc.*, 2020 WL

5757695, at *8 (D. Minn. Sept. 28, 2020) (finding Saxena White "highly qualified" and

"experienced in leading large securities class actions … hav[ing] obtained substantial recoveries

for plaintiffs" in PSLRA action resulting in $63 million recovery).

Furthermore, King & Spalding LLP is one of the most preeminent and sophisticated

defense firms in the nation.  Notwithstanding this experienced and formidable opposition,

Plaintiffs and Lead Counsel were able to develop their case to resolve the litigation on terms highly

favorable to the Settlement Class, demonstrating that the Settlement is fair and reasonable, and

should be approved.  *Genworth,* 210 F. Supp. 3d at 841.

Thus, the Settlement meets the fairness requirements of this Circuit and of Rule 23(e).

C.      **The Proposed Settlement Is Adequate**

In determining whether a proposed settlement is adequate, courts in this Circuit consider:

> (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant[] and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement.

*Genworth*, 210 F.Supp.3d at 841 (citing *Jiffy Lube*, 927 F.2d at 159); *see also* Fed. R. Civ. P. 23(e)(2). In applying these factors, the Court should "weigh the likelihood of the plaintiffs['] recovery on the merits against the amount offered in the settlement." *Genworth*, 210 F.Supp.3d at 841. An analysis of these factors clearly shows that the proposed Settlement is adequate.

### 1.      The Strength Of Plaintiffs' Case And The Difficulties Of Proof and Defenses Plaintiffs Would Encounter At Trial Support Settlement

Complex securities fraud class actions such as this one present a myriad of risks that a plaintiff must overcome to ultimately secure a recovery. *See, e.g., Genworth*, 210 F. Supp. 3d at 844 ("[S]ecurities fraud cases require significant showings of fact in order to prevail before a jury, and elements such as scienter, reliance, and materiality of misrepresentation are notoriously difficult to establish"). While Plaintiffs remain confident in their ability to ultimately prove the alleged claims, further litigation—including a trial—is always a risky proposition.

Plaintiffs would be required to prove all elements of their claims, while Defendants need only succeed on one defense to potentially defeat the entire Action.[3]   Defendants have continuously and vehemently denied all of Plaintiffs' allegations, and have presented credible arguments regarding falsity, scienter, and loss causation. At summary judgment or at trial,

---

[3] *See e.g., In re Retek Inc. Sec. Litig.*, 621 F.Supp.2d 690, 708-09 (D. Minn. 2009) (granting summary judgment in a securities action where plaintiffs failed to present evidence of loss causation); *Fosbre v. Las Vegas Sands Corp.*, 2017 WL 55878, at *28 (D. Nev. Jan. 3, 2017) (granting summary judgment in a securities action due to, *inter alia*, lack of falsity and scienter).

11

Defendants likely would have argued that documentary evidence and testimony showed that their statements about savings for Passport were not false or misleading when made because they were based on reasonable calculations and assumptions by the Company's actuaries.  Even though Plaintiffs believe they had credible counterarguments, it is uncertain that Plaintiffs could convince the Court or a jury, particularly considering the complexity of the underlying calculations.  *See Genworth*, 210 F. Supp. 3d at 841-42 ("plaintiffs at trial would bear the burden of conveying complex information to a jury using financial records, complicated accounting principles, and expert testimony…The high risk faced by taking the case to a jury verdict demonstrates the adequacy of this [] settlement").  Defendants also would have argued that their statements that they had no intention to buy Passport or its assets were true as of February 26, 2019, because Evolent did not engage in formal discussions about acquiring Passport until May 2019.  Thus, Plaintiffs faced a risk that some or all of their surviving alleged false statements would be dismissed at summary judgment, or that they would be unable to prove the falsity of those statements at trial.  *See Genworth*, 210 F. Supp. 3d at 842 ("Even with a strong case, the plaintiffs nonetheless face a large risk before a jury").

With respect to scienter, if the action made it to trial, Defendants likely would have argued that, even if their savings statements were proven false, the Individual Defendants lacked the requisite scienter for securities fraud because they had a reasonable basis on which to make the statements.  *Genworth*, 210 F. Supp. 3d at 844 (due to "the complexity of securities fraud cases and the need to prove scienter … the risk of non-recovery at trial is very real.").

