UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| PLYMOUTH COUNTY RETIREMENT SYSTEM and OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>EVOLENT HEALTH, INC., FRANK WILLIAMS, NICHOLAS MCGRANE, and SETH BLACKLEY,<br><br>Defendants. | Case No. 1:19-cv-01031-MSN-TCB |

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement dated as of August 2, 2022 (the "Stipulation") is made pursuant to Rule 23(e) of the Federal Rules of Civil Procedure. Subject to the approval of the United States District Court for the Eastern District of Virginia (the "Court"), this Stipulation is entered into by and among the following parties to the above-captioned action (the "Action") by and through their counsel of record in the Action: (a) Plymouth County Retirement Association ("Plymouth County") and Oklahoma Police Pension and Retirement System ("Oklahoma Police," and together with Plymouth County, "Lead Plaintiffs" or "Plaintiffs"), on behalf of themselves and the other members of the Settlement Class (defined below); and (b) (i) defendant Evolent Health, Inc. ("Evolent" or the "Company") and (ii) defendants Frank Williams, Nicholas McGrane, and Seth Blackley (the "Individual Defendants") (collectively with Evolent, the "Defendants" and, together with Lead Plaintiffs, the "Parties").[1] This Stipulation is intended to fully, finally, and forever compromise, settle, release, resolve, and dismiss with prejudice all claims asserted in the Action against the Defendant Releasees as set forth below.

## I.    THE ACTION

### 1.    Overview of Plaintiffs' Claims

The operative complaint in the Action, the Third Amended Complaint ("TAC" or the "Complaint," ECF Nos. 150, 158) alleged, among other things, that throughout the Settlement Class Period (as defined below), Defendants made false and misleading statements and omissions regarding the partnership between Evolent, a provider of technology-enabled clinical and administrative services to health systems, and Passport Health Plan ("Passport"), a

---

[1] All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in ¶ 1 herein. The singular forms of nouns and pronouns include the plural and vice versa.

Kentucky-based non-profit Medicaid health insurance plan that represented as much as 20% of Evolent's annual revenues.  Specifically, the TAC alleged that Defendants' false and misleading statements included: (1) various statements in January, May, and September 2018 investor presentations that Evolent had achieved certain identified cost savings for Passport; (2) statements in January 2019 to a news publication, *Insider Louisville*, that Evolent provided certain services to Passport "at cost" or "at a lower per member cost than prior periods"; (3) statements in February 2019 that it was "not in [Evolent's] strategic lens" to buy Passport,  that Evolent faced no "broader exposure" if Passport were to become insolvent, and that acquiring an ownership stake or assets of Passport was not something the Company was "currently evaluating"; and (4) statements in May 2019 that Evolent believed that Passport's financial condition was improving.

The TAC alleged that the truth began to emerge on February 15, 2019, when Passport filed a lawsuit against Kentucky's Cabinet for Health and Family Services and Finance and Administration Cabinet that, among other things, detailed that Passport's financial situation was far more dire than previously reported. The TAC also alleged that in response to these revelations, Evolent's common stock price declined 10.8%, from $16.80 per share to $14.99 per share on February 19, 2019 (the first trading day after the filing of the Passport lawsuit).

The TAC further alleged that the truth was finally revealed when on May 29, 2019, before the market opened, Evolent announced that it would acquire a 70% ownership stake in Passport for $70 million, and would provide "interim balance sheet support" if such support became necessary for Passport to continue to meet its statutory capital requirements.  The TAC alleged that, on this news, Evolent's common stock price fell 29.3% from $14.15 per share on May 28, 2019, to close at just $10.01 per share on May 29, 2019.

Throughout the course of the litigation, Defendants have expressly denied that Lead Plaintiffs asserted any valid claims as to any of them. Defendants continue to expressly deny any and all allegations of falsity, fault, liability, wrongdoing, or damages whatsoever, or any allegations of infirmity in the defenses that Defendants have, or could have asserted.

2.    **Procedural History**

The original securities class action complaint in the Action was filed in this District by Plymouth County on August 8, 2019, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder. ECF No. 1. On November 12, 2019, the Court appointed Plymouth County and Oklahoma Police as Lead Plaintiffs, pursuant to the requirements of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and approved Lead Plaintiffs' selection of Saxena White P.A. ("Saxena White") as Lead Counsel and Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as Liaison Counsel. ECF No. 29. On January 10, 2020, Lead Plaintiffs filed their Amended Class Action Complaint (the "Amended Complaint," ECF No. 38). In addition to the Defendants, the Amended Complaint also alleged claims against Christie Spencer and Steve Wigginton ("Former Defendants").

On February 6, 2020, Defendants and Former Defendants moved to dismiss Lead Plaintiffs' Amended Complaint. ECF Nos. 48-51. Lead Plaintiffs filed their opposition on February 27, 2020, and on March 5, 2020, Defendants and Former Defendants filed their reply. ECF Nos. 54, 57. On May 7, 2020, Lead Plaintiffs moved for leave to file the Second Amended Complaint ("SAC"), to incorporate new allegations related to information provided by a confidential witness. ECF Nos. 60, 61. On June 5, 2020, the Court granted this motion and directed that the SAC be made effective. *See* ECF Nos. 68, 69. On June 22, 2020, Defendants

and Former Defendants moved to dismiss the SAC. ECF Nos. 74-77.  On July 6, 2020, Lead Plaintiffs filed their opposition, and on July 17, 2020, Defendants and Former Defendants replied.  ECF Nos. 80-81, 85.

On March 24, 2021, the Court issued an order granting in part and denying in part Defendants' motion to dismiss the SAC. ECF No. 106.  The Court held that the case could move forward as to certain statements made on September 5, 2018, January 25, 2019, February 26, 2019, and May 7, 2019.  The Court also held that sixteen other statements alleged to be false or misleading in the SAC were not adequately pled and thus were not actionable.  *Id.* at 59.

On April 1, 2021, Defendants and Former Defendants moved for the Court to reconsider its decision to sustain as actionable the alleged false statements made by Defendant Williams on February 26, 2019 and May 7, 2019, while Lead Plaintiffs moved for the Court to reconsider its decision finding the May 11, 2018 alleged false statement by Defendant Blackley inactionable. ECF Nos. 109-112.

On September 9, 2021, Magistrate Judge Theresa Carroll Buchanan entered a Rule 16(b) Scheduling Order providing deadlines for, among other things, discovery and a pretrial conference.  ECF No. 125.  Discovery then commenced.  Lead Plaintiffs sought discovery from Evolent, each of the Individual Defendants and Former Defendants, Passport, Molina Healthcare Inc. ("Molina," which acquired Passport's assets after the end of the Class Period), and the Kentucky Cabinet for Health and Family Services.  Defendants and Former Defendants sought discovery from Lead Plaintiffs and Lead Plaintiffs' third-party investment managers, Silvercrest Asset Management Group, Inc. and Newton Asset Management N.A.; Lead Plaintiffs' investment consultants, Meketa Investment Group, Inc. and Asset Consulting Group, Inc.; and Lead Plaintiffs' custodian banks, State Street Corp. and BNY Mellon Corp.

After the Parties agreed on an appropriate set of search terms, custodians and various other discovery parameters, Defendants collected, reviewed, and produced on behalf of themselves, Passport, Molina, and Defendants' experts approximately 61,000 documents spanning 663,000 pages in fourteen separate productions over the course of over eight months, and Lead Plaintiffs reviewed these documents. Defendants made their first production to Lead Plaintiffs on October 7, 2021, substantially completed their document productions by November 15, 2021, and made their last production on June 24, 2022. Lead Plaintiffs collected, reviewed, and produced, and Defendants reviewed, approximately 1,750 documents spanning 31,600 pages on behalf of Lead Plaintiffs and their experts. The Parties also reviewed the approximately 8,400 documents spanning more than 81,000 pages that were produced by Lead Plaintiffs' investment managers, investment consultants, and custodian banks in response to Defendants' subpoenas. Finally, Lead Plaintiffs received and then reviewed and produced, and Defendants reviewed, 73 documents spanning 10,600 pages from Kentucky's Cabinet for Health and Family Services.

While discovery was underway, on October 19, 2021, Lead Plaintiffs filed their Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel and Liaison Counsel. ECF Nos. 134-136. In this motion, Lead Plaintiffs requested that the Court certify this Action as a class action with a class period of between September 5, 2018 and May 28, 2019, inclusive, appoint Lead Plaintiffs as Class Representatives, appoint Saxena White as Class Counsel, and appoint Cohen Milstein as Liaison Class Counsel.

On November 5, 2021, the Action was reassigned from Judge Rossie D. Alston, Jr. to Judge Michael S. Nachmanoff.

