UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

|  |  |
|---|---|
| PLYMOUTH COUNTY RETIREMENT SYSTEM and OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>EVOLENT HEALTH, INC., FRANK WILLIAMS, NICHOLAS MCGRANE, and SETH BLACKLEY,<br><br>Defendants. | Case No. 1:19-cv-01031-MSN-WEF |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, PLAN OF ALLOCATION AND REQUEST FOR ATTORNEYS' FEES AND EXPENSES**

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ................................................................................ 1

II.     THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL ......................... 4

        A.      Legal Standard ................................................................................ 4

        B.      The Settlement is Fair and Reasonable and Should Be Approved ........................ 5

                1.      The Settlement was Reached After Extensive Litigation .......................... 5

                2.      The Settlement is the Result of Good Faith, Arm's-Length
                        Negotiations with the Assistance of an Experienced Mediator ................. 6

                3.      The Action Was Litigated and Settled by Counsel with Significant
                        Experience in Securities Class Action Litigation ..................................... 7

        C.      The Settlement is Adequate and Should Be Approved ........................................ 8

                1.      The Strength of Plaintiffs' Case and the Difficulties of Proof and
                        Defenses Plaintiffs Would Encounter at Trial Support Settlement ........... 8

                2.      The Costs and Delay of Continued Litigation Support Final
                        Approval ..................................................................................... 10

                3.      The Proposed Settlement Falls Well Within the Range of Approval ....... 11

                4.      The Positive Reaction of the Settlement Class to the Settlement ............. 12

        D.      Additional Factors Support Final Approval of the Settlement ............................. 13

III.    THE PLAN OF ALLOCATION SHOULD BE APPROVED ....................................... 14

IV.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ............................... 15

V.      PLAINTIFFS' FEE AND EXPENSE REQUEST IS FAIR AND REASONABLE ........ 15

        A.      Lead Counsel's Fee Request is Reasonable under Fourth Circuit Criteria ........... 16

                1.      The Results Obtained for the Class Support the Fee Award ................... 18

                2.      The Positive Reaction of the Class Supports the Requested Award ......... 19

                3.      The Skill, Experience, and Reputation of the Attorneys Involved ........... 20

                4.      The Complexity and Duration of the Action and Litigation Efforts ......... 21

                5.      The Contingent Nature of the Fee and Risk of Nonpayment ................... 23

i

6.    The Amount of Time Devoted to the Case by Plaintiffs' Counsel ........... 24

7.    A One-Third Fee is Customary and in Accordance with Other Similar Cases in this District and the Fourth Circuit ............................... 25

B.    The Requested Fee is Reasonable Under a Lodestar Cross-Check ...................... 26

C.    Plaintiffs' Counsel's Litigation Expenses and Lead Plaintiffs' Reimbursement Awards Are Reasonable and Should Be Granted ...................... 28

VI.    CONCLUSION ...................................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) ............................................................................... 10

*Barber v. Kimbrell's, Inc.*,
  577 F.2d 216 (4th Cir. 1978) ................................................................................. 17

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
  603 F.2d 263 (2d Cir. 1979)................................................................................... 10

*Bloom v. Anderson*,
  2020 WL 6710429 (S.D. Ohio Nov. 16, 2020)........................................................ 7

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)................................................................................................ 16

*Cheng Jiangchen v. Rentech, Inc.*,
  2019 WL 5173771 (C.D. Cal. Oct. 10, 2019).......................................................... 13

*Chrismon v. Pizza*,
  2020 WL 3790866 (E.D.N.C. July 7, 2020) ....................................................... 4, 10

*City of Providence v. Aeropostale, Inc.*,
  2014 WL 1883494 (S.D.N.Y May 9, 2014) ............................................................ 27

*Clark v. Duke University*,
  2019 WL 2579201 (M.D.N.C. June 24, 2019) .................................................. 26, 28

*Cosby v. KPMG, LLP*,
  2022 WL 4129703 (E.D. Tenn. July 12, 2022) ...................................................... 25

*D&M Farms v. Birdsong Corp.*,
  2021 WL 1256905 (E.D. Va. Apr. 5, 2021) ............................................................. 4

*Decohen v. Abbasi, LLC*,
  299 F.R.D. 469 (D. Md. 2014)................................................................................ 25

*Deem v. Ames True Temper, Inc.*,
  2013 WL 2285972 (S.D.W. Va. May 23, 2013)........................................... 6, 11, 12

*DeLoach v. Phillip Morris Co.*,
  2003 WL 23094907 (M.D.N.C. Dec. 19, 2003) ..................................................... 26

*Fosbre v. Las Vegas Sands Corp.*,
  2017 WL 55878 (D. Nev. Jan. 3, 2017)................................................................... 8

*Grae v. Corrections Corp. of America*,
   2021 WL 5234966 (M.D. Tenn. Nov. 8, 2021) ........................................................................ 25

*Guevoura Fund Ltd. v. Sillerman*,
   2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ............................................................. 3, 27, 28

*Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings Inc.*,
   2022 WL 4136175 (S.D.N.Y. Feb 14, 2022) ........................................................................... 28

*Health Ins. Innovations Sec. Litig.*,
   2021 WL 1341881 (M.D. Fla. Mar. 23, 2021) ..................................................................... 3, 27

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ................................................................................................................. 18

*In re Abrams & Abrams, P.A.*,
   605 F.3d 238 (4th Cir. 2010) ...................................................................................... 17, 18, 26

*In re Banc of California Sec. Litig.*,
   2020 WL 1283486 (C.D. Cal. Mar. 16, 2020) ......................................................................... 25

*In re Celebrex (Celecoxib) Antitrust Litig.*,
   2018 WL 2382091 (E.D. Va. Apr. 18, 2018) ..................................................................... *passim*

*In re Cendant Corp. PRIDES Litig.*,
   243 F.3d 722 (3d Cir. 2001) ..................................................................................................... 17

*In re Constellation Energy Grp., Inc. Sec. Litig.*,
   2013 WL 12461134 (D. Md. Nov. 4, 2013) ....................................................................... 19, 26

*In re Deutsche Bank AG Sec. Litig.*,
   2020 WL 3162980 (S.D.N.Y. June 11, 2020) ......................................................................... 25

*In re Flowers Foods, Inc. Sec. Litig.*,
   2019 WL 6771749 (M.D. Ga. Dec. 11, 2019) ......................................................................... 25

*In re Genworth Fin. Sec. Litig.*,
   210 F. Supp. 3d 837 (E.D. Va. 2016) ................................................................................ *passim*

*In re HD Supply Holdings, Inc. Sec. Litig.*,
   2020 WL 8572953 (N.D. Ga. July 21, 2020) ............................................................................. 7

*In re Hi-Crush Partners L.P. Sec. Litig.*,
   2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ......................................................................... 18

*In re Jiffy Lube Sec. Litig.*,
   927 F.2d 155 (4th Cir. 1991) ..................................................................................................... 4

iv

*In re Patriot Nat'l Sec. Litig.*,
  828 Fed. Appx. 760 (2d Cir. 2020) .................................................................. 12

*In re Peanut Farmers Antitrust Litig.*,
  2021 WL 3174247 (E.D. Va. July 27, 2021) ....................................................... 5

*In re Peanut Farmers Antitrust Litig.*,
  2021 WL 9494033 (E.D. Va. Aug. 10, 2021) ..................................................... 26

*In re Perrigo Co. PLC Sec. Litig.*,
  2022 WL 500913 (S.D.N.Y. Feb. 18, 2022) .................................................... 7, 25

*In re REMEC Inc. Sec. Litig.*,
  702 F. Supp. 2d 1202 (S.D. Cal. 2010) .............................................................. 9

*In re Retek Inc. Sec. Litig.*,
  621 F. Supp. 2d 690 (D. Minn. 2009) ................................................................. 8

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2020 WL 4196468 (S.D.N.Y. July 21, 2020) .................................................... 20

*In re Star Scientific, Inc. Sec. Litig.*,
  2015 WL 12866962 (E.D. Va. June 26, 2015) .................................................. 13

*In re Star Scientific, Inc. Sec. Litig.*,
  2015 WL 13821326 (E.D. Va. June 26, 2015) .................................................. 26

*In re Titanium Dioxide Antitrust Litig.*,
  2013 WL 6577029 (D. Md. Dec. 13, 2013) ...................................................... 26

*In re Wilmington Tr. Sec. Litig.*,
  2018 WL 6046452 (D. Del. Nov. 19, 2018) ....................................................... 7

*Johnson v. Georgia Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974) ........................................................................... 17

*Kelly v. Johns Hopkins Univ.*,
  2020 WL 434473 (D. Md. Jan. 28, 2020) .................................................... 25, 26

*Khoja v. Orexigen Therapeutics, Inc.*,
  2021 WL 5632673 (S.D. Cal. Nov. 30, 2021) ..................................................... 6

*Knurr v. Orbital ATK, Inc.*,
  2019 WL 3317976 (E.D. Va. June 7, 2019) .............................................. *passim*

*Krakauer v. Dish Network*,
  2019 WL 7066834 (M.D.N.C. Dec. 23, 2019) .................................................. 26

*Kruger v. Novant Health, Inc.*,
  2016 WL 6769066 (M.D.N.C. Sep. 29, 2016).................................................................... 26, 28

*Lea v. Tal Education Group*,
  2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021)............................................................................ 9

*Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*,
  2021 WL 2981970 (D. Colo. July 15, 2021) ............................................................................ 7

*Phillips v. Triad Guaranty Inc.*,
  2016 WL 1175152 (M.D.N.C. Mar. 23, 2016)................................................................. *passim*

*Phillips v. Triad Guaranty Inc.*,
  2016 WL 2636289 (M.D.N.C. May 9, 2016) .................................................................... 17, 23

*Plymouth Cnty. Ret. Sys. v. Patterson Companies, Inc.*,
  2022 WL 2093054 (D. Minn. June 10, 2022)..................................................................... 7, 25

*Plymouth Cnty. Ret. Sys. v. Patterson Companies. Inc.*,
  2022 WL 2111237 (D. Minn. June 10, 2022)........................................................................ 12

*Plymouth Cnty. Ret. Sys. v. Evolent Health, Inc.*,
  2021 WL 1439680 (E.D. Va. Mar. 24, 2021)...................................................................... 8, 18

*Plymouth Cnty. Ret. Sys. v. GTT Communications, Inc.*,
  2021 WL 1659848 (E.D. Va. Apr. 23, 2021) ................................................................... *passim*

*Poth v. Russey*,
  281 F. Supp. 2d 814 (E.D. Va. 2003) ...................................................................................... 9

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ............................................................................................. 10

*Robinson v. Carolina First Bank NA*,
  2019 WL 2591153 (D.S.C. June 21, 2019)....................................................................... *passim*

*Roman Zak v. Pedder (Chelsea Therapeutics)*,
  2016 WL 5109167 (W.D.N.C. Sept. 19, 2016) ................................................................ 26, 29

*Scott v. Family Dollar Stores, Inc.*,
  2018 WL 1321048 (W.D.N.C. Mar. 14, 2018)....................................................................... 26

*Seaman v. Duke Univ.*,
  2019 WL 4674758 (M.D.N.C. Sep. 25, 2019).................................................................. *passim*

*Seaman v. Duke Univ.*,
  2019 WL 13193731 (M.D.N.C. Sep. 24, 2019)........................................................................ 6

*Sims v. BB&T Corp.*,
   2019 WL 1995314 (M.D.N.C. May 6, 2019) .......................................................... 4

*Sims v. BB&T Corporation*,
   2019 WL 1993519 (M.D.N.C. May 6, 2019) ........................................................ 26

*Smith v. Res-Care, Inc.*,
   2015 WL 6479658 (S.D.W. Va. Oct. 27, 2015) ........................................... 5, 11, 13

*Sponn v. Emergent Biosolutions Inc.,*
   2019 WL 11731087 (D. Md. Jan. 25, 2019)............................................. 4, 17, 26, 28

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
   551 U.S. 308 (2007).................................................................................... 16

*Temp. Servs., Inc. v. Am. Int'l Grp., Inc.,*
   2012 WL 4061537 (D.S.C. Sep. 14, 2012)......................................................... 23, 25

*Thorpe v. Walter Investment Mgmt. Corp.,*
   2016 WL 10518902 (S.D. Fla. Oct. 17, 2016)...................................... 12, 19, 21, 25

**STATUTES**

15 U.S.C.
   §78u-4(a)(4) ................................................................................................ 29
   §78u-4(a)(7) ................................................................................................ 13

**RULES**

Fed. R. Civ. P. 23 ................................................................................... 1, 4, 15

**OTHER AUTHORITIES**

H.R. Conf. Rep. No. 104-369 (1995)............................................................... 20

Lead Plaintiffs respectfully move this Court pursuant to Rule 23 of the Federal Rules of Civil Procedure for final approval of: (i) the proposed Settlement; (ii) the proposed Plan of Allocation; and (iii) the request for attorneys' fees and reimbursement of Litigation Expenses, including representative reimbursements to Lead Plaintiffs as authorized by the PSLRA.[1]

## I.      PRELIMINARY STATEMENT

After three years of vigorous litigation prosecuted entirely on a contingent basis, Lead Counsel have obtained an excellent recovery of $23.5 million on behalf of the Settlement Class. As set forth below, the Settlement is an excellent result, one which will provide the Settlement Class with a recovery representing a substantial percentage of its likely maximum recoverable damages, and which was obtained in the face of myriad significant risks.  Indeed, as the Court is undoubtedly aware, Defendants at all times vehemently disputed pivotal issues of falsity, scienter, loss causation, and damages, and were prepared to put forth at summary judgment and trial credible evidence in response to Plaintiffs' allegations on each of these elements.  While Plaintiffs had strong counterarguments on these points, if the Court or jury lent credence to Defendants' arguments, the Class's recovery would have been dramatically reduced, if not eliminated altogether.  Accordingly, the Settlement avoids those significant risks while assuring for the Settlement Class a large monetary recovery now.

Significantly, the Settlement was achieved only after an extremely substantial litigation effort by Lead Plaintiffs and Lead Counsel, who prosecuted this Action through the completion of fact and expert discovery.  Indeed, as detailed below and in the Hooker Declaration, this effort

---

[1] Unless otherwise indicated, all capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement (the "Stipulation" or "Settlement Agreement," ECF No. 245) or in the Declaration of Lester R. Hooker in Support of Lead Plaintiffs' Motion for Final Approval of Class Action Settlement, Plan of Allocation and Request for Attorneys' Fees and Expenses (the "Hooker Declaration" or "Hooker Decl."), filed herewith. Citations to "¶" and "Ex." are to paragraphs in, and exhibits to, the Hooker Declaration.  All internal citations and quotations are omitted; and all emphasis is added.

included: (i) conducting a thorough investigation of the claims, including contacting and/or interviewing dozens of former Evolent and Passport employees, five of whom served as confidential witnesses who provided significant information that was critical to Plaintiffs' allegations; (ii) filing four complaints, including the initial complaint that commenced the Action and three highly detailed amended complaints; (iii) fully briefing, arguing, and twice defeating Defendants' motions to dismiss; (iv) consulting with multiple experts; (v) fully briefing Plaintiffs' motion for class certification and arguing that motion before the Court; (vi) engaging in comprehensive discovery efforts, including reviewing hundreds of thousands of pages of documents produced by Defendants and subpoenaing several non-parties; (vii) taking or defending twenty-three fact and expert depositions; (viii) submitting and/or reviewing the eleven expert reports filed and/or exchanged by the Parties in the Action; (ix) submitting detailed mediation submissions setting forth Plaintiffs' positions on highly disputed issues in the case; and (x) engaging in two formal, full-day mediation sessions before a highly respected and experienced mediator, Mr. Jed D. Melnick, Esq., of JAMS.

In light of the outstanding recovery, and the significant efforts undertaken in achieving it, Lead Plaintiffs respectfully request a fee award of one-third of the Settlement Fund, which is well in line with fee awards in this District, the Fourth Circuit, and around the country in securities and complex class actions. *See e.g., Plymouth County Ret. Sys. v. GTT Communications, Inc.*, 2021 WL 1659848, at *5 (E.D. Va. Apr. 23, 2021) (Hilton, J.) (awarding a one-third fee on a $25 million securities class action recovery); *Seaman v. Duke Univ.*, 2019 WL 4674758, at *3 (M.D.N.C. Sep. 25, 2019) (awarding a one-third fee on a $54.5 million recovery, noting that awards of one-third are "common" in cases of similar complexity in the Fourth Circuit). Furthermore, courts have repeatedly recognized that the reasonableness of a fee

2

request is reinforced where, as here, "the percentage fee would represent a negative multiplier of the lodestar." *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *18 (S.D.N.Y. Dec. 18, 2019) ("When the lodestar cross-check shows that the percentage fee is lower than the fee the lawyers have accrued on a time-and-service basis, it is relatively easy to support a percentage-based fee."); *see also In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881, at *12 (M.D. Fla. Mar. 23, 2021) ("Moreover, the negative lodestar multiplier [] further supports the reasonableness of the fee requested.").

In addition, Lead Plaintiffs are two sophisticated institutional investors who have actively supervised this Action from the outset, and both have endorsed the fee request as consistent with their own separately negotiated retainer agreements, and as warranted by Lead Counsel's efforts in the Action. Furthermore, the reaction of the Settlement Class also strongly supports final approval, as no objections to any aspect of the Settlement or the fee request have been filed to date—which is particularly significant given that the vast majority of the Settlement Class consists of institutional investors with the resources to object, if warranted. Thus, the overwhelming endorsement of the Settlement Class weighs heavily in support. *See e.g., In re Celebrex (Celecoxib) Antitrust Litig.*, 2018 WL 2382091, at *4 (E.D. Va. Apr. 18, 2018) (Wright Allen, J.) (awarding one-third of $94 million settlement as there "were no objections to the Settlement," no opt-out requests, and the "largest class members" supported the settlement).

Finally, Lead Plaintiffs request reimbursement of $918,539.45 in litigation expenses—a reasonable amount that is well in-line with what is typically expended in similar cases. *See, e.g., Knurr v. Orbital ATK, Inc.,* 2019 WL 3317976, at *1 (E.D. Va. June 7, 2019) (Ellis, III, J.) (awarding over $1.1 million in expenses). Similarly, Lead Plaintiffs' representative reimbursements are fair and reasonable, as such reimbursements are expressly contemplated by

the PSLRA and routinely awarded in securities class actions. *See Sponn v. Emergent Biosolutions Inc.,* 2019 WL 11731087, at *2 (D. Md. Jan. 25, 2019).

## II.   THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

### A.   Legal Standard

Courts in the Fourth Circuit have long recognized a "a strong judicial policy in favor of settlement, in order [to] conserve scarce resources that would otherwise be devoted to protracted litigation." *Chrismon v. Pizza*, 2020 WL 3790866, at *4 (E.D.N.C. July 7, 2020).  Importantly, "[t]his is particularly true in class actions."  *Sims v. BB&T Corp.*, 2019 WL 1995314, at *3 (M.D.N.C. May 6, 2019).

Pursuant to Rule 23(e)(2), a class action settlement should be approved if the Court finds it "fair, reasonable, and adequate."  Traditionally, the Fourth Circuit has instructed courts to analyze the "fairness" and "adequacy" factors set forth in *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155 (4th Cir. 1991) ("*Jiffy Lube*") when making this determination.[2]  The *Jiffy Lube* fairness factors are: "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery conducted; (3) the circumstances surrounding settlement negotiations; and (4) the experience of counsel in the area of law." *In re: Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 839-40 (E.D. Va. 2016) (Gibney, Jr., J.).  The *Jiffy Lube* adequacy factors are: "(1) the relative

---

[2] In 2018, Rule 23(e) was amended to add new factors for courts to consider, but the "goal of this amendment is not to displace any [circuit's unique] factor[s]." Fed. R. Civ. P. 23(e)(2) Advisory Committee Notes to 2018 Amendment.  Indeed, "because [the Fourth Circuit's] factors for assessing class-action settlements almost completely overlap with the new Rule 23(e)(2) factors, the outcome[s] [are] the same under both our factors and the Rule's factors." *D&M Farms v. Birdsong Corp.*, 2021 WL 1256905, at *3 (E.D. Va. Apr. 5, 2021) (Jackson, J.).  The amendment requires consideration of whether: (A) plaintiffs and counsel have adequately represented the class; (B) the settlement was negotiated at arm's-length; (C) the relief for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (iii) the terms of any proposed fee award, including timing of payment, and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2).

strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendant[] and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Id.* at 841. The Settlement easily satisfies each of these factors.

### B. The Settlement is Fair and Reasonable and Should Be Approved

#### 1. The Settlement was Reached After Extensive Litigation

The first and second *Jiffy Lube* fairness factors require demonstrating that a case has progressed far enough to ensure that "the parties did not settle prematurely," and that they were fully informed as to "the strengths and weaknesses of their own and their adversaries' claims and defenses." *Smith v. Res-Care, Inc.*, 2015 WL 6479658, at **5-6 (S.D.W. Va. Oct. 27, 2015).

Here, these factors are easily satisfied. Specifically, at the time the Parties agreed to the Settlement, Plaintiffs had completed extensive litigation efforts over three years, including conducting an exhaustive investigation that uncovered information critical to successfully pleading their claims; drafting three amended complaints; fully briefing two motions to dismiss and a motion for class certification; producing, examining, and/or reviewing over 71,000 documents spanning more than 786,000 pages; participating in 23 fact and expert depositions; serving five expert reports and reviewing six prepared on behalf of Defendants; and preparing for anticipated motions for summary judgment and motions to exclude expert testimony. ¶¶18-69.

Thus, the litigation had progressed materially from its inception, allowing the Parties to fully vet the merits of their claims and defenses through contentious motion practice and comprehensive fact and expert discovery, lending significant weight to Plaintiffs' determination that the Settlement is fair and adequate. *See e.g., In re Peanut Farmers Antitrust Litig.*, 2021

WL 3174247, at *3 (E.D. Va. July 27, 2021) (Jackson, J.) (approving settlement where parties "had completed fact and expert discovery and, thus, were acutely aware of strengths and weaknesses of their respective cases at the time of settlement negotiations"); *Deem v. Ames True Temper, Inc.*, 2013 WL 2285972, at *2 (S.D.W. Va. May 23, 2013) ("adequate discovery and investigation had occurred to enable the parties to reach a fair settlement" where "[a]t the time the parties reached this settlement, they were on the eve of trial and had completed discovery").

### 2.   The Settlement is the Result of Good Faith, Arm's-Length Negotiations with the Assistance of an Experienced Mediator

"Absent evidence to the contrary, the Court should presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion." *Deem*, 2013 WL 2285972, at *2.   Here, the Settlement negotiations involved an intensive mediation process, including multiple detailed written submissions and presentations addressing contested issues concerning class certification, liability, and damages.   ¶¶71-74.   Significantly, these negotiations were overseen by Jed D. Melnick, Esq., of JAMS, an "experienced, neutral mediator" who has mediated over one thousand disputes with an aggregate value in the billions of dollars. *See Khoja v. Orexigen Therapeutics, Inc.*, 2021 WL 5632673, at *4 (S.D. Cal. Nov. 30, 2021); *see also* Mr. Melnick's biography, available at https://www.jamsadr.com/melnick/.[3]

Moreover, despite being unable to resolve the litigation at the December 1, 2021 mediation session, the Parties remained in dialog with Mr. Melnick, which helped pave the way for them to ultimately resolve this Action following the July 11, 2022 mediation session. *See Seaman v. Duke Univ.*, 2019 WL 13193731, at *2 (M.D.N.C. Sep. 24, 2019) (continued

---

[3] In support of the Settlement, Mr. Melnick has provided a declaration attesting that "the Settlement is the product of true arm's-length negotiation by counsel on both sides seeking to represent their respective clients' best interests"; "the Settlement is the direct result of all counsel's experience, reputation, and ability in these types of complex class actions"; and that "it is my opinion that the Settlement is fair and reasonable, and I respectfully support the Court's approval of the Settlement in all respects." *See* Ex. C at ¶¶9,10, 12.

settlement "discussions that required more than a year to complete" favored final approval).

### 3.   The Action Was Litigated and Settled by Counsel with Significant Experience in Securities Class Action Litigation

The fourth *Jiffy Lube* fairness factor weighs the experience of counsel in the particular field of law. *Genworth*, 210 F. Supp. 3d at 841. Indeed, "concerns of collusion" are minimized where both sides' counsel are "nationally recognized members of the securities litigation bar." *Phillips v. Triad Guaranty Inc.*, 2016 WL 1175152, at *3 (M.D.N.C. Mar. 23, 2016).

Here, Lead Counsel is highly experienced and well-respected in the field of securities class action litigation and has an extensive track record of successfully prosecuting actions on behalf of shareholder classes nationwide.[4] In addition to its major litigation successes, Saxena White has also been recognized for being a "federally-certified, minority- and women-owned firm" representing institutional investors in the securities class action litigation industry. *Bloom v. Anderson*, 2020 WL 6710429, at *9 (S.D. Ohio Nov. 16, 2020) (finding Saxena White, with attorneys consisting of "women and lawyers of color at above-average ratios," as "best suited" to represent "a large and heterogeneous group of investors").

Additionally, Plaintiffs were able to achieve this outstanding Settlement despite the highly skilled defense mounted by preeminent international law firm, King & Spalding LLP. *See*

---

[4] *See* Ex. 3 to Ex. F (Saxena White firm resume); *see also, e.g., In re Wilmington Tr. Sec. Litig.*, 2018 WL 6046452, at *8 (D. Del. Nov. 19, 2018) (approving $210 million settlement, noting Saxena White is "highly experienced" and that "[t]he significant amount of recovery in the settlement agreements attests to their efficiency"); *Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*, 2021 WL 2981970, at **2-4 (D. Colo. July 15, 2021) ($135 million recovery where court recognized the "efforts expended by [Saxena White]"); *Plymouth Cnty. Ret. Sys. v. Patterson Companies, Inc.*, 2022 WL 2093054, at *2 (D. Minn. June 10, 2022) (approving $63 million settlement and noting that Saxena White "conducted the Litigation and achieved the Settlement with skill, perseverance, and diligent advocacy"); *In re HD Supply Holdings, Inc. Sec. Litig.*, 2020 WL 8572953, at *2 (N.D. Ga. July 21, 2020) (same, $50 million recovery); *In re Perrigo Co. PLC Sec. Litig.*, 2022 WL 500913, at **1-2 (S.D.N.Y. Feb. 18, 2022) (same, $31.9 million recovery); *GTT*, 2021 WL 1659848, at *5 (same, $25 million recovery).

*Genworth*, 210 F. Supp. 3d at 841 ("defendants' law firms are also national firms with deep experience in securities litigation, further demonstrating the fairness of the Settlement").

### C.    The Settlement is Adequate and Should Be Approved

#### 1.    The Strength of Plaintiffs' Case and the Difficulties of Proof and Defenses Plaintiffs Would Encounter at Trial Support Settlement

The first and second *Jiffy Lube* adequacy factors "require the Court to examine how much the class sacrifices in settling a potentially strong case in light of how much the class gains in avoiding the uncertainty of a potentially difficult case." *Robinson v. Carolina First Bank NA*, 2019 WL 2591153, at *10 (D.S.C. June 21, 2019). Courts around the country recognize securities class actions as "notably difficult and notoriously uncertain." *Phillips*, 2016 WL 1175152, at *4. The complexities and risks of this Action were especially pronounced.

As detailed in the Hooker Declaration, while Plaintiffs strongly believe that their claims have merit, Defendants lodged numerous credible defenses, each of which presented serious risks and easily could have resulted in either a substantially lesser recovery or no recovery.[5] Critically, Plaintiffs would be required to prove all elements of their claims, while Defendants would need to only succeed on one defense to potentially defeat the entire Action.[6]

For example, at class certification, even if the Court certified a class, the Court could well have shortened the Class Period by finding that Defendants had demonstrated a lack of price impact from Defendants' "savings" statements. *See* ECF No. 213 at 15-29. Furthermore, at

---

[5] Indeed, Defendants had already been successful in several of their arguments. For example, in granting in part and denying in part the motion to dismiss the SAC, the Court held that sixteen statements alleged to be false or misleading in the SAC were not adequately pled and thus were not actionable. *Plymouth County Ret. Sys. v. Evolent Health, Inc.*, 2021 WL 1439680, at *32 (E.D. Va. Mar. 24, 2021) (Alston, Jr., J.).

[6] *See e.g., In re Retek Inc. Sec. Litig.*, 621 F. Supp. 2d 690, 708-09 (D. Minn. 2009) (granting summary judgment in a securities action where plaintiffs failed to present evidence of loss causation); *Fosbre v. Las Vegas Sands Corp.*, 2017 WL 55878, at *28 (D. Nev. Jan. 3, 2017) (granting summary judgment in a securities action due to, *inter alia*, lack of falsity and scienter).

summary judgment or at trial, Defendants would have argued that Plaintiffs lacked sufficient evidence to establish that Defendants' statements about savings for Passport were false or misleading, because the statements were based on reasonable calculations and assumptions by the Company's actuaries.  Defendants also would have argued that their statements that they had no intention to buy Passport or its assets were true as of February 26, 2019, because Evolent did not engage in formal discussions about acquisition until May 2019.

With respect to scienter, Defendants would have argued that, even if their savings statements were proven false, the Individual Defendants lacked the requisite scienter because, by relying on their actuaries, they had a reasonable basis upon which to make the statements.[7] Moreover, Defendants would have argued that a finding of scienter was undermined because there was no insider selling by the Individual Defendants—a fact which could have resonated with a jury.  *See e.g., Genworth*, 210 F. Supp. 3d at 844 (due to "the complexity of securities fraud cases and the need to prove scienter … the risk of non-recovery at trial is very real."); *Lea v. Tal Education Group,* 2021 WL 5578665, at *9 (S.D.N.Y. Nov. 30, 2021) ("The element of scienter is often the most difficult and controversial aspect of a securities fraud claim").

Furthermore, with respect to loss causation, Defendants had extensively argued that the two alleged corrective disclosures did not reveal any truth about the alleged savings misstatements, because neither disclosure expressly discussed whether Evolent had saved Passport money or had financially harmed Passport, and because even after these alleged

---

[7]  *See e.g., In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1238 (S.D. Cal. 2010) (granting defendants' motion for summary judgment and finding no scienter because defendants' "marshaled substantial, if not overwhelming evidence that [they] acted in good faith" in relying on analysis provided by accountants); *Poth v. Russey*, 281 F. Supp. 2d 814, 823 (E.D. Va. 2003) (Lee, J.) (granting summary judgment on securities claims for defendants who had had relied on bankers' estimates of what an IPO would raise and so plaintiffs had "fail[ed] to raise any genuine issue of material fact that [defendants] lacked a good faith basis.").

9

disclosures, multiple analysts opined that they did not believe that Evolent was responsible for Passport's financial decline. And finally, even if Plaintiffs could have established that Evolent had contributed to Passport's financial decline, Defendants would have presented evidence that Kentucky's Medicaid rate cuts and other non-Evolent-related factors were also contributing causes, and that damages should be reduced accordingly. *See, e.g.*, *Phillips*, 2016 WL 1175152, at *3 (approving settlement where "loss causation and damage assessments of [plaintiff's] and [d]efendants' experts were sure to vary substantially, and in the end, this crucial element at trial would be reduced to a 'battle of experts'").

Although Plaintiffs believe they had amassed sufficient evidence to counter these arguments and prove their claims, Plaintiffs at summary judgment and "at trial would bear the burden of conveying complex information to a jury using financial records, complicated accounting principles, and expert testimony" and accordingly the "high risk faced by taking the case to a jury verdict demonstrates the adequacy of this [] settlement." *Genworth*, 210 F. Supp. 3d at 841-42; *see also Chrismon*, 2020 WL 3790866, at *5 ("[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome").[8]

### 2. The Costs and Delay of Continued Litigation Support Final Approval

"[I]n a case such as this, a fully contested class action lawsuit would be expected to take significant time to resolve at the District Court level and additional time would result from any appeals." *Robinson*, 2019 WL 2591153, at *10. Here, the remaining cost and duration of pursuing this Action would be substantial and warrant approval of the Settlement.

---

[8] There would also be a risk that a favorable verdict could be disturbed or overturned even years later. *See, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial).

10

The Settlement brings to a close litigation that could have lasted several more years and incurred significant additional costs—including the expenses of vendors and experts, Defendants' Counsel's fees, the value of Lead Counsel's billed time, and substantial judicial resources—which could very easily have totaled in the millions of dollars.[9]  *See Smith*, 2015 WL 6479658, at *6 (finding Plaintiffs understandably abided by the aphorism that "a bird in [the] hand is worth two in the bush" by settling and foregoing costly, and uncertain relief in exchange for a substantial, guaranteed, and immediate result).

### 3.    The Proposed Settlement Falls Well Within the Range of Approval

The proposed $23.5 million Settlement is a superb recovery for the Settlement Class and falls well within the range of what is fair, reasonable, and adequate.  Indeed, the Settlement Amount represents at least 12% of the Settlement Class's maximum recoverable damages, which Plaintiffs' expert calculated at $195 million if Plaintiffs were to fully prevail at summary judgment and trial on all of their loss causation and damages arguments.  Significantly, however, that damages estimate assumes that 100% of the stock price declines that occurred following the two alleged corrective disclosures were attributable to Defendants' alleged misrepresentations— a fact that Defendants vehemently disputed.  Indeed, Plaintiffs' damages expert calculated that, assuming Defendants prevailed even on some of their loss causation and damages arguments, damages could be reduced to as little as $35 million, if any at all.  Accordingly, the Settlement represents a recovery of up to 67% of realistic damages—as much as nine times the median securities class action recovery as a percentage of damages, which between 2012 and 2020 was

---

[9] Although, to Plaintiffs' knowledge, Evolent faces no immediate insolvency risk, the uncertainty of any company's financial position, particularly in current economic conditions, also poses a risk that favors settlement.  *Deem*, 2013 WL 2285972, at *3 ("Although the court is unaware of any threat to Defendant's solvency, recovery of a litigated judgment cannot be taken for granted in these uncertain economic times. The proposed settlement avoids all risk of eventual insolvency and provides immediate cash to Class Members").

just 4% to 7.3% of damages for similarly-sized cases.[10]   Courts readily approve class action settlements representing much lower percentages of recoverable damages.[11]

### 4.      The Positive Reaction of the Settlement Class to the Settlement

"The lack of objections and opt-out requests are important factors contributing to a conclusion that the settlement is fair and reasonable."  *Deem*, 2013 WL 2285972, at *2.  Here, 40,706 Notice Packets were mailed to potential Settlement Class Members and nominees.  Ex. D at ¶10.   Additionally, the Summary Notice was published in *Investor's Business Daily* and transmitted over the *PR Newswire.  Id.,* at ¶11.  While the October 28, 2022 deadline for opting out of or objecting to the Settlement has not yet passed, as of October 13, 2022, Lead Counsel have received no opt-out requests or objections to any aspect of the Settlement, the Plan of Allocation, or the request for attorneys' fees and reimbursement of Litigation Expenses.

Furthermore, and, importantly, "the Lead Plaintiffs in the case are sophisticated institutional investors managing [m]illions of dollars in pensioners' investments and experienced in the world of securities laws."[12] *Genworth*, 210 F. Supp. 3d at 842. Indeed, "the active participation by the Lead Plaintiffs in the negotiation process further weighs in favor of

---

[10] *See* Cornerstone Research, Securities Class Action Settlements 2021 Review and Analysis, at 6, Fig. 5 (Mar. 24, 2022), https://www.cornerstone.com/wp-content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf.  Median recovery as a percentage of Cornerstone's "simplified tiered damages for 2012-2020 was 7.3% for cases ranging from $25-74 million in damages, 4.9% for cases ranging from $75-149 million in damages, and 4.0% for cases ranging from $150-249 million in damages.

[11] *See, e.g., In re Patriot Nat'l Sec. Litig.*, 828 Fed. Appx. 760, 762 (2d Cir. 2020) (affirming settlement representing 6.1% of the maximum potentially recoverable damages); *Thorpe v. Walter Investment Mgmt. Corp.*, 2016 WL 10518902, at *10 (S.D. Fla. Oct. 17, 2016) (approving $24 million settlement representing 5.5% of the maximum damages and 10% of the "most likely damages scenario").

[12] Lead Plaintiffs have significant experience in obtaining large settlements on behalf of classes of investors. *See*, *e.g.*, *Plymouth County Ret. Sys. v. Patterson Cos. Inc.*, 2022 WL 2111237, at *2 (D. Minn. June 10, 2022) (approving $63 million PSLRA recovery where Plymouth County "adequately represented the Class"); *Avila v. LifeLock Inc.*, No. 2:15-cv-01398-SRB, ECF No. 150, at 4-5 (D. Ariz. July 22, 2020) (approving $20 million PSLRA recovery where Oklahoma Police "adequately represented the [s]ettlement [c]lass").

12

approving the Settlement." *Id*.

### D.    Additional Factors Support Final Approval of the Settlement

With respect to the manner in which the Settlement will be distributed, the proposed Plan of Allocation easily satisfies Rule 23(e)(2)(D) because it treats all Settlement Class Members equally.    As set forth in Section III below, the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims.

Further, the Settlement readily meets the requirements of Rule 23(e)(2)(C).[13]  The Notice complied in all respects with the requirements set forth in the Stipulation and the Preliminary Approval Order.  ¶¶84-87.  Indeed, the Court-approved Notice contained all the information required by Rule 23(c)(2)(B), the PSLRA, 15 U.S.C. §78u-4(a)(7), and due process because it sufficiently apprised the Settlement Class of "the nature of the action, the definition of the Class, the Class's claims [], the Settlement's terms, how Class Members could receive a payment, how to opt out of the Settlement, how to object to the Settlement, the details of the fairness hearing, the binding effect of the judgment," and other information.  *See Robinson*, 2019 WL 2591153, at *3; *see also In re Star Scientific, Inc. Sec. Litig.*, 2015 WL 12866962, at *3 (E.D. Va. June 26, 2015) (Gibney, Jr., J.) (approving similar notice program in securities class action).  The Notice also provided information on how to submit a Claim Form and informed potential Settlement Class Members of the avenues available to them to obtain additional information necessary to make an informed decision, including by contacting the Court-appointed Claims Administrator or Lead Counsel.  *See Smith*, 2015 WL 6479658, at *4 (approving notice providing a toll-free

---

[13] With respect to Rule 23(e)(2)(C)(iv), the Parties entered into a Supplemental Agreement under which Defendants may terminate the Settlement if requests for exclusion from the Settlement Class reach a certain threshold—generally called a "blow provision"—that is standard in securities class actions.  *See Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *7 (C.D. Cal. Oct. 10, 2019) ("This type of agreement is common in securities fraud actions and does not weigh against [settlement] approval.").

number for inquiries, counsel's contact information, and instructions on how to file a claim).

Further, the Claims Administrator has mailed 40,706 copies of the Notice Packet, published the Summary Notice, and has maintained the website dedicated to the Action, which provides all information and documentation pertinent to the Settlement.  Ex. D at ¶¶11-12; *see also Phillips*, 2016 WL 1175152, at **1, 5 (publication of summary notice in *Investor's Business Daily* and via *PR Newswire*, establishment of website, and mailing notice to thousands of potential class members constituted sufficient notice).[14]

## III.    THE PLAN OF ALLOCATION SHOULD BE APPROVED

The objective of a plan of allocation is to provide an equitable method for distributing a settlement fund among eligible class members.  A plan of allocation should be approved when it "accounts for when claimants purchased their securities and for how long they held the stock, considerations that have been approved by courts in this district." *Genworth,* 210 F. Supp. 3d at 843.  The Plan of Allocation, which is set forth in the Notice disseminated to the Settlement Class pursuant to the Preliminary Approval Order, also warrants the Court's approval.

Here, the Plan of Allocation was developed by Plaintiffs in consultation with their damages expert after careful consideration of Plaintiffs' theories of liability and alleged damages under the Exchange Act.  In developing the Plan, Plaintiffs' expert calculated the estimated amount of artificial inflation in the price of Evolent's common stock during the Settlement Class Period by considering how the stock price changed after the announcement of each alleged corrective disclosure, and adjusting for price changes that were attributable to market or industry forces.  *See* Notice at ¶50.  Under the Plan of Allocation, a Recognized Loss Amount will be

---

[14] With respect to Rule 23(e)(2)(C)(iii), the terms of the proposed award of attorneys' fees were fully disclosed in the Notice and are highly reasonable in light of the work performed and the results obtained, as set forth below in Section V.

calculated for each purchase or acquisition of publicly traded Evolent common stock by an eligible Settlement Class Member in order to derive the amount of each Authorized Claimant's Recognized Claim, and the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their respective Recognized Claims. *See* Notice at ¶¶51-66. Courts routinely approve substantially similar methods of distributing recoveries in securities class actions such as this one, and Plaintiffs respectfully submit that this Court should approve the Plan of Allocation submitted here. *See, e.g., Phillips,* 2016 WL 1175152, at *4.

## IV.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

The Court's Preliminary Approval Order conditionally certified the Settlement Class under Rules 23(a) and (b)(3) for purposes of the Settlement. *See* Preliminary Approval Order (ECF No. 247) at 3-4, ¶¶1-3 ("the Court finds that each element required for certification of the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure has been met"). Nothing has occurred since then to cast doubt on the propriety of class certification for settlement purposes, and no objections to certification have been received. For all the reasons stated in the Preliminary Approval Order and Plaintiffs' unopposed motion for preliminary approval of the Settlement (ECF No. 244), Plaintiffs respectfully request that the Court grant final certification to the Settlement Class under Rules 23(a) and (b)(3).

## V.    PLAINTIFFS' FEE AND EXPENSE REQUEST IS FAIR AND REASONABLE

In undertaking this difficult and costly litigation on a fully contingent basis, Lead Counsel faced many challenges to proving both liability and damages. The $23.5 million all-cash recovery was achieved through Lead Counsel's skill, experience, and effective advocacy, all in the face of substantial risk and a skilled defense mounted by Defendants, who were represented by one of the top defense firms in the country. There was a real risk here that the Settlement Class would achieve no recovery at all, especially given Defendants' vigorous and

credible arguments on the key issues of falsity, scienter, loss causation, and damages as described above. As such, there was no guarantee that Plaintiffs' claims would survive summary judgment, much less succeed at trial or on appeal.

Despite these significant risks, Plaintiffs' Counsel collectively worked more than 20,400 hours, representing a total lodestar of $11,036,633.75, and incurred unreimbursed expenses of $918,539.45, over the course of three years to achieve the Settlement, all on a contingent basis with no assurance of ever being paid. This "negative" lodestar multiplier of 0.71 confirms the reasonableness of the requested one-third fee award, as it is within the range of reasonableness and well below the 2-4x multipliers regularly awarded in the Fourth Circuit.

In light of the recovery obtained, the time and effort involved, the complexity and amount of work performed, the skill and expertise of counsel, and the risks, Lead Counsel respectfully submits that a one-third fee award and reimbursement of Litigation Expenses in the amount of $918,539.45 is fair and reasonable, and well within the range of attorneys' fees awarded in this Circuit and throughout the nation in similar securities class action and complex cases. To date, no Settlement Class Member has objected to the fee and expense request, and Lead Plaintiffs fully support the request as fair and reasonable. *See* Exs. A and B to Hooker Decl. at ¶¶13-16.

**A.     Lead Counsel's Fee Request is Reasonable under Fourth Circuit Criteria**

Courts have long recognized that attorneys who obtain a recovery for a class in the form of a common fund are entitled to an award of fees and expenses from that fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).[15] "District courts in the Fourth Circuit 'overwhelmingly' prefer the percentage method in common-fund cases." *Seaman*, 2019 WL

---

[15] Securities class actions such as this one are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).

4674758, at *2.  Indeed, the Fourth Circuit has held that fee awards based on the percentage method "align the interests of lawyer and client" because they "reward[] exceptional success, and penalize[] failure."  *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 246 (4th Cir. 2010).  Thus, the percentage method applies here.  *See Sponn*, 2019 WL 11731087, at *1.

In determining a reasonable fee, courts in the Fourth Circuit apply the factors articulated by the Third Circuit in *In re Cendant Corp. PRIDES Litig.,* 243 F.3d 722, 733 (3d Cir. 2001):

> (1) the results obtained for the class; (2) the presence or absence of substantial objections by members of the class to the fees counsel requested; (3) the skill and efficiency of attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time plaintiffs' counsel devoted to the case; and (7) awards in similar cases.

*See Genworth*, 210 F. Supp. 3d at 843; *Robinson*, 2019 WL 2591153, at *14.  Some district courts in this Circuit have also incorporated the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978):[16]

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorneys' opportunity costs in pressing the litigation; (5) the customary fee for like work; (6) the attorneys' expectations at the outset of the litigation; (7) the time limitations imposed by the client or the circumstances; (8) the amount in controversy and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between the attorneys and client; and (12) fee awards in similar cases.

All of these considerations warrant an award of the requested fees and costs in this case.

---

[16] The *Barber* factors are used to assess the reasonableness of a lodestar fee, which is used as a "cross-check" in PSLRA cases in this District.  Because the *Barber* factors overlap with the *Cendant* factors, Plaintiffs address all factors concurrently.  *See Robinson*, 2019 WL 2591153, at *14; *Phillips v. Triad Guaranty Inc.*, 2016 WL 2636289, at *4 (M.D.N.C. May 9, 2016) (noting that the *Barber* factors "incorporate and recognize most of the In re Cendant factors").  Courts need not mechanically list or comment on each factor, only those that are applicable.  *See id*.  Here, Lead Counsel respectfully submits that two *Barber* factors—the time limitations imposed by the client or circumstances, and the nature and length of the professional relationship between attorney and client—are not relevant in this class action, and therefore are not addressed.  *See id*.

17

### 1.    The Results Obtained for the Class Support the Fee Award

Courts have consistently recognized that, in evaluating a fee award, "the most critical factor is the degree of success obtained." *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Abrams*, 605 F.3d at 247 (same).   As noted above, the excellent result obtained here was accomplished despite the substantial difficulties of proving liability for securities fraud and establishing damages in this Action.  It was only through the extensive efforts of Lead Counsel that the $23.5 million Settlement was achieved.

Indeed, from the outset, Lead Counsel faced significant unique risks in formulating their allegations here, as there were no pending regulatory actions, such as an investigation by the SEC or other agency, upon which Plaintiffs could "piggy back" to develop their allegations.  *See, e.g., In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at \*15 (S.D.N.Y. Dec. 19, 2014).   Lead Counsel's extensive efforts to obtain documents from Kentucky via open records requests led to their uncovering of critical, non-public documents supporting their claims, including, *inter alia*, a series of letters assessing significant penalties against Passport as a result of Evolent's claims processing failures.  Moreover, Lead Counsel successfully amended their operative complaint to incorporate allegations based on information provided by a new confidential witness—a high ranking former Passport executive—that were critical to surviving Defendants' motion to dismiss.  Indeed, the Court's finding of scienter expressly hinged on the penalty letters and the facts provided by this confidential witness.[17]  Later, following an intensive review of Defendants' document productions, Lead Counsel filed a Third Amended Complaint incorporating new allegations from some of these documents, and successfully defeated another

---

[17] *See Plymouth County Ret. Sys. v. Evolent Health, Inc.*, 2021 WL 1439680, at \*35 (E.D. Va. Mar. 24, 2021) (Alston, Jr., J.) (scienter allegations "augmented by Plaintiffs' contention that Defendants received 'the monthly deficiency letters'" and by CW 5's confirmation that "these letters 'absolutely were' sent to Evolent's executives").

motion to dismiss, thereby nearly doubling the length of the operative class period and significantly increasing the Settlement Class's maximum recoverable damages. Without these specific efforts, any recovery would have been far smaller. ¶¶35-41.

Importantly, the Settlement recovers up to 67% of the Class's likely recoverable damages at trial—***up to nine times*** the typical securities class action recovery, which from 2012 to 2020 was 4% to 7.3% for similarly-sized settlements and 4.1% for all securities class action settlements in the Fourth Circuit. *See* ¶5; *Thorpe,* 2016 WL 10518902, at *10 (awarding fees of one-third of $24 million, where result represented "an excellent 5.5% of maximum damages"). The Settlement will provide immediate compensation to the Class and avoids the substantial risks from continued litigation. *See In re Constellation Energy Grp., Inc. Sec. Litig.,* 2013 WL 12461134, at *1 (D. Md. Nov. 4, 2013) (awarding one-third fee "given the substantial risks of non-recovery, the time and effort involved, and the result obtained for the Class").

### 2.    The Positive Reaction of the Class Supports the Requested Award

Courts in the Fourth Circuit and nationwide routinely find that a lack of objections supports a finding that the fee request is reasonable. *See e.g., Seaman,* 2019 WL 4674758, at *3 (awarding a one-third fee in a $54.5 million recovery, as "[t]he absence of any objections to the settlement indicates that 'counsel have achieved a superior result for the class and weighs in favor of their requested award'"); *Celebrex*, 2018 WL 2382091, at *5 (awarding one-third of $94 million settlement as there "were no objections to the Settlement, the requested fee award, or the requested reimbursement of expenses," there were no opt-out requests, and the "largest Class members" supported the settlement).

The fact that there have been no objections to date is significant given that the majority of Evolent's shares were held by institutional investors with the resources and motivation to object,

19

if warranted. ¶111.  Significantly, Lead Plaintiffs' endorsement heavily supports the requested fee, as they are precisely the type of sophisticated institutional investors that Congress had envisioned would "participate in the litigation and exercise control over" Lead Counsel.  H.R. Conf. Rep. No. 104-369, at *32 (1995), reprinted in 1995 U.S.C.C.A.N. 730-731.  Ex. A, ¶¶5-9, 13, 15; Ex. B, ¶¶5-9, 13, 15; see also Orbital, 2019 WL 3317976, at *2 ("the requested attorneys' fees and litigation expenses have been reviewed and approved by Lead Plaintiff and Named Plaintiff, sophisticated institutional investors who were involved with and oversaw the Action").[18]

### 3.    The Skill, Experience, and Reputation of the Attorneys Involved

"The skill required in complex cases such as this involving massive discovery efforts and complicated issues of fact and law also weighs in favor of supporting the substantial attorneys' fees award in this case."  Genworth, 210 F. Supp. 3d at 844.  As set forth in the declarations supporting this fee application, and as addressed above, Lead Counsel marshaled their considerable experience and skill in successfully prosecuting and resolving this Action.  See Ex. F, ¶¶93-96.  Indeed, Lead Counsel's reputation as attorneys who will zealously prosecute a meritorious case through summary judgment and beyond enabled them to negotiate the outstanding recovery for the benefit of the Settlement Class.

Additionally, the fact that King & Spalding LLP, one of the country's most experienced defense firms, served as Defendants' counsel in the Action provides further support for Lead Counsel's requested fee award.  See GTT Communications, 2021 WL 1659848, at *5 (one-third

---

[18] Moreover, the requested fee is based on retainer agreements that Lead Counsel entered into with Lead Plaintiffs, which "supports approval of the fee" and is viewed by courts as "presumptively reasonable in light of Congress's intent to empower lead plaintiffs under the PSLRA to select and supervise attorneys on behalf of the class."  In re Signet Jewelers Ltd. Sec. Litig., 2020 WL 4196468, at *17 (S.D.N.Y. July 21, 2020); see Exs. A & B at ¶14.

fee awarded where there were "considerable challenges from formidable opposition"); *Thorpe*,
2016 WL 10518902, at \*9 (that "Defense counsel have reputations for vigorous advocacy in the
defense of complex civil cases such as this" favored approval of one-third fee award).

### 4.    The Complexity and Duration of the Action and Litigation Efforts

"[S]ecurities fraud cases require significant showings of fact in order to prevail before a
jury, and elements such as scienter, reliance, and materiality of misrepresentation are notoriously
difficult to establish."  *Genworth*, 210 F. Supp. 3d at 844; *see also Thorpe*, 2016 WL 10518902
at \*3 ("[a] securities case, by its very nature, is a complex animal").  These observations were
even more pronounced here, as the novelty and difficulty of the legal and factual questions at
issue in this Action were exceedingly complex.  As a result, the litigation was hard-fought for
three long years—a period encompassing a global pandemic that created unique logistical
challenges—despite this District's reputation for expeditious resolution of cases.

Indeed, Lead Counsel spent substantial hours researching and analyzing the details of,
*inter alia*: Medicaid and value-based care; Evolent's partnership with Passport; Passport's
financial statements and operating results; Evolent's claims processing systems; Evolent's
metrics for determining cost savings provided to its clients; Evolent's actuarial processes; the
relevant regulatory agencies in Kentucky; the processes by which Medicaid plans in Kentucky
applied for new contracts with the commonwealth and reported claims data, and by which the
commonwealth set the rates it paid to these plans; and the means by which pharmacy benefit
managers could reduce costs for health plans.  This knowledge was crucial in pleading
Defendants' alleged fraud with the requisite particularity and in effectively undertaking fact and
expert discovery, and required frequent consultation with several experts.  ¶¶59, 107.  Lead
Counsel also contacted and interviewed numerous confidential witnesses, including former high-

21

ranking employees of Evolent and Passport, who provided information critical to supporting Plaintiffs' allegations.  ¶¶8, 20, 23.

Further, Lead Counsel prepared four complaints, including the SAC incorporating new allegations related to information provided by a confidential witness, and the TAC incorporating allegations regarding various documents produced in discovery by Defendants and adding new allegedly false statements.  *See* ¶¶8, 20, 23, 35.  Merely investigating and drafting sufficient complaints to survive two separate motions to dismiss required considerable skill and effort here, where Lead Counsel developed the allegations in the Action without the benefit of a pending regulatory action against Evolent that provided a roadmap for Plaintiffs' claims.  *See* ¶18, 20; *Seaman*, 2019 WL 4674758, at *4 ("this case did not follow a government investigation [] that might have given some confirmation of the scope of misconduct").

Additionally, the complex issues in this case became a serious and uncertain point of contention during discovery, particularly with respect to factual issues involving Evolent's actuarial assessment of the savings it provided Passport, as well as price impact and loss causation issues that required an intensive, expert-assisted analysis of the reasons why Passport's Medicaid rates were cut and why Passport's financial health declined.  Lead Counsel reviewed over 71,000 documents in total, over 61,000 of which were produced by Defendants and their experts.  ¶44.  There were eleven expert reports filed and/or served by the Parties in this Action. ¶62.  The Parties conducted a total of twenty-three depositions in this Action between April 21, 2022 and June 28, 2022, including thirteen fact depositions, six expert depositions, and four depositions of representatives of Lead Plaintiffs and their investment managers.  ¶61.

Lead Counsel thus clearly "undertook significant efforts in this case through every stage of the litigation, including discovery concerning [the PSLRA] elements, consultation with

22

necessary experts, briefing issues before the Court, and preparing for trial." *Genworth*, 210 F. Supp. 3d at 844. Accordingly, Lead Counsel's ability to successfully navigate these and other complex legal and factual obstacles fully supports the requested fee award.

### 5.    The Contingent Nature of the Fee and Risk of Nonpayment

From inception, Lead Counsel "undertook this action on a contingent fee basis, funding the costs and devoting significant time to prosecute this action without any assurance of being compensated for their efforts." *Temp. Servs., Inc. v. Am. Int'l Grp., Inc.,* 2012 WL 4061537, at *9 (D.S.C. Sep. 14, 2012). Lead Counsel "undertook numerous and significant risks of nonpayment in connection with the prosecution of this action." *Celebrex,* 2018 WL 2382091, at *4.

Indeed, as courts in this Circuit recognize, "prosecuting a securities fraud action is not only complex, but is also fraught with risk." *Phillips,* 2016 WL 2636289, at *8.[19] Not only did Lead Counsel have to contend with the heavy burden of the PSLRA's heightened pleading standard and Defendants' defenses to liability and damages, but there were also substantial risks to securing a meaningful recovery for the Class at every stage of the litigation, including significant ones that remained at the time of Settlement, as explained in Section II.C.1 above. Lead Counsel took on a risky, complex, and protracted litigation requiring the expenditure of extensive resources against formidable opposition with no guarantee of success, which further supports the requested fee.

To date, Lead Counsel has received no compensation for its prosecution of this case, and since the extensive commitment of time and resources devoted here necessarily entailed the

---

[19] Indeed, by the end of 2021, 48% of securities class actions filed in 2019 (like this one) had been dismissed, twice the number of cases that had settled. Cornerstone Research, Securities Class Action Filings (2021 Year in Review) at 18, available at https://www.cornerstone.com/wp-content/uploads/2022/02/Securities-Class-Action-Filings-2021-Year-in-Review.pdf

preclusion of other projects, the primary focus of this factor is to acknowledge this incongruence by permitting a commensurate recovery to compensate for the risk of recovering nothing. Consequently, this weighs in favor of the requested award. *See Robinson*, 2019 WL 2591153, at *16 ("Contingency fee arrangements … are usually one-third or higher" because "payment [is] entirely depend[e]nt upon achieving a good result for Plaintiff[s] and the Class, and Counsel face[] significant risk of nonpayment").

**6.      The Amount of Time Devoted to the Case by Plaintiffs' Counsel**

The time and labor expended by Lead Counsel in prosecuting this Action firmly supports the requested fee. Lead Counsel "fiercely litigated this case on behalf of their clients." *Genworth,* 210 F. Supp. 3d at 845.  As stated above and in the Hooker Declaration, Lead Counsel's efforts involved drafting four complaints, briefing three rounds of motions to dismiss, analyzing hundreds of thousands of pages of discovery, advancing extensive discovery disputes, participating in 23 depositions, engaging experts, and briefing class certification.  In total, prosecuting this Action necessitated Plaintiffs' Counsel to expend more than 20,400 hours, equivalent to more than $11 million in attorney and staff time, over the course of three years.[20]

Accordingly, Lead Counsel's extensive litigation efforts were reasonable and necessary to secure the Settlement, fully supporting the requested fee award.  *See Orbital,* 2019 WL 3317976, at *2 (29,000 hours reasonable).

---

[20] Lead Counsel will continue to expend additional time and out-of-pocket expenses in connection with the settlement administration process, the Fairness Hearing, and, if the Settlement is approved, assisting with implementation of the Settlement.  Lead Counsel will not seek compensation for this time.

### 7.  A One-Third Fee is Customary and in Accordance with Other Similar Cases in this District and the Fourth Circuit

Lead Counsel's one-third fee request is eminently reasonable when considering the customary awards in similar cases in this District and the Fourth Circuit. *See e.g. Celebrex,* 2018 WL 2382091, at *5 ("Fee awards of one-third of the settlement amount are commonly awarded in cases analogous to this one"); *Kelly v. Johns Hopkins Univ.,* 2020 WL 434473, at *3 (D. Md. Jan. 28, 2020) (a "great weight of authority more than demonstrates that a one-third fee is justified in this case"); *Temp. Serv., Inc.*, 2012 WL 4061537, at *8 (a "total fee of one-third of the class settlement for all work performed and to be performed in this case is well within the range of what is customarily awarded in settlement class actions"). A one-third award is particularly appropriate here because of the highly complex issues involved, the extraordinary investment of time and resources, the result achieved, the approval of Lead Plaintiffs and the Settlement Class, and the risks in the litigation. *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 481 (D. Md. 2014) (one-third fee was proper given "superior result" obtained in complex litigation).

As demonstrated in the chart below, courts in the Fourth Circuit have consistently awarded one-third or higher fees in similar securities and other large complex class actions:[21]

---

[21] The requested fee award is also reasonable compared to nationwide securities class action recoveries. *See*, *e.g.*, *Grae v. Corrections Corp. of America*, 2021 WL 5234966 at, *1 (M.D. Tenn. Nov. 8, 2021) (awarding one-third fee on $56 million recovery); *Plymouth County Retirement System v. Patterson Companies, Inc*., 2022 WL 2093054, at *1 (D. Minn. June 10, 2022) (one-third fee on $63 million recovery); *Cosby v. KPMG, LLP*, 2022 WL 4129703, at **1-2 (E.D. Tenn. July 12, 2022) (one-third fee on $35 million recovery) *In re Perrigo Company plc Securities Litigation,* 2022 WL 500913, at *1 (S.D.N.Y. Feb. 18, 2022) (one-third fee on $31.9 million recovery); *Thorpe*, 2016 WL 10518902 at *11 (one-third of $24 million recovery); *In re Flowers Foods, Inc. Sec. Litig.*, 2019 WL 6771749, at *1 (M.D. Ga. Dec. 11, 2019) (one-third of $21 million recovery); *In re Banc of California Sec. Litig*., 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (33% of $19.75 million recovery); *In re Deutsche Bank AG Sec. Litig*., 2020 WL 3162980, at *1 (S.D.N.Y. June 11, 2020) (one-third fee of $18.5 million recovery).

| Comparable Cases Within the Fourth Circuit | Recovery Amount | Fee Award |
|---|---|---|
| *DeLoach v. Phillip Morris Co.*, 2003 WL 23094907, at *11 (M.D.N.C. Dec. 19, 2003) | $211,800,000 | 33.3% |
| *In re Titanium Dioxide Antitrust Litig.*, 2013 WL 6577029, at *1 (D. Md. Dec. 13, 2013) | $163,500,000 | 33.3% |
| *In re Peanut Farmers Antitrust Litig.*, 2021 WL 9494033, at *9 (E.D. Va. Aug. 10, 2021) (Jackson, J.) | $102,750,000 | 33.3% |
| *In re Celebrex (Celecoxib) Antitrust Litig.*, 2018 WL 2382091, at *5 (E.D. Va. Apr. 18, 2018) (Wright Allen, J.) | $94,000,000 | 33.3% |
| *Krakauer v. Dish Network*, 2019 WL 7066834, at *7 (M.D.N.C. Dec. 23, 2019) | $61,342,800 | 33.3% |
| *Seaman v. Duke University*, 2019 WL 4674758, at *5 (M.D.N.C. Sep. 25, 2019) | $54,500,000 | 33.3% |
| *Scott v. Family Dollar Stores, Inc.*, 2018 WL 1321048, at *5 (W.D.N.C. Mar. 14, 2018) | $45,000,000 | 33.3% |
| *Kruger v. Novant Health, Inc.*, 2016 WL 6769066, at *5 (M.D.N.C. Sep. 29, 2016) | $32,000,000 | 33.3% |
| *Plymouth County Retirement System v. GTT Communications, Inc.*, 2021 WL 1659848, at *5 (E.D. Va. Apr. 23, 2021) (Hilton, J.) | $25,000,000 | 33.3% |
| *Sims v. BB&T Corporation*, 2019 WL 1993519, at *4 (M.D.N.C. May 6, 2019) | $24,000,000 | 33.3% |
| *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 248-249 (4th Cir. 2010) – *order on remand* at *Pellegrin v. National Union Fire Ins. Co.*, No. 5:08-CV-349-BO, ECF No. 53 (E.D. N.C. July 16, 2010) | $18,000,000 | 33.3% |
| *Kelly v. Johns Hopkins University*, 2020 WL 434473, at *7 (D. Md. Jan. 28, 2020) | $14,000,000 | 33.3% |
| *Clark v. Duke University*, 2019 WL 2579201, at *5 (M.D.N.C. June 24, 2019) | $10,650,000 | 33.3% |
| *In re BearingPoint, Inc. Securities Litigation*, No. 1:05-CV-00454, ECF No. 200 at 8 (E.D. Va. Sept. 28, 2010) (O'Grady, J.) | $7,500,000 | 33.3% |
| *In re Star Scientific, Inc. Securities Litigation,* 2015 WL 13821326, at *1 (E.D. Va. June 26, 2015) (Gibney, Jr., J.) | $5,900,000 | 33.3% |
| *Roman Zak v. Pedder (Chelsea Therapeutics)*, 2016 WL 5109167, at *1 (W.D.N.C. Sept. 19, 2016) | $5,500,000 | 33.3% |
| *In re Constellation Energy Group, Inc. Securities Litigation*, 2013 WL 12461134, at *1 (D. Md. Nov. 4, 2013) | $4,000,000 | 33.3% |
| *Sponn v. Emergent Biosolutions, Inc.*, 2019 WL 11731087, at *2 (D. Md. Jan. 25, 2019) | $6,500,000 | 33% |

**B.    The Requested Fee is Reasonable Under a Lodestar Cross-Check**

A lodestar "cross-check" also wholly supports the fee request.    Here, Plaintiffs'

Counsel's total lodestar is $11,036,633.75, and the requested one-third fee equates to a negative

26

multiplier of 0.71. This means that a one-third fee would represent significantly less than the total value of the attorney and staff hours invested by Plaintiffs' Counsel in this Action. A "negative multiplier [is] a strong indication of the reasonableness of the [requested] fee." *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *13 (S.D.N.Y May 9, 2014); *see also, Guevoura Fund*, 2019 WL 6889901, at *18 ("When the lodestar cross-check shows that the percentage fee is lower than the fee the lawyers have accrued on a time-and-service basis, it is relatively easy to support a percentage-based fee"); *Health Ins. Innovations*, 2021 WL 1341881, at *12 ("Moreover, the negative lodestar multiplier [] further supports the reasonableness of the fee requested"). Additionally, this multiplier is substantially below the typical range of multipliers routinely approved by courts in this District, the Fourth Circuit, and across the country. *See e.g., Seaman*, 2019 WL 4674758, at *6 ("lodestar multipliers on large and complicated class actions have ranged from at least 2.26 to 4.5"); *Celebrex*, 2018 WL 2382091, at *5 (1.94 multiplier "is a reasonable multiplier in this Circuit"); *GTT Communications*, 2021 WL 1659848, at *6 (approving one-third fee representing 1.54 lodestar multiplier).

Moreover, Lead Counsel's hourly rates—ranging from $365 to $985 for attorneys and partners, and $250 to $300 for paralegals—are less than or comparable to hourly rates approved by this District, the Fourth Circuit and nationwide.[22] *See, e.g., GTT Communications*, No. 1:19-cv-00982-CMH-MSN, 2021 WL 1659848, at *5-6; ECF No. 93-4, at 7-8 (approving Saxena White's 2021 rates of $365 to $895 for attorneys); *Seaman*, 2019 WL 4674758, at *5 (approving hourly rates of between $590 and $900 for partners, between $395 and $510 for attorneys, and between $280 and $390 for paralegals and other support staff, because "[t]hese rates are in line with hourly rates used for Class Counsel in other cases"); *Orbital*, No. 1:16-cv-01031-TSE-

---

[22] The accompanying declarations of counsel include descriptions of the legal background and experience of the firms that worked on this case, which support the hourly rates submitted.

27

MSN,2019 WL 3317976, at *2 and ECF. No. 453 at 9-10 (E.D. Va. Apr. 26, 2019) (approving rates of $780-$1,250 for partners, $360-$600 for attorneys, and $220-$375 for litigation support in a securities class action).    Indeed, Plaintiffs' Counsel's blended hourly rate of $541 underscores the reasonableness of the fee request and is well in-line with blended hourly rates approved in past securities class action settlements in this Circuit and nationwide.  *See e.g., Guevoura Fund*, 2019 WL 6889901, at *18 (approving one-third fee on blended rate of $769 per hour); *Sponn*, 2019 WL 11731087, at *1, 2 (awarding 33% in a securities settlement where counsel had a blended rate of approximately $646).

Further, courts in this Circuit have recognized that while a "reasonable rate is usually calculated by looking at the local market, [] a national market rate is appropriate for matters involving complex issues requiring specialized expertise[.]"  *Clark v. Duke University*, 2019 WL 2579201, at *2 (M.D.N.C. June 24, 2019); *see also Kruger v. Novant Health, Inc*., 2016 WL 6769066, at *4 (M.D.N.C. Sep. 29, 2016) (finding in complex class action, "the relevant market rate for cases such as the present case [is] a nationwide market rate").

### C.    Plaintiffs' Counsel's Litigation Expenses and Lead Plaintiffs' Reimbursement Awards Are Reasonable and Should Be Granted

Plaintiffs' Counsel seek reimbursement of $918,539.45 in litigation expenses reasonably incurred in litigating the Action, which expenses are routinely awarded in similar actions, including expert fees, mediation expenses, discovery-related costs, and investigation expenses. *See e.g., Orbital*, 2019 WL 3317976, at *1 (approving over $1.1 million in expenses in securities class action); *Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings Inc.*, 2022 WL 4136175, at *1 (S.D.N.Y. Feb 14, 2022) (reimbursing $1,290,333.96 in expenses for a $18 million settlement at the conclusion of discovery and after a decision on a contested motion for class certification).  The Hooker Declaration contains a full breakdown of the litigation expenses.

28

*See* Exs. E, F, and G.  Notably, the requested expenses are less than the $1,000,000 amount set forth in the Notice, and no objections have been lodged thereto.  ¶110, 111.

Lastly, Lead Plaintiffs also seek Representative Reimbursements of $7,335.27 and $8,550.00 as an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class"—awards that are specifically envisioned in the PSLRA and routinely awarded by courts nationwide.  *See* 15 U.S.C. §78u-4(a)(4); *Roman Zak v. Pedder,* 2016 WL 5109167, at *1 (W.D.N.C. Sep. 19, 2016) (awarding $10,000 for plaintiff's participation in the case); Exs. A & B (detailing each Lead Plaintiff's approximate time spent in the Action).

## VI.    **CONCLUSION**

For the reasons discussed above and in the Hooker Declaration, Plaintiffs respectfully request that the Court grant final approval of: (i) the Settlement; (ii) the Plan of Allocation; and (iii) Lead Counsel's fee and expense award and Lead Plaintiffs' reimbursement awards.

Dated: October 14, 2022                       Respectfully submitted,


                                              */s/ Steven J. Toll*
                                              Steven J. Toll
                                              Va. Bar No. 15300
                                              stoll@cohenmilstein.com
                                              Daniel S. Sommers (*pro hac vice*)
                                              dsommers@cohenmilstein.com
                                              **COHEN MILSTEIN SELLERS
                                              & TOLL PLLC**
                                              1100 New York Avenue, Suite 500
                                              Washington, D.C. 20005
                                              Tel: (202) 408-4600
                                              Fax: (202) 408-4699

                                              *Liaison Counsel for Lead Plaintiffs and the
                                              Settlement Class*

                                              **SAXENA WHITE P.A.**

Maya Saxena (*pro hac vice*)
Joseph E. White III (*pro hac vice*)
Lester R. Hooker (*pro hac vice*)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Tel: (561) 394-3399
Fax: (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
lhooker@saxenawhite.com

Steven B. Singer (*pro hac vice*)
Sara DiLeo (*pro hac vice*)
Joshua H. Saltzman (*pro hac vice*)
Alec T. Coquin (*pro hac vice*)
10 Bank Street, 8th Floor
White Plains, NY 10606
Tel: (914) 437-8551
Fax: (888) 631-3611
ssinger@saxenawhite.com
sdileo@saxenawhite.com
jsaltzman@saxenawhite.com
acoquin@saxenawhite.com

*Lead Counsel for Lead Plaintiffs and the
Settlement Class*

30

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 14, 2022, I caused to be electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all of the registered participants.

/s/ Steven J. Toll
Steven J. Toll