UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

|  |  |
|---|---|
| PLYMOUTH COUNTY RETIREMENT SYSTEM and OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> EVOLENT HEALTH, INC., FRANK WILLIAMS, NICHOLAS MCGRANE, and SETH BLACKLEY, <br><br> Defendants. | Case No. 1:19-cv-01031-MSN-WEF |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF DISTRIBUTION OF NET SETTLEMENT FUND**

**TABLE OF CONTENTS**

I.      BACKGROUND ........................................................................................................ 1

II.     CLAIMS ADMINISTRATION............................................................................... 3

        A.    Claims Processing................................................................................... 3

        B.    Deficiency Process.................................................................................. 3

        C.    Processing of Late but Otherwise Eligible Claims ................................ 4

III.    FEES AND EXPENSES OF CLAIMS ADMINISTRATOR ........................................... 5

IV.     DISTRIBUTION OF NET SETTLEMENT FUND ........................................................ 6

V.      RELEASE OF CLAIMS............................................................................................ 8

VI.     RECORD RETENTION AND DESTRUCTION ........................................................... 9

VII.    CONCLUSION...................................................................................................... 9

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Evoqua Water Techs. Corp. Sec. Litig.*,
  2022 WL 17352327 (S.D.N.Y. Dec. 1, 2022) ......................................................... 5, 9

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
  2021 WL 2201380 (S.D.N.Y. June 1, 2021) ............................................................. 9

*In re Royal Ahold N.V. Sec. and Erisa Litig.*,
  2007 WL 3128594 (D. Md. Sept. 26, 2007) ............................................................. 5

*Plymouth County Ret. Sys. v. GTT Communications*,
  No. 19-cv-00982-CMH-MSN, ECF No. 102 (E.D. Va. Apr. 4, 2022)...................................... 5

*Rihn v. Acadia Pharm. Inc.*,
  2018 WL 513448 (S.D. Cal. Jan. 22, 2018)................................................................ 8

*Shah v. Zimmer Biomet Holdings, Inc.*,
  2020 WL 7392796 (N.D. Ind. Dec. 14, 2020) ........................................................... 8

Pursuant to the Parties' Stipulation and Agreement of Settlement ("Settlement Agreement" or "Stipulation," ECF No. 245), this Court's Final Judgment and Order of Dismissal (ECF No. 256), and the Order Approving Plan of Allocation (ECF No. 258), Lead Plaintiffs hereby respectfully move this Court for entry of a Class Distribution Order: (i) approving the Court-appointed Claims Administrator A.B. Data, Ltd.'s ("A.B. Data") administrative determinations concerning the acceptance and rejection of Claims submitted in connection with the Settlement of the Action; (ii) directing distribution of the Net Settlement Fund, after deduction of the payments requested herein, to Authorized Claimants; (iii) approving payment of A.B. Data's fees and expenses estimated to conduct the distribution of the Settlement; (iv) authorizing the destruction of Claim Forms and supporting documents at an appropriate time; (v) releasing claims related to the administration process; and (vi) granting such other and further relief as this Court deems appropriate.[1]  Significantly, there are no disputed Claims by any Settlement Class Member requiring Court review.  Moreover, Lead Plaintiffs conferred with Defendants, and Defendants do not oppose this Motion. As such, this Motion is ripe for determination.

## I.    BACKGROUND

On August 2, 2022, a settlement was reached, and the Parties entered into the Settlement Agreement. ECF No. 245. A.B. Data, a firm specializing in the administration of class action settlements, was retained to supervise and administer the notice procedure, process the Claim Forms submitted, and effectuate the distribution of the Net Settlement Fund to Authorized

---

[1] The proposed distribution plan (the "Distribution Plan") is set forth in the accompanying Declaration of Eric Nordskog in Support of Lead Plaintiffs' Motion for Approval of Distribution of Net Settlement Fund ("Nordskog Dec.," "Nordskog Declaration" or "Claims Administrator's Declaration"), submitted on behalf of A.B. Data. Unless otherwise indicated, all capitalized terms have the meanings set forth in the Settlement Agreement, the Plan of Allocation, or the Nordskog Declaration, all citations and internal quotations are omitted, and all emphasis is added. All references to "Ex. _" are to exhibits accompanying the Nordskog Declaration.

1

Claimants. *See* ECF Nos. 244-45. The Court approved the selection of A.B. Data in the Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") dated August 9, 2022.  *See* ECF No. 247.  In accordance with the Preliminary Approval Order, A.B. Data mailed the Notice and Claim Forms to potential Settlement Class Members, brokers, and other nominees. *See* ECF No. 252-4 and 254-4. The Summary Notice was also published in *Investor's Business Daily* and released via *PR Newswire* on September 19, 2022. *See* ECF No. 252-4 at ¶11.  The Court held a Settlement Fairness Hearing on November 18, 2022, and on the same day entered the Final Judgment and Order of Dismissal and Order Approving Plan of Allocation.  ECF Nos. 256, 258.

As set forth in the Nordskog Declaration, in addition to providing notice, A.B. Data has processed the Claim Forms and calculated recognized loss amounts consistent with the Court-approved Plan of Allocation. *See generally*, Nordskog Dec. A.B. Data has processed 13,811 Claims received through May 12, 2023. *Id*. at ¶6. Of these 13,811 Claims, A.B. Data has determined that 10,472 are Timely Eligible Claims, 28 are Late But Otherwise Eligible Claims and 3,311 should be wholly rejected for the following reasons, including: Claims had no purchase(s) of Evolent publicly-traded common stock during the Settlement Class Period, Claim did not result in a Recognized Claim, Claims were duplicates, and Claims were withdrawn by the filer. *Id.* at ¶¶33-37. Accordingly, the cash in the Net Settlement Fund is now available for distribution to Authorized Claimants in accordance with the Court-approved Plan of Allocation. Lead Plaintiffs respectfully request that the Court enter the Class Distribution Order authorizing and directing that the Net Settlement Fund be distributed to Authorized Claimants.

## II.    CLAIMS ADMINISTRATION

### A.    Claims Processing

Under the terms of the Stipulation, a $23.5 million Settlement Fund was established for the benefit of the Settlement Class for the Settlement of this Action.  Pursuant to the Stipulation, the Notice, and the Preliminary Approval Order, all Settlement Class Members wishing to participate in the Settlement Fund were required to submit Claim Forms by mail, postmarked no later than December 16, 2022, or to submit a Claim Form online by that same date. Nordskog Dec. at ¶6. As set forth above and in the Nordskog Declaration, A.B. Data reviewed and processed 13,811 Claim Forms submitted by potential Settlement Class Members. *Id*. A.B. Data has now prepared detailed reports listing: (i) all timely valid Claim Forms by Authorized Claimants; (ii) all Claim Forms that were submitted after the claims submission deadline but on or before May 12, 2023 that are otherwise valid; and (iii) rejected Claim Forms with the rejection reasons. *See id*. at ¶¶33-37; Exs. D through F. All Claims received through May 12, 2023 have been fully processed in accordance with the Settlement Agreement and the Court-approved Plan of Allocation included in the Notice, and A.B. Data has worked with Claimants to help them perfect their Claims. *See generally*, Nordskog Dec.

### B.    Deficiency Process

A.B. Data evaluated and processed all Claim Forms and supporting documentation to determine, among other things, whether each Claimant had purchased or acquired publicly-traded common stock of Evolent Health, Inc. during the Settlement Class Period, and were damaged thereby, and whether the Claims had been submitted by excluded persons. *See* Nordskog Dec. at ¶¶9-19. A.B. Data utilized internal codes to identify and classify any deficiency or ineligibility conditions that existed with any Claim. *See id*. at ¶¶12-13.

Much of A.B. Data's efforts in handling the administration involved Claimant communications, so that all Claimants had sufficient opportunity to cure any deficiencies and file a complete Claim.   As demonstrated by the Nordskog Declaration, A.B. Data received all submitted Claims and, to the extent that a Claim was deficient, A.B. Data notified the Claimant of the deficiency and advised the Claimant on how to cure the deficiency. Nordskog Dec. at ¶¶20-28. The "Deficiency Process," which primarily involved mailing a letter (the "Deficiency Notice") to Claimants and subsequently handling and responding to calls, correspondence, and emails from Claimants, was intended to assist Claimants in properly completing their deficient submissions so that Claimants would be eligible to participate in the Settlement. *See id.* at ¶¶20-22; Ex. A (sample Deficiency Notice).

For Electronic Claims, A.B. Data informed E-Claim Filers of deficiencies by sending an email ("Status Email") to the email address included with the respective E-Claim Filers' Claim Form with an attached report containing detailed information associated with the Claims and indicating which of those Claims within the filing were deficient and/or rejected ("Status Spreadsheet"). Nordskog Dec. at ¶¶23-27; Exs. B-C (sample Status Email and Status Spreadsheet).

A.B. Data also called Claimants with still-deficient Claims to provide them with a final opportunity to cure the deficiencies in their Claims. Nordskog Dec. ¶20 During this calling campaign, A.B. Data provided assistance to Claimants where possible, depending on the nature of the deficiency. *Id.* ¶20.

**C.**      **Processing of Late but Otherwise Eligible Claims**

The Stipulation contemplates that the Court may approve extending the deadline for Settlement Class Members to submit Claims to allow acceptance of additional Claims that are otherwise eligible to participate in the Settlement. *See* Stipulation ¶4.5. Extending the claims

deadline is common in securities class actions. *See*, *e.g.*, *In re Royal Ahold N.V. Sec. and Erisa Litig.*, 2007 WL 3128594, at *3 (D. Md. Sept. 26, 2007) (approving claims postmarked after the initial deadline); *Plymouth County Ret. Sys. v. GTT Communications*, No. 19-cv-00982-CMH-MSN, ECF No. 102 at 2 (E.D. Va. Apr. 4, 2022) (Hilton, J.) (approving "[l]ate [b]ut [o]therwise [e]ligible [c]laims"); *Evoqua Water Techs. Corp. Sec. Litig.*, 2022 WL 17352327, at *1 (S.D.N.Y. Dec. 1, 2022) (same). Lead Counsel believes that, when the equities are balanced, it would be unfair to prevent an otherwise valid claim from participating in the Net Settlement Fund solely because it was submitted after the deadline, but while all Claims were still being processed. In the interest of maximizing Class participation in the Settlement, A.B. Data has processed all late Claims received through May 12, 2023 and 28 have been found to be otherwise eligible in whole or in part (the "Late but Otherwise Eligible Claims"). *Id*. at ¶29. A.B. Data has not rejected any Claim received through May 12, 2023 solely based on its late submission, and Lead Counsel and A.B. Data believe no delay has resulted from the provisional acceptance of these Late but Otherwise Eligible Claims. *Id.*

However, there must be a final cut-off date after which no more Claims will be accepted so that there may be a proportional allocation of the Net Settlement Fund and the distribution may be accomplished. Accordingly, it is respectfully requested that this Court order that no Claim submitted after May 12, 2023 be eligible for payment for any reason whatsoever.

## III.   FEES AND EXPENSES OF CLAIMS ADMINISTRATOR

Pursuant to the terms of A.B. Data's agreement with Lead Counsel to act as the Claims Administrator for the Settlement, A.B. Data was responsible for, among other things, disseminating notice of the Settlement to the Settlement Class, creating and maintaining a website and toll-free telephone helpline, processing Claims, and allocating and distributing the Net

Settlement Fund to Authorized Claimants. *See generally*, Nordskog Dec. As set forth in the Nordskog Declaration, A.B. Data estimates that its fees and expenses in connection with the Initial Distribution of the Net Settlement Fund will be $37,306.50.[2] Nordskog Dec. ¶38; Ex. G. Lead Plaintiffs respectfully request that the Court approve payment of this amount for A.B. Data to conduct the Initial Distribution.

## IV.    DISTRIBUTION OF NET SETTLEMENT FUND

Lead Plaintiffs request that the Court authorize the distribution of the balance of the Settlement Fund to the Settlement Class Members whose claims have been accepted. *See* Nordskog Dec. ¶¶34-35; Exs. D-E. Lead Plaintiffs now respectfully move the Court for an order approving A.B. Data's determinations concerning the acceptance and rejection of the Claim Forms that are accompanying their Motion and approving the Distribution Plan as set forth in the Nordskog Declaration.

Pursuant to the proposed Distribution Plan, A.B. Data will conduct an Initial Distribution of the Net Settlement Fund, after deducting all payments approved by the Court, and after payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees. Nordskog Dec. ¶39(a). In the Initial Distribution, A.B. Data will calculate award amounts to all Authorized Claimants by calculating their *pro rata* share of the Net Settlement Fund in accordance with the Plan of Allocation. *Id.*  Pursuant to the terms of the Plan of Allocation, A.B. Data will eliminate any Authorized Claimant whose distribution payment calculates to less than $10.00. *Id.* at ¶39(a)(ii).

---

[2] If the anticipated fees and expenses to conduct the Initial Distribution is greater than the actual cost to conduct the distribution, the excess will be returned to the Net Settlement Fund.

After eliminating Claimants who would have received less than $10.00, A.B. Data will recalculate the *pro rata* distribution payments for Authorized Claimants who would receive $10.00 or more. Nordskog Dec. at ¶39(a)(iii). A.B. Data will then prepare checks for the distribution. In order to encourage Authorized Claimants to promptly deposit their payments, all Initial Distribution checks will bear a notation: "DEPOSIT PROMPTLY; VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED WITHIN 120 DAYS OF DISTRIBUTION." *Id*. at ¶39(a)(v). Authorized Claimants who do not deposit their checks within the time allotted or on the conditions stated in the Nordskog Declaration will irrevocably forfeit all recovery from the Settlement, and the funds allocated to all of these stale-dated checks will be available to be redistributed to other Authorized Claimants. *Id.* at ¶39(a)(vi).

Consistent with the Court-approved Plan of Allocation, after A.B. Data has made reasonable and diligent efforts to have Authorized Claimants deposit their Initial Distribution checks, but not earlier than nine (9) months after the Initial Distribution, A.B. Data will, if Lead Counsel, in consultation with A.B. Data, determine that it is cost-effective to do so, conduct a second distribution of the Net Settlement Fund (the "Second Distribution"). Nordskog Dec. at ¶39(b). Any amounts remaining in the Net Settlement Fund after the Initial Distribution, after deducting A.B. Data fees and expenses incurred in connection with administering the Settlement for which it has not yet been paid (including the estimated costs of the Second Distribution), and after deducting payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, will be distributed to all Authorized Claimants in the Second Distribution who deposited their Initial Distribution checks and would receive at least $10.00 from the Second Distribution, based on their *pro rata* share of the remaining funds. *Id*. Additional distributions, after deduction of costs and expenses as described above and subject to the same conditions, may

7

occur thereafter in six-month intervals until Lead Counsel, in consultation with A.B. Data, determines that further distribution is not cost-effective. *Id.* at ¶39(c).

Finally, if any funds remain in the Net Settlement Fund after determining that further redistribution is no longer cost-effective, and following payment of any unpaid notice and administration costs, taxes, the costs of preparing appropriate tax returns, and any escrow fees, the funds shall be contributed to the Investor Protection Trust, a non-sectarian, not-for-profit organization dedicated to investor education, research, and support of investor protection efforts, if approved by the Court. *Id*. at ¶39(d); *see GTT*, No. 1:19-cv-00982, ECF No. 102 at 3 (approving cy pres award to "Investor Protection Trust, a non-sectarian, not-for-profit organization devoted to investor education"); *Shah v. Zimmer Biomet Holdings, Inc*., 2020 WL 7392796, at *2 (N.D. Ind. Dec. 14, 2020) (approving IPT as cy pres recipient); *Rihn v. Acadia Pharm. Inc*., 2018 WL 513448, at *4 (S.D. Cal. Jan. 22, 2018) (same).[3]

The Court-approved Claims Administrator and Lead Counsel submit that the administration of the Settlement and the proposed Distribution Plan comply with the terms of the Settlement Agreement and the Plan of Allocation approved by the Court, and therefore should be approved.

## V.    **RELEASE OF CLAIMS**

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection

---

[3] Founded in 1993, IPT's primary mission is to provide independent, objective investor information needed by consumers to make informed decisions. The IPT operates programs and provide grants to underwrite investor education and protection initiatives. *See* https://investorprotection.org/about/

8

with the Settlement, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from all claims arising out of that involvement. Accordingly, Lead Plaintiffs respectfully request that the Court enter the Class Distribution Order, which will release and discharge all such claims.

## VI.  RECORD RETENTION AND DESTRUCTION

Lead Plaintiffs also request that the Court permit A.B. Data to destroy any paper and electronic Claim Forms one year after the Distribution of the Net Settlement Fund is complete. Nordskog Dec. at ¶39(f); *see also Evoqua*, 2022 WL 17352327, at *3 (permitting destruction of documentation one year after initial distribution of the Net Settlement Fund); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2021 WL 2201380, at *3 (S.D.N.Y. June 1, 2021) (same).

## VII.  CONCLUSION

Based on the foregoing reasons, and the Claims Administrator's Declaration submitted herewith, Lead Plaintiffs respectfully request that the Motion be granted. For the Court's convenience, a proposed Class Distribution Order is accompanying the Motion.

Dated: June 23, 2023                    Respectfully submitted,


                                        /s/ Steven J. Toll
                                        Steven J. Toll
                                        Va. Bar No. 15300
                                        stoll@cohenmilstein.com
                                        Daniel S. Sommers (*pro hac vice*)
                                        dsommers@cohenmilstein.com
                                        **COHEN MILSTEIN SELLERS
                                        & TOLL PLLC**
                                        1100 New York Avenue, Suite 500
                                        Washington, D.C. 20005
                                        Tel: (202) 408-4600
                                        Fax: (202) 408-4699

                                        *Liaison Counsel for Lead Plaintiffs and the
                                        Settlement Class*

9

**SAXENA WHITE P.A.**
Maya Saxena (*pro hac vice*)
Joseph E. White III (*pro hac vice*)
Lester R. Hooker (*pro hac vice*)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Tel: (561) 394-3399
Fax: (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
lhooker@saxenawhite.com

Steven B. Singer (*pro hac vice*)
Sara DiLeo (*pro hac vice*)
Joshua H. Saltzman (*pro hac vice*)
10 Bank Street, 8th Floor
White Plains, NY 10606
Tel: (914) 437-8551
Fax: (888) 631-3611
ssinger@saxenawhite.com
sdileo@saxenawhite.com
jsaltzman@saxenawhite.com

*Lead Counsel for Lead Plaintiffs and the Settlement Class*

10

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2023, I caused the foregoing to be electronically filed with

the Clerk of Court via CM/ECF, which will send a notice of electronic filing to all registered users.

> /s/ Steven J. Toll
> Steven J. Toll
> Va. Bar No. 15300
> stoll@cohenmilstein.com
> **COHEN MILSTEIN SELLERS & TOLL PLLC**
> 1100 New York Avenue, Suite 500
> Washington, D.C. 20005
> Tel: (202) 408-4600
> Fax: (202) 408-4699
>
> *Liaison Counsel for Lead Plaintiffs and the*
> *Settlement Class*