Even if Plaintiffs ultimately prevailed in proving falsity and scienter, this Action would have involved significant risks to establishing loss causation and damages.  Defendants would have argued that the two alleged corrective disclosures did not reveal any truth about the alleged

savings misstatements.  Specifically, Defendants would argue that neither disclosure expressly discussed whether Evolent had saved Passport money or whether it had financially benefitted (or harmed) Passport, and, after each disclosure, multiple analysts in fact said that they did not believe Evolent was responsible for Passport's financial harm.  Finally, even if Plaintiffs could establish that Evolent had contributed to Passport's financial decline, Defendants would have presented evidence that Kentucky's Medicaid rate cuts and other non-Evolent-related factors were also contributing causes, and that damages should be reduced accordingly.  *See, e.g., Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *13 (S.D.N.Y. Oct. 16, 2019) ("While Plaintiffs proceeded as though they had the better arguments, the risk remained that Defendants could have defeated loss causation, or significantly diminished damages").

Thus, while Plaintiffs believe they had credible counterarguments on each of these points, there is no guarantee that the Court or a jury would have credited Plaintiffs' counterarguments, and the substantial Settlement avoids such risk.  *See e.g., Chrismon v. Pizza*, 2020 WL 3790866, at *5 (E.D.N.C. July 7, 2020) ("[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome").[4]

### 2.    The Costs and Delays Of Continued Litigation

"[I]n a case such as this, a fully contested class action lawsuit would be expected to take significant time to resolve at the District Court level and additional time would result from any appeals."  *Robinson v. Carolina First Bank NA*, 2019 WL 2591153, at *10 (D.S.C. June 21, 2019).

---

[4] There would even be a risk a favorable verdict could be disturbed or overturned even years later. *See, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial).

13

Here, continued prosecution of this Action would incur significant litigation costs, drastically reducing the proceeds remaining in Defendants' wasting D&O insurance tower.

Indeed, if not for this Settlement, the Action would have continued to be fiercely contested. The anticipated duration and expense of additional litigation would be significant.  In light of the eleven expert reports that the Parties had filed, summary judgment and anticipated motions to exclude expert testimony and trial were likely to be especially costly, as complex expert testimony and advice would likely continue to figure prominently at these stages.  Thus, preliminary approval is warranted as it is clear that the Parties would incur a large amount of further expenses had they not reached this Settlement Agreement.  *Smith,* 2015 WL 6479658, at *6 (finding Plaintiffs understandably abided by the aphorism that "a bird in [the] hand is worth two in the bush" by settling and foregoing costly, and uncertain relief in exchange for a substantial, guaranteed, and immediate result).

### 3.    The Proposed Settlement Falls Well Within The Range Of Approval

"When a proposed settlement appears to fall within the range of 'possible approval,' it is appropriate to issue preliminary approval and direct notice to members of the settlement class." *Kirven v. Cent. States Health & Life Co. of Omaha,* 2014 WL 12734325, at *8 (D.S.C. Dec. 12, 2014).  The proposed $23.5 million Settlement is an excellent recovery for the Settlement Class and falls well within the range of what is fair, reasonable, and adequate.

Indeed, the Settlement Amount represents *at least* 12% of the Settlement Class's *maximum* recoverable damages, which Plaintiffs' expert calculated at $195 million—if Plaintiffs were to fully prevail at summary judgment and trial on all of their loss causation and damages arguments. *See, e.g., In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at *12 (E.D.N.Y. Jan. 21, 2022) (approving securities class action settlement representing "6.4% of the maximum estimated

aggregate damages [of] $140,000,000, assuming Plaintiffs can prove all their relevant causation arguments" as "within the range of reasonableness."). Moreover, Plaintiffs' damages expert calculated that, assuming Defendants prevailed even on some of their loss causation and damages arguments, damages could be reduced to as little as $35 million, if any at all. Accordingly, the Settlement represents a recovery of up to 67% of realistic damages—as much as *nine* times the median securities class action recovery as a percentage of damages, which, between 2012 and 2021 was just 4%-7.3% of damages for similarly-sized cases.[5] *See, e.g., Utah Ret. Sys. v. Healthcare Servs. Grp., Inc.*, 2022 WL 118104, at *10 (E.D. Pa. Jan. 12, 2022) (approving $16.8 million settlement "represent[ing] approximately 6.4% of the estimated total alleged damages, which is in line with the median reported by Cornerstone Research").

Considering the benefits created by the Settlement, the risks of continued litigation and the time and expense that would be incurred to prosecute the Action through trial and likely appeals, the $23.5 million Settlement is a strong recovery that is in the Class's best interests.[6]

### D.    Additional Factors Supporting Preliminary Approval Of The Settlement

Under Rule 23(e)(2), in granting approval, courts also consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorney's fees, including timing of

---

[5] *See* Cornerstone Research, *Securities Class Action Settlements 2021 Review and Analysis*, 6 (Mar. 24, 2022), https://www.cornerstone.com/wp-content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf. Median recovery as a percentage of Cornerstone's "simplified tiered damages" between 2012-2021 was 7.3% for cases ranging from $25-74 million in damages, 4.9% for cases ranging from $75-149 million in damages, and 4.0% for cases ranging from $150-249 million in damages.

[6] Although, to Plaintiffs knowledge, Evolent faces no immediate insolvency risk, the uncertainty of any company's financial position, particularly in current economic conditions, also poses a risk that favors settlement. *Deem*, 2013 WL 2285972, at *3 ("Although the court is unaware of any threat to Defendant's solvency, recovery of a litigated judgment cannot be taken for granted in these uncertain economic times. The proposed settlement avoids all risk of eventual insolvency and provides immediate cash to Class Members").

payment," and "any agreement required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).  Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another.  Each of these factors supports approval.

*First*, the proposed Settlement is adequate because it provides a proposed Plan of Allocation—which was developed in consultation with Plaintiffs' damages expert and treats all Settlement Class Members equitably—containing a fair and reasonable method for distributing the proceeds of the Net Settlement Fund to Authorized Claimants on a *pro rata* basis based upon their recognized claim compared to the total recognized claims of all Authorized Claimants.  *See* ¶4.3; Ex. A-1.  Furthermore, Plaintiffs' proposed Plan of Allocation "accounts for when claimants purchased their securities and for how long they held the stock, considerations that have been approved by courts in this district."  *Genworth*, 210 F. Supp. 3d at 843 (approving plan of allocation based on these same considerations, collecting cases).

Additionally, the proposed Settlement provides well-established, effective procedures for processing the claims of the Settlement Class and seeks to appoint A.B. Data, Ltd. ("A.B. Data"), a longstanding and well-respected claims administrator, as the Claims Administrator for the Settlement.[7]  As set forth in the Stipulation, A.B. Data will process claims under Lead Counsel's guidance, allow Claimants an opportunity to cure any deficiencies in their claims or ask the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court-approval.  *See* ¶¶4.1-

---

[7] Lead Plaintiffs hereby request that the Court approve retention of A.B. Data as the Claims Administrator for the Settlement. *See e.g. In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litig.*, 2020 WL 6044085, at *3 (D. Kan. Oct. 13, 2020) ("A.B. Data is experienced and well-qualified in the field of notice administration in class actions"). Moreover, A.B. Data is currently acting as claims administrator in a number of notable securities class action settlements, including, *In re Perrigo Company PLC Sec. Litig.,* 1:19-cv-00070-DLC (S.D.N.Y.) ($31.9 million settlement); *Teamsters Local 456 Pension Fund v. Universal Health Services Inc.,* 2:17-cv-02817-JHS (E.D. Pa.) ($17.5 million settlement).

4.14.  This method of claims processing is standard in securities class action settlements and has long been found to be effective. *See, e.g., Martin v. Altisource Residential Corporation*, 2019 WL 5386468, at *3-4 (D.V.I. Oct. 21, 2019) (appointing A.B. Data as the claims administrator and approving similar claims processing methods).

*Second*, as disclosed in the Notice, Lead Plaintiffs will be applying for a percentage of the common fund in an amount not to exceed 33⅓% to compensate Plaintiffs' Counsel for the services they rendered on behalf of the Settlement Class.  A proposed attorneys' fee award of up to one-third is reasonable in light of the work performed and the results obtained, and would likely be significantly less than Plaintiffs' Counsel's total lodestar in this case, based on their preliminary estimates.  Moreover, a one-third fee award is well within the range of percentage fees that are regularly awarded in securities class actions and other class actions in this Circuit and nationwide. *See e.g., GTT Commc'ns*, 2021 WL 1659848, at **5-6 ("one-third of the [s]ettlement [f]und in fees" in $25 million securities class action settlement is "fair and reasonable and consistent with awards in similar cases in this District, the Fourth Circuit and nationwide"); *In re Celebrex Antitrust Litig.,* 2018 WL 2382091, at *5 (E.D. Va. Apr. 18, 2018) (awarding attorneys one-third fee on $94 million settlement); *Seaman v. Duke Univ.*, 2019 WL 4674758, at *3 (M.D.N.C. Sept. 25, 2019) (awarding one-third fee in a $54.5 million recovery, noting that awards of one-third are "common" in the Fourth Circuit).

*Third*, with respect to Rule 23(e)(2)(C)(iv), the Parties entered into a Supplemental Agreement pursuant to which Defendants may terminate the Settlement if requests for exclusion from the Settlement Class reach a certain threshold—generally called a "blow provision."  *See* ¶9.2.  Such an agreement is standard in securities class action settlements; is kept confidential to prevent objectors from threatening to trigger the blow provision to obtain self-interested payments

at the expense of the Settlement Class; and has no negative impact on fairness.  *See Cheng Jiangchen v. Rentech, Inc.,* 2019 WL 5173771, at \*7 (C.D. Cal. Oct. 10, 2019).

## V.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED

Pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs also request certification of the proposed Settlement Class, which has been stipulated to by the Parties, consisting of all persons or entities who purchased or otherwise acquired publicly traded Evolent common stock between January 10, 2018 and May 28, 2019, inclusive, and were damaged thereby.[8]

### A.    The Settlement Class Is So Numerous that Joinder Is Impracticable

Rule 23(a)(1) requires the class to be "so numerous that joinder of all class members is impracticable." Fed. R. Civ. P. 23(a)(1).  The "numerosity requirement is seldom disputed in securities fraud cases." *In re Mills Corp. Sec. Litig.*, 257 F.R.D. 101, 104 (E.D. Va. 2009).  Evolent common stock is traded on the NYSE, with between 74.7 million and 82 million shares outstanding during the Settlement Class Period.  *See* ECF No. 197-1, ¶66.  Federal courts routinely hold that there is "no doubt" that a class of shareholders of a NYSE-traded company is "so numerous that joinder of all members would be impracticable." *In re Computer Sci. Corp. Sec. Litig.,* 288 F.R.D. 112, 117 (E.D. Va. 2012).  Thus, numerosity is met.

### B.    There Are Common Questions Of Law And Fact

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Commonality only "requires that there be at least one question of law or fact common to the members of the class." *Funkhouser v. City of Portsmouth*, 2014 WL 12597159, at

---

[8] Excluded from the Settlement Class are Defendants, the Officers and directors of Evolent at all relevant times, and Defendants' Related Persons.  ¶1.44.  Also excluded from the Settlement Class are those persons who file valid and timely requests for exclusion in accordance with the Preliminary Approval Order.  *See* Preliminary Approval Order ¶13.

18

*3 (E.D. Va. Oct. 16, 2014). The common questions of fact and law here include: (1) whether Defendants violated the federal securities laws; (2) whether Defendants misrepresented or omitted material facts; (3) whether Defendants acted with scienter; (4) whether the Individual Defendants controlled Evolent and its alleged violations of the federal securities laws; (5) whether Defendants' alleged misrepresentations and omissions caused Settlement Class Members to suffer a compensable loss; and (6) whether Settlement Class Members have sustained damages, and the proper measure of damages. These are the exact types of issues that regularly satisfy the commonality requirement in federal securities cases. *See, e.g.*, *In re Jeld-Wen Holding, Inc. Sec. Litig.*, 2021 WL 1186326, at *3 (E.D. Va. Mar. 29, 2021); *In re NII Holdings, Inc. Sec. Litig.*, 311 F.R.D. 401, 406 (E.D. Va. 2015).

#### C.    Lead Plaintiffs' Claims Are Typical Of Those Of The Settlement Class

Rule 23(a)(3) requires a showing that "the claims or defenses of the representative parties are typical of the claims and defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality element is satisfied when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *NII Holdings*, 311 F.R.D. at 406. In other words, so long as Lead Plaintiffs "seek to recover damages for losses caused by the same allegedly materially false and misleading statements and omissions," the typicality requirement is met. *Id*. at 407. Here, Lead Plaintiffs' claims are typical of the Settlement Class's claims because they all allege that they purchased Evolent common stock at artificially inflated prices due to Defendants' alleged material misstatements and omissions, and are subject to the same proof as the rest of the Settlement Class. Further, Plaintiffs are not subject to any unique defenses that would make them atypical. Thus, typicality is satisfied.

### D.   Lead Plaintiffs Will Adequately Represent The Settlement Class

The adequacy factor requires a finding that the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a)(4).  Plaintiffs and Lead Counsel have adequately represented the Settlement Class during both the litigation of this Action and its resolution.  Furthermore, the interests of Lead Plaintiffs and the other Settlement Class Members are not antagonistic; rather, Plaintiffs' interest in obtaining the largest-possible recovery in this Action is firmly aligned with all Settlement Class Members.  Plaintiffs have also set forth a robust record demonstrating their adequacy by, among other things, actively seeking appointment as Lead Plaintiffs, conducting an extensive investigation of their claims, filing three highly detailed amended complaints, twice surviving Defendants' motions to dismiss, sitting for depositions, and actively pursuing discovery and responding to Defendants' discovery requests. *See Jeld-Wen*, 2021 WL 1186326, at *4 (adequacy established where plaintiffs "vigorously and competently represented the interests of the proposed class members throughout this litigation").

Plaintiffs also retained Lead Counsel, which, as set forth above, is highly experienced in litigating complex federal securities class actions and has a long, successful track record.  As Court-appointed Lead Counsel, Saxena White also has demonstrated its willingness to commit substantial time and resources to representing the Settlement Class.

### E.   The Settlement Class Satisfies Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if the Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members." As the above analysis demonstrates, there are numerous common questions of law and fact, including whether Defendants' statements were false or misleading, whether Defendants acted with scienter, and whether, and to what extent, Settlement Class Members suffered damages

20

caused by the revelation of Defendants' alleged fraud.

Further, "class actions are a particularly appropriate and desirable means to resolve claims based on alleged violations of the securities laws." *In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 545 (E.D. Va. 2006). The geographically dispersed nature of the Settlement Class, the inefficiency of multiple lawsuits, and the size of individual recoveries in comparison to the cost of litigation, strongly support a finding of superiority here. The Settlement Class thus satisfies all the requirements of Rules 23(a) and 23(b).[9]

## VI.   THE PROPOSED NOTICE SHOULD BE APPROVED

Under Federal Rule of Civil Procedure 23(e), "notice must be provided in a reasonable manner to all class members who be bound by the [proposed settlement]" and such notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings." *Seaman v. Duke University,* 2017 WL 11502696, at *5 (M.N.D.C. Sept. 29, 2017) (citing Fed. R. Civ. P. 23(e)(1)).

Here, the proposed Notice advises Settlement Class Members of: (i) the pendency of the Action as a class action; (ii) the essential terms of the Settlement; (iii) the proposed Plan of Allocation; and (iv) information regarding the motion for an award of attorneys' fees and reimbursement of Litigation Expenses. The proposed Notice also provides specifics on the Final Approval Hearing and sets forth the procedures and deadlines for opting out of the Settlement Class, for objecting to the Settlement, the proposed Plan of Allocation and/or the motion for attorneys' fees and reimbursement of Litigation Expenses, and for submitting a Claim Form. The Notice and Claim Form will also be available on the Settlement website established by the Claims

---

[9] Any implicit requirement of ascertainability is also met, because the proposed class "is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Droste v. Vert Capital Corp.*, 2015 WL 1526432, at *4 (E.D. Va. Apr. 2, 2015).

Administrator. Finally, the proposed Preliminary Approval Order also requires the Summary Notice to be published in *Investor's Business Daily* and over *PR Newswire*.

Thus, the form and manner of providing notice to the Settlement Class satisfy the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. § 78u-4(a)(7). *See Triad Guar.*, 2016 WL 1175152, at *1, *5 (publication of summary notice in *Investor's Business Daily* and via *PR Newswire*, establishment of website, and mailing notice to thousands of potential class members constituted sufficient notice); *GTT Commc'ns*, 2021 WL 1659848, at *3 (approving similar notice program in securities class action).

## VII.    PROPOSED SETTLEMENT SCHEDULE

The Parties respectfully propose the following schedule for the Court's consideration, which is set forth in the proposed Preliminary Approval Order and the Parties' Joint Status Report Regarding Status of Settlement ("Joint Status Report," ECF No. 242):

| Event | Deadline |
|---|---|
| Hearing on Preliminary Approval Motion (*see* Joint Status Report) | The Parties have agreed to waive oral argument on the Preliminary Approval Motion, and are filing a joint waiver of oral argument herewith. However, should the Court wish to conduct a hearing, the Parties are available on August 12, 2022. |
| Deadline for mailing the Notice Packet to Settlement Class Members and posting the Notice and Claim Form on the Settlement website (the "Notice Date") (*see* Preliminary Approval Order, ¶7(b)) | No later than 20 business days after entry of the Preliminary Approval Order |
| Deadline to publish the Summary Notice (*see* Preliminary Approval Order, ¶7(d)) | Up to 10 business days after the Notice Date |
| Deadline to file papers in support of final approval of the Settlement, the Plan of Allocation and motion for an award of attorneys' fees and expenses (*see* Preliminary Approval Order, ¶26 and Joint Status Report) | October 14, 2022 (or 35 calendar days prior to the Final Approval Hearing) |
| Deadline for receipt of exclusion requests or objections (*see* Preliminary Approval Order, ¶¶13, 16) | October 28, 2022 (or 21 calendar days prior to the Settlement Hearing |

| Event | Deadline |
|---|---|
| Deadline for filing reply papers (*see* Preliminary Approval Order, ¶26 and Joint Status Report) | November 10, 2022 (or at least 7 calendar days prior to the Settlement Hearing) |
| Deadline for submitting proof of the mailing of the Notice to Settlement Class Members and publication of the Summary Notice (*see* Preliminary Approval Order¶7(e)) | November 10, 2022 (or at least 7 calendar days prior to the Settlement Hearing) |
| Settlement Hearing (*see* Preliminary Approval Order, ¶5; Joint Status Report) | November 18, 2022 (or at least 100 calendar days after the filing of the Preliminary Approval Motion, or at the Court's earliest convenience thereafter, in order to comply with the Class Action Fairness Act of 2005) |
| Deadline for submitting Claim Forms (*see* Preliminary Approval Order, ¶10) | Postmarked or submitted online no later than 100 calendar days after the Notice Date |

## VIII.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement and enter the accompanying Preliminary Approval Order.

Dated: August 2, 2022

Respectfully submitted,

*/s/ Steven J. Toll*
Steven J. Toll

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Steven J. Toll (Va. Bar No. 15300)
Daniel S. Sommers (*pro hac vice*)
1100 New York Avenue, NW, 5th Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
stoll@cohenmilstein.com
dsommers@cohenmilstein.com

*Liaison Counsel for Lead Plaintiffs and the proposed Settlement Class*

**SAXENA WHITE P.A.**
Maya Saxena (*pro hac vice*)
Joseph E. White, III (*pro hac vice*)
Lester R. Hooker (*pro hac vice*)
7777 Glades Road, Suite 300
Boca Raton, FL 33434

23

Telephone: (561) 394-3399
Facsimile: (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
lhooker@saxenawhite.com

-and-

Steven B. Singer (*pro hac vice*)
Sara DiLeo (*pro hac vice*)
Joshua H. Saltzman (*pro hac vice*)
Alec Coquin (*pro hac vice*)
10 Bank Street, 8th Floor
White Plains, New York 10606
Telephone: (914) 437-8551
Facsimile: (888) 631-3611
ssinger@saxenawhite.com
sdileo@saxenawhite.com
jsaltzman@saxenawhite.com
acoquin@saxenawhite.com

*Lead Counsel for Lead Plaintiffs and the
proposed Settlement Class*

24

## **<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on August 2, 2022, I caused to be electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all of the registered participants.

*/s/ Steven J. Toll*
Steven J. Toll