Lead Plaintiffs filed a notice of their intent to amend the SAC on November 4, 2021. ECF No. 139. Consequently, the Court stayed the deadlines related to class certification. ECF

No. 142. Lead Plaintiffs then moved for leave to amend the SAC on November 17, 2021, attaching a copy of the proposed TAC, which no longer asserted any claims against the Former Defendants, incorporated allegations regarding various documents produced in discovery by Defendants, and alleged three new false statements related to savings Evolent claimed to have provided to Passport. ECF Nos. 147-150.

Defendants notified Lead Plaintiffs that they would consent to Lead Plaintiffs' filing of the TAC, but that they planned to move to dismiss the TAC. As such, the Parties agreed that, pursuant to the PSLRA, all remaining discovery should be stayed and all upcoming deadlines pursuant to the case schedule should be taken off calendar pending resolution of Defendants' forthcoming motion to dismiss the TAC. To that end, on December 1, 2021, Defendants filed a notice of non-opposition to Plaintiffs' motion for leave to amend the SAC, and the Parties filed a joint motion to modify certain deadlines. ECF Nos. 153, 155. On December 2, 2021, Magistrate Judge Theresa Carroll Buchanan granted Plaintiffs' motion for leave to amend the SAC, permitted the TAC to become the operative complaint in this Action (thereby staying all discovery), and entered an amended scheduling order providing a schedule for briefing of Defendants' partial motion to dismiss the TAC. ECF Nos. 156, 157.

On December 1, 2021, the Parties held their first remote, one-day mediation session before Mr. Jed Melnick, Esq., a renowned mediator affiliated with JAMS. In advance of this mediation session, the Parties submitted substantial materials in support of their respective positions. After a full day mediation session, the mediation concluded without a resolution of the Action.

Defendants moved to partially dismiss the TAC on December 21, 2021, asking the Court to dismiss the statements made on January 10, 2018 and May 11, 2018 that were newly alleged

in the TAC, and to reconsider its prior decision upholding the alleged false statements made on February 26, 2019 and May 7, 2019.  ECF Nos. 161-168.  Plaintiffs filed their opposition on January 28, 2022, and Defendants replied on February 10, 2022.  ECF Nos. 178-179, 182-183.

On March 18, 2022, Judge Nachmanoff conducted a hearing on Defendants' partial motion to dismiss the TAC, at the conclusion of which he: (1) declined to reconsider Judge Alston's decision finding Defendant Blackley's May 11, 2018 alleged false statement to be inactionable; (2) declined to reconsider Judge Alston's decision finding Defendant Williams' February 26, 2019 and May 7, 2019 alleged false statements to be actionable; (3) sustained as actionable the newly alleged false statements made on January 10, 2018 and May 11, 2018; and (4) thereby lifted the second discovery stay.  ECF Nos. 190, 193.  The Court entered a second amended scheduling order on March 24, 2022, which, among other things, provided for the close of fact and expert discovery on June 24, 2022 and set a pretrial conference for June 30, 2022. ECF No. 192.

After discovery resumed, the Parties conducted a total of 23 depositions in this Action between April 21, 2022 and June 28, 2022, which occurred remotely and/or in-person in Florida, Illinois, New York, Virginia, Washington, D.C., Kentucky, Texas, and Colorado.   These consisted of thirteen fact depositions, two Rule 30(b)(6) depositions of representatives of Lead Plaintiffs, two Rule 30(b)(6) depositions of representatives of Lead Plaintiffs' investment managers, and six expert depositions.

With respect to expert discovery, the Parties served and/or filed eleven expert reports (inclusive of those filed in connection with Plaintiffs' class certification motion and Defendants' opposition thereto): three reports prepared by Chad Coffman, CFA and served and/or filed on behalf of Lead Plaintiffs on October 19, 2021, April 8, 2022, and May 27, 2022; two reports

prepared by Adam E. Block, PhD and served on behalf of Lead Plaintiffs on May 27, 2022 and June 14, 2022; two reports prepared by Lucy P. Allen and served and/or filed on behalf of Defendants on May 20, 2022 and June 14, 2022; two reports prepared by Kevin O'Brien, CFE, CICA, CVA, MAFF and served on behalf of Defendants on May 27, 2022 and June 14, 2022; and two reports prepared by Robert G. Manz, CPA/CFF, CFA, CFE and served on behalf of Defendants on May 27, 2022 and June 14, 2022.

On April 8, 2022, Lead Plaintiffs filed a renewed Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel and Liaison Counsel. ECF Nos. 195-197.  In this motion, Lead Plaintiffs requested that the Court certify this Action as a class action with the Class Period between January 10, 2018 and May 28, 2019, inclusive, appoint Lead Plaintiffs as Class Representatives, appoint Saxena White as Class Counsel, and appoint Cohen Milstein as Liaison Class Counsel.  In connection with this motion, Lead Plaintiffs also submitted the expert report of Chad Coffman, CFA.  ECF No. 197-1.

On May 20, 2022, Defendants filed an opposition to Plaintiffs' renewed motion for class certification.  ECF Nos. 208, 213, 214.  In connection with their opposition, Defendants submitted the expert report of Lucy P. Allen.  ECF No. 213-8.

On June 3, 2022, Defendants moved for leave to present live expert testimony at the scheduled class certification hearing and to file a supplemental brief opposing class certification. ECF Nos. 218-220.  On June 8, 2022, Plaintiffs filed their opposition to Defendants' motion for leave to present live expert testimony and to file a supplemental brief.  ECF No. 221.  On June 9, 2022, Defendants replied.  ECF No. 222.  To resolve this motion, the Court conducted a status conference on June 14, 2022, at which time the Court: (1) denied Defendants' motion; (2) rescheduled the hearing on Plaintiffs' motion for class certification to July 8, 2022; (3) directed

the Parties to confer and file a proposed schedule for summary judgment; and (4) suspended the June 30, 2022 pretrial conference.  ECF Nos. 224, 225.

On June 17, 2022, Lead Plaintiffs filed their reply in further support of their motion for class certification.  ECF Nos. 231-233.  On June 24, 2022, the Court extended discovery through June 29, 2022.  ECF No. 235.  On June 29, 2022, the Parties exchanged comprehensive supplemental responses and objections to interrogatories that set out each side's view of how the facts uncovered in discovery supported their contentions and/or defenses.

On July 8, 2022, the Court conducted a hearing on Lead Plaintiffs' class certification motion, at which the Court heard arguments from counsel for each of the Parties and took these arguments under advisement.  ECF No. 239.  The Court had yet to rule on Lead Plaintiffs' motion for class certification when the Parties agreed in principle to resolve the Action.

On July 11, 2022, the Parties participated in a second remote, full-day mediation session before Mr. Melnick, with the Parties again submitting written statements and exhibits in support of their respective positions.  At the conclusion of this mediation, the Parties agreed in principle to settle this Action for $23.5 million, subject to execution of this Stipulation and to Court approval of the proposed Settlement.

## II.    CLAIMS OF LEAD PLAINTIFFS AND BENEFIT OF THE SETTLEMENT

Lead Plaintiffs and Lead Counsel have determined that the terms set forth in this Stipulation are fair, reasonable, adequate, and in the best interests of the Settlement Class.  Based upon their investigation and prosecution of the case, Lead Plaintiffs and Lead Counsel believe that the claims asserted in the Action have merit and that the evidence developed in discovery further supports those claims.  The Stipulation shall not be construed as or received in evidence as an admission, concession, or presumption against Lead Plaintiffs or any of the Settlement

Class Members that any of their claims are without merit, that any defenses asserted by Defendants have merit, or that the damages recoverable in the Action would not have exceeded the Settlement Fund (as defined herein). However, Lead Plaintiffs recognize and acknowledge the additional expense and risks posed by the continued litigation of the Action against Defendants through trial and appeals, specifically that the Parties were awaiting the Court's imminent decision on Plaintiffs' motion for class certification and were on the eve of briefing motions for summary judgment.

Lead Plaintiffs have also taken into account the uncertain outcome and risk of any litigation, especially in complex actions such as this Action, as well as the difficulties and delays of such litigation. Lead Plaintiffs are also mindful of the inherent difficulties of proof associated with, and possible defenses to, the securities law violations asserted in the Action. Lead Plaintiffs believe that the terms set forth in this Stipulation confer substantial benefits upon the Settlement Class.

## III.    DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Throughout this Action, Defendants have denied, and continue to deny, any and all allegations of fault, liability, wrongdoing, or damages whatsoever arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Action. Defendants have denied, and continue to deny, the allegations that Lead Plaintiffs or any Settlement Class Member has suffered damages or was harmed by any of the conduct alleged in the Action or that could have been alleged as part of the Action. Defendants maintain that they have meritorious defenses to all claims in the Action.

Although Defendants continue to believe the claims asserted against them in the Action are without merit, they have agreed to enter into the Settlement set forth in this Stipulation solely

to avoid the expense, distraction, time and uncertainty associated with the Action. Having taken into account the risks inherent in any litigation, especially in complex cases such as this Action, Defendants have concluded that it is desirable and beneficial that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation.

## IV.    **SETTLEMENT TERMS**

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among Lead Plaintiffs (individually and on behalf of all other members of the Settlement Class) and Defendants, by and through their respective counsel, and subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, that, in consideration of the benefits flowing to the Parties from the Settlement, all Released Plaintiffs' Claims as against the Defendant Releasees and all Released Defendants' Claims as against the Plaintiff Releasees shall be settled and released, and the Action shall be dismissed with prejudice, upon and subject to the terms and conditions set forth below.

### 1.    **Definitions**

As used in this Stipulation, the following terms have the meanings specified below:

1.1    "Action" means the securities class action styled *Plymouth County Retirement System and Oklahoma Police Pension and Retirement System v. Evolent Health, Inc., et al.,* Case No. 1:19-cv-01031-MSN-TCB (E.D. Va.).

1.2    "Alternate Judgment" means a form of final judgment in a form other than the form of Judgment provided for in this Stipulation that may be approved of in writing by all the Parties acting by and through their respective counsel of record in the Action and entered by the Court.

1.3    "Authorized Claimant" means a Settlement Class Member who submits a Proof of Claim Form to the Claims Administrator that is approved by the Court for payment from the Net Settlement Fund.

1.4    "Claim" means a Proof of Claim Form submitted to the Claims Administrator.

1.5    "Claim Form" or "Proof of Claim Form" means substantially the form attached hereto as Exhibit A-2, that a Claimant or Settlement Class Member must complete and submit should that Claimant or Settlement Class Member seek to share in a distribution of the Net Settlement Fund.

1.6    "Claimant" means a person or entity who or which submits a Claim Form to the Claims Administrator seeking to be eligible to share in the proceeds of the Settlement Fund.

1.7    "Claims Administrator" means the firm retained by Lead Plaintiffs and Lead Counsel, subject to approval of the Court, to provide all notices approved by the Court to potential Settlement Class Members and to administer the Settlement.

1.8    "Class Distribution Order" means an order entered by the Court authorizing and directing that the Net Settlement Fund be distributed, in whole or in part, to Authorized Claimants.

1.9    "Court" means the United States District Court for the Eastern District of Virginia.

1.10    "Evolent" or "the Company" means Evolent Health, Inc.

1.11    "Defendants" means Evolent and the Individual Defendants.

1.12    "Defendants' Counsel" means the law firms of King & Spalding LLP and Hirschler Fleischer, PC.

12

1.13    "Defendant Releasees" means each and all Defendants, Former Defendants, Defendants' Counsel, and their respective Related Persons.

1.14    "Effective Date" means the first date by which all of the conditions specified in Paragraph 8.1 below have been met and have occurred or have been waived.

1.15    "Escrow Account" means an account maintained at The Huntington National Bank, wherein the Settlement Amount shall be deposited and held in escrow under the control of Lead Counsel.

1.16    "Escrow Agent" means The Huntington National Bank.

1.17    "Escrow Agreement" means the agreement between Lead Counsel and the Escrow Agent setting forth the terms under which the Escrow Agent shall maintain the Escrow Account.

1.18    "Final," with respect to the Judgment, or any other court order, means: (i) if no appeal is filed, the expiration date of the time provided for filing or noticing any appeal under the Federal Rules of Appellate Procedure, i.e., thirty (30) days after entry of the judgment or order; or (ii) if there is an appeal from the judgment or order, (a) the date of final dismissal of all such appeals, or the final dismissal of any proceeding on certiorari or otherwise, or (b) the date the judgment or order is finally affirmed on an appeal, the expiration of the time to file a petition for a writ of certiorari or other form of review, or the denial of a writ of certiorari or other form of review, and, if certiorari or other form of review is granted, the date of final affirmance following review pursuant to that grant.  However, any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to (i) attorneys' fees, costs or expenses; (ii) the plan of allocation of Settlement proceeds (as submitted or subsequently modified); or (iii) the procedures for determining Authorized Claimants' recognized claims, or

13

distribution of the Net Settlement Fund to Authorized Claimants, shall not in any way delay or affect the time set forth above for the Judgment to become Final, or otherwise preclude a judgment from becoming Final.

1.19    "Immediate Family" means children, stepchildren, parents, stepparents, spouses, siblings, mothers-in-law, fathers-in-law, sons-in-law, daughters-in-law, brothers-in-law, and sisters-in-law.   As used in this paragraph, "spouse" shall mean a husband, a wife, or a partner in a state-recognized domestic relationship or civil union.

1.20    "Individual Defendants" means Frank Williams, Nicholas McGrane, and Seth Blackley.

1.21    "Judgment" means the judgment to be rendered by the Court in the form of Exhibit B attached hereto, or the Alternate Judgment.

1.22    "Lead Counsel" means Saxena White P.A.

1.23    "Lead Plaintiffs" means Plymouth County Retirement Association and Oklahoma Police Pension and Retirement System.

1.24    "Liaison Counsel" means Cohen Milstein Sellers & Toll PLLC.

1.25    "Litigation Expenses" means costs and expenses incurred in connection with commencing, prosecuting, and settling the Action (which may include the reimbursement, pursuant to the PSLRA, of time, costs, and expenses of Lead Plaintiffs directly related to their representation of the Settlement Class), for which Lead Counsel intend to apply to the Court for reimbursement from the Settlement Fund.

1.26    "Net Settlement Fund" means the Settlement Fund less: (i) any Taxes and Tax Expenses; (ii) any Notice and Administration Costs; (iii) any Litigation Expenses awarded by the

Court; (iv) any attorneys' fees awarded by the Court; and (v) any other Court-approved deductions.

1.27    "Notice" means the Notice of (i) Proposed Settlement and Plan of Allocation; (ii) Settlement Fairness Hearing; and (iii) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, in the form attached hereto as Exhibit A-1, or in such other form as may be approved in writing by all of the Parties acting by and through their respective counsel of record in the Action and approved by the Court, which is to be mailed to Settlement Class Members.

1.28    "Notice and Administration Costs" means the reasonable costs, fees and expenses that are actually incurred by the Claims Administrator and/or Lead Counsel in connection with: (i) providing notices to the Settlement Class; and (ii) administering the Settlement, including but not limited to the Claims process, as well as the costs, fees, and expenses incurred in connection with the Escrow Account.

1.29    "Officer" means any officer as that term is defined in Securities and Exchange Act Rule 16a-1(f).

1.30    "Parties" means Defendants and Lead Plaintiffs, on behalf of themselves and the Settlement Class.

1.31    "Plaintiffs' Counsel" means Lead Counsel and Liaison Counsel.

1.32    "Plaintiff Releasees" means Lead Plaintiffs, all other plaintiffs in the Action, Plaintiffs' Counsel, and all other Settlement Class Members, as well as each of their respective current and former Officers, directors, agents, parents, affiliates, subsidiaries, successors, predecessors, assigns, assignees, employees, and attorneys, in their capacities as such.

1.33    "Plan of Allocation" means the proposed plan or formula for allocation of the Net Settlement Fund to Authorized Claimants as set forth in the Notice.  Any Plan of Allocation is not part of the Stipulation, and Defendant Releasees shall have no responsibility for the Plan of Allocation or its implementation and no liability with respect thereto.  Any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel this Stipulation or affect the finality of the Judgment or any other orders entered by the Court pursuant to this Stipulation.

1.34    "Preliminary Approval Order" means the order to be entered by the Court preliminarily approving the Settlement and directing that notice of the Settlement be provided to the Settlement Class, substantially in the form attached hereto as Exhibit A, or in such other form as approved by the Court.

1.35    "PSLRA" means the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended.

1.36    "Related Persons" means (i) with respect to Defendants, Former Defendants, Defendants' Counsel, and each of their respective current and former Officers, directors, agents, parents, affiliates, subsidiaries, insurers, reinsurers, successors, predecessors, assigns, assignees, employees, and attorneys, in their capacities as such; and (ii) with respect to the Individual Defendants and the Former Defendants, their Immediate Family members, heirs, successors, executors, estates, administrators, attorneys, agents, accountants, insurers or reinsurers, personal representatives, trusts, community property, and any other entity in which any of them has a controlling interest, and as to such entities, each and all of their predecessors, successors, past, present or future parents, subsidiaries, affiliates, and each of their respective past, or present Officers, directors, shareholders, agents, partners, principals, members, employees, attorneys, advisors, trustees, auditors and accountants, insurers, and reinsurers.

16

1.37    "Released Claims" means all Released Defendants' Claims and all Released Plaintiffs' Claims.

1.38    "Released Defendants' Claims" means all claims, demands, losses, rights, liability, or causes of action, in law or in equity, accrued or unaccrued, fixed or contingent, liquidated or unliquidated, matured or unmatured, direct, individual, or representative, of every nature and description whatsoever, whether known or unknown, or based on federal, state, local, statutory or common law, or any other law, rule or regulation (including the law of any jurisdiction outside the United States), that were or could have been asserted in the Action or could in the future be asserted in any forum, whether foreign or domestic, against Plaintiff Releasees by Defendants, Former Defendants, or any member of Defendant Releasees, or their successors, assigns, executors, administrators, representatives, attorneys, and agents in their capacity as such, which arise out of, relate to, or are based upon, the institution, prosecution, or settlement of the claims asserted in the Action against the Defendants. Released Defendants' Claims do not include any claims relating to the enforcement of the Settlement, or any claims against any person or entity who or which submits a request for exclusion from the Settlement Class that is accepted by the Court.

1.39    "Released Plaintiffs' Claims" means any and all claims, demands, losses, rights, liability, or causes of action, in law or in equity, accrued or unaccrued, fixed or contingent, liquidated or unliquidated, matured or unmatured, direct, individual or representative, of every nature and description whatsoever, whether known or unknown, or based on federal, state, local, statutory or common law or any other law, rule, or regulation (including the law of any jurisdiction outside the United States), that were or could have been asserted in the Action or could in the future be asserted in any forum, whether foreign or domestic, against Defendant

17

Releasees by Class Representatives or any member of the Settlement Class, or their successors, assigns, executors, administrators, representatives, attorneys, and agents in their capacity as such, which arise out of, are based upon, concern, or relate in any way to (i) any of the allegations, facts, transactions, events, matters, occurrences, acts, disclosures, oral or written statements, representations, omissions, failures to act, filings, publications, disseminations, press releases, or presentations involved, related to, set forth, alleged, or referred to in the Action; or (ii) the purchase, acquisition, holding, sale, or disposition of any publicly-traded Evolent common stock during the Settlement Class Period.  "Released Plaintiffs' Claims" shall not include any claims to enforce this Settlement, any claims asserted in a derivative action or an ERISA action based on similar allegations, or any claims of any person or entity who or which submits a request for exclusion from the Settlement Class that is accepted and approved by the Court.

1.40    "Releasee(s)" means each and any of the Defendant Releasees and each and any of the Plaintiff Releasees.

1.41    "Releases" means the releases set forth in ¶¶ 5.2-5.5 of this Stipulation.

1.42    "Settlement" means the settlement of the Action between Lead Plaintiffs, on behalf of themselves and the Settlement Class, and each of the Defendants on the terms and conditions set forth in this Stipulation.

1.43    "Settlement Amount" means twenty-three million, five-hundred thousand dollars ($23,500,000).

1.44    "Settlement Class" or "Class" means all persons and entities who purchased or otherwise acquired publicly-traded Evolent common stock between January 10, 2018 and May 28, 2019, inclusive, and were damaged thereby.  Excluded from the Class are Defendants, the Officers and directors of Evolent at all relevant times, and Defendants' Related Persons.  Also

18

excluded from the Settlement Class are those persons and entities who file valid and timely requests for exclusion in accordance with the Preliminary Approval Order.

1.45    "Settlement Class Period" or "Class Period" means the time period between January 10, 2018 and May 28, 2019, inclusive.

1.46    "Settlement Class Member" means each person or entity who or which is a member of the Settlement Class.

1.47    "Settlement Fund" means the Settlement Amount plus any and all interest earned thereon.

1.48    "Settlement Hearing," "Settlement Fairness Hearing" or "Final Approval Hearing" means the hearing set by the Court under Rule 23(e)(2) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

1.49    "Stipulation" means this Stipulation and Agreement of Settlement, including the recitals and Exhibits hereto, each of which is incorporated by reference as though set forth in the Stipulation itself.

1.50    "Summary Notice" means the Summary Notice of (i) Proposed Settlement and Plan of Allocation; (ii) Settlement Fairness Hearing; and (iii) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, in the form attached hereto as Exhibit A-3, to be published as set forth in the Preliminary Approval Order, or in such other form as may be approved in writing by all of the Parties acting by and through their respective counsel of record in the Action and approved by the Court.

1.51    "Taxes" means all federal, state, and/or local taxes of any kind (including any interest or penalties thereon) on any income earned by the Settlement Fund, including any taxes or tax detriments to which Defendants may be subject with respect to (i) any income or gains

earned by the Settlement Fund for any period during which the Settlement Fund is not treated, or does not qualify, as a "qualified settlement fund" for federal or state income tax purposes; and (ii) the payment or reimbursement by the Settlement Fund of any taxes or tax detriments described in clause (i) of this definition.

1.52    "Tax Expenses" means any expenses and costs incurred in connection with the operation and implementation of ¶¶ 2.6-2.7 (including, without limitation, expenses of tax attorneys and/or accountants and/or other advisors and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in ¶ 2.6).

1.53    "Unknown Claims" means (i) any Released Plaintiffs' Claims that Lead Plaintiffs or any other Settlement Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, and (ii) any Released Defendants' Claims that any Defendant or any other Defendant Releasee does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, which, if known by him, her, or it might have affected his, her, or its decision(s) with respect to this Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date of the Settlement, Lead Plaintiffs and Defendants shall expressly waive, and each of the other Plaintiff Releasees and Defendant Releasees shall be deemed to have waived, and by operation of the Judgment, shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

The Releasees acknowledge that they may hereafter discover facts in addition to or different from those which he, she, it, or their counsel now knows or believes to be true with respect to the subject matter of the Released Claims but they are notwithstanding this potential entering into the Stipulation and intend it to be a full, final, and permanent resolution of the matters at issue in this Action.  Lead Plaintiffs and Defendants acknowledge, and each of the other Settlement Class Members and each of the other Plaintiff Releasees and Defendant Releasees shall be deemed by operation of law to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement.

    **2.**      **The Settlement**

        **a.**      **The Settlement Fund**

    2.1    Subject to the terms of this Stipulation, Defendants shall cause to be paid the Settlement Amount into the Escrow Account designated by the Escrow Agent within fourteen (14) calendar days after the later of (i) the date of entry of the Preliminary Approval Order or (ii) the date that Lead Counsel provides Defendants' Counsel with an appropriate IRS Form W-9 and wire transfer, ACH transfer, EFT, and/or check payment instructions for the Escrow Agent (including name, telephone and email contact information and a physical address for the Escrow Agent).

    2.2    The payments described in ¶ 2.1 are the only payments to be made by or on behalf of any and all of the Defendant Releasees in connection with this Settlement.  All fees, costs, and expenses incurred by or on behalf of Lead Plaintiffs and members of the Settlement Class associated with this Settlement, including, but not limited to, (a) any Taxes or Tax Expenses; (b) any Notice and Administration Costs; (c) any Litigation Expenses awarded by the Court; (d) any attorneys' fees awarded by the Court; and (e) any other Court-approved deductions, shall be paid

from the Settlement Fund, and in no event shall any Defendant Releasee bear any responsibility or liability for any such fees, costs, or expenses. Upon the payment in full of the Settlement Amount as set forth in ¶ 2.1 above, all of Defendants' obligations of performance pursuant to the Settlement shall be deemed fully satisfied, and, subject to the remaining terms set forth herein including the notice required by the Class Action Fairness Act of 2005 ("CAFA") referenced in ¶ 11.3, no further performance shall be owed by Defendants.

<b>b.    <u>Use of the Settlement Fund</u></b>

2.3    Subject to the terms and conditions of this Stipulation and the Settlement, the Settlement Fund shall be used to pay: (a) any Taxes or Tax Expenses; (b) any Notice and Administration Costs; (c) any Litigation Expenses awarded by the Court; (d) any attorneys' fees awarded by the Court; and (e) any other Court-approved deductions. The balance remaining in the Settlement Fund, that is, the Net Settlement Fund, shall be distributed to Authorized Claimants as provided in ¶¶ 4.1-4.14 below, or as otherwise ordered by the Court.

2.4    Except as provided herein or pursuant to orders of the Court, the Net Settlement Fund shall remain in the Escrow Account prior to the Effective Date. All funds held by the Escrow Agent shall be deemed to be in the custody of the Court, and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned pursuant to the terms of this Stipulation or further order(s) of the Court. The Escrow Agent shall invest any funds in the Escrow Account exclusively in United States Treasury Bills (or a mutual fund invested solely in such instruments) and shall collect and reinvest all interest accrued thereon, except that any residual cash balances up to the amount that is insured by the FDIC may be deposited in any account that is fully insured by the FDIC. In lieu of purchasing such Treasury Bills, all or any portion of the funds held by the Escrow Agent may be deposited in any account

22

that is fully insured by the FDIC or backed by the full faith and credit of the United States.  All risks related to the investment of the Settlement Fund shall be borne by the Escrow Agent, and the Defendant Releasees shall have no responsibility for, interest in, or liability whatsoever with respect to any investment decisions or actions taken, or any transactions executed by, the Escrow Agent.

      2.5    The Escrow Agent shall not disburse the Settlement Fund except as provided in the Stipulation or by an order of the Court.

      2.6    The Parties agree that the Settlement Fund is intended to be a qualified settlement fund within the meaning of Treasury Regulation § 1.468B-1 and that Lead Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k) and (l)) for the Settlement Fund.  Lead Counsel shall also be responsible for causing payment to be made from the Settlement Fund of any Taxes and Tax Expenses owed with respect to the Settlement Fund and shall cause the Defendants to be reimbursed from the Settlement Fund for any Taxes and Tax Expenses to which Defendants are subject.  The Defendant Releasees shall not have any liability or responsibility for any such Taxes and Tax Expenses.  Upon written request, Defendants will timely provide to Lead Counsel the statement described in Treasury Regulation § 1.468B-3(e).  Lead Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall timely make such elections as are necessary or advisable to carry out this paragraph, including, as necessary, making a "relation back election," as described in Treasury Regulation § 1.468B-1(j), to cause the qualified settlement fund to come into existence at the earliest allowable date, and

shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith. Such elections shall be made in compliance with procedures and requirements contained in such regulations. It shall be the responsibility of Lead Counsel to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to timely occur.

2.7     All Taxes and Tax Expenses shall be paid out of the Settlement Fund and shall be timely paid by the Escrow Agent pursuant to the disbursement instructions to be set forth in the Escrow Agreement and without further order of the Court. The Escrow Agent shall be authorized (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treasury Regulation § 1.468B-2(l)(2)). Any tax returns prepared for the Settlement Fund (as well as any election set forth therein) shall be consistent with the previous paragraph and in all events shall reflect that all Taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein. The Defendant Releasees shall have no responsibility or liability for the acts or omissions of the Claims Administrator, the Escrow Agent, Lead Counsel, or their agents with respect to the payment of Taxes, as described herein, or the filing of any tax returns or other documents in connection with the Settlement Fund.

2.8     The Settlement is not a claims-made settlement. Upon the occurrence of the Effective Date, no Defendant Releasee, or any person or entity who or which paid any portion of the Settlement Amount, shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever, including without limitation, the number of Claim Forms

submitted, the collective amount of recognized claims of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund. In no instance shall any Defendant Releasee be required to pay any amount other than as specified in ¶ 2.1.

2.9    Notwithstanding the fact that the Effective Date of the Settlement has not yet occurred, Lead Counsel may pay from the Settlement Fund, without further approval from Defendants or further order of the Court, reasonable Notice and Administration Costs actually incurred and paid or payable, but not to exceed $300,000. Such costs and expenses shall include, without limitation, the actual costs of printing and mailing the Notice, publishing the Summary Notice, reimbursements to nominee owners for forwarding the Notice to their beneficial owners, the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice, administering the Settlement (including processing the submitted Claims), and the fees, if any, of the Escrow Agent. In the event that the Settlement is terminated pursuant to the terms of this Stipulation, all Notice and Administration Costs paid or incurred, including any related fees, shall not be returned or repaid to any of the Defendant Releasees, or any person or entity who or which paid any portion of the Settlement Amount.

## 3.    Class Certification and Preliminary Approval Order

3.1    Solely for purposes of the Settlement and for no other purpose, the Parties stipulate and agree to: (a) certification of the Action, as alleged in the Third Amended Complaint, as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Settlement Class; (b) certification of Lead Plaintiffs as Class Representatives for the Settlement Class; and (c) appointment of Lead Counsel as Class Counsel,

and Liaison Counsel as Liaison Class Counsel for the Settlement Class, pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

3.2    As soon as practicable after execution of the Stipulation, Lead Plaintiffs will promptly move for preliminary approval of the Settlement and certification of the Settlement Class for settlement purposes only, which motion shall be unopposed by Defendants.  Lead Counsel shall submit the Stipulation together with its exhibits (the "Exhibits") to the Court. Concurrently with the motion for preliminary approval, Lead Plaintiffs shall apply to the Court for, and Defendants shall agree to, entry of the Preliminary Approval Order, in the form attached hereto as Exhibit A, or in such other form as may be approved in writing by all the Parties acting by and through their respective counsel of record in the Action and entered by the Court, requesting, *inter alia*, the preliminary approval of the Settlement set forth in this Stipulation, approval for mailing the Notice in the form of Exhibit A-1 attached hereto, and for publication of the Summary Notice in the form of Exhibit A-3 attached hereto, or in such other forms as may be approved in writing by all of the Parties acting by and through their respective counsel of record in the Action and approved by the Court.

3.3    In addition, Lead Plaintiffs' motion shall request that the Court hold the Final Approval Hearing.  At or prior to the Final Approval Hearing, Lead Counsel will request that the Court approve the proposed Plan of Allocation, reimbursement of Lead Plaintiffs' costs and expenses directly related to their representation of the Settlement Class, and any of Plaintiffs' Counsel's fees and expenses.

**4.    Notice and Settlement Administration**

4.1    As part of the Preliminary Approval Order, Lead Plaintiffs shall seek appointment of a Claims Administrator.  The Claims Administrator shall administer the Settlement, including,

but not limited to, the process of receiving, reviewing, and approving or denying Claims, under Lead Counsel's supervision and subject to the jurisdiction of the Court. Other than Evolent's obligation to provide shareholder information as provided in ¶ 4.2 below, none of the Defendant Releasees shall have any involvement in or any responsibility, authority, or liability whatsoever for the selection of the Claims Administrator, the Plan of Allocation, the administration of the Settlement, the Claims process, or disbursement of the Net Settlement Fund, and shall have no liability whatsoever to any person or entity, including, but not limited to, Lead Plaintiffs, any other Settlement Class Members, or Lead Counsel, in connection with the foregoing. Defendants' Counsel shall cooperate in the administration of the Settlement to the extent reasonably necessary to effectuate its terms.

4.2    In accordance with the terms of the Preliminary Approval Order to be entered by the Court, Lead Counsel shall cause the Claims Administrator to mail the Notice and Proof of Claim Form to those members of the Settlement Class as may be identified through reasonable effort. Lead Counsel shall also cause the Claims Administrator to have the Summary Notice published in accordance with the terms of the Preliminary Approval Order to be entered by the Court. For the purposes of identifying and providing notice to the Settlement Class, within five (5) business days of the date of entry of the Preliminary Approval Order, Evolent shall provide or cause to be provided to the Claims Administrator (at no cost to the Settlement Fund, Lead Counsel, or the Claims Administrator) records reasonably available to Evolent or its transfer agent concerning the identity and last known address of Settlement Class Members, in electronic form or other form as is reasonably available to Evolent or its transfer agent, which information the Claims Administrator shall treat and maintain as confidential.

4.3     The Claims Administrator shall receive Claims and determine first whether the Claim is a valid Claim, in whole or part, and second, each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's recognized claim compared to the total recognized claims of all Authorized Claimants (as set forth in the Plan of Allocation set forth in the Notice attached hereto as Exhibit A-1, or in such other plan of allocation as the Court approves).

4.4     The Plan of Allocation proposed in the Notice is not a necessary term of the Settlement or of this Stipulation and it is not a condition of the Settlement or of this Stipulation that any particular plan of allocation be approved by the Court.  Lead Plaintiffs and Lead Counsel may not cancel or terminate the Settlement (or this Stipulation) based on this Court's or any appellate court's ruling with respect to the Plan of Allocation or any other plan of allocation in this Action.  Defendant Releasees shall not object in any way to the Plan of Allocation or any other plan of allocation in this Action.  No Defendant Releasees shall have any involvement with or liability, obligation, or responsibility whatsoever in connection with the Plan of Allocation or any other Court-approved plan of allocation.

4.5     Any Settlement Class Member who does not submit a valid Claim Form by the deadline set by the Court (unless and to the extent the deadline is extended by the Court) will not be entitled to receive any distribution from the Net Settlement Fund, but will, nevertheless, upon the occurrence of the Effective Date, be bound by all of the terms of this Stipulation and Settlement (including the terms of the Judgment) and the Releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against any Defendant Releasee with respect to the Released Plaintiffs' Claims.

4.6     Any Settlement Class Member who or which does not timely and validly request exclusion from the Settlement Class in the manner stated in the Preliminary Approval Order: (a) shall be deemed to have waived his, her, or its right to be excluded from the Settlement Class; (b) shall be forever barred from requesting exclusion from the Settlement Class in this or any other proceeding; (c) shall be bound by the provisions of this Stipulation, the Settlement, and all proceedings, determinations, orders, and judgments in the Action relating to the Settlement, including, but not limited to, the Judgment, and the Releases provided for therein whether favorable or unfavorable to the Settlement Class; and (d) shall be barred from commencing, maintaining, or prosecuting any of the Released Claims against any of the Defendant Releasees.

4.7     Lead Counsel shall be responsible for supervising the administration of the Settlement and the disbursement of the Net Settlement Fund subject to Court approval.  No Defendant Releasee shall be permitted to review, contest or object to any Claim Form, or any decision of the Claims Administrator or Lead Counsel with respect to accepting or rejecting any Claim for payment by a Settlement Class Member.  Lead Counsel shall have the right, but not the obligation, to waive what they deem to be formal or technical defects in any Claim Forms submitted in the interests of achieving substantial justice.

4.8     The Net Settlement Fund shall be distributed to Authorized Claimants only after the last of: the Effective Date; the Court having approved a plan of allocation in an order that has become Final; or the Court issuing a Class Distribution Order that has become Final.

4.9     For purposes of determining the extent, if any, to which a Settlement Class Member shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

(a)      Each Settlement Class Member shall be required to submit a Claim Form, substantially in the form attached hereto as Exhibit A-2, supported by such documents as are designated therein, including proof of the Claimant's loss, or such other documents or proof as the Claims Administrator or Lead Counsel, in their discretion, may deem acceptable;

(b)      All Claim Forms must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Notice, unless extended by the Court.  Any Settlement Class Member who fails to submit a Claim Form by such date shall be forever barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Stipulation (unless by Order of the Court such Settlement Class Member's Claim Form is accepted), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment and by the releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against any Defendant Releasee with respect to any Released Claim. Provided that it is submitted online or mailed by the claim-submission deadline, a Claim Form shall be deemed to be submitted when either submitted online or postmarked, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon.  In all other cases, including online via the Settlement website, the Claim Form shall be deemed to have been submitted on the date when actually received by the Claims Administrator;

(c)      Each Claim Form shall be submitted to and reviewed by the Claims Administrator who shall determine in accordance with this Stipulation and the Plan of Allocation the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below as necessary;

(d)    Claim Forms that do not meet the submission requirements may be rejected.   Prior to rejecting a Claim in whole or in part, the Claims Administrator shall communicate with the Claimant in writing, to give the Claimant the chance to remedy any curable deficiencies in the Claim Form submitted.  The Claims Administrator shall notify, in a timely fashion and in writing, all Claimants whose Claim(s) the Claims Administrator proposes to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose Claim(s) is/are to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of subparagraph (e) below; and

(e)    If any Claimant whose Claim(s) has/have been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty (20) days after the date of mailing of the notice required in subparagraph (d) above, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a Claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court, on reasonable notice to Defendants' Counsel.

4.10    Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's Claim, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided, however, that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's Claim(s).  No discovery shall be allowed on the merits of this Action or of the Settlement in connection with the processing of Claim Forms.

4.11    Lead Counsel will apply to the Court, on reasonable notice to Defendants' Counsel, for a Class Distribution Order: (a) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (b) approving payment of any administration fees and expenses associated with the administration of the Settlement from the Escrow Account; and (c) if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants from the Escrow Account.

4.12    Payment pursuant to the Class Distribution Order shall be final and conclusive against all Settlement Class Members.  All Settlement Class Members who do not submit a Claim or whose Claims are not approved by the Court for payment shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment to be entered in this Action; and by the releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action against any and all Defendant Releasees with respect to any and all of the Released Claims.

4.13    No Claimant or Settlement Class Member shall have any claim against Lead Plaintiffs, Plaintiffs' Counsel, Defendants' Counsel, any Parties' experts, the Claims Administrator (or any other agent designated by Lead Counsel), or the Defendant Releasees based on any investments, costs, expenses, administration, allocations, calculation, payments, the withholding of taxes (including interest and penalties) owed by the Settlement Fund (or any losses incurred in connection therewith), or distributions that are made substantially in accordance with this Stipulation and the Settlement, the plan of allocation approved by the Court, or further orders of the Court.

4.14    All proceedings with respect to the administration, processing, and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court.  All Settlement Class Members and Parties to this Settlement expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations.

5.    **Release of Claims**

5.1    The satisfaction of the obligations incurred pursuant to this Stipulation shall be in full and final disposition of the Action, as alleged in the Third Amended Complaint, as against Defendant Releasees and as to any and all Released Claims.

5.2    Pursuant to the Judgment, without further action by anyone, upon the Effective Date of the Settlement, Plaintiff Releasees shall be deemed to have, and by operation of this Stipulation, of law, and of the Judgment shall have fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, dismissed, and discharged each and every one of the Released Plaintiffs' Claims against the Defendants and the other Defendant Releasees, and shall forever be barred and enjoined from commencing, instituting, prosecuting, or maintaining any or all of the Released Plaintiffs' Claims against any of the Defendant Releasees, whether or not such Settlement Class Member executes and delivers a Proof of Claim Form, seeks or obtains a distribution from the Settlement Fund, is entitled to receive a distribution under the Plan of Allocation approved by the Court, or has objected to any aspect of the Stipulation or the Settlement, the Plan of Allocation, or Lead Plaintiffs' application for an award of attorneys' fees or Litigation Expenses.  This release shall not apply to any Settlement Class Member who timely and properly excludes himself, herself, or itself from the Settlement Class.

5.3     Pursuant to the Judgment, without further action by anyone, upon the Effective Date of the Settlement, Defendant Releasees shall be deemed to have, and by operation of this Stipulation, of law, and of the Judgment, shall have fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Defendants' Claim against the Plaintiff Releasees, and shall forever be barred and enjoined from prosecuting any or all of the Released Defendants' Claims against any of the Plaintiff Releasees. This release shall not apply to any person or entity who or which submits a request for exclusion from the Settlement Class that is accepted by the Court.

5.4     Upon the Effective Date, Plaintiff Releasees are forever barred and enjoined from commencing, instituting, maintaining, or continuing to prosecute any action or proceeding in any court of law or equity, arbitration tribunal, administrative forum, or other forum of any kind, asserting any Released Plaintiffs' Claims against any of the Defendant Releasees.

5.5     Upon the Effective Date, to the extent allowed by law, this Stipulation shall operate conclusively as an estoppel and full defense in the event, and to the extent, of any claim, demand, action, or proceeding brought by a Settlement Class Member against any of the Defendant Releasees with respect to any Released Plaintiffs' Claim, or brought by a Defendant against any of the Plaintiff Releasees with respect to any Released Defendants' Claim.

5.6     Notwithstanding ¶¶ 5.2-5.5 above, nothing in the Judgment shall restrict or impair the rights of any Party to enforce or effectuate the terms of this Stipulation or the Judgment.

5.7     The Judgment shall, among other things, provide for the dismissal with prejudice of the Action, as alleged in the Third Amended Complaint, against the Defendant Releasees, without costs to any Party, except for the payments expressly provided for herein.

34

6.    **Terms of the Judgment**

6.1    If the Settlement contemplated by this Stipulation is approved by the Court, Lead Counsel and Defendants' Counsel shall request that the Court enter a Judgment, in the form attached hereto as Exhibit B.

7.    **Attorneys' Fees and Litigation Expenses**

7.1    Lead Plaintiffs will apply to the Court for a collective award of attorneys' fees to Plaintiffs' Counsel to be paid from (and out of) the Settlement Fund. Lead Plaintiffs also will apply to the Court for reimbursement of Litigation Expenses, which may include a request for reimbursement of Lead Plaintiffs' time, costs, and expenses directly related to their representation of the Settlement Class, to be paid from (and out of) the Settlement Fund. Lead Plaintiffs' application for an award of attorneys' fees or Litigation Expenses is not the subject of any agreement between Defendants and Lead Plaintiffs other than what is set forth in this Stipulation.

7.2    Any attorneys' fees and Litigation Expenses that are awarded by the Court shall be paid to Lead Counsel immediately upon the Court's issuance of an order awarding such fees and expenses, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Lead Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund if the Settlement is terminated pursuant to the terms of this Stipulation or if, as a result of any appeal or further proceedings on remand, or successful collateral attack, the award of attorneys' fees or Litigation Expenses is reduced or reversed, and such order reducing or reversing the award has become Final. Lead Counsel shall make the appropriate refund or repayment in full (including interest thereon at the same rate as would have been earned had those sums remained in the

Escrow Account) no later than thirty (30) days after: (a) receiving from Defendants' Counsel notice of the termination of the Settlement; or (b) any order reducing or reversing the award of attorneys' fees or Litigation Expenses has become Final. An award of attorneys' fees or Litigation Expenses is not a necessary term of this Stipulation and is not a condition of the Settlement embodied herein. Lead Counsel agrees that they are subject to the jurisdiction of the Court for the purpose of enforcing this paragraph. Neither Lead Plaintiffs nor Lead Counsel may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees or Litigation Expenses.

7.3    Lead Counsel shall allocate the attorneys' fees awarded amongst Plaintiffs' Counsel in a manner which they, in good faith, believe reflects the contributions of such counsel to the institution, prosecution, and settlement of the Action. Defendant Releasees shall have no responsibility for or liability whatsoever with respect to the payment, allocation, or award of attorneys' fees or Litigation Expenses. The attorneys' fees and Litigation Expenses that are awarded to Plaintiffs' Counsel shall be payable solely from the Settlement Fund in the Escrow Account.

## 8.    **Conditions of Settlement**

8.1    The Effective Date of this Stipulation shall be conditioned on the occurrence or waiver of all of the following events:

(a)    entry of the Preliminary Approval Order, in the form set forth in Exhibit A attached hereto, in accordance with Section 3 above;

(b)    the Settlement Amount has been deposited into the Escrow Account in accordance with the provisions of Paragraph 2.1 above;

(c)    entry of the Judgment in accordance with Paragraph 6.1 above;

(d)    the Judgment becoming Final, as defined in Paragraph 1.18 above; and

(e)    that the Settlement is not otherwise terminated pursuant to the terms set forth in this Stipulation.

8.2    If all of the conditions specified in Paragraph 8.1 above are not met, then this Stipulation shall be canceled and terminated subject to Paragraph 9.3 below unless Lead Plaintiffs and Defendants mutually agree in writing to proceed with this Stipulation.

## 9.    <u>Right of Termination and Effects Thereof</u>

9.1    Defendants and Lead Plaintiffs shall each have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice") to counsel for the other Parties within thirty (30) days after the date on which any of the following occurs:

(a)    the Court declines to enter the Preliminary Approval Order in all material respects;

(b)    the Court declines to enter the Judgment in all material respects;

(c)    the Judgment is modified or reversed in any material respect on appeal;

(d)    in the event that the Court enters a judgment other than the one in the form of Exhibit B attached hereto, and neither of the Parties elects to terminate the Settlement, the date that such other judgment is modified or reversed in any material respect on appeal.

9.2    If, prior to the Final Approval Hearing, persons or entities who or which otherwise would be Settlement Class Members have filed with the Court valid and timely requests for exclusion ("Requests for Exclusion") from the Settlement Class in accordance with the provisions of the Preliminary Approval Order and the Notice, and such persons or entities in the aggregate have purchased or otherwise acquired shares of Evolent publicly-traded common

stock in an amount that equals or exceeds the sum specified in a separate supplemental agreement between the Parties (the "Supplemental Agreement"), Evolent shall have the option, but not the obligation, to terminate this Stipulation in accordance with the procedures set forth in the Supplemental Agreement ("Opt-Out Termination Option"). The Supplemental Agreement is confidential and will not be filed with the Court unless requested by the Court or a dispute among the Parties concerning its interpretation or application arises, but the Parties will file a statement identifying the existence of the Supplemental Agreement pursuant to Federal Rule of Civil Procedure 23(e)(3) and reference the Supplemental Agreement in the Notice. Copies of all Requests for Exclusion received, together with copies of all written revocations of Requests for Exclusion (if any), shall be timely provided to Defendants' Counsel no later than fourteen (14) calendar days prior to the Settlement Hearing.

9.3    Unless otherwise ordered by the Court, in the event this Stipulation shall terminate, or be canceled, or shall not become effective for any reason, within five (5) business days after written notification of such event is sent by Defendants' Counsel or Lead Counsel to the Escrow Agent, the Escrow Agent for the Settlement Fund shall, upon written instructions from Defendants' Counsel, cause the Settlement Fund, including any attorneys' fees and costs paid from the Settlement Fund pursuant to Section 7 above, to revert back to the party that made the deposit into the Settlement Fund, together with any interest earned thereon, less any deductions for: (1) any Taxes and Tax Expenses pursuant to Paragraphs 2.6-2.7 above; and (2) any amounts reasonably and actually paid, incurred or due and owing pursuant to Paragraph 2.9 above in connection with notice and administration of the Settlement provided for herein. If this Stipulation is terminated pursuant to its terms, the Escrow Agent, at the request of Defendants or Lead Plaintiffs, shall apply for any tax refund owed to the Settlement Fund and pay the proceeds

of the tax refund, after deduction of any fees and expenses incurred in connection with such application(s) for refund, to Defendants (or their designate(s)).

9.4     If this Stipulation is terminated pursuant to its terms, each of the Parties shall be deemed to have reverted to his, her, or its status prior to the execution of this Stipulation, and they shall proceed in all respects as if this Stipulation had not been executed and the related orders had not been entered, shall retain all of their respective claims and defenses in the Action, and shall revert to their respective positions in the Action as of July 8, 2022.  In such event, the terms and provisions of the Stipulation, with the exception of the provisions of Paragraphs 2.9, 7.2, 9.4, 10.1, 11.2, 11.4, 11.7, 11.20, and 11.24, shall have no further force and effect with respect to each of the Parties and shall not be used in this Action or in any other proceeding for any purpose.

9.5     For the avoidance of doubt, no order of the Court or modification or reversal of any order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees, costs, and expenses awarded by the Court shall constitute a condition to the Effective Date or grounds for cancellation or termination of the Stipulation.

**10.    No Admission of Wrongdoing**

10.1    Neither this Stipulation nor the Settlement set forth herein, whether or not consummated, nor any facts or terms of this Stipulation, negotiations, discussions, proceedings, acts performed nor documents executed pursuant to or in furtherance of this Stipulation or the Settlement:

(a)     shall be (i) offered against any of the Defendant Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendant Releasees with respect to (a) the truth of any allegations by Lead Plaintiffs or

any Settlement Class Member; (b) the validity of any claim that was or could have been asserted in this Action or in any other litigation; (c) the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation; (d) any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendant Releasees; or (e) any damages suffered by Plaintiffs or the Settlement Class; or (ii) in any way referred to for any other reason as against any of the Defendant Releasees, in any civil, criminal, or administrative action or proceeding (including any arbitration) other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

(b)     shall be (i) offered against any of the Plaintiff Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession or admission by any of the Plaintiff Releasees (a) that any of their claims are without merit, that any of the Defendant Releasees had meritorious defenses, or that damages recoverable under the Third Amended Complaint would not have exceeded the Settlement Amount; or (b) with respect to any liability, negligence, fault, or wrongdoing of any kind; or (ii) in any way referred to for any other reason as against any of the Plaintiff Releasees, in any civil, criminal, or administrative action or proceeding (including any arbitration) other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; or

(c)     shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; *provided, however,* that if this Stipulation is approved by the Court, the Parties and the Releasees and their respective counsel may refer to it to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement.

40

11.    **Miscellaneous Provisions**

11.1    This Stipulation and the Exhibits attached hereto constitute the entire agreement between the Parties with regard to the subject matter hereof and supersede any prior or contemporaneous written or oral agreements or understandings between the Parties.

11.2    No modification or amendment of this Stipulation shall be valid unless made in writing and signed by or on behalf of each party hereto, or their respective successors-in-interest. No representations, warranties, or inducements have been made to any party concerning this Stipulation or its Exhibits, other than the representations and warranties contained and memorialized in such documents.  Except as otherwise provided for herein, each party shall bear his, her, or its own attorneys' fees and costs and expenses.

11.3    As set forth in the relevant provisions of CAFA, Defendants shall timely serve a CAFA notice within ten (10) calendar days of the filing of this Stipulation with the Court and shall provide Lead Counsel with a copy of such notice within five (5) calendar days of such service.

11.4    The Parties intend this Stipulation and the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by Lead Plaintiffs and any other Settlement Class Members against the Defendant Releasees with respect to the Released Plaintiffs' Claims.  Accordingly, except in the event of the termination of this Settlement, Lead Plaintiffs, and their counsel, and Defendants, and their counsel, agree not to assert in any forum that this Action was brought by Lead Plaintiffs or defended by Defendants in bad faith and without a reasonable basis.  No Party shall assert any claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the institution, prosecution, defense, or settlement of this Action.  No Party shall assert any claims or allegations of any violation of either Parties'

discovery obligations under the Federal Rules.  The Parties agree that the amounts paid and the other terms of the Settlement were negotiated at arm's length and in good faith by the Parties, including through a mediation process, and reflect that the Settlement was reached voluntarily after extensive negotiations and consultation with experienced legal counsel, who were fully competent to assess the strengths and weaknesses of their respective clients' claims or defenses.

11.5    While retaining their right to deny that the claims asserted in the Action, as alleged in the Third Amended Complaint, were meritorious, Defendants and their counsel, in any statement made to any media representative (whether or not for attribution) will not assert that the Action was commenced or prosecuted in bad faith, nor will they deny that the Action was commenced and prosecuted in good faith or is being settled voluntarily after consultation with competent legal counsel.  Likewise, while retaining their right to assert their claims in the Action, as alleged in the Third Amended Complaint, were meritorious, Lead Plaintiffs and their counsel, in any statement made to any media representative (whether or not for attribution) will not assert that Defendants' defenses were asserted in bad faith, nor will they deny that Defendants defended the Action in good faith or that the Action is being settled voluntarily after consultation with competent legal counsel.  In all events, Lead Plaintiffs, and their counsel, and Defendants, and their counsel, shall not make any accusations of wrongful or actionable conduct by either Party concerning the prosecution, defense, and resolution of the Action, and shall not otherwise suggest that the Settlement constitutes an admission of any claim or defense alleged.

11.6    Defendants and any Defendant Releasee may file the Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense, claim, or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith

settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

11.7    All agreements made, and orders entered, during the course of the Action relating to the confidentiality of information shall survive this Settlement.

11.8    All of the Exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.  Notwithstanding the foregoing, in the event that there exists a conflict or inconsistency between the terms of this Stipulation and the terms of any exhibit attached hereto, the terms of the Stipulation shall prevail.

11.9    Lead Counsel, on behalf of the Settlement Class, is expressly authorized to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to this Stipulation to effectuate its terms and also is expressly authorized to enter into any modifications or amendments to this Stipulation on behalf of the Settlement Class which they deem appropriate.

11.10   All counsel and any other person executing this Stipulation and any of the Exhibits hereto, or any related Settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

11.11   Lead Counsel and Defendants' Counsel agree to cooperate fully with one another in seeking Court approval of the Preliminary Approval Order and the Settlement, as embodied in this Stipulation, and to use efforts reasonably necessary to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.

11.12   This Stipulation may be executed in one or more counterparts, including by signature transmitted by facsimile or email, or by a .pdf/.tif image of the signature transmitted via email. The signatures so transmitted shall be given the same effect as the original signatures. All executed counterparts and each of them shall be deemed to be one and the same instrument.

11.13   This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties, including any and all Releasees and any corporation, partnership, or other entity into or with which any Party hereto may merge, consolidate, or reorganize.

11.14   This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations among the Parties and all Parties have contributed substantially and materially to the preparation of this Stipulation.

11.15   All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by the terms of this Stipulation or by order of Court, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which case the period shall run until the end of the next day that is not one of the aforementioned days.  As used in the preceding sentence, "legal holiday" includes New Year's Day, Martin Luther King, Jr. Day, Presidents' Day, Memorial Day, Juneteenth, Independence Day, Labor Day, Columbus Day, Veterans' Day, Thanksgiving Day, Christmas Day and any other day appointed as a federal holiday.

11.16   The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

11.17   The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and Litigation Expenses to Plaintiffs' Counsel, and enforcing the terms of this Stipulation, including the Plan of Allocation (or such other plan of allocation as may be approved by the Court) and the distribution of the Net Settlement Fund to Settlement Class Members.

11.18   The waiver by one Party of any breach of this Stipulation by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

11.19   Any action arising under or to enforce this Stipulation or any portion thereof, shall be commenced and maintained only in this Court.

11.20   It is understood and agreed that the Settlement Amount contains the proceeds of director and officer insurance pursuant to insuring clause (A) of the applicable policy, and is provided, inter alia, for the benefit of, and in exchange for the Releases given to, the Individual Defendants.  Neither the Settlement Amount nor the Settlement Fund is a preference, voidable transfer, fraudulent transfer, or similar transaction by or on behalf of Evolent.   In the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Settlement Fund or any portion thereof to be a preference, voidable transfer, fraudulent transfer, or similar transaction and any portion thereof is required to be returned, then, at the election of Lead Plaintiffs, Lead Plaintiffs and Defendants shall jointly move the Court to vacate and set aside the releases given and the Judgment, in which event the releases and Judgment shall be null and void, and the Parties shall be restored to their respective positions in the

litigation as provided in Paragraphs 9.3 and 9.4 above and any cash amounts in the Settlement Fund (less any Taxes paid, due or owing with respect to the Settlement Fund and less any Notice and Administration Costs actually incurred, paid or payable) shall be returned as provided herein.

11.21  This Stipulation and the Exhibits hereto shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of Virginia, and the construction, interpretation, operation, effect and validity of this Stipulation, the Supplemental Agreement and all documents necessary to effectuate it shall be governed by the internal laws of the State of Virginia without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

11.22  If any Party is required to give notice to another Party under this Stipulation, such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery, facsimile, or email transmission, with confirmation of receipt.  Any written notice required pursuant to or in connection with this Stipulation shall be addressed to counsel as follows:

> For Lead Plaintiffs:
>
> Lester R. Hooker
> Saxena White P.A.
> 7777 Glades Road, Suite 300
> Boca Raton, FL 33434
> Office: (561) 206-6708
> Fax: (561) 394-3382
> Email: lhooker@saxenawhite.com
>
> For Defendants:
>
> Paul R. Bessette
> King & Spalding LLP
> 500 W. 2nd Street, Suite 1800
> Austin, TX 78701

46

Office:  (512) 457-2050
Fax:  (512) 457-2100
Email:  pbessette@kslaw.com

11.23   No opinion or advice concerning the tax consequences of the proposed Settlement to individual Settlement Class Members is being given or will be given by the Parties or their counsel; nor is any representation or warranty in this regard made by virtue of this Stipulation.  It is the sole responsibility of each Settlement Class Member to determine the amount of and pay his, her or its own taxes, plus any penalties and interest, on any amount received pursuant to the Settlement, and the Defendant Releasees shall have no liability for such taxes, penalties, or interest.  It is understood that the tax consequences may vary depending on the particular circumstances of each individual Settlement Class Member.

11.24   All agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Stipulation whether or not the Stipulation is approved by the Court and whether or not the Stipulation is consummated, or the Effective Date occurs.   The Parties' confidentiality obligations shall include, to the extent possible, negotiations, discussions, acts performed, agreements, drafts, documents signed and proceedings in connection with the Stipulation that remain confidential following the Effective Date.

**IN  WITNESS  WHEREOF**, the Parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys dated as of August 2, 2022.

**SAXENA WHITE P.A.**

By: _____

Maya Saxena (*pro hac vice*)
Joseph E. White, III (*pro hac vice*)
Lester R. Hooker (*pro hac vice*)
7777 Glades Road, Suite 300
Boca Raton, FL 33434

47

Telephone: (561) 394-3399
Facsimile: (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
lhooker@saxenawhite.com

-and-

Steven B. Singer (*pro hac vice*)
Sara DiLeo (*pro hac vice*)
Joshua H. Saltzman (*pro hac vice*)
Alec Coquin (*pro hac vice*)
10 Bank Street, 8th Floor
White Plains, NY 10606
Telephone: (914) 437-8551
Facsimile: (888) 631-3611
ssinger@saxenawhite.com
sdileo@saxenawhite.com
jsaltzman@saxenawhite.com
acoquin@saxenawhite.com

*Lead Counsel for Lead Plaintiffs and the proposed Settlement Class*

**COHEN MILSTEIN SELLERS & TOLL PLLC**

Steven J. Toll (Va. Bar No. 15300)
Daniel S. Sommers (*pro hac vice*)
1100 New York Avenue, NW, 5th Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
stoll@cohenmilstein.com
dsommers@cohenmilstein.com

*Liaison Counsel for Lead Plaintiffs and the proposed Settlement Class*

**KING & SPALDING LLP**

By:

Ashley C. Parrish (Va. Bar No. 43089)
1700 Pennsylvania Avenue, NW, Suite 200
Washington, DC 20006-4707
Telephone: (202) 626-2627
Facsimile: (202) 626-3737

48

aparrish@kslaw.com

Paul R. Bessette (*pro hac vice*)
Michael J. Biles (*pro hac vice*)
Jill R. Carvalho (*pro hac vice*)
500 W. 2nd Street, Suite 1800
Austin, TX 78701
Telephone: (512) 457-2050
Facsimile: (512) 457-2100
pbessette@kslaw.com
mbiles@kslaw.com
jcarvalho@kslaw.com

Michael R. Smith (*pro hac vice*)
Cheri A. Grosvenor (*pro hac vice*)
Peter M. Starr (*pro hac vice*)
1180 Peachtree Street, NE
Atlanta, GA, 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5140
mrsmith@kslaw.com
cgrosvenor@kslaw.com
pstarr@kslaw.com

*Attorneys for Defendants Evolent Health, Inc.,
Frank Williams, Nicholas McGrane, and Seth
Blackley*

**HIRSCHLER FLEISCHER, PC**

Robert R. Vieth, Esq. (Va. Bar No. 24304)
Abigail J. Johansen (Va. Bar No. 93585)
8270 Greensboro Drive, Suite 700
Tysons Corner, VA 22102
Telephone: (703) 584-8366
Facsimile: (703) 584-8901
rvieth@hirschlerlaw.com
ajohansen@hirschlerlaw.com

*Local Counsel for Defendants Evolent Health, Inc.,
Frank Williams, Nicholas McGrane, and Seth
Blackley